

ZACHARY W. CARTER
Corporation Counsel

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

PAUL H. JOHNSON
phone: (212) 356-2656
fax: (212) 356-3509
pajohnso@law.nyc.gov

November 8, 2017

**VIA ECF**
Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Martinez v. City of New York, et al.
16-CV-0079 (AMD) (CLP)

Your Honor:

I am the Assistant Corporation Counsel in the Special Federal Litigation Division of the New York City Law Department assigned to represent defendants in the above-referenced matter. Defendants write in opposition to plaintiff's November 2, 2017 letter and the Court's Order to Show Cause. Defendants state that they diligently worked and continue to work in order to produce documents in this matter and further state the simple fact that plaintiff has filed multiple motions to compel is not evidence of defendants' failure to produce documents because defendants have a right and an obligation to object to what they deem as improper discovery requests.

**Court's November 3, 2017 Order to Show Cause**

On November 3, 2017 the Court ordered a hearing to show cause stating that "[t]his is the seventh Order the Court has been forced to issue due to defendants' continued failure to comply with their discovery obligations." (Doc. 79).

As an initial matter, the defendants have produced over 4,320 pages of documents in this case, produced 11 police officers for depositions, organized an inspection of the 107th Precinct and an inspection of Queens Central Booking, unsealed the arrest report of a non-party and produced over three dozen officer photographs in response to the Court's orders. Defendants, and in particular the undersigned, have not failed to comply with their discovery obligations. The fact that plaintiff's counsel has filed motions to compel is not evidence that defendants have failed to comply with their discovery obligations, instead its evidence that defendants take their

discovery obligations seriously. Defendants have a right to object to discovery requests they believe are improper, overbroad and not proportional to the needs of this case as required under Fed. R. Civ. P. 26. Defendants will now outline each motion to compel filed by plaintiff, defendants' response, the Court's Order and defendants' production in response to the court order.

1. **June 29, 2016 Court Order**: The Court ordered defendants to produce the names of the individuals who interrogated plaintiff. Defendants stated plaintiff was never interrogated and further stated that the individual who debriefed plaintiff was listed in the District Attorney file at DEF25. Defendants compiled with the Court's order.
2. **July 6, 2016 Motion to Compel**: Plaintiff filed a motion to compel the production of labeled photographs of every police officer matching the description given by plaintiff. Defendants objected to this broad request in that the descriptions were vague and the time period requested was broad. At a status conference held on July 27, 2016 defendants agreed to produce the photographs of every individual who participated in plaintiff's arrest and prosecution and thus did so, compiling with the Court's order.
3. **August 16, 2016 Motion to Compel**: Plaintiff requested the phone records of non-party witnesses, unlabeled photographs of every police officer that matched the description given by plaintiff inside the precinct at the time of her alleged incident, an inspection of the 107th Precinct and an unredacted prisoner log. Defendants objected to the production of these items stating that they unduly burdensome, plaintiff's request for photographs was vague and that the names on the prisoner log were redacted to comply with NY CPL § 160.50. The Court ordered (1) the names of all intelligence officers at the precinct at the time of plaintiff's arrest; and provide their photos; (2) the names of any Queens Narcotics officers at the precinct and their photos; (3) photos of any other officers at the precinct matching the description provided by plaintiff. By September 19, 2016, parties were to arrange for an inspection of the precinct. Defendants produced the requested documents and requested names as well as an additional 31 photographs of officers matching the description provided by plaintiff. Defendants also arranged for the inspection of the 107th Precinct on September 27, 2017. The day before the scheduled visit, plaintiff's counsel called and asked for the precinct visit to be canceled. Defendants there rescheduled the precinct visit for October and that subsequent date was also canceled by plaintiff's counsel. The inspection of the precinct did not take place until February 2017 to accommodate plaintiff counsel's schedule. Defendants compiled with the Court's Order, which significantly narrowed plaintiff's overbroad demands.
4. **September 26, 2016 Motion to Compel**: On September 26, 2016 plaintiff filed a motion to compel labeled photographs of police officers produced by defendants and accompanying memobooks of each officer. Defendants opposed that motion as overbroad and improper. The Court ordered plaintiff to provide a time frame for when the alleged assault occurred in order to limit the number of officers who may have viewed the photographs. Plaintiff stated that the alleged assault occurred at approximately 12:15 a.m. and requested photographs of officers who were in the precinct at approximately 11:15 a.m. and 1:15 a.m. Significantly narrowing plaintiff's overbroad demands. Defendants informed plaintiff's counsel that the time period selected included a shift change and that did not reduce the number of photographs of officers who may have been in the precinct at that time. Defendants thus compiled with the Court's order.

