

GABRIEL P. HARVIS
BAREE N. FETT

December 21, 2017

BY ECF
Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Martinez v. City of New York, et al.*, 16 CV 79 (AMD) (CLP)

Your Honor:

I represent plaintiff in the above-referenced action. I write pursuant to Fed. R. Civ. P. 37 to respectfully request relief in connection with improper discovery practice by defendants. Unfortunately, the manner in which this case has been defended has now deprived plaintiff of the fair opportunity to prosecute her claims.

As the Court may recall, defendants took the position from the outset of the litigation in early 2016 that plaintiff was not injured at the 107th Precinct and it was therefore impossible for defendants to identify any officers with knowledge of her injury. Consequently, significant time and resources were spent briefing issues surrounding officer identification and the production of photographs. During that time, defendants represented to the Court that they had conducted a months-long investigation and concluded there was "no evidence any other officers interacted with plaintiff on the night of the incident." DE #22 at p. 2. In a series of orders, the Court instructed defendants to investigate further and to identify and provide photographs of certain officers. *See* DE # 24. Plaintiff, who recalls the events vividly, was able to identify her assailants from the photographs and those officers were added to the case as defendants in November 2016. *See* DE #27.

Since that time and over the past thirteen months, defendants have steadfastly maintained the "theory" that plaintiff is lying about being injured inside the 107th Precinct and that no evidence exists to support her manufactured claim. This argument served as a continuing basis for defendants to withhold discovery and impeded plaintiff's efforts to

piece together the basic documentary record surrounding the disputed events. These issues were addressed at the contempt hearing last month.

With all defendants and non-party officers continuing to assert that nothing happened at the precinct, plaintiff spent thousands of dollars conducting eleven police officer depositions and made herself available for a deposition, all in a good faith effort to maintain compliance with operative scheduling orders. No defense witness could explain how plaintiff came to be injured or why the medical record contained a cryptic statement, discovered by plaintiff's counsel and attributed to an unknown police officer, that plaintiff was "punching a wall in the cell."

Despite defendants' ongoing blanket denials and attempts to obstruct the discovery process, plaintiff uncovered clues and unanswered questions that cast doubt on defendants' official position, including the fact that plaintiff was inexplicably brought from the hospital back to the 107th Precinct (instead of central booking). Thankfully, dogged pursuit of those leads resulted in the Court's order of December 14, 2017 requiring defendants to make additional disclosures by December 18, 2017.

Defendants' December 18th production has now thrown the case into disarray, profoundly changed the landscape of the litigation to plaintiff's prejudice and revealed that the Law Department never conducted any legitimate investigation of the events, in spite of this Court's orders and defense counsel's repeated representations. Plaintiff learned for the first time three days ago:

- In a *recorded* call, an individual never disclosed as a Rule 26(a)(1)(A)(i) witness, NYPD Lieutenant David Camhi of the 107th Precinct, contacted Internal Affairs on the morning of plaintiff's injury on January 23, 2015:

  > This call is in regards to an injured prisoner….Yeah when she was in police custody. The injury wasn't caused by, uh, any MOS, she did it to herself….She was secured in the juvenile room [of the precinct], uh, with one cuff, cuffed to the bench. Uh, she started ripping things off the wall…then she started punching the wall and kicking at cabinets, uh, *I secured her while she was in there rear-cuffed and then secured those cuffs to the bench to keep her secured.* When she was transported down to central booking she complained about pain in her right hand, she did have some visible swelling in her right hand…she was brought over to QGH…just contusions no broken bones, no stitches no nothing else…[the injury happened] approximately, uh, I'm not even sure, midnight thirty I

> believe…she's being released and she'll be brought back to central booking…

- Although Lieutenant Camhi never noted plaintiff's alleged misbehavior or his restraint of her in his memo book, the command log or the requisite UF-49 "Unusual Occurrence Report," his call apparently resulted in multiple investigations by Internal Affairs, the Queens Patrol Borough and the 107th Precinct, none of which were ever disclosed to plaintiff;[1]

- As part of the command-level investigation, a Captain at the 107th Precinct, Matthew D. Hanrahan (who died on March 8, 2016), allegedly interviewed plaintiff about her injury on the day it happened, claiming in a written report that she "did not make any allegations of misconduct on the part of any members of the service;"[2]

- According to the same two-page document (which purports to exonerate precinct officers) the late Captain Hanrahan also claimed to have interviewed both Lieutenant Camhi and arresting officer Eric Ryan, who both allegedly witnessed plaintiff injuring herself for no apparent reason;

- IAB conducted a 43-minute recorded interview of plaintiff that was never disclosed or provided to plaintiff in advance of her deposition;

- In addition to its investigation of plaintiff's injury, IAB also conducted a large "corruption" investigation into Ms. Martinez's allegation that officers stole over $5,000 on the date of her arrest – neither the existence of that inquiry nor its outcome were ever disclosed to plaintiff;[3] and

- The officers who relieved plaintiff's escort officers at the hospital were finally identified, but counsel asserts that they now claim, three years later, to have no recollection of their interactions with Ms. Martinez.

These developments have prejudiced plaintiff on a number of fronts. First, plaintiff was unable to question the witnesses she paid to depose regarding the foregoing information, compromising the examinations and the testimony, and potentially requiring

---

[1] Even at this late stage, it appears that plaintiff has only been provided with a small portion of the investigative documents related to plaintiff's in-custody injury. Moreover, defendants have never provided a privilege or redaction log in connection with any of the discovery produced in this case.

[2] Defense counsel now represents that this interview was not recorded and that no notes of it exist. Given the Captain's death, plaintiff is limited in her ability to conduct further inquiry.

[3] In their December 18th production, defendants only produced two of at least 27 investigative reports related to the corruption investigation.

expensive and time-consuming continuances of multiple depositions. Second, plaintiff was deprived of the opportunity to explore the investigations and depose the players in them, including several investigators who appear to have relevant information. Had defendants appropriately made timely disclosures, witness memories might have been intact, and plaintiff could have started by deposing Lieutenant Camhi, who a) is likely an appropriate defendant in this case, and b) could have identified other witnesses with knowledge and provided a blueprint for discovery. Third, the withheld recorded interviews of plaintiff and Danny Rivera (who reported hearing plaintiff scream inside the precinct, seeing her injuries and witnessing her being denied medical care) provide a good faith basis to assert multiple additional claims against new defendants, including for the denial of medical treatment and due process violations, which may significantly broaden the litigation and amplify the defects in the prior record.

All of this occurs against the backdrop of the three-year statute of limitations, which expires on January 22, 2018. The record suggests that defendants' lack of disclosure may have been a tactical effort to frustrate plaintiff's timely assertion of her claims. *See DaCosta v. City of New York*, ___ F.Supp.3d ____, 2017 WL 5176409, *26 (E.D.N.Y. Nov. 8, 2017) ("Instead of providing the necessary information to Plaintiff about the extent and nature of [an officer's] involvement in the case Plaintiff was suing on, Defendants delayed the proceedings.") (Weinstein, J.).

Plaintiff respectfully submits that defendants have thus violated Fed. R. Civ. P. 37, and that plaintiff is entitled to relief under that rule. Plaintiff respectfully seeks guidance from the Court as to the appropriate remedy among those listed in Fed. R. Civ. P. 37(b)(2)(A), and respectfully submits that a more drastic remedy is warranted here in order to cure the prejudice to plaintiff and discourage defendants from engaging in such practices.

Thank you for your consideration of this request.

Respectfully submitted,

Baree N. Fett

cc: ACC Kavin Thadani, Esq.