

GABRIEL P. HARVIS
BAREE N. FETT

December 30, 2017

BY ECF
Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Martinez v. City of New York, et al.*, 16 CV 79 (AMD) (CLP)

Your Honor:

  I represent plaintiff in the above-referenced action. I write pursuant to the Court's order dated December 28, 2017 and in further support of DE #85.

  Defendants do not contest that they failed, over the course of two years of litigation and despite repeated Court orders, to ever (i) disclose three separate investigations conducted by NYPD into events surrounding plaintiff's arrest and injury, (ii) identify key witnesses; or (iii) produce any of the underlying files. In their opposition, defendants instead seek to justify their malfeasance, without apology, arguing that their failure somehow resulted from a scheme by plaintiff, a housekeeper, to keep the NYPD from learning of its own investigations. The record betrays such argument.

<u>The Underlying Facts and Internal Investigations</u>

  If it should please the Court, plaintiff respectfully offers a recitation of the underlying incident and the investigations that followed, based upon presently available information, to assist in evaluating the propriety of defendants' disclosures.

  Following her arrest, plaintiff Rosie Martinez was held at the 107th Precinct from 9:00 p.m. on January 22, 2015 until 5:22 a.m. on January 23, 2015, although she does not appear on the precinct's prisoner roster.[1] *See* OLPA, annexed hereto as Exhibit 8, p. 1;

---

[1] Ms. Martinez alleges she was assaulted by officers inside the precinct at approximately 12:15 a.m., resulting in permanent injury to her dominant right hand, that she was denied medical treatment for hours and that officers stole from her. *See* 50-h Hearing Testimony, annexed hereto as Exhibit 1, pp. 37-41; Deposition Testimony of Rosie Martinez, annexed hereto as Exhibit 2, pp. 53-62; IAB Audio Recording of Rosie Martinez Interview, annexed hereto as Exhibit 3a, at 26:20; CCRB File Excerpt, annexed hereto

Hon. Cheryl L. Pollak
Dec. 30, 2017

Precinct Holding Pen Roster, annexed hereto as Exhibit 9. During the over eight hours plaintiff was initially held at the precinct, no report was made of Ms. Martinez being injured, no unusual incidents were noted and no requests for medical attention were placed. *See* OLPA, Exhibit 8 at p. 2; 107th Precinct Command Log Excerpt, annexed hereto as Exhibit 10, p. 2 (Physical/Mental Condition: Apparently Normal); Arrest Report, annexed hereto as Exhibit 11, p. 1 (same); David Camhi Memo Book, annexed hereto as Exhibit 12 (no notations); Eric Ryan Memo Book, annexed hereto as Exhibit 13 (same).

Ms. Martinez was then sent to Queens Central Booking for arraignment, but Court Section EMS personnel noted her complaints of injury and directed 107th Precinct escort officers to take her to a hospital. OLPA, Exhibit 8 at p. 2; Central Booking Medical Screening Form, annexed hereto as Exhibit 14, p. 2; Deposition Testimony of Richard Donovan, annexed hereto as Exhibit 15, pp. 70-72 (discussing Exhibit 8); Medical Treatment of Prisoner Form, annexed hereto as Exhibit 16.

The first written record of Ms. Martinez's police brutality allegations appears in an Elmhurst Hospital progress note entered by a physician assistant at 8:39 a.m. on January 23, 2015. *See* Medical Record, annexed hereto as Exhibit 17, p. 4. According to that record, in the presence of an unidentified NYPD escort officer, Ms. Martinez reported having been choked and assaulted during her arrest the night before; for reasons that were unknown to plaintiff until December 18, 2017, the escort officer told hospital staff that plaintiff had been "punching a wall in the cell." *Id.*; *see* Martinez Deposition, Exhibit 2, pp. 74-75. Ms. Martinez's hand, visibly injured, was splinted. *See* Photos of Hand Injury, annexed hereto as Exhibit 18. Plaintiff testified at her deposition that an escort officer relayed her diagnosis to the 107th Precinct. Martinez Deposition, Exhibit 2, pp. 74-75.

