1:16-cv-00079-AMD-CLP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

Plaintiff,

-against-

CITY OF NEW YORK; Lieutenant JASON
WEITZMAN; Sergeant JASON FORGIONE, Shield No.
2894; and JOHN and JANE DOE 1 through 10,
individually and in their official capacities (the names
John and Jane Doe being fictitious, as the true names are
presently unknown),

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION GRANTING PLAINTIFF'S
MOTION FOR SANCTIONS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kavin Thadani*
*Tel:  (212) 356-2351*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STANDARD OF REVIEW ............................................................................................ 2

PROCEDURAL HISTORY............................................................................................ 3

ARGUMENT

      POINT I

           DEFENDANTS OBJECT TO THE MAGISTRATE JUDGE'S RECOMMENDATION THAT THE COURT STRIKE DEFENDANTS' PLEADING AND ENTER DEFAULT OR SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR.................................................. 13

           A.   Defendants Did Not Violate Any Court Orders ................................. 17

           B.   Plaintiff Has Not Been Prejudiced.................................................... 19

           C.   Defendants Have Not Acted in Bad Faith ........................................ 23

           D.   An Award of Sanctions Would Result in an Unjustifiable Windfall for Plaintiff ................................................... 25

      POINT II

           DEFENDANTS OBJECT TO THE MAGISTRATE JUDGE'S ALTERNATE RECOMMENDATION OF PRECLUSION.................................................................... 26

      POINT III

           DEFENDANTS OBJECT TO THE MAGISTRATE JUDGE'S RECOMMENDATION THAT THE CITY PAY PLAINTIFF'S REASONABLE EXPENSES................................................................. 29

CONCLUSION............................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Baumgarten v. Cty. of Suffolk*,
   No. 07-CV-539 (JS) (AKT), 2007 U.S. Dist. LEXIS 36481
   (E.D.N.Y. May 15, 2007) .................................................................................................3

*Commercial Cleaning Servs. v. Colin Serv. Sys.*,
   271 F.3d 374 (2d Cir. 2001) ............................................................................................14

*Daval Steel Prods. Div. of Francosteel Corp. v. M/V Fakredine*,
   951 F.2d 1357 Cir. 1991 ..................................................................................................17

*Dodson v. Runyon*,
   86 F.3d 37 (2d Cir. 1996) ................................................................................................23

*Emilio v. Sprint Spectrum L.P.*,
   No. 11-CV-3041 (JPO)(KNF), 2017 U.S. Dist. LEXIS 36924
   (S.D.N.Y. Feb. 1, 2017) ..................................................................................................20

*Funnekotter v. Agric. Dev. Bank of Zimb.*,
   No. 13-CV-1917 (CM) (RLE), 2014 U.S. Dist. LEXIS 128105
   (S.D.N.Y. Sep. 11, 2014) ...........................................................................................27, 28

*Harriman v. IRS*,
   233 F. Supp. 2d 451 (E.D.N.Y. 2002) .............................................................................27

*Harris v. Buffardi*,
   No. 08-CV-1322, 2009 U.S. Dist. LEXIS 96724 (N.D.N.Y. Oct. 19, 2009) ..........................20

*John B. Hull, Inc. v. Waterbury Petroleum Prods.*,
   845 F.2d (2d Cir. 1988)..............................................................................................14, 15

*John Wiley & Sons, Inc. v. Elhalis*,
   No. 05 Civ. 2979 (DAB) (RLE), 2006 U.S. Dist. LEXIS 6428
   (S.D.N.Y. Feb. 14, 2006) ...........................................................................................14, 15

*Lee Valley Tools, Ltd. v. Indus. Blade Co.*,
   288 F.R.D. 254 (W.D.N.Y. 2013).................................................................................28, 29

*Luft v. Crown Publishers, Inc.*,
   906 F.2d 862 (2d Cir. 1990)............................................................................................14

*Marfia v. T.C. Ziraat Bankasi, New York Branch*,
   100 F.3d 243 (2d Cir. 1996)............................................................................................13

**Cases**                                                                              **Pages**

*Markey v. Lapolla Indus.*,
    No. CV 12-4622 (JS) (AKT), 2015 U.S. Dist. LEXIS 112915
    (E.D.N.Y. Aug. 25, 2015) ........................................................................................25

*Meehan v. Snow*,
    652 F.2d 274 (2d Cir. 1981)...............................................................................13, 14

*Mercado v. Choyang Med. Co.*,
    No. 07-cv-3563 (NG) (VPP), 2014 U.S. Dist. LEXIS 91071
    (E.D.N.Y. July 2, 2014) ..........................................................................................23

*Ocello v. White Marine, Inc.*,
    347 F. App'x 639 (2d Cir. 2009) .............................................................................14

*Online Benefits, Inc. v. Benefits Tech. Grp., Inc.*,
    No. 2:05-cv-04748-ENV-MLO, 2006 U.S. Dist. LEXIS 92298
    (E.D.N.Y. Dec. 20, 2006) ..........................................................................................3

*Outley v. New York*,
    837 F.2d 587, 591 (2d Cir. 1988)............................................................................27

*Pall Corp. v. 3M Purification Inc.*,
    279 F.R.D. 209 (E.D.N.Y. 2011) ..............................................................26, 27, 28

*Pall Corp. v. Entegris, Inc.*,
    249 F.R.D. 48 (E.D.N.Y. 2007) ...............................................................................15

*Pichardo v. C.R. Bard, Inc.*,
    563 F. App'x 58 (2d Cir. 2014) ...............................................................................28

*Rao v. Rodriguez*,
    No. 14-CV-1936 (NGG) (ST), 2017 U.S. Dist. LEXIS 58996
    (E.D.N.Y. Apr. 18, 2017)..........................................................................................28

*Ritchie-Risk-Linked Strategies Trading Ltd v. Coventry First LLC*,
    No. 09 Civ. 1086 (VM) (DF), 2012 U.S. Dist. LEXIS 19218
    (S.D.N.Y. Jan. 9, 2012) ............................................................................................26

*Salahuddin v. Harris*,
    782 F.2d 1127 (2d Cir. 1986)............................................................................18, 29

*Scantibodies Lab., Inc. v. Church & Dwight Co.*,
    No. 14cv2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396
    (S.D.N.Y. Nov. 4, 2016) ...........................................................................................20

**Cases**           **Pages**

*Seena Int'l, Inc. v. One Step Up, LTD.*,
     No. 15-CV-01095 (PKC) (BCM), 2016 U.S. Dist. LEXIS 64850
     (S.D.N.Y. May 11, 2016)......................................................................................28

*Simmons v. Abruzzo*,
     49 F.3d 83 (2d Cir. 1995) ....................................................................................14

*Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*,
     118 F.3d 955 (2d Cir.1997)..................................................................................27

*Thompson v. Jam. Hosp. Med. Ctr.*,
     No. 13 Civ. 1896(RWS), 2015 U.S. Dist. LEXIS 79960
     (S.D.N.Y. June 19, 2015).............................................................................19, 25

*Timmons v. Lyons*,
     No. 98 Civ. 4714 (DAB) (THK), 2011 U.S. Dist. LEXIS 154564
     (S.D.N.Y. Oct. 5, 2011) ......................................................................14, 15, 16

*Timmons v. Lyons*,
     No. 98 CV 4714 (DAB)(THK), 2012 U.S. Dist. LEXIS 44316
     (S.D.N.Y. Mar. 29, 2012) ....................................................................................16

*Titan Indus. Corp. v. Federal Ins. Co.*,
     No. 94 Civ. 726 (KMW), 1995 U.S. Dist. LEXIS 10253
     (S.D.N.Y. July 24, 1995) ....................................................................................27

*Valentini v. Citigroup, Inc.*,
     No. 11 Civ. 1355 (JMF), 2013 U.S. Dist. LEXIS 116473
     (S.D.N.Y. Aug. 16, 2013) ....................................................................................14

