UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ROSIE MARTINEZ,

                       Plaintiff,

       -against-

CITY OF NEW YORK, et al.,

                      Defendants.
---------------------------------------------------------------x

DECLARATION OF GABRIEL P. HARVIS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

16 CV 79 (AMD) (CLP)

GABRIEL P. HARVIS declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I represent plaintiff in the above-captioned action. I am familiar with the facts and circumstances concerning the prosecution of this action, and I submit this declaration in support of plaintiff's application for an order awarding plaintiff attorneys' fees and costs as the prevailing party in this litigation.

## ATTORNEY BACKGROUND AND EXPERIENCE

2. I am a partner in the law firm of Harvis & Fett LLP, with offices at 305 Broadway, 14th Floor, New York, NY.

3. I graduated from Trinity College (Hartford), and received my Juris Doctorate from Brooklyn Law School.

4. I am an attorney in good standing, admitted to practice law in the State of New York, and in the United States District Courts for the Southern and Eastern District of New York, the United States Court of Appeals for the Second Circuit and

the United States Supreme Court. I was admitted to practice law in the State of New York and Southern and Eastern Districts in 2007. I began practicing in 2006 under a practice order of the Appellate Division that applies to attorneys at the New York City Law Department. In 2013 I was admitted to practice in the United States Court of Appeals for the Second Circuit. In 2016 I was admitted to practice in the United States Supreme Court.

5. I was appointed Assistant Corporation Counsel of the City of New York upon graduation from law school in 2006. I began working in the City Law Department's Special Federal Litigation Division ("Special Federal Litigation").

The Law Department's website describes the division's work:

> Established in September of 1998, Special Federal Litigation was created as a specialized division to defend the City and its officials in civil rights cases brought in federal court in which police, District Attorney, or correction officer misconduct is claimed. Division attorneys maintain active caseloads and are responsible for all aspects of litigation, from initial interviews of named defendants to investigation, depositions, paper discovery, negotiation of settlements, motions, court conferences, arguments, and trials by jury. Due to the high-profile nature of their work, many Division attorneys litigate actions that garner press coverage or are the subject of public debate. http://www.nyc.gov/html/law/html/divisions/special-federal-litigation.shtml (accessed July 30, 2015).

-3-

6. Attorneys in Special Federal Litigation undergo rigorous, specialized training in federal practice. I received over 75 hours of formal training on federal civil rights litigation during my government service.

7. During my first two years at the Law Department, in addition to undergoing training and handling an individual caseload of up to 50 cases at a given time, I (along with Ms. Fett) was selected for assignment to the large *McBean* class action challenging the constitutionality of the new admission strip search policies on Rikers Island. While working on *McBean*, I attended high-level meetings with the Correction Commissioner. I worked approximately 1,127 hours on *McBean*.

8. During my tenure at the Law Department, I defended the City of New York and individual police and correction officers in at least 101 false arrest, malicious prosecution and/or excessive force cases in the Southern and Eastern Districts of New York, conducting four jury trials and an evidentiary inquest, and engaged in substantial motion practice, including the following matters:

    a. *Robertson v. Sullivan*, 07-CV-1416 (JG) (LB) (false arrest, malicious prosecution and excessive force trial before the Honorable John Gleeson in the Eastern District of New York in which plaintiff was represented by a team of attorneys from Cravath, Swaine & Moore LLP).

    b. *Garcia v. City of New York*, 07-CV-4331 (SJF) (RER) (excessive force trial before the Honorable Sandra J. Feuerstein in the Eastern District of New York).

 c. *Lopez v. Joshua*, 08-CV-1871 (DGT) (VVP) (false arrest and excessive force trial before the late Honorable David G. Trager in the Eastern District of New York).

 d. *Dixon v. Ragland*, 03-CV-826 (LTS) (KNF) (excessive force trial before the Honorable Laura Taylor Swain and evidentiary inquest before the Honorable Kevin N. Fox in the Southern District of New York) (with Ms. Fett).

 e. *Wilson v. McMullen*, 07-CV-948 (SLT) (LB), 2010 WL 1268055 (E.D.N.Y. Mar. 30, 2010) (granting summary judgment in § 1983 false arrest case).

