

eeplaw.com
80 Pine Street, 38th Floor
New York, New York 10005
T. 212.532.1116 F. 212.532.1176

New Jersey Office
576 Main Street, Suite C
Chatham, New Jersey 07928

JOHN ELEFTERAKIS*
NICHOLAS ELEFTERAKIS
RAYMOND PANEK

OLIVER R. TOBIAS
JEFFREY B. BROMFELD
JORDAN JODRÉ*
FAIZAN GHAZNAVI
GABRIEL P. HARVIS
BAREE N. FETT

KRISTEN PERRY – CONIGLIARO
AIKA DANAYEVA
ARIANA ELEFTERAKIS
MICHAEL INDELICATO
STEPHEN KAHN
MATTHEW KRIVITSKY
EVAN M. LA PENNA
DOMINICK MINGIONE
JOSEPH PERRY
MARIE LOUISE PRIOLO *
KEYONTE SUTHERLAND

*Also Admitted In New Jersey

July 31, 2018

<u>BY ECF</u>
Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Martinez v. City of New York, et al.*, 16 CV 79 (AMD) (CLP)

Your Honor:

    I represent plaintiff in the above-referenced action. I write pursuant to the Court's orders dated July 3, 2018 and yesterday to respectfully set forth plaintiff's position regarding depositions.

    Initially, plaintiff is constrained to address defendants' letter of this morning. At plaintiff's request, the parties briefly spoke yesterday, and most of the conversation concerned the application the parties submitted yesterday afternoon. At the conclusion of the discussion, it was agreed that the parties would confer further before letters were filed. But after the Court issued its order yesterday evening, plaintiff did not hear from defendants again before their letter was filed early this morning. Had defendants conferred in the spirit of the Court's order, a number of the individuals in plaintiff's initial list would likely have been voluntarily removed, as described below. Further, conspicuously absent from defendants' letter is any acknowledgement of their responsibility for the time and resources the Court and plaintiff are now forced to devote to putting this case back together.

> Not only did discovery close long before defendants' production of these documents and identification of these witnesses, but defendants should not be permitted now to profit from their noncompliance with court Orders and their own failure to investigate. *If plaintiff wishes to pursue discovery from these witnesses, and re-open depositions to explore these newly produced documents, that should be up to her*; however,

Hon. Cheryl L. Pollak
July 31, 2018

> this Court recommends that, should an Order establishing liability not enter, defendants should be precluded from using this information which plaintiff and the Court have been endeavoring to unearth for months.

*Martinez v. City of New York*, 16 CV 79 (AMD) (CLP), 2018 WL 604019, *34 (E.D.N.Y. Jan. 24, 2018) (emphasis added).

<u>Witnesses the Parties Agree Should be Deposed</u>

1. **Eric Ryan.** This defendant was plaintiff's arresting officer and principally responsible for obtaining the information that led to the search warrant executed at plaintiff's residence. After discovery closed, defendants revealed for the first time that Ryan was directly involved in the disputed events and claims to have observed plaintiff punching a cell wall and to have "removed her to the hospital." Ryan was implicated in three of the four investigations surrounding the incident, two of which resulted in substantiated charges against him. Ryan was interviewed at least three times concerning these events by investigators. Yet despite his primary role in the incident and this Court's order dated April 27, 2018 (requiring, *inter alia*, conferral on disciplinary records), defendants have, as of this writing, failed to confer or to produce *any* disciplinary, personnel or other background information regarding him.[1] Ryan has not yet been deposed and plaintiff respectfully submits that his deposition should not be limited in scope. *See Martinez*, 2018 WL 604019 at *19 (quoting defense counsel: "plaintiff is more than free to depose Lieutenant Camhi and …Officer Ryan") (citation omitted).