5. **May 23, 2017 Motion to Compel**: Plaintiff requested the production of a clearer copy of the Medical Treatment of Prisoner form among other documents. Plaintiff then claimed that defendants never responded to plaintiff's discovery demands for the newly named defendants, a claim they later withdrew because defendants had indeed responded to plaintiff's discovery demands and document requests. Defendants then informed the court that on May 19, 2017 the parties had jointly requested an extension of the time to complete discovery by completing the depositions of defendant Weitzman and non-party Sgt. Joseph DiGennaro. The next day, plaintiff unveiled a slew of new discovery requests and then requested the deposition of additional eight non-party witnesses. Defendants objected to the depositions and attempted to point out to the court the increasingly abusive and misleading behavior of plaintiff's counsel. The Court made no mention of this dispute in its subsequent order and instead ordered defendants to produce an additional 7 non-party witnesses for so-ordered depositions. Defendants produced all the requested individuals. Defendants further note that only two of the non-party witnesses, Sgt. DiGennaro and Lt. Robinson had any recollection of the incident leading to the arrest, prosecution and debriefing of plaintiff and many of the witness had no recollection of interacting with plaintiff at all on January 22 and January 23, 2015. As previously noted, the two defendants in this matter not only had no interaction whatsoever with plaintiff at any time, but were also not in the precinct at the same time and therefore could not have assaulted plaintiff. Defendants thus complied with the Court's order.

6. **July 10, 2017 Motion to Compel:** Plaintiff filed this motion to compel to produce an unredacted arrest report of a non-party. Defendants objected to this motion to compel as the requested document contained information protected from disclosures by NY CPL § 160.50 and that the non-party witness was not in the precinct at the same time as plaintiff. Nonetheless, the Court ordered the production of the unredacted arrest report. While the undersigned was on vacation with his family, defendants requested that plaintiff give defendants additional time to produce this document. Plaintiff refused and defendants wrote the Court asking for additional time to produce the document, which was granted. Defendants then had to obtain an unsealing order from this Court in order to obtain this document and the document was provided to plaintiff. Defendants asked plaintiff to select a date to depose this non-party witness, but plaintiff never offered a date.

7. **September 15, 2017 Motion to Compel:** Plaintiff moved to compel the production of overtime records for the defendant officers, the prisoner movement slip, records of the Live Scan Fingerprint Machine, documentation of Lt. Weitzman's CRV shift, an inspection of Queens Central Booking and a viewing of the original medical treatment of prisoner form. Defendants produced all the overtime records in its possession regarding overtime for defendants Weitzman and Forgione, arranged for the inspection of Queens Central Booking and produced the original medical treatment of prisoner form and a photograph of the Queens Central Booking Command Log as the Command Log was not available for viewing. Defendants also produced documentation of Lt. Weitzman's CRV shift. Defendants thus complied with the Court's order.

Defendants are distressed by the Court's Order. It seems to suggest the filing of a motion to compel by one party means that the opposing party is failing in its discovery obligations rather than rightfully objecting to the production of documents. The undersigned has put in hundreds of

hours of work in this case, locating and preparing officers for depositions and responding to plaintiff's numerous discovery requests and motions to compel. Supervisors in this department have also spent dozens of hours assisting the undersigned in locating documents and have kept close tabs on this case to make sure that we respond promptly to every discovery demand in this matter. Paralegals from this office, record keepers at the New York City Department of Correction, police officers from 107th precinct, Queens Central Booking and the New York City Police Department's Civil Litigation Unit and attorneys from New York City Police Department have also worked hundreds of hours locating documents, arranging inspections and preparing affidavits in this matter.

At the end of the day, all of this discovery does not change the facts of this case, that defendants Weitzman and Forgione could not have assaulted plaintiff as they were not in the precinct at the same time. Defendants therefore respectfully ask the Court to vacate its order to show cause.

### PLAINTIFF'S MOTION FOR CONTEMPT

At the Court Conference held on October 17, 2017, the parties agreed to resolve the outstanding discovery issues by the close of discovery on November 17, 2017. Specifically, the Court allowed the plaintiff to serve interrogatories on defendant Lieutenant Jason Weitzman regarding his tour of duty doing counterterrorism work on January 22, 2017, allowed for the deposition of two newly named police officers and production of their memobooks and allowed plaintiff to request the City conduct a search for additional overtime records regarding Lieutenant Weitzman. If no documents could be found the City was to produce an affidavit stating as such.