Approximately half an hour after the medical progress note was entered, Lieutenant David Camhi of the 107th Precinct telephoned the Internal Affairs switchboard, ostensibly reporting that plaintiff had injured herself nine hours earlier while handcuffed to a bench in the precinct's juvenile room, when she inexplicably started "ripping things off the wall," "punching the wall" and "kicking cabinets." *See* Camhi Audio Recording, annexed hereto as Exhibit 3c;[2] Photos of Juvenile Room, annexed hereto as Exhibit 19. Camhi described restraining Ms. Martinez but told IAB that no report was being prepared, that Ms.

---

as Exhibit 4, DEF106; First Amended Complaint, annexed hereto as Exhibit 5, ¶¶ 13-19; October 2016 Email Exchange, annexed hereto as Exhibit 6, p. 4; Report of Dr. Mark S. McMahon, M.D., annexed hereto as Exhibit 7; *see also* IAB Audio Recording of Danny Rivera Interview, annexed hereto as Exhibit 3b, at 10:36.

[2] All audio recordings included in Exhibit 3 are accessible at http://bit.ly/2pXiNSU.

Hon. Cheryl L. Pollak
Dec. 30, 2017

Martinez had no serious injuries and that she would be taken back to Central Booking.³ Exhibit 3c. While official NYPD records reflect that Ms. Martinez remained at the hospital until 5:17 p.m. (*see* OLPA, Exhibit 8, p. 2 and Donovan Testimony, Exhibit 15 at p. 71-72), she was actually discharged to NYPD custody and taken back to the 107th Precinct. *See* Command Log, Exhibit 10 at DEF4094 (reflecting 9:35 a.m. arrival at precinct). Plaintiff was curiously held at the precinct until returning to central booking for a 7:50 p.m. arraignment. OLPA, Exhibit 8, p. 1.

1. <u>IAB File Number 2015-1888: Plaintiff's Alleged Self-Inflicted Injury</u>

Lieutenant Camhi's January 23rd call to IAB was logged under File Number 2015-1888. *See* IAB File 2015-1888 (as produced), annexed hereto as Exhibit 21. The investigation was handled by the late Captain Matthew D. Hanrahan, who had been the commanding officer for the search warrant execution at plaintiff's residence prior to her arrest. *See id.* at DEF4824-25 ("Hanrahan Report"); TAC Plan for Search Warrant, annexed hereto as Exhibit 22.

The unsigned Hanrahan Report, dated May 16, 2015, reflects interviews of Lieutenant Camhi and Officer Ryan on January 17, 2015 (six days before the incident). *See* Exhibit 21 at DEF4824-25. Ryan allegedly told Hanrahan that Ms. Martinez was in the precinct's "arrest processing cells" when Ryan observed plaintiff begin to "kick and punch the wall *in the cell* for an unknown reason" at which point she was "*removed to the hospital.*" *Id.*; *see* Photos of Arrest Processing Cell, annexed hereto as Exhibit 23. According to the Hanrahan Report, Lieutenant Camhi also told the Captain that Ms. Martinez was "lodged in the arrest processing cell" when she "began to punch and kick the wall *in the cell* for an unknown reason." Captain Hanrahan summarily exonerated both officers in his report, claiming that plaintiff denied any misconduct. *Id.*; *but see* Exhibit 3c. Plaintiff learned of this investigation on December 18, 2017.

2. <u>IAB File Number 2015-3652: The Substantiated Lab Discrepancy</u>

On February 11, 2015, the police laboratory notified Internal Affairs of a discrepancy regarding the heroin allegedly recovered in plaintiff's apartment, which was vouchered by Officer Eric Ryan under the supervision of Sergeant Joseph Digennaro. IAB File 2015-3652, annexed hereto as Exhibit 24, p. 6. That investigation was handled by 107th Precinct supervisor Lieutenant Eric Robinson, who had also been present for the

---

³ Given the irrational behavior ascribed to plaintiff inside the precinct and the allegation of self-injury, the NYPD Patrol Guide would appear to require, at a minimum, Ms. Martinez to have been evaluated for emotional disturbance and that the self-inflicted injury and any damage to the precinct be documented. *See* NYPD Patrol Guide § 210-04, annexed hereto as Exhibit 20. Officers would also be expected to charge plaintiff criminally for the alleged property damage inside the precinct.