*White v. City of New York*,
     No. CV 2008-2238 (KAM)(MDG), 2009 U.S. Dist. LEXIS 92079
     (E.D.N.Y. Oct. 2, 2009) ......................................................................................14

*Wiwa v. Royal Dutch Petroleum Co.*,
     Nos. 96 Civ. 8386 (KMW) (HBP); 01 Civ. 1909 (KMW) (HBP);
     02 Civ. 7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 14871
     (S.D.N.Y. Feb. 22, 2009)......................................................................................14

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
     694 F.3d 155 (2d Cir. 2012).................................................................................23

iv

**Statutes**                                                               **Pages**

Fed. R. Civ. P. 26(e) .........................................................................................18

Fed. R. Civ. P. 37(b) ...............................................................................17, 29, 29

Fed. R. Civ. P. 72(b)(3).........................................................................................2

**Other Authorities**

7-37 Moore's Federal Practice – Civil § 37.40 (2017) ..............................17, 29

7-37 Moore's Federal Practice – Civil § 37.42 (2017) .......................16, 17, 29

7-37 Moore's Federal Practice – Civil § 37.51 (2017) ...............................30

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

ROSIE MARTINEZ,

                                                    Plaintiff,

                         -against-

CITY OF NEW YORK; Lieutenant JASON WEITZMAN;
Sergeant JASON FORGIONE, Shield No. 2894; and JOHN
and JANE DOE 1 through 10, individually and in their
official capacities (the names John and Jane Doe being
fictitious, as the true names are presently unknown),

                                                    Defendants.

----------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
OBJECTIONS TO THE
MAGISTRATE JUDGE'S
REPORT AND
RECOMMENDATION
GRANTING PLAINTIFF'S
MOTION FOR SANCTIONS**

1:16-cv-00079-AMD-CLP

Defendants City of New York ("City"), Jason Weitzman ("Weitzman"), and Jason

Forgione ("Forgione"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of

New York, respectfully submit this Memorandum of Law in support of their objections to the

Magistrate Judge's Report and Recommendation granting plaintiff's motion for sanctions.

## PRELIMINARY STATEMENT

In her Report and Recommendation, the Magistrate Judge essentially recommends that

the Court permit the plaintiff to win an otherwise marginal case at best because, while discovery

was still ongoing, and with more than one month before the expiration of the statute of

limitations and before any dispositive motion practice or trial was even scheduled, defendants

complied with their obligations to supplement their initial disclosures by swiftly producing, upon

their discovery, eight pages of documents and an audio recording corroborating defendants' well

known defense that plaintiff's alleged hand injuries were not caused by defendants but rather by

plaintiff punching and kicking the walls of the precinct after she was arrested (and eventually

pled guilty) because over 280 glassines of heroin were found in her apartment,.

In justifying the recommended draconian and grossly disproportionate sanctions, the Magistrate Judge mischaracterizes the significance of the newly disclosed documents and defendants' conduct during the course of this litigation.   Moreover, the Magistrate Judge overlooked defendants' express warnings that plaintiff's attorneys were deliberately not acting in good faith by expanding the proper scope of discovery, and repeatedly moving to compel and moving for sanctions without proper basis, in a calculated effort to obtain some type of monetary reward in a case with little to no value.

As explained below, no sanctions, let alone the sanctions of default judgment and/or preclusion, are warranted because, although certain documents were admittedly produced later in time than they perhaps could have or should have been, no clear court orders were violated, plaintiff has not been prejudiced, and defendants have not acted in bad faith.

Accordingly, defendants object to the Magistrate Judge's recommendations that the Court strike defendants' pleadings and grant default or summary judgment in favor of plaintiff or, in the alternative, preclude the recently disclosed documents and information, and that the Court award plaintiff reasonable expenses.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b)(3), "the district judge must determine *de novo* any part of [a] magistrate judge's disposition [in a report and recommendation] that has properly been objected to."  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

"Under the de novo standard, the Court [must] make an ***independent determination*** of th[e] controversy, ***giving no deference to any previous resolution***."  *Baumgarten v. Cty. of Suffolk*, No. 07-CV-539 (JS) (AKT), 2007 U.S. Dist. LEXIS 36481, at *5 (E.D.N.Y. May 15,

2007) (emphasis added); *see also, e.g., Online Benefits, Inc. v. Benefits Tech. Grp., Inc.*, No. 2:05-cv-04748-ENV-MLO, 2006 U.S. Dist. LEXIS 92298, at *5 (E.D.N.Y. Dec. 20, 2006) ("The district court may not rely exclusively on the report and recommendation of the magistrate and must conduct a *de novo* review of the evidence itself and arrive at its own, ***independent conclusion*** about those portions of the magistrate's report to which objection is made.") (internal quotation marks and citation omitted) (emphasis added).   "The Court is not limited to consideration of evidence presented to the magistrate judge, but may review the entirety of the record." *Baumgarten*, 2007 U.S. Dist. LEXIS 36481, at *6.   "The final determination rests with the district judge." *Online Benefits, Inc.*, 2006 U.S. Dist. LEXIS 92298, at *5.

## PROCEDURAL HISTORY

Despite the findings in the Magistrate Judge's Report and Recommendation, a review of the full record demonstrates that defendants made good faith efforts to diligently comply with all court orders and with their discovery obligations.

On January 22, 2015, plaintiff was arrested on multiple charges of criminal possession of a controlled substance after over 280 glassines of heroine were found in her apartment during the execution of a search warrant.   *See* Arrest Report No. Q15603368 (Docket No. 91-11); Property Clerk Invoice No. 4000286286 (Docket No. 91-24) at DEF5826.   Following her arrest, plaintiff was convicted upon her guilty plea for disorderly conduct.   *See* Rap Sheet (Docket No. 91-25) at DEF 005131.

On January 7, 2016, plaintiff filed this lawsuit against the City of New York and "John and Jane Doe" officers alleging primarily that she was subjected to unreasonable force insofar as she was "brutalized" by police officers while she was in custody at the 107th Precinct.   *See* Complaint at ¶¶ 12, 27 (Docket No. 1).   Contrary to the Magistrate Judge's findings, defendants

fully complied with all court orders with respect to the attempts to identify the "John and Jane Doe" officers who plaintiff alleged assaulted her at the precinct.

On February 2, 2016, the Magistrate Judge ordered, *inter alia*, that "no later than 4/5/16, the City's counsel must provide to the plaintiff the names, shield numbers, and proper service addresses of all individual officers involved in the ***arrest*** at issue in this litigation." *See* Docket Sheet (emphasis added).  In compliance with that Order, on April 7, 2016, defendant City provided the name, shield number and service address for the arresting officer, Eric Ryan, as well as for a sergeant, albeit two days late.  *See* Docket No. 91-27.  Defendant City also explained that, without further information, it was unable to identify the remaining "John and Jane Doe" defendants and requested "more specific timing of the alleged incident" and "additional identifying information, such as race, hair color, eye color, height weight, or any other distinctive features." *Id.*

On April 15, 2016, following a court conference, the Magistrate Judge ordered the "[p]arties to obtain medical records, determine officers' identities, [and] respond to written discovery by 5/20." Docket No. 10.  Defendant City served its Responses and Objections to Plaintiff's First Set of Interrogatories and Document Requests on May 27, 2016.  *See* Docket No. 91-29.  On June 27, 2016, defendant City explained, *inter alia*, that it was still in the process of interviewing police officers to determine the identity of the "John and Jane Doe" defendants and that it was still awaiting receipt of plaintiff's medical records.  *See* Docket No. 11.