 f. *Balkanli v. City of New York*, 07-CV-2204 (NG), 2009 WL 1346736 (E.D.N.Y. May 14, 2009) (granting summary judgment in § 1983 false arrest and excessive force case).

 g. *Sanders v. N.Y.C. Dep't of Corrections*, 07-CV-3390 (SHS), 2009 WL 222161 (S.D.N.Y. Jan. 30, 2009), *aff'd*, 376 Fed.Appx. 151 (2d Cir. 2010) (granting summary judgment in § 1983 failure to protect case).

 h. *Grant v. City of New York*, 07-CV-869 (ENV) (LB), 2008 WL 4646158 (E.D.N.Y. Oct. 20, 2008) (granting dismissal of § 1983 excessive force claim pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v)).

 i. *Marcus v. City of New York*, 07-CV-1810 (DLI) (RLM), 2007 WL 2126089 (E.D.N.Y. July 23, 2007) (denying plaintiff's motion for reconsideration of defendants' successful motion to compel discovery).

9. In 2010, I was selected to handle the high-profile matter of *Carmichael v. City of New York*, challenging the City's investigation of missing persons cases on equal protection grounds. *See* 06-CV-1913 (NG), 2008 WL 905227 (E.D.N.Y. Mar. 31, 2008) (denying motion to dismiss); 34 F.Supp.3d 252 (E.D.N.Y. 2014) (granting summary judgment).

10. In September 2010, I entered private practice and founded the predecessor to my present firm. Since its founding, my firm has specialized in § 1983 civil rights cases on behalf of indigent plaintiffs, bringing hundreds of such actions in the Southern and Eastern Districts of New York, the vast majority of which involve claims of false arrest, excessive force and/or malicious prosecution.

11. Since I co-founded my firm, I have conducted six additional federal jury trials, litigated a variety of motions and successfully argued before the Second Circuit Court of Appeals. Representative matters include:

> a. *Schwartz v. Marcantonatos*, 567 Fed. App'x 20, 2014 WL 2055932 (2d Cir. 2014) (Summary Order) (affirming denial of summary judgment in case challenging the NYPD's "Lucky Bag" sting operation).
>
> b. *Lucas v. Port Authority, et al.*, 12-CV-3096 (CM) (false arrest and excessive trial before the Hon. Colleen McMahon in the Southern District of New York resulting in plaintiff's verdict and punitive damage award) (with Ms. Fett).
>
> c. *Ellis v. City of New York*, 11-CV-2041 (JBW) (RER) (false arrest and excessive force trial before the Hon. Jack B. Weinstein in the Eastern District of New York).
>
> d. *Fryar v. City of New York*, 10-CV-5879 (TLM) (MDG) (false arrest and excessive force trial before the Hon. Tucker L. Melançon in the Eastern District of New York resulting in a plaintiff's verdict and punitive damage award).
>
> e. *Plair v. City of New York*, 789 F.Supp.2d 459 (S.D.N.Y. 2011) (denying defendants' motion to dismiss and affirming the viability of the *Colon* categories of § 1983 supervisory liability after *Iqbal*).
>
> f. *McCoy v. City of New York,* 16 CV 1636 (AMD) (VMS) (E.D.N.Y.) (malicious prosecution case involving indicted NYPD officers) (*see* Goldstein, Joseph, N.Y. Times, Oct. 10, 2017, *He Excelled as a Detective,*

*Until Prosecutors Stopped Believing Him* (accessible at: https://nyti.ms/2yWJ8Qu).

g. *Doe v. United States*, 833 F.3d 192, 193 (2d Cir. 2016), *cert. denied,* 137 S. Ct. 2160, 198 L. Ed. 2d 232 (2017) (on brief for amicus curiae The Association of the Bar of the City of New York in important conviction expungement case).

h. *Gordon v. City of New York*, 15 CV 2439 (CBA) (VMS), 2016 WL 10678073, *8 (E.D.N.Y. July 22, 2016) (denying motion to dismiss).

i. *Haylett v. City of New York*, No. 15 CV 0223 (WFK) (PK), 2017 WL 6568170, *3 (E.D.N.Y. Dec. 18, 2017) (denying summary judgment).

j. *Cordero v. City of New York*, 282 F. Supp. 3d 549, 566 (E.D.N.Y. 2017) (denying summary judgment and allowing plaintiff's *Monell* claim regarding overtime abuse and systemic NYPD perjury to proceed).

k. *Cordero v. City of New York*, 15 CV 3436 (JBW) (CLP), 2017 WL 2116699, *8 (E.D.N.Y. May 12, 2017) (awarding deposition sanctions).

l. *Harris v. City of New York,* 222 F. Supp. 3d 341, 353 (S.D.N.Y. 2016) (denying summary judgment).