2. **David Camhi.** Eight hours after Ms. Martinez sustained injury inside the precinct, it was defendant Camhi who first notified Internal Affairs. As with Ryan, plaintiff learned after discovery closed that Camhi claims to have seen plaintiff's alleged self-injury and to have physically restrained her. This defendant has never been deposed and plaintiff has been provided with no background information about him. Plaintiff respectfully submits that she should be permitted to depose him without limitation, once appropriate disclosures have been received. *See Martinez*, 2018 WL 604019 at *15-16 ("Not only would

---

[1] Notably, defendant Ryan and a supervising attorney in the instant matter are both involved in *Pettiford v. City of New York,* 17 CV 5273 (ILG) (JO), another case in this district involving significant discovery misconduct in a civil rights matter defended by the New York City Law Department. Despite the acceptance of a Rule 68 offer by the plaintiff in *Pettiford,* the Hon. James Orenstein is considering a referral of defense counsel to the Attorney Grievance Committee. *See* DE #112-117.

Hon. Cheryl L. Pollak
July 31, 2018

>   plaintiff have named Officer Camhi as a defendant, but she could have avoided multiple depositions, others of which may need to be retaken, plus there are additional claims that could potentially have been brought. Given the expense and delay that has already occurred and given that the statute of limitations is set to expire on January 23, 2018, plaintiff has been severely prejudiced.").

3.  **Danny Rivera.** In their letter of this morning, defendants misrepresent the record with respect to this witness. First, plaintiff notes that, in a late-disclosed recorded interview with Internal Affairs, Mr. Rivera describes hearing plaintiff "literally screaming and crying" inside the precinct and then seeing her injured "with her hand all twisted." Rivera told IAB that Ms. Martinez then exclaimed that officers had just assaulted her. Upon information and belief, IAB took no investigative action in response to Rivera's allegations. Second, defendants omit from their narrative that they themselves subpoenaed Mr. Rivera for a deposition in April 2017 but Mr. Rivera did not appear. Plaintiff's counsel then e-mailed defendants on December 27, 2018, providing a working phone number for Mr. Rivera and proposing certain dates on which Rivera was available for the parties to take his deposition. *See* E-mail, annexed hereto as Exhibit 1. Defendants never responded. Plaintiff respectfully submits that this witness should be deposed without limitation.

## Witnesses the Parties Agree Should be Re-Deposed

4.  **Jason Forgione.** Defendant Forgione is believed to have been one of the officers who injured Ms. Martinez inside the precinct. Defendants initially caused him to be deposed without the benefit of key documents. *Martinez*, 2018 WL 604019 at *25 ("Despite this Order, defendants only produced a partial file for Forgione and plaintiff's counsel proceeded to depose him without having been given his files for the year of plaintiff's arrest and without producing the James file which suggested dishonesty on the part of the defendant."). Now, in addition to the missing *James* material (which alone amounts to over 450 heavily-redacted pages), plaintiff must essentially restart the factual portion of the questioning to account for the three previously-undisclosed investigations and the 1,000 plus pages that underlie them. If it should please the Court, plaintiff respectfully submits that defendants would unfairly profit from their misconduct, in precisely the manner the Court sought to avoid in recommending terminating sanctions, were the scope of this deposition to be narrowed as defendants suggest.

Hon. Cheryl L. Pollak
July 31, 2018

5. **Joseph DiGennaro.** In another of the more egregious examples of the mishandling of the defense of this case, DiGennaro, who led the search warrant execution at plaintiff's residence, testified at his deposition to the existence of a number of theretofore undisclosed buy reports and DD-5s that the sergeant alleged reflected drug dealing by Ms. Martinez. However, when the documents were ultimately produced many weeks later, they revealed that the defendant was wrong; the documents do not incriminate Ms. Martinez. *See id.* at *10-11; *9 ("Plaintiff noted that although [DiGennaro] recalled preparing [the DD-5s and buy reports], he did not have them with him at the deposition, and had difficulty remembering the details 'so his testimony was not very clear.'"). Additionally, as the Court noted in its January 24, 2018 order, DiGennaro has a number of questions to answer beyond the buy reports. *See, e.g., id.* at *16 ("During the lab discrepancy investigation, Lieutenant Robinson interviewed both Officer Ryan and Sergeant DiGennaro. Despite all of the depositions conducted by plaintiff's counsel, no one who was deposed, including DiGennaro, mentioned this IAB investigation or Captain Valerga's involvement."). Plaintiff respectfully submits that, as with Forgione, it would be unfair for plaintiff's examination of this witness to be limited under these circumstances.