At the court conference, defendants stated that they have so far been unable to locate the DD5 or buy reports but were continuing to search for the documents and would produce an affidavit if those documents could not be located. Defendants also stated they would produce an affidavit regarding the prisoner movement slip even though plaintiff's counsel learned during their tour of Queens Central Booking on October 13, 2017 that that document is destroyed after a prisoner leaves the custody of Queens Central Booking and therefore not kept by the New York City Police Department. Defendants also informed plaintiff that the records from the Livescan machine are not kept by the City of New York and the City would produce an affidavit to that effect. Defendants will produce such documents and affidavits by November 9, 2017.

Additionally in an October 20, 2017 email, plaintiff listed documents it sought in discovery. Defendants responded by telephone on October 24, 2017 with plaintiff's counsel that many of plaintiff's requests were improper and untimely. Defendants have produced two affidavits regarding Lt. Weitzman's overtime records and the prisoner movement slip and will produce the remaining affidavits by November 9, 2017. Defendants will now address each request made by plaintiff:

1. **LiveScan Records for plaintiff and all other prisoners processed at the 107th precinct on 1/22/15-1/23/15**: As discussed previously in this letter, defendants will produce an affidavit regarding this issue by November 9, 2017.
2. **The missing pages from the Queens Central Booking Command Log showing plaintiff's return from her second visit to the 107th precinct at approximately 5:08 p.m.** (*see* **DEF4322**) (we only have the excerpt showing her arrival at 5:57

**a.m. (DEF4318)**: Defendants have produced the Queens sign-in sheet showing plaintiff's second arrival at Queens Central Booking on January 23, 2017 at approximately 5:08 p.m. at the inspection of Queens Central Booking on October 13, 2017 and produced in defendants' fifteenth supplemental disclosures dated October 13, 2017 at Bates Stamp Nos. DEF4319 through 4322. The information contained therein was the basis of plaintiff's request to identify and depose two newly named officers. Those two officers were identified. Therefore this request is moot and repetitive.

3. **Plaintiff's Prisoner Movement Slip, with all endorsements and notes:** Defendants produced an affidavit regarding this document on November 8, 2017.
4. **All DD5s and Buy Reports mentioned during Digennaro's deposition testimony:** As stated previously, defendants will produce an affidavit regarding the DD5's by November 9, 2017.
5. **Proof that Weitzman was working scheduled overtime and did not need to complete any overtime paperwork on January 22-23, 2015:** This request is vague, overbroad and assumes fact not in evidence. That said without waiving any objections to plaintiff's request, defendants state they have searched for additional overtime records and produced an affidavit on November 8, 2017 stating they could not locate any further documents regarding Lt. Weitzman's overtime. As defendants previously stated, they have produced the Command Log which shows Lt. Weitzman received six hours of overtime for his counterterrorism shift on January 22, 2015 as well as a computer record showing that Lt. Weitzman was paid for six hours of overtime on January 22, 2015. Any further records would thus be duplicative.
6. **An affidavit or other explanation of the meaning of the notifications section of Def4309, including why it does not apply to Weitzman, and how Weitzman's Patrol Borough's notifications were made, along with a copy of all records related to that notification, including the notification itself reflecting the time and method of transmission:** Defendants state that this request is untimely, confusing, overboard, makes assumptions about facts not in evidence and therefore defendants have no idea what plaintiff is requesting. As defendant Weitzman stated in his deposition taken on August 16, 2017, Lt. Weitzman worked from 12:00 p.m. on January 22, 2015 until after 2 a.m. on January 23, 2015. He testified that he left the 107th precinct in the afternoon, traveled to Manhattan to do his counterterrorism shift and returned to the precinct on January 23, 2015 at 2 a.m. Specifically Lt. Weitzman testified that the only paperwork generated to his recollection was a small sheet of paper which listed the officers in his command that night and the list of officers under his command that night as well as all paperwork in its possession regarding Lt. Weitzman's terrorism shift in defendants twelfth supplemental disclosures dated September 29, 2017 at Bates Stamp Nos. DEF4309 through DEF4314.
7. **Identifications and memo books for Graham and Walsh:** Defendants have identified Officers Graham and Walsh and have produced Officer Graham's memobook. Further, Officer Graham was deposed on November 2, 2017. Defendants have proposed dates for Officer Walsh's deposition and produced his memobook on November 8, 2017.
8. **Proposed dates in the next two weeks for the Graham and Walsh depositions, and the 30(b)(6) discussed below:** Plaintiff never served defendants with a Notice for a 30(b)(6) deposition and thus this request is untimely as it comes less than 30 days before the close of discovery. This request is also vague, confusing and

       overbroad. Officer Graham was deposed on November 2, 2017. Defendants have proposed dates for Officer Walsh's deposition.