Page 3

Hon. Cheryl L. Pollak
Dec. 30, 2017

search warrant execution at plaintiff's apartment and initially interrogated her at the precinct. *Id.* at pp. 1-5; *see* TAC Plan, Exhibit 22. Over the course of a thirteen-month investigation that led to substantiated findings, Robinson interviewed both Eric Ryan and Joseph Digennaro. The investigation was supervised by Captain Paul Valerga, who also appears to have supervised the preparation of the Hanrahan Report. *Compare* IAB File 2015-3652, Exhibit 24 at p. 2 *with* Hanrahan Report, Exhibit 21 at DEF4825. Neither Captain Valerga nor this investigation were disclosed prior to December 18, 2017.

### 3. CCRB File Number 2015-05687: Rivera's Injury and Denial of Treatment

On July 13, 2015, plaintiff contacted CCRB on behalf of Danny Rivera, who was then incarcerated on Rikers Island, and sought to lodge a complaint about Rivera's injury and denial of medical treatment (Rivera was arrested with plaintiff).[4] In the course of CCRB's investigation, Officer Eric Ryan was questioned about the events at the precinct following plaintiff and Rivera's arrests and made no mention of plaintiff's alleged self-inflicted injury inside the prisoner holding cell (or juvenile room). *See* CCRB Audio of Ryan Interview, annexed hereto as Exhibit 3d. Nowhere in the CCRB file is there mention of Camhi's call to IAB on January 23rd, the Hanrahan Report or IAB Investigation Number 2015-1888 (or 2015-26698 or 2015-3652). CCRB File, Exhibit 4.

### 4. IAB File Number 2015-26698: The Missing Property Corruption Spin Off

Plaintiff's July 13th call to CCRB generated a "spin off" corruption case under IAB File Numbers 2015-26698 and 2015-492 concerning plaintiff and Mr. Rivera's allegations of missing property. *See* CCRB File Excerpt, Exhibit 4 at DEF207; IAB File 2015-26698, annexed hereto as Exhibit 25, DEF5063-74. The corruption investigation lasted at least through August 2017 and generated a 1,000-page file and recorded interviews of plaintiff, Mr. Rivera and several police officers, including Officer Ryan and his supervisor, Sergeant Digennaro, who has already been deposed. *Id.*, *generally*.

Plaintiff, represented by counsel, was contacted by IAB investigator Airam Cruz, who ultimately interrogated plaintiff during a 43-minute call in November 2015, despite Ms. Martinez's attempts to assert her right to counsel. *See* Audio Recording, Exhibit 3a at 26:20. No mention of the Hanrahan Report or IAB File Number 2015-1888 appears in the spin off file, nor is there any indication that Investigator Cruz explored plaintiff's troubling abuse allegations. Indeed, months later, aware of plaintiff's abuse allegations, Investigator Cruz formally interviewed Officer Ryan about the circumstances surrounding plaintiff's arrest, but made no inquiry regarding plaintiff's force allegation. Ryan, for his

---

[4] Plaintiff contacted CCRB on Mr. Rivera's behalf only, and expressly declined to lodge her own complaint or participate in CCRB's investigation, citing advice of counsel. However, plaintiff did inform CCRB that officers had injured her at the precinct and stolen her property. *See* CCRB Excerpts, Exhibit 4 at DEF106.

Page 4

Hon. Cheryl L. Pollak
Dec. 30, 2017

part, made no mention of plaintiff's alleged misbehavior or self-inflicted injury at the precinct. *See* IAB File 2015-26698, Exhibit 25 at DEF4956. The investigation resulted in substantiated findings as to several officers for failing to make required memo book entries. *Id.* at DEF5063-74. Plaintiff received this file on December 21, 2017.