On June 29, 2016, following a court conference, the Magistrate Judge ordered that "Def has ***30 days*** to identify officers who ***interrogated*** pl" and that "[i]f no officers are identified court will ***consider*** order requiring photos and memo books."  Docket No. 13 (emphasis added). However, ***just seven days later***, on July 6, 2016, plaintiff improperly filed a motion to compel

defendant City "to provide labeled, recent color photographs of the plainclothes officers present in the precinct at the time of plaintiff's interrogation, along with each officer's memo book entries for that tour."  Docket No. 14.

On July 27, 2016, **_within the thirty day deadline_** ordered by the Magistrate Judge, defendant City produced the Civilian Complaint Review Board ("CCRB") file concerning non-party Danny Rivera's allegations with respect to his arrest in connection with the execution of the search warrant of plaintiff's apartment, which, _inter alia_, disclosed photographs, memobook entries, and interview statements of officers involved in the search warrant execution and arrest of plaintiff.  _See_ Docket No. 15.  The CCRB file also contained the photograph, memobook and an interview statement of the only officer who defendant City understood, based in part on District Attorney records, to have debriefed, or "interrogated," plaintiff following her arrest.[1] _See_ Docket No. 19.  Therefore, defendant City fully complied with the Magistrate Judge's June 29, 2016 Order.  Defendant City further requested that the Magistrate Judge "stay any decision regarding plaintiff's pending application for further relief until plaintiff reviews the CCRB file and determines whether any officer mentioned in that report was involved with the Incident that is the subject of this lawsuit."  Docket No. 15.

On July 28, 2016, following a court conference, the Magistrate Judge ordered plaintiff "to review photos and info with counsel and determine defs."  Docket No. 17.  However, less than three weeks later, plaintiff made another motion to again compel "recent, labeled officer

---

[1]   Although plaintiff contends that she was "interrogated" and assaulted by defendants Weitzman and Forgione, defendants expressly deny those allegations and, in fact, there is ample evidence in the record to suggest that the individual defendants were not present at the precinct at the same time and could not have assaulted plaintiff as she has alleged.

photographs and relevant memo book entries," "outstanding core discovery,"[2] and an inspection of the precinct.  In her letter motion, plaintiff noted, *inter alia*, that "[t]he eight photographs contained in the file were of officers involved in the underlying search and arrest, ***events not in dispute here***."[3]  Docket No.  18 (emphasis added).

On August 18, 2016, defendant City explained, *inter alia*, that it had already "identified the individuals who 'interrogated' plaintiff or participated in plaintiff's arrest" and "produced the photographs and memobooks of the arresting officer as well as the officers who participated in executing the search warrant."  Docket No. 19.  Defendant City further explained that two particular officers, whose photographs and memobooks had been disclosed, matched the physical descriptions given by plaintiff of the two officers she alleged assaulted her at the precinct.  *See id.*

On August 19, 2016, following a court conference, the Magistrate Judge ordered that, by September 19, 2016, defendant City was to provide plaintiff with "[t]he names of all intelligence officers at the precinct at the time of pl's arrest; and provide their photos," "[t]he names of any Queens Narcotics officers at the precinct and their photos," and "photos of any other officers at the precinct matching the description provided by plaintiff.  Docket No. 20.  The Magistrate Judge also ordered the parties to arrange for an inspection of the precinct and ordered defendant

---

[2]   None of the items listed relate to documents concerning underlying disciplinary investigations.

[3]   Captain Matthew Hanrahan, the officer who conducted the command-level investigation concerning plaintiff's self-inflicted injuries, and Officer Eric Ryan, the arresting officer who also observed plaintiff punch and kick the walls at the precinct, were among the individuals depicted in these photographs.  Thus, although the Magistrate Judge faults defendants for not appropriately interviewing Officer Ryan, plaintiff made it very clear that Officer Ryan was not involved in the alleged incident.

City to produce "all documents responsive to the list of requested documents set forth on p. 2 of plaintiff's 8/16/16 letter." *Id.*

Defendant City complied with the Magistrate Judge's Order on September 15, 2016, in advance of the September 19, 2016 deadline. *See* Docket No. 21-2. Specifically, defendant City confirmed that there was only one intelligence officer present at the precinct at the time of plaintiff's arrest and noted that the labeled photograph of that intelligence officer was produced on July 25, 2016, and further confirmed that there were no Queens Narcotics officers at the precinct at the time of plaintiff's arrest. *See id.* Defendant City further explained that it had previously produced photographs of 31 officers who matched the descriptions provided by plaintiff. *See id.*[4] This is, of course, in addition to the eight labeled photographs which had previously been produced to plaintiff in the CCRB file.

However, plaintiff inexplicably **refused** to view the photographs because she wanted the officers' memobooks first, undoubtedly to ensure that, despite "recall[ing] the events vividly," Docket No. 85, she did not identify officers who physically could not have committed the acts alleged by plaintiff, which, as explained, she ended up doing. *See* Docket No. 22.

Instead of reviewing the 31 produced photographs, on September 26, 2016, plaintiff moved to compel defendant City to "***reproduce***, in labeled form, previously produced photographs of NYPD officers, along with the officers' memo book entries pursuant to the Court's prior order," even though the Magistrate Judge **never** ordered that defendant City produce labeled photographs or memo book entries. Docket No. 21. Plaintiff further moved to

---

[4]   Defendant City also tentatively scheduled an inspection of the precinct and explained that it was working to obtain and produce the documents the Magistrate Judge ordered to be produced by September 30, 2016. *See id.* The day before the inspection was scheduled to take place, however, plaintiff unilaterally cancelled it. *See* Docket No. 79 at 2. Plaintiff also then proceeded to cancel the next scheduled inspection date as well. *See id.*

compel defendant City to "produce the documentation defendants relied upon in determining which photographs to produce" and to "conduct a further search for officers matching plaintiff's description inside the precinct and produce labeled photographs and memo book entries for these officers." *Id.* In her motion, plaintiff falsely states that the Magistrate Judge had ordered defendants to produce ***names*** of the officers matching plaintiff's description. *See id.* Rather, the Order only required defendant City to provide names of intelligence officers and Queens Narcotics officers. *See* Docket No. 20.

In response, defendant City reasonably stated that "plaintiff should first look at the photographs to determine if she can recognize any of the officers before efforts and expense are spent in obtaining the memobooks." Docket No. 22.

Following a telephone conference, the Magistrate Judge ordered plaintiff's counsel to speak with plaintiff and provide a narrower time frame between which the alleged incident occurred. *See* Docket No. 24. The Magistrate Judge also ordered defendant City to, within a week of receiving this information, investigate and produce a list of photographs of the officers present at the precinct within this narrowed time frame and to see if there was any way to determine if other officers outside the precinct officers and previously identified intelligence officer were at the precinct at the time of plaintiff's alleged incident. *See* Docket No. 24.

On October 21, 2016, however, plaintiff explained that she ***finally*** viewed the unlabeled photographs previously produced more than one month earlier and was able to identify the officers she alleges assaulted her. *See* Docket No. 25. Defendant City subsequently provided their names and the complaint was amended accordingly. *See* Docket No. 28. Thus, plaintiff's September 26, 2016 motion to compel was completely frivolous and the corresponding response, conference and Order could have been entirely avoided had plaintiff simply viewed the

photographs before rushing to the Court to file a motion to compel materials that absolutely were not needed.  Instead, plaintiff's counsel inexplicably and unjustifiably refused to show plaintiff the photographs of officers who matched the descriptions of her alleged assailants in order to prolong discovery, tally yet another motion to compel, and require defendant City to continue on a wild goose chase and expend significant time and resources unnecessarily.