12. Representing plaintiffs, I have repeatedly succeeded in compelling the production of defendant officer photographs over defense objections, developing a favorable body of decisional law. *See Franks v. City of New York*, 13 CV 623 (JBW) (VMS), 2013 WL 6002946 (E.D.N.Y. Nov. 23, 2013); *see also, e.g., Gonzalez v. City of New York*, 12 CV 2776 (JG) (RML) (E.D.N.Y. May 21, 2013) (Docket Entry 32); *Harrison v. City of New York*, 11 CV 2762 (SLT) (RML) (E.D.N.Y. April 13, 2012) (Docket Entry 18); *Joyner v. City of New York*, 12 CV 177 (ENV) (E.D.N.Y. Aug. 1, 2012) (Docket Entry 16); *Plair v. City of New York*, 10 CV 8177 (RWS) (S.D.N.Y.

May 29, 2012) (Docket Entry 58); *Chavez v. City of New York*, 11 CV 117 (PAE) (S.D.N.Y. Dec. 23, 2011) (Docket Entry 25).

13. I have appeared as lead counsel in 347 federal civil rights cases in the Southern and Eastern Districts of New York.

14. On April 11, 2013, I was a panelist, along with William Gibney, Director of the Special Litigation Unit of the Legal Aid Society's Criminal Practice, at a CUNY Law School Seminar entitled "Police Misconduct and Civil Liability."

15. On April 24, 2013, I lectured at a Continuing Legal Education seminar on the topic of § 1983 litigation attended by staff attorneys at the offices of the Brooklyn Defender Services.

16. On August 15, 2013, I was appointed to the Civil Rights Committee of the New York City Bar Association for a three-year term. My term has since been extended and I have served over five years on the committee. In that capacity, I helped to organize the event "The Future of Police Accountability in New York City," a panel discussion at the House of the Association featuring the Chair of the CCRB, NYPD Inspector General, NYPD Deputy Commissioner for Legal Affairs and other speakers. I am also working to repeal New York Civil Rights Law § 50-a.

17. As mentioned above, in May 2014, I successfully argued before the United States Court of Appeals for the Second Circuit on the issue of qualified immunity in a

false arrest case involving the NYPD's controversial "lucky bag" unattended property sting. The Second Circuit issued a Summary Order affirming the denial of summary judgment and holding that the police lacked arguable probable cause to arrest my client. *Schwartz v. Marcantonatos*, 567 Fed. App'x 20, 2014 WL 2055932 (2d Cir. 2014) (Summary Order).

18. On October 15, 2014, I presented a Continuing Legal Education seminar entitled "A Criminal Practitioner's Guide to Civil Rights Law" to staff attorneys and supervisors at the offices of the Legal Aid Society's Brooklyn Criminal Defense Division.

19. In January 2017, I was appointed to the New York City Bar Association's Task Force on Mass Incarceration, where I presently serve on the Clemency subcommittee.

20. I also serve on the New York City Bar Association's Committee on Drugs and the Law.

21. On August 1, 2017, I was a panelist, along with Southern District Mediation Director Rebecca Price and others, at a Federal Bar Association Panel on the § 1983 Plan at the 500 Pearl Street courthouse.

22. My practice has recently expanded to include post-conviction and wrongful conviction litigation on behalf of individuals wrongfully jailed for decades.

23. The people my firm represents in civil rights cases can only afford to retain an attorney on a contingency basis, and essentially all of my firm's matters are handled that way. We do not typically receive an initial retainer from any of our clients, nor do they make even a token contribution to litigation expenses. I am ordinarily compensated based upon a percentage of any judgment or settlement, or through § 1988 fee awards and settlements.