<u>Depositions Defendants Argue Should Not Take Place</u>

> Plaintiff has not explained why the depositions of Weitzman, Laliberte, Seddio, Mendez, Russo, Robinson, Re[h]man or Donovan should be re-opened, regardless of the outcome of defendants' contemplated partial motion to dismiss. For example, plaintiff has not identified which recently-produced documents warrant the re-opening of these depositions.

Defendants' July 31, 2018 Letter (DE #149), p. 3.

The willful ignorance that would permit defendants to present the Court with such an argument is difficult to overstate. Defendants are well aware, as the parties specifically discussed it yesterday and it is self-evident, that plaintiff seeks to question these individuals about the belatedly-produced documents in the light of their disclosure and the shifting landscape it has wrought. *See Martinez*, 2018 WL 604019 at *2 ("On December 18, 2017, over one year and 11 depositions later, defendants, on literally the eve of a conference scheduled before this Court, suddenly disclosed certain files that changed the entire landscape of the lawsuit.").

Page 4

Hon. Cheryl L. Pollak
July 31, 2018

In the case of Weitzman, who is alleged to have assaulted plaintiff inside the precinct, the argument for further questioning is even more compelling, given that plaintiff was sandbagged during the deposition with the revelation that Weitzman claimed to be on a "CRV" tour and thus elsewhere when plaintiff was assaulted. It was not until after the deposition that defendants first partially-produced CRV information, without making full disclosure of the previously-requested overtime records, which could shed light on the timing issue given that the defendant discarded his memo book. *Id.* at *10 ("Although plaintiff had received some records relating to the CRV documentation and overtime activity reports for defendant Forgione, plaintiff still had not received Weitzman's overtime reports.").[2] Since receiving these crucial documents, plaintiff has had no further opportunity to examine this witness.

Under these circumstances, and in the broader context of the litigation, plaintiff respectfully submits that she should have the opportunity to re-open the questioning of these witnesses without undue limitations.[3]

6. **Paul Valerga.** This captain, who defendants argue plaintiff has no basis to depose and "had no personal involvement in the incident whatsoever," DE #149 at p. 3, in fact "supervised not only the Hanrahan investigation but …also …the IAB lab discrepancy investigation, which plaintiff asserts was ultimately substantiated," *Martinez*, 2018 WL 604019 at *16. Yet Captain Valerga was never disclosed by defendants during the entire pendency of discovery as a witness with knowledge under Rule 26(a). *See* Second Amended Complaint ("SAC"), ¶¶ 22, 65 (setting forth allegations regarding Valerga's involvement).

---

[2] In their letter, defendants take the position that plaintiff should not be permitted to depose Gonzalez, Watson, Monteleone, Moore, Wigdzinski or Bigg – despite their having been disclosed as witnesses with knowledge who may be called at trial by defendants – since it is not alleged that they interacted with plaintiff. However, plaintiff respectfully submits that brief depositions of these witnesses are appropriate, so that they may decipher their memo books and potentially provide other insight into the important question of the timing of Weitzman's purported CRV tour.

[3] If it should please the Court, as to those witnesses who claim not to recall the events, plaintiff respectfully submits that this too is probative, given the passage of time and defendants' conduct here. *See Martinez*, 2018 WL 604019 at *17 ("Not only has plaintiff incurred an enormous amount of fees and costs taking depositions without information that they now have, but there has been 'needless delay,' 'memories have faded,' the statute of limitations may have run as to the two most critical witnesses, and even plaintiff's expert was unable to examine her in the context of the injury defendants' recent disclosures suggest.").

Hon. Cheryl L. Pollak
July 31, 2018

> Plaintiff respectfully submits that the need for this deposition and its scope will be unaffected by the disposition of defendants' contemplated motion.