9. **Plaintiff's Unexplained Return to the 107th Precinct:** As you know, according to her deposition testimony and all of the documents in this case, Ms. Martinez was taken from the hospital back to the 107th precinct and held in a cell there from approximately 9:35 a.m. on January 23, 2015 until approximately 5:00 p.m. that day, when she was returned to central booking.
   Question 1: Why did this happen, and on whose orders?
   Question 2: Why has the 107th Precinct Prisoner Roster for 1/23/15 never been produced?
   Question 3: Which city employees did plaintiff interact with inside the 107th precinct on 1/22/15 and 1/23/15?
   Question 4: Why does plaintiff's name not appear on Def3654, even though other female prisoners do?
   Question 5: What is defendants' theory or explanation as to the time, place and mechanism of plaintiff's injury as reflected in the medical records?
   If defendants do not answer these questions, we will be seeking immediate leave of Court for a 30(b)(6) witness who can provide this information on behalf of the City:

      Plaintiff's above questions are improper, have been improperly served, constitute a new request for discovery outside of what was agreed to at the status conference held on October 17, 2017, request information previously produced and ask defense counsel to respond to questions that would violate the attorney work product doctrine. These requests are more suited to interrogatories or depositions, not simply questions listed in an email.

      Question 1 assumes fact not in evidence and was answered in the deposition of Officer Graham on November 2, 2017. Officer Graham testified that it is not unusual for an individual at the hospital to be transported back to the precinct until he or she is "court ready." Plaintiff's representations that her transport from the hospital to the 107th precinct was thus outside normal procedure are thus unfounded and not rooted in any previously produced evidence. Defendants state question 2 is untimely as defendants state they have never been asked to produce the Precinct Prisoner Roster for 1/23/15 and that the prisoner roster for January 23, 2015 has no information regarding the events at issue in this lawsuit as plaintiff alleges her assault took place before she was transported to Queens Central Booking. Defendants state question 3 is improper, untimely and previously answered in defendants responses to plaintiff's interrogatories dated January 3, 2017. Question 4 is improper, vague, untimely and not directed to any defendant in this action. Question 5 is wholly inappropriate and asks defendants to reveal information protected by the work product doctrine. As stated previously, plaintiff has never served defendants with a notice for a 30(b)(6) deposition, therefore this request is improper, untimely and vague.

      Plaintiff also claims she was prejudiced by not having Officer Graham's memobook until just before the deposition. As in initial matter, defendants have previously produced memobooks for non-party officers on the day of the deposition in this matter to no complaint by plaintiff's counsel, most recently on August 1, 2017 when plaintiff deposed Officer Richard Russo. Further, on November 2, 2017, plaintiff deposed Officer Graham after defendants sent plaintiff a copy of said officer's memobook. While plaintiff's counsel claimed they were in dire need of said

memobook, they did not use the memobook as an exhibit. Finally, plaintiff has deposed now three individuals who transported plaintiff on the date of her arrest and only one of those officers had any recollection of plaintiff. These depositions have been repetitive and have not lead to the discovery of any additional evidence. These depositions have not been relevant to any party's claim or defense and have not been proportional to the needs of this case as required under Fed. R. Civ. P. 26.

Finally, a motion for contempt is improper in this case where discovery is open and defendants have diligently worked to respond to the court's orders. The Second Circuit is clear on when a motion for contempt is justified. "A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2nd Cir. 1995).

> "More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."

King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2nd Cir. 1995).

Therefore, in order for a party to be subject to a motion for contempt, the court must find the non-moving party violated "a clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed." Id. (internal citations omitted). The undersigned states that he has diligently communicated with the client in an effort to produce the needed documents and information required and the client is working to produce the remaining affidavits in this case. Therefore a motion for sanctions is improper in this instance. The scope of discovery in this matter totals thousands of documents, two inspections and 11 depositions. It is patently unfair to suggest all this work has been insufficient.

Based on the foregoing, defendants submit they have complied with their discovery obligations pursuant to the Court Order and the Court should deny plaintiff's motion for contempt and vacate its order to show cause. Thank you for your consideration of this matter.

Respectfully submitted,

Paul H. Johnson
*Assistant Corporation Counsel*
Special Federal Litigation Division

**VIA ECF**
Baree N. Fett, Esq.
*Attorney for Plaintiff*
305 Broadway, 14th Floor
New York, New York 10007