### The Timing and Manner of Defendants' Disclosures

The instant action was commenced with the filing of a complaint against the City of New York and unidentified police officers on January 7, 2016. DE #1. At that time, plaintiff only knew what had happened to her; that she had spoken to an Investigator about missing property (specifically declining to answer questions about her assault); and that she had conveyed Mr. Rivera's CCRB complaint to that agency without complaining herself.

The municipality, on the other hand, was constructively aware from the outset that approximately a dozen police officer interviews had been conducted by municipal investigators in four separate official inquiries into the circumstances surrounding plaintiff's arrest, two of which were substantiated. Rather than conduct a good faith inquiry and disclose the relevant information developed through those investigations, as defendants were obligated and ordered to do (*see* DE #13), defendants unfairly shifted the burden to plaintiff to review documents and unlabeled photographs, providing no information about any of the investigations in their initial disclosures or discovery responses. *See* Defendants' *Valentin* Response dated April 7, 2017, annexed hereto as Exhibit 26; Defendants' Initial Disclosures dated April 15, 2016, annexed hereto as Exhibit 27; Discovery Responses dated May 31, 2016, annexed hereto as Exhibit 28, Response to Interrogatory Nos. 1-2, 5-6 and Document Request Nos. 2, 4.

In fact, the only investigation defendants ever disclosed (prior to December 18, 2017) was CCRB's investigation of Rivera's complaint, produced only in response to a Court order in July 2016. However, CCRB did not investigate plaintiff's allegations and no officer (including Ryan) admitted to having any knowledge of plaintiff's injury or the Camhi-Hanrahan investigation. Critically, the CCRB file provided Ms. Martinez with no notice that there were <u>three other undisclosed pertinent investigations underway throughout the NYPD</u> that would contain a wide range of relevant information, and should be guiding discovery. Indeed, had defendants only complied with the Court's February 2, 2016 *Valentin* order (or their obligations under Rule 11 and G.M.L. § 50-k) and conducted a basic query of NYPD's own databases, it would have saved tremendous resources. *See, e.g.*, DE ##14, 18, 20, 21, 24 (plaintiff endeavors to identify officer-witnesses and narrow time frame, where Hanrahan Report and associated records would have resolved inquiry).

Hon. Cheryl L. Pollak
Dec. 30, 2017

But it is worse than that, because defense counsel was specifically ordered on October 3, 2016 to "confer with the NYPD Legal Department and the Intelligence Officer [Sergeant Digennaro, who was substantiated on misconduct charges in two of the undisclosed investigations]…to see if there was any way to determine if other officers … were present at the time of plaintiff's alleged incident." DE #24. There can be no question that this order imposed an affirmative duty to diligently search and uncover the electronically-stored investigative files. *See* Email dated October 20, 2017, annexed hereto as Exhibit 29 (demanding defendants' theory as to plaintiff's injury).

As the limitations deadline drew closer, defendants lackadaisically offered dribs and drabs of discovery, usually only after Court orders and limited to only what plaintiff could divine was outstanding, without the benefit of the core NYPD investigative files that were never disclosed and with key witnesses, like Camhi, hidden in those files. In the best of faith, plaintiff went forward with eleven depositions under these circumstances, including multiple depositions of officers who we have now learned, after the fact, were subject to official interviews, including Lieutenant Robinson (deposed twice) and Sergeant Digennaro, neither of whom indicated either directly or through counsel that they had previously given relevant testimony.

Separate and apart from this latest and most prejudicial failure, it is a matter of record that defendants have not met their discovery obligations in this case. *See* DE #77, p. 4., ln. 19- p. 5, ln. 1 (discussing sanctions); DE # 88, p. 12, ln. 3-5, p. 27, ln. 8-10 ("[The Court's] concern all along has been that [discovery] hasn't been produced until the last minute and until I've had to issue orders…We have depositions that have now become a mess because [plaintiff's] counsel has been given stuff after the fact and we've had to reopen.").

In light of the foregoing, plaintiff respectfully renews her request for relief pursuant to Fed. R. Civ. P. 37. Thank you for your consideration of this request.

Respectfully submitted,

Baree N. Fett

Encl.

cc:   ACC Kavin Thadani, Esq. (by email w/ encl.)