Unfortunately, this calculated practice continued after the complaint was amended to name the individual defendants.  Indeed, on May 23, 2017, defendants wrote to the Magistrate Judge to explain that "recent events in this case . . . have promoted concern regarding the tactics of plaintiff's counsel in this matter."  Docket No. 48.  Defendants explained, *inter alia*, that just three days after the parties' jointly requested an extension of discovery for specifically limited purposes, plaintiff's counsel indicated that "they intended to dramatically expand the scope of further discovery wherein they would now seek to depose at least a dozen additional non-party witness."  *Id.*  Defendants also explained that it sought to bring "all this to the Court's attention because . . . plaintiff counsel's request to dramatically expand discovery two days after securing defense counsel's consent to enlarge discovery on separate issues, raises red flags.  Defense counsel was further concerned by plaintiff counsel's use of abusive language during a telephone call with defense counsel . . . suggesting in part that [defense counsel] is lazy, untruthful, and doesn't properly know how to do my job."  *Id.*  Ultimately, defendants informed the Magistrate Judge of their "belief that plaintiff's actions are a ***tactic to get an award of sanctions or to settle what is now a 'no-pay' case***."  *Id.* (emphasis added).

In response, plaintiff did not deny any of defendants' contentions but instead . . . filed a motion to compel.  *See* Docket No. 49.  Defendants subsequently explained that the motion was

moot because defendants agreed to search for and produce the requested documents. *See* Docket No. 51.

On June 2, 2017, following a court conference, the Magistrate Judge set forth various deadlines for, *inter alia*, defendants to respond to plaintiff's document requests and the completion of non-party depositions. *See* Docket No. 54. The Magistrate Judge did not address or refer to defendants' complaints concerning plaintiff counsel's litigation tactics.

Over the next six months, defendants continued to diligently work to comply with all courts orders and deadlines and to locate the numerous specific documents plaintiff requested, many of which had no real bearing on her allegations.[5]  Although defendants were unable to meet all of the court-ordered deadlines due to difficulties in locating certain documents and information, defendants did apologize for failing to ask for extensions to produce certain items and for asking for extensions in an untimely fashion. *See, e.g.,* Docket No. 62 at 2; Docket No. 63 at 1.

By December 18, 2017, however, while discovery was still ongoing, defendants produced all items ordered to be produced by the Magistrate Judge and all outstanding items requested by plaintiff.[6]

On December 18, 2017, in addition to producing all outstanding items as ordered by the Magistrate Judge, defendants also supplemented their initial disclosures to produce eight pages of documents and an audio (telephone) recording related to a recently discovered internal

---

[5]   Defendants' efforts to comply with all court orders and their discovery obligations are outlined in their letter to the Magistrate Judge dated November 8, 2017. *See* Docket No. 79; *see also* Docket Nos. 62, 63, 71, 74.

[6]   Plaintiff, however, has still failed to supplement her discovery responses concerning her alleged damages, despite an express representation that she would do so. *See* Docket No. 82 at 4-5.

investigation conducted after plaintiff was observed punching and kicking the walls at the precinct while she was in custody. *See* Docket No. 91-21. Since April 15, 2016, when plaintiff's medical records from Queens Hospital Center were produced, all parties have been fully aware that defendants contended that no member of the New York City Police Department ("NYPD") assaulted plaintiff and that her alleged injuries were self-inflicted. Indeed, plaintiff's medical records explicitly state that plaintiff "was punching the wall while in the jail cell," but it was unclear who observed plaintiff committing such conduct. Docket No. 91-17 at DEF000763.

The recently produced documents and audio recording establish that two individuals – Officer Eric Ryan and Lieutenant David Camhi[7] – observed plaintiff punching and kicking the walls at the precinct. *See* Docket Nos. 91-3, 91-21. Lt. Camhi subsequently made a call to the NYPD Internal Affairs Bureau ("IAB") command center and described what occurred. *See* Docket No. 91-3. Thereafter, a command-level investigation was conducted by Captain Matthew Hanrahan, during which plaintiff was interviewed and made no allegations of wrongdoing against any member of service concerning her injuries. *See* Docket No. 91-21 at DEF004824-4825.

Defense counsel did not discover the existence of this investigation until after speaking with Officer Ryan on or about December 1, 2017 in connection with a non-party deposition scheduled for December 21, 2017.[8] At that time, defense counsel learned that Officer Ryan had been interviewed by IAB in connection with a stolen / missing properly allegation arising from the search warrant execution. Immediately upon learning that information, defense counsel

---

[7] Lt. Camhi's photograph was among the 31 photographs provided to plaintiffs in September 2016 yet plaintiff, perhaps purposefully, never informed defendants of his presence or apparent interactions with her.

[8] Plaintiff cancelled that deposition less than 24 hours before it was scheduled to be held and Officer Ryan has not since been deposed.

reviewed Officer Ryan's IAB officer resume, a document which lists the prior internal investigations for which he was a subject.  Upon that review, defense counsel discovered, for the first time, that three separate internal investigations, including one concerning plaintiff's self-inflicted injuries, were conducted with respect to plaintiff's arrest.  Accordingly, defense counsel requested that the corresponding files be retrieved and produced the files to plaintiff just over two weeks after learning about the existence of the investigations.[9,10]

The other two investigations, which involved only non-parties, are wholly unrelated to plaintiff's allegations as pled at the time and instead involved (1) an evidence discrepancy, in which it was found that the number of glassines found in plaintiff's apartment during the search warrant execution were ***undercounted***, and (2) alleged missing / stolen property, a complaint that plaintiff made to IAB more than seven months after she was arrested and prior to filing this lawsuit that was ultimately unsubstantiated (except for a finding of a "minor procedural violation" concerning incomplete memobook entries regarding the search warrant execution).[11]

---

[9]  Unfortunately, because of the way the internal investigation concerning plaintiff's self-inflicted injuries was indexed and maintained, it was not possible to discover this investigation or obtain documents related to the investigation by searching plaintiff's name.  Indeed, the complainant who triggered the investigation concerning plaintiff's self-inflicted injuries ***was not plaintiff but rather Lt. Camhi who called the incident into the IAB command center***.

[10]  On December 11, 2017, defendants explained both to plaintiff and to the Magistrate Judge that they were still conducting an investigation into who observed plaintiff kick and punch the walls of the precinct, thereby self-inflicting her injuries.  *See* Docket No. 82 at 4.

[11]  Despite the fact that plaintiff made the complaint to IAB directly and was even interviewed by IAB concerning her complaint, she represented in her discovery responses that she "did not lodge complaints with any government agencies in connection with this incident."  *See* Response and Objection to Interrogatory No. 12, Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories and Requests for Production of Documents (Docket No. 87-1).  Moreover, in May 2017, plaintiff was sent a letter from IAB, with the case number, that her complaint was received, investigated and determined to be unsupported by sufficient evidence.  *See* Docket No. 87-2.  However, plaintiff never produced this letter or made defendants aware of it at any point.

*See* Docket Nos. 91-24, 91-25.   Nevertheless, defendants also produced the documents concerning these unrelated investigations on December 21, 2017.[12]

Following the production of the eight pages and audio recording concerning the investigation that followed plaintiff's punching and kicking the walls at the precinct, plaintiff moved for sanctions and, despite having produced them immediately after they were uncovered pursuant to their supplemental disclosure obligations, and ***while discovery was still ongoing*** and more than one month before the expiration of the statute of limitations, the Magistrate Judge granted plaintiff's motion and is recommending such severe sanctions.