24. We bear all of the costs of litigation while the case is pending, and have always released the client from any obligation to pay for expenses which have been advanced if there is no recovery. For example, in 2010, I litigated a case through motion practice and trial and lost, absorbing $10,000 in expenses. *Majors v. City of New York*, 10-CV-4730 (BMC). My firm's loss in the recent *Cordero* trial could cost us hundreds of thousands of dollars in unrecouped time and expenses.

25. Civil rights cases are extremely risky and involve arcane issues of law. It is well known that only a small segment of the bar is willing to take such cases as the bulk of a law practice.

26. Because the chances of losing police misconduct cases is high, I and other civil rights lawyers in New York depend on the availability of a full "lodestar" recovery if we do prevail. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) ("the 'lodestar'

figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence").

## REASONABLE HOURLY RATE

27. I request compensation at the rate of $500 per hour. This is my seventh application for a judicial award of attorney's fees. Following trial in *Fryar v. City of New York* before the Hon. Tucker L. Melançon in September 2011, I was awarded $285 per hour in the Eastern District of New York. *See* Report and Recommendation of the Hon. Marilyn D. Go, Docket Entry No. 55 (E.D.N.Y. Aug. 22, 2012). After the plaintiff's acceptance of a Rule 68 Offer in *Townes v. City of New York*, the Hon. Brian M. Cogan set a rate $300 per hour for my services. 12-CV-3201 (BMC), 2013 WL 153726 (E.D.N.Y. Jan. 15, 2013). In early 2014, the Hon. Colleen McMahon awarded me my then-requested hourly rate of $350 in *Lucas v. Port Authority*. 12-CV-3096 (CM), Docket Entry No. 58 (S.D.N.Y. Feb. 12, 2014). (In June 2014, plaintiff submitted a fee application to the Hon. Jack B. Weinstein in *McCalman v. City of New York*, 13-CV-4805 (JBW) (RML), seeking an hourly rate of $400 for my services in the Eastern District of New York; the fees in *McCalman* were settled while the motion was pending). In *Shabazz v. City of New York*, 14 CV 6417 (GHW), 2015 WL 7779267, *3 (S.D.N.Y. Dec. 2, 2015), I was awarded $350 per hour. In *Campbell v. City of New York*, I was awarded $400 per hour. 15 CV 2088 (PAE), 2015 WL 7019831, *5

-10-

(S.D.N.Y. Nov. 10, 2015) ("Accordingly, the Court finds that a $400 hourly fee for Harvis, who has been practicing for nearly 10 years and has extensive experience, is appropriate.") (citation omitted).

28. After the May 12, 2017 discovery sanctions order in *Cordero*, also before Your Honor, I submitted a bill to defendants reflecting a $425 hourly rate. Defendants ultimately paid the full bill, conceding that $425 was an appropriate hourly fee in that case.

29. This case, coming over a year after resolution of the *Cordero* sanctions, warrants an upward adjustment in rate to $500 per hour due to the unusual degree of effort, diligence and skill required to overcome defendants' obstructionism.

30. The $500 hourly rate requested herein for my services is in line with rates in awarded to attorneys of comparable skill and experience, and far from the top of the spectrum in the realm of accomplished federal civil rights litigators. *See Barbour v. City of White Plains*, 788 F.Supp.2d 216 (S.D.N.Y. 2011) (awarding requested $625 hourly rate to experienced civil rights plaintiffs' attorney Michael Spiegel, Esq.) *aff'd* 700 F.3D 631 (2d Cir. 2012); *Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 546 (S.D.N.Y. 2008) (awarding two experienced civil rights attorneys hourly rates of $600); *Chen v. TYT E. Corp.*, 10-CV-5288 (PAC), 2013 WL 1903735, at *2 (S.D.N.Y. May 8, 2013) ("Consistent precedent in the Southern District reveals that rates awarded to

-11-

experienced civil rights attorneys over the past ten years have ranged from $250 to $600, with average awards increasing over time….") (internal quotation marks and citations omitted). Determining an appropriate hourly rate "may, of course, include judicial notice of the rates awarded in prior cases." *Fobotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005).

Dated:  New York, New York
        May 9, 2018

_____
Gabriel P. Harvis