7. **The Officers at the Hospital.** The odyssey that has been discovery in this case includes plaintiff's ongoing attempt to identify the anonymous NYPD officer who is noted in a cryptic entry as explaining to medical staff that plaintiff sustained her injury while punching a wall. As detailed at ¶¶ 55-62 of the SAC, the timing of this note is particularly meaningful, as it coincides with Lieutenant Camhi's call to Internal Affairs from the 107th Precinct. The individuals who, according to records, were at the hospital to make that statement were defendants Pontecorvo, Ficken, Trotter, Correa and Kandinov, none of whom have been deposed. These defendants also participated in the inexplicable transport of plaintiff back to the precinct instead of central booking.[4] But according to defendants' letter, plaintiff has inadequate justification to depose these individuals and, in any event, they have no recollection. However, if it should please the Court, plaintiff respectfully submits that reasonable questioning of the officers is warranted here, without *ex ante* limitation, notwithstanding the outcome of defendants' pre-motion efforts.

8. **The Search Warrant Defendants.** The allegations against defendants Rippel, Davneiro, Post, Wolf/Wolff, Lavelle and Lieutenant Robinson are detailed in the SAC at ¶¶ 15-22 and 46. These individuals were allegedly involved, *inter alia*, in an illegal search, theft, the failure to intervene or provide medical treatment to plaintiff and a cover-up. Lieutenant Robinson, without mentioning it during his deposition testimony, was also the lead investigator in one of the belatedly-disclosed investigations. *See Martinez*, 2018 WL 604019 at *25 ("Lieutenant Robinson interviewed both Officer Ryan and Sergeant DiGennaro."). Aside from Robinson, none of these individuals has been deposed. Plaintiff respectfully requests the opportunity, exercising appropriate judgment in the length and scope of the depositions, to re-open the Robinson deposition and depose the other search warrant defendants, particularly in light of the recent disclosures.[5]

---

[4] Plaintiff has also not yet been able to identify the individual who gave the order to bring her to the precinct, a decision that delayed her arraignment by over eight hours.

[5] Defendants neglected to mention in their letter this morning that there is confusion in the documents about which female officer with the surname "Wolf" or "Wolff" processed plaintiff at the precinct, and defendants have offered no further information about the matter. Plaintiff has no intention or desire to depose someone who was not working at the time, and the only reason both names were

Hon. Cheryl L. Pollak
July 31, 2018

9. **The Investigators.** The remaining eighteen proposed witnesses were, according to the belatedly-disclosed documents, involved in the three withheld Internal Affairs investigations, including Investigator Cruz who appears to have taken no action despite plaintiff and Mr. Rivera's disturbing allegations of abuse. *See* SAC at ¶¶ 64-74. Given the alleged cover-up and the fact that incorrect file numbers appear on the investigative documents, plaintiff respectfully submits that she should be permitted to discover how and why three parallel Internal Affairs investigations into the disputed events evaded detection for so long. *See Martinez*, 2018 WL 604019 at *34 ("[G]iven the difficulty experienced in locating relevant documents, [defendants] are encouraged to evaluate the systems currently in place for storing, maintaining, indexing, and accessing records of the NYPD…"). Indeed, an unnamed Internal Affairs Chief appears to have been personally apprised of at least the withheld substantiated lab discrepancy investigation. If it should please the Court, testimony from these witnesses is also relevant to plaintiff's *Monell* and denial-of-access-to-courts allegations.[6]

Thank you for your attention to this matter.

Respectfully submitted,

Gabriel P. Harvis

Encl.

cc: ACC Kavin Thadani, Esq.

---

included in the amended complaint and subsequent letter was the abundance of caution required, given that defendants' conduct had forced plaintiff to amend on the eve of the limitations deadline.

[6] Plaintiff respectfully notes that the witness list was prepared on the basis of documents only, without any input from the defendants. To the extent good faith conferral reveals that only a subsection of the identified investigators was actively involved in the cases and their management and filing, plaintiff will limit the depositions to those individuals only. Plaintiff does not intend to dwell on the backgrounds of the investigators.