## ARGUMENT

### POINT I

#### DEFENDANTS OBJECT TO THE MAGISTRATE JUDGE'S RECOMMENDATION THAT THE COURT STRIKE DEFENDANTS' PLEADING AND ENTER DEFAULT OR SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR

"The Second Circuit 'has expressed on numerous occasions its preference that litigation disputes be ***resolved on the merits***, not by default.'"   *Timmons v. Lyons*, No. 98 Civ. 4714 (DAB) (THK), 2011 U.S. Dist. LEXIS 154564, at *6-7 (S.D.N.Y. Oct. 5, 2011) (quoting *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 249 (2d Cir. 1996) (emphasis added). Thus, a default judgment is considered an "***extreme sanction***" that "must remain a weapon of ***last, rather than first resort***."   *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (emphasis

---

[12] On December 18, 2017, defendants initially produced only excerpts of the missing / stolen property investigation file pertaining to interviews of plaintiff and non-party Danny Rivera because they both, albeit briefly, discussed facts relevant to plaintiff's force allegations. However, after making that production, the parties conferred and defendants produced the full file (946 pages) as well as the evidence discrepancy investigation file (48 pages), despite their lack of connection to plaintiff's claims.   It is these files that comprise the "over 1,000 pages of documents" referred to in the Report and Recommendation.

added); *see also, e.g., Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995) ("Dismissal with prejudice for discovery failures is a harsh sanction that is to be used only in extreme situations."); *Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355 (JMF), 2013 U.S. Dist. LEXIS 116473, at *11 (S.D.N.Y. Aug. 16, 2013) ("Extreme sanctions, such as striking a pleading or entering judgment against the offending party, are "pungent, rarely used, and conclusive.  A district judge should employ [them] only when she is sure of the impotence of lesser sanctions."") (quoting *Ocello v. White Marine, Inc*., 347 F. App'x 639, 641 (2d Cir. 2009)).

Indeed, courts have held that less drastic sanctions must first be imposed before resorting to the drastic sanction of dismissal.  *See, e.g., White v. City of New York*, No. CV 2008-2238 (KAM)(MDG), 2009 U.S. Dist. LEXIS 92079, at *4 (E.D.N.Y. Oct. 2, 2009) ("Since this Court has not previously imposed sanctions, the drastic sanction of dismissal is ***premature*** at this point") (citing *Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995) (emphasis added).

"As the Second Circuit has observed, dismissal is appropriate 'in extreme situations' when 'the court finds willfulness, bad faith, or fault.'"  *Timmons*, 2011 U.S. Dist. LEXIS 154564, at *11 (quoting *Simmons*, 49 F.3d at 88); *see also, e.g., Luft v. Crown Publishers, Inc.,* 906 F.2d 862, 865 (2d Cir. 1990) ("A sanction so drastic as . . . entering a default is not ordinarily imposed unless the disobedience has been willful, or in bad faith, or otherwise culpable."); *Wiwa v. Royal Dutch Petroleum Co.*, Nos. 96 Civ. 8386 (KMW) (HBP); 01 Civ. 1909 (KMW) (HBP); 02 Civ. 7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 14871, at *10 (S.D.N.Y. Feb. 22, 2009) ("Only an 'egregious, abusive disregard of a court order . . . would justify'" a sanction of dismissal) (quoting *Commercial Cleaning Servs. v. Colin Serv. Sys.*, 271 F.3d 374, 387 (2d Cir. 2001); *John Wiley & Sons, Inc. v. Elhalis*, No. 05 Civ. 2979 (DAB) (RLE), 2006 U.S. Dist. LEXIS 6428, at *6 (S.D.N.Y. Feb. 14, 2006) ("The party must have

demonstrated a 'flagrant disregard' for the court's order.") (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods.*, 845 F.2d, 1172, 1177 (2d Cir. 1988)).

"Any doubt as to whether a default judgment should be entered must be resolved in favor of the opposing party." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 55 (E.D.N.Y. 2007) (internal quotation marks and citation omitted).

In *Timmons*, plaintiff moved for sanctions based upon the defendants' late identification of a female physician assistant whom plaintiff alleged was present when he was assaulted in a clinic on Rikers Island. *See Timmons*, 2011 U.S. Dist. LEXIS 154564, at *9. Despite conducting an investigation aimed at identifying this female physician assistant shortly after the case was filed, defendants' counsel was unable to do identify her. *See id.* However, ten years later, after defendants were represented by new counsel, in preparing for trial, counsel undertook a further investigation, which involved witness interviews, and discovered the identity of this previously unidentified physician assistant. *See id.* at *9-10.

Although the Court found that the failure to identify the physician assistant as being present on the day of plaintiff's alleged assault until more than a decade after the complaint was filed was troubling, there was "no evidence that this failure was intentional or made in bad faith. Nor was the failure made in disobedience of a court order." *Id.* at *12. The Court further found that there was "no basis to attribute the failure to produce this evidence to the individual Defendants in this action." *Id.* The Court explained that tracking down the identity of this physician assistant required sleuthing and, while the defendants' attorneys could have been more diligent in their efforts, "to impose a default judgment on the present Defendants, who did not have control over the evidence in issue and as to whom there is no evidence of non-compliance, would be unjust." *Id.*

Instead, upon being given information as to the identity of the physician assistant, the Court reopened discovery and "[p]laintiff was thus given the opportunity to further explore the identity of his purported assailant and, if appropriate, to seek leave to amend the Complaint." *Id*. at *13.  In addition, the Court recommended that "as a sanction or remedy, the jury be advised of the much belated disclosure of [the physician assistant's identity]" and that "the jury should be instructed that the [physician assistant] was present in the clinic on the date of Plaintiff's alleged assault." *Id*.

In adopting the magistrate judge's report and recommendation, the Court agreed that "default judgment would be too extreme a sanction, given the absence of any evidence of bad faith." *Timmons v. Lyons*, No. 98 CV 4714 (DAB)(THK), 2012 U.S. Dist. LEXIS 44316, at *6 (S.D.N.Y. Mar. 29, 2012).  The Court further found that the magistrate judge's recommendation that the jury be advised of the belated disclosure and be instructed that the physician assistant was present in the clinic on the day of plaintiff's assault was a "significant" sanction and "appropriate under the circumstances."  *Id*. at *7. The Court reasoned that instructing the jury that the physician assistant was present would establish a critical fact in the litigation and disclosing to the jury that the physician assistant "was not identified until many years later after the inception of the case will damage Defendants' credibility in front of the jury and compensate for any prejudice Plaintiff might otherwise have suffered due to the passage of time." *Id.* at *7-8.

Here, defendants only just recently uncovered eight pages of documents and an audio recording supporting their defense that plaintiff's alleged injuries were self-inflicted – a defense which has been readily apparent by all parties from the outset of this litigation.  Defendants swiftly produced those documents (in addition documents related to two unrelated investigations which have no bearing on plaintiff's pleaded claims), pursuant to their obligations to supplement

16

their initial disclosures.  While these documents perhaps could have and should have been discovered and disclosed earlier in the litigation, disclosure at this stage, prior to the close of discovery, more than a month before the expiration of the statute of limitations, and prior to any dispositive motion practice or trial, does not warrant the extreme sanction of dismissal, as recommended by the Magistrate Judge.

Moreover, in reaching her recommendation, the Magistrate Judge does not appear to have even considered the simple remedy of continuing discovery, which *has never been closed* and for which there is *no deadline*, for the purposes of conducting depositions of Lt. Camhi and Officer Ryan, *who was already scheduled to be deposed before plaintiff cancelled at the eleventh hour*.

In addition, as explained below, any sanctions, let alone the sanction of default judgment, is not warranted here because no explicit court orders were violated, plaintiff is unable to establish any prejudice (or at least any easily curable prejudice), and defendants have not acted in bad faith.  Accordingly, defendants object to the Magistrate Judge's recommendation that default judgment be entered in plaintiff's favor.

## A.    Defendants Did Not Violate Any Court Orders

It is well-settled that sanctions may only be imposed under Federal Rule of Civil Procedure 37(b) for noncompliance with a "*clearly articulated order of the court requiring specified discovery*."  *Daval Steel Prods. Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1363, 2d Cir. 1991) (emphasis added); *see also, e.g.,* 7-37 Moore's Federal Practice – Civil § 37.40 (2017) ("[S]anctions are available pursuant to Rule 37(b) only if a court has first entered an order compelling the discovery in question, and a party has disobeyed that order.  In addition, Rule 37(b) applies only to discovery, and not to disclosure."); 7-37 Moore's Federal Practice – Civil § 37.42 (2017) ("The absence of a prior order or direction compelling discovery precludes

Rule 37(b) sanctions.").  "Dismissal under this subdivision [is] improper in the absence of an order."  *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) (internal quotation marks and citation omitted).  "If the terms of a discovery order are ***too vague or general to give fair notice*** of its obligations, it cannot support sanctions."  7-37 Moore's Federal Practice – Civil § 37.42 (2017) (emphasis added); *see also, e.g., Salahuddin*, 782 F.2d at 1133 ("Rule 37(b) sanctions require the violation of an ***explicit court order***.  It is thus clear that ***'implied' orders do not serve to justify sanctions***.") (emphasis added).

Here, neither the Magistrate Judge nor plaintiff has identified any court order that was violated by defendants' production of the eight pages of documents and audio recording concerning the command-level investigation conducted after plaintiff injured herself while she was in police custody.  Indeed, defendants were never explicitly ordered to disclose any underlying investigations concerning plaintiff's arrest or alleged injuries (or ordered to produce any documents pertaining to such investigations) nor were defendants ever explicitly or clearly ordered to disclose the identity of any officers who witnessed plaintiff injure herself while in police custody.

As previously explained, defendants produced documents concerning the investigation conducted concerning plaintiff's self-inflicted injuries, and disclosed Lt. Camhi as witness, pursuant to their obligations under Federal Rule of Civil Procedure 26(e) to supplement their initial disclosures.[13]

---

[13]    In addition to there being no clear court order ordering the production of these documents, plaintiff also did not make any explicit discovery request for these documents.  Rather, plaintiff's requests concerning underlying investigations and their corresponding files focused on "the Incident described in Plaintiff's Complaint" and "the allegations contained in plaintiff's complaint."  Interrogatory No. 2, Document Request No. 4, Defendant's Response and Objections to Plaintiff's First Set of Interrogatories and Document Requests (Docket No. 14-2).  Of course, "the Incident described in Plaintiff's Complaint" and "the allegations contained in

Although the Magistrate Judge found that defendants had violated other court orders prior to the time defendants supplemented their initial disclosures, the record does not support that assertion. Rather, as explained above, the Magistrate Judge's orders were focused on identifying the two individuals plaintiff alleges assaulted her, which was done, despite plaintiff's reluctance to view photographs without corresponding memobooks, and on the production of particular specified documents, none of which included documents related to any underlying investigations, which was also done.[14]

Accordingly, sanctions pursuant to Fed. R. Civ. P. 37(b), including the Magistrate Judge's recommendation that the Court strike the defendants' pleadings and enter default or summary judgment in plaintiff's favor, is improper as a matter of law.

## B. Plaintiff Has Not Been Prejudiced

Neither the Magistrate Judge nor plaintiff has specifically explained what prejudice has been caused by the recent production of the eight pages and audio recording concerning the underlying investigation that followed plaintiff's punching and kicking of the walls at the precinct. As explained above, the scope of the litigation has not changed in any way whatsoever because the documents produced merely corroborate a well known defense and identify just one additional witness – Lt. Camhi – who was not previously disclosed (but whose photograph was provided earlier in the case).

---

plaintiff's complaint" involved her claim that she was assaulted at the precinct, not that she punched and kicked the walls and injured herself. Nevertheless, defendants explained that they were "continuing to search for documents responsive to this request and will supplement [their] response if appropriate." *Id.* at Objection and Response to Document Request No. 4.

[14] Even to the extent that the Court finds that defendants were deficient in certain respects in complying with prior court orders, "[w]here a party has made a substantial effort to comply with a discovery order but was deficient in certain respects, lesser sanctions are generally appropriate." *Thompson v. Jam. Hosp. Med. Ctr.*, No. 13 Civ. 1896(RWS), 2015 U.S. Dist. LEXIS 79960, at *9 (S.D.N.Y. June 19, 2015).

19

First and foremost, despite the Magistrate Judge's assertions, the documents were produced while discovery was clearly still ongoing. *See, e.g.,* Docket No. 80 (Nov. 9, 2017) ("City and plaintiffs are to confer on ***outstanding discovery*** and agree on a schedule".); Docket No. 83 (December 14, 2017) ("The Court has scheduled a status conference to facilitate the expeditious resolution of any ***outstanding discovery*** . . . .") (emphasis added).[15]

"[C]ourts have found a lack of prejudice where disclosures are made while discovery is still open." *Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041 (JPO)(KNF), 2017 U.S. Dist. LEXIS 36924, at *14 (S.D.N.Y. Feb. 1, 2017) (citing cases); *see also, e.g., Harris v. Buffardi*, No. 08-CV-1322 (GLS/DRH), 2009 U.S. Dist. LEXIS 96724, at *22 (N.D.N.Y. Oct. 19, 2009) ("[N]o prejudice appears to [plaintiff] from any late production as discovery remains ongoing in this case."). Indeed, where, as here, any alleged "discovery violations . . . have predominantly taken the form of *untimely* disclosures, rather than *non*-disclosures, [plaintiff's] prejudice could be ameliorated with some additional time in discovery to explore the import of the documents . . . that were belatedly produced." *Scantibodies Lab., Inc. v. Church & Dwight Co.,* No. 14cv2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396, at *119 (S.D.N.Y. Nov. 4, 2016) (emphasis in original) (further noting that "while this case is now supposedly past the discovery stage, and while the discovery process had been lengthy, ***no summary-judgment motions have yet been made and no trial is yet on the calendar***, so that a continuance would be possible") (emphasis added).

Here, any prejudice would be ameliorated simply by permitting plaintiff to take the depositions of Lt. Camhi and Officer Ryan, who was already scheduled to be deposed even prior

---

[15]   Notably, there is also no entry on the docket certifying that discovery had closed.

to the disclosure of the pertinent documents.[16],[17]   Plaintiff has not demonstrated why any previously taken depositions would need to be re-opened.   First, the recently disclosed documents do not indicate that any of the previously deposed witnesses observed plaintiff injure herself or participated in the investigation concerning her self-inflicted injury.   Moreover, as explained, plaintiff was well aware from her medical records that defendants maintained that her alleged injuries were caused by her punching and kicking the walls at the precinct and, therefore, she was more than able to question any and all witnesses about that defense at their depositions and, in many instances she did.[18]   Plaintiff has failed to credibly explain which depositions would need to re-opened or which depositions, or actions, she would not have taken had these documents been disclosed earlier.

The same holds true with respect to the recently disclosed documents concerning the plaintiff's missing property allegations since plaintiff herself was the one who made the allegations and could have asked any previously deposed witnesses about those allegations.   To the extent that plaintiff asserts that, prior to depositions, she should have had access to interviews

---

[16]   Although Captain Hanrahan, who conducted the command-level investigation concerning plaintiff's self-inflicted injuries and to whom plaintiff admitted that her injuries were not caused by any member of the NYPD, has unfortunately passed away, he passed away on March 9, 2016, just over two months after the complaint was filed and well before an answer was even filed in this case.   Therefore, no prejudice has resulted from the recent disclosure because, even had the pertinent documents been produced sooner, it is highly unlikely that plaintiff would have sought to take his deposition at such an early stage of the case.

[17]   To the extent that Lt. Camhi, Officer Ryan or any witnesses yet to be deposed with respect to plaintiff's self-inflicted injuries do not fully remember the underlying events, that would only serve to assist plaintiff not prejudice her since their testimony would relate to a defense which severely undermines plaintiff's claims in this litigation.

[18]   For this same reason, any argument that plaintiff's expert was not armed with sufficient information in preparing his report is completely frivolous.   None of the documents recently produced demonstrate anything other than that plaintiff was injured as a result of her punching and kicking the walls at the precinct, which was clear at the outset of the litigation from plaintiff's medical records.

of certain officers concerning the unrelated missing property or evidence discrepancy investigations, it is important to note again that those investigations and those interviews did not relate in any way to plaintiff's excessive force allegations.  In any event, to the extent that any of those officers testify at a potential trial, plaintiff will be able to utilize those interviews for impeachment purposes and, if necessary, any prejudice can be cured by instructing the jury that plaintiff was not armed with those interviews until after depositions.[19]

The documents concerning plaintiff's self-inflicted injuries were also produced more than one month prior to the expiration of the statute of limitations.  Nevertheless, plaintiff chose to cancel Officer Ryan's deposition, which was scheduled to take place prior to the expiration of the statute of limitations, and never made any attempt to depose Lt. Camhi.  Moreover, as the Magistrate Judge noted, plaintiff amended her complaint, albeit to name *18 additional defendants* and to allege several improper claims, prior to the expirations of the limitations period.  In addition, even to the extent that, for some reason, additional defendants may need to be added in a case where plaintiff supposedly vividly recalls the events following her arrest and alleges that she was assaulted by two individuals whom she has already identified, this office explained that it would not assert a statute of limitations defense on behalf of any defendants represented by this office regarding claims that could not have otherwise been timely asserted but for the recent document production and further explained that equitable tolling may likely be appropriate in this case.  *See* Docket No. 95.

---

[19]   As the Court is aware, it is not a particularly unique situation for a party to obtain documents that may be relevant to a deposition after that deposition has been taken or indeed after discovery has ended.  For example, the City oftentimes is not provided with pertinent medical records or other documents relevant to a plaintiff's damages in excessive force cases.  Indeed, as explained in the parties' December 11, 2017 joint letter, plaintiff has yet to provide key information and documents concerning her damages despite the fact she has already been deposed and despite the fact that plaintiff asserted she would supplement her disclosures.  *See* Docket No. 82 at 4-5.

Accordingly, because plaintiff has not shown any prejudice, and certainly not any prejudice that cannot be easily remedied, sanctions, let alone dismissal sanctions, are not warranted.

## C.    Defendants Have Not Acted in Bad Faith

In light of the actual substance of the documents recently produced with respect to plaintiff's self-inflicted injuries, defendants have clearly not acted in bad faith or with any sort of willfulness and, therefore, plaintiff is not entitled to sanctions.  Indeed, the Second Circuit has held that, in assessing sanctions for untimeliness, courts should consider, among other things, "whether a tactical benefit was sought by the delay."  *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996); *see also, e.g., Mercado v. Choyang Med. Co.*, No. 07-cv-3563 (NG) (VPP), 2014 U.S. Dist. LEXIS 91071, at *9 (E.D.N.Y. July 2, 2014) ("Delays occasioned by 'sloppiness or negligence,' as opposed to those that 'seek an unfair advantage over the adversary in the litigation,' generally do not warrant the drastic sanction of involuntary dismissal.") (quoting *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012)).

As explained, upon discovering the pertinent documents, defendants swiftly supplemented their initial disclosures as required by the federal rules, while discovery was still open and before the expiration of the statute of limitations.  Importantly, the Magistrate Judge has apparently failed to consider that defendants had no reason whatsoever to withhold documents that merely corroborate a well known defense that has been asserted all along – that plaintiff's alleged injuries were caused by her punching and kicking the walls at the precinct and

not by any wrongdoing by defendants.  Indeed, earlier disclosure may very well have resulted in an early resolution of this case or by way of a voluntary dismissal by plaintiff.[20]

Moreover, neither the plaintiff nor the Magistrate Judge has explained why defendants would risk the preclusion of this damning evidence, which solely supports their well known defense, by purposely withholding it.[21]

It should be noted that, with respect to defense counsel's actions prior to the production of the documents concerning the investigation conducted after plaintiff injured herself while she was in police custody, the Magistrate Judge determined that she did not "think that [defense counsel was] acting deliberately in an effort to prevent discovery from occurring.  I don't think he is deliberately acting in violation of this Court's orders."  Nov. 9, 2017 Transcript at 26:19-22. Yet, somehow, after producing *all* of the items requested and listed by plaintiff in the parties' December 11, 2017 joint letter, the majority of which were *not* previously ordered to be produced, and after producing documents corroborating a well known defense as well as documents concerning two irrelevant investigations, both of which further support defendants insofar as plaintiff's stolen property allegations were unsubstantiated and the evidence discrepancy was the result of undercounting the amount of heroine found in plaintiff's apartment,

---

[20]    Defendants have also engaged in significant efforts throughout this litigation to identify the officer who apparently reported to the medical staff that plaintiff injured herself.  However, had the underlying investigation, which identifies two eyewitnesses to plaintiff's actions, been uncovered earlier, defendants would have been spared of the immense time and expense spent in trying to, unsuccessfully, identify that reporting officer.

[21]    It is entirely unclear on what basis plaintiff or the Magistrate Judge suggests that this recent disclosure supports a "cover up."  The evidence recently disclosed, which stems from a contemporaneous investigation conducted and completed well before any lawsuit was filed, is not some sort of "smoking gun" which supports plaintiff's claims but rather it severely undermines them.

24

the Magistrate Judge suddenly has concluded that defendants have acted with willful disobedience.

Defendants respectfully submit that they have not acted in bad faith by recently disclosing documents corroborating their well known defense concerning plaintiff's self-inflicted injuries and, therefore, sanctions are not warranted.

**D.    An Award of Sanctions Would Result in an Unjustifiable Windfall for Plaintiff**

Courts in the Second Circuit have held that "the imposition of sanctions for the untimely production of documents should not result in a 'windfall for uncovering evidence that would have made little difference in the underlying case.'" *Markey v. Lapolla Indus.*, No. CV 12-4622 (JS) (AKT), 2015 U.S. Dist. LEXIS 112915, at *49 (E.D.N.Y. Aug. 25, 2015). (citation omitted); *see also, e.g., Thompson*, 2015 U.S. Dist. LEXIS 79960, at *9 (noting that dismissal or preclusion of evidence would be a "drastic sanction[]," constituting a "denial of access to justice," "an injustice to [the disciplined] party" and "a windfall to its adversary").

Although the Magistrate Judge and plaintiff describe the production of eight pages and an audio recording concerning an investigation conducted after plaintiff injured herself while she was in police custody as some sort of earth shattering development that has "changed the entire landscape of the lawsuit," that is just simply not the case.   Rather, as explained above, the documents produced were only recently discovered, were produced in accordance with defendants' duty to supplement their initial disclosures, and merely corroborate a defense well known to all parties from the outset of the litigation and disclose one witness – Lt. Camhi – that was not previously disclosed and already scheduled to be deposed.

While the documents produced do make a difference in the underlying case, they relate solely to a well known defense which severely undermines plaintiff's claims in this lawsuit.   For plaintiff to essentially "win the case" because evidence which indicates that plaintiff may have

brought a frivolous lawsuit which potentially subjects her to Rule 11 sanctions, was not immediately uncovered (although was uncovered and produced during the discovery period, before the expiration of the statute of limitations, and before any dispositive motion practice or trial) would result in an unjustified and completely unreasonable windfall for plaintiff. In essence, plaintiff would potentially be rewarded for failing to disclose the true source of her injuries and making blatant misrepresentations to the Court.[22]

Indeed, the Magistrate Judge's recommendation, if adopted, would set a dangerous precedent by suggesting that parties should consider turning a blind eye to helpful evidence discovered late in a discovery period, which itself would be a clear and direct violation of the Federal Rules of Civil Procedure and a party's ethical obligations, lest suffer the severe and draconian remedies that include defaulting and finding liable parties who have no tie to discovery production and, more importantly, to the allegations in the lawsuit.

In short, this case should be decided on the merits, not on the fact that documents which completely undermine plaintiff's case were disclosed just recently.

## POINT II

### DEFENDANTS OBJECT TO THE MAGISTRATE JUDGE'S ALTERNATE RECOMMENDATION OF PRECLUSION

Because "preclusion of evidence is a harsh remedy, it should be imposed only in rare situations." *Ritchie-Risk-Linked Strategies Trading Ltd v. Coventry First LLC*, No. 09 Civ. 1086 (VM) (DF), 2012 U.S. Dist. LEXIS 19218, at *22 (S.D.N.Y. Jan. 9, 2012) (internal quotation

---

[22] It should be noted again that, in addition to evidence that plaintiff's alleged injuries are self-inflicted and that plaintiff has fabricated an alleged assault, there is substantial evidence in the record that neither Weitzman nor Forgione ever had any physical contact with plaintiff whatsoever, and that the individual defendants were not even ever at the precinct at the same time.

marks and citation omitted); *see also, e.g., Pall Corp. v. 3M Purification Inc.*, 279 F.R.D. 209, 213 (E.D.N.Y. 2011) (preclusion is considered an extreme sanction that should not be given lightly). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into ***the actual difficulties which the violation causes***, and ***must consider less drastic responses***. 'Considerations of fair play may dictate that courts eschew the harshest sanctions . . . where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence.'" *Outley v. New* York, 837 F.2d 587, 591 (2d Cir. 1988) (citation omitted) (emphasis added). This is because "the ***Second Circuit has expressed a preference for resolving disputes on the merits***." *Harriman v. IRS*, 233 F. Supp. 2d 451, 454 (E.D.N.Y. 2002) (internal quotation marks and citation omitted) (emphasis added); *see also, e.g., Titan Indus. Corp. v. Federal Ins. Co.*, No. 94 Civ. 726 (KMW), 1995 U.S. Dist. LEXIS 10253, at *7 (S.D.N.Y. July 24, 1995) ("[P]reclusion will usually interfere with the overriding policy of deciding cases on their merits.").

In determining whether preclusion is appropriate, courts should consider, *inter alia*, (1) the party's explanation for the failure to comply with the discovery requirement, (2) the importance of the precluded evidence, (3) the prejudice suffered by the opposing party as a result of preparing to meet the new testimony, and (4) the possibility of a continuance. *See, e.g., Softel, Inc. v. Dragon Medical & Scientific Communications, Inc*., 118 F.3d 955, 961 (2d Cir.1997); *see also, e.g., Titan Indus. Corp.*, 1995 U.S. Dist. LEXIS 10253, at *7 ("In determining the appropriateness of [preclusion], the court must consider the extent of the failure by the assertedly offending party, its explanation for the failure, the degree of prejudice to the moving party and the availability of corrective measures short of preclusion").

A lack of bad faith or willfulness militates against preclusion. *See, e.g., Funnekotter v. Agric. Dev. Bank of Zimb.*, No. 13-CV-1917 (CM) (RLE), 2014 U.S. Dist. LEXIS 128105, at *15 (S.D.N.Y. Sep. 11, 2014) ("Plaintiffs have not shown that Defendants willfully, in bad faith, or in any otherwise culpable manner failed to respond to court-ordered discovery, or failed to serve answers, or written responses to Plaintiffs either prior to or after the filing of the current motion so as to justify the severe sanction of preclusion."); *Pall Corp.*, 279 F.R.D. at 213 (declining to preclude evidence where no showing that late disclosures were motivated by bad faith or any other impermissible motive); *see also, e.g., Pichardo v. C.R. Bard, Inc.*, 563 F. App'x 58, 62 (2d Cir. 2014) (finding that preclusion of evidence was not appropriate where delays "were not strategically designed to disadvantage adversary, but were simply the product of sloppiness and neglect").

Here, defendants have explained why the eight pages of documents and the audio recording concerning the investigation into plaintiff's self-inflicted injuries were not produced until just recently. While defendants wish they had discovered this evidence earlier, and while the Court may find that they could have or should have, defendants certainly did not intentionally withhold these documents, and certainly did not have any incentive to do so. Rather, they were produced pursuant to defendants' duty to supplement their initial disclosures upon their discovery.

Moreover, as previously explained, plaintiff has suffered no prejudice by the recent disclosure of documents which merely corroborate a well known defense, particularly where, as here, discovery is still open. *See, e.g., Rao v. Rodriguez*, No. 14-CV-1936 (NGG) (ST), 2017 U.S. Dist. LEXIS 58996, at *5 (E.D.N.Y. Apr. 18, 2017) (declining to impose sanction of preclusion where belated disclosure made before the close of discovery); *Seena Int'l, Inc. v. One*

28

*Step Up, LTD.*, No. 15-CV-01095 (PKC) (BCM), 2016 U.S. Dist. LEXIS 64850, at *44 (S.D.N.Y. May 11, 2016) (same); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 261-62 (W.D.N.Y. 2013) (preclusion not appropriate where documents produced well in advance of any trial and a continuance to allow for limited discovery is not unreasonable).

Accordingly, defendants object to the Magistrate Judge's alternate recommendation of preclusion of the recently disclosed evidence.

## POINT III

### DEFENDANTS OBJECT TO THE MAGISTRATE JUDGE'S RECOMMENDATION THAT THE CITY PAY PLAINTIFF'S REASONABLE EXPENSES

Federal Rule of Civil Procedure 37(b)(2)(C) provides for the payment of "the reasonable expenses, including attorney's fees" caused by a failure to obey a discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." However, before such a sanction may be awarded, there must first be a violation of a clear court order. *See, e.g., Salahuddin*, 782 F.2d at 1131-1132 (holding that Rule 37(b) does not authorize the imposition of sanctions absent the violation of a court order); 7-37 Moore's Federal Practice – Civil § 37.40 (2017) ("[S]anctions are available pursuant to Rule 37(b) only if a court has first entered an order compelling the discovery in question, and a party has disobeyed that order.  In addition, Rule 37(b) applies only to discovery, and not to disclosure."); 7-37 Moore's Federal Practice – Civil § 37.42 (2017) ("The absence of a prior order or direction compelling discovery precludes Rule 37(b) sanctions.").

As explained above, defendants did not violate any court orders by supplementing their disclosures and producing documents concerning the command-level internal investigation conducted after plaintiff injured herself while in police custody.  Nor did defendants violate any

court orders by supplementing their disclosures and producing documents concerning two investigations wholly unrelated to plaintiff's claims. Moreover, defendants did not violate any of the prior court orders issued prior to December 18, 2017, concerning, *inter alia*, the identification of defendants Forgione and Weitzman and the production of certain specified documents.

Even assuming, *arguendo*, the Court determined that defendants violated a court order by producing the eight pages and audio recording, that violation was "substantially justified" insofar as any such violation was based on a good faith and reasonable misunderstanding of their obligations pursuant to the order, whichever order that may be. *See, e.g.,* 7-37 Moore's Federal Practice – Civil § 37.51 (2017) ("It is likely that a party would meet its burden of demonstrating substantial justification if its disobedience . . . was based on a good faith and reasonable misunderstanding of its obligations to the order.").

Accordingly, defendants object to the Magistrate Judge's recommendation that the City pay plaintiff's reasonable expenses.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants City, Forgione and Weitzman respectfully request that this Court reject the Magistrate Judge's Report and Recommendation and deny plaintiff's motion for sanctions.

Dated:  New York, New York
      February 7, 2018

                    ZACHARY W. CARTER
                    Corporation Counsel of the City of New York
                    *Attorney for Defendants*

                    By: /s/ Kavin Thadani_____
                        Kavin Thadani

TO:   **<u>VIA ECF</u>**
        Baree Fett, Esq.
        Gabriel Harvis, Esq.
        *Attorneys for Plaintiff*