UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROSIE MARTINEZ,

                          Plaintiff,

            -against-

CITY OF NEW YORK *et al.*,

                          Defendants.
-----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
16 CV 79 (AMD) (CLP)

**POLLAK**, United States Magistrate Judge:

        Plaintiff Rosie Martinez commenced this action on January 7, 2016 against the City of

New York (the "City") and certain unidentified officers of the New York City Police Department

("NYPD") (collectively, "defendants"), alleging that she had been subjected to excessive force

and denied medical treatment following her arrest on January 22, 2015.

        On January 24, 2018, this Court issued a Report and Recommendation, finding that

defendants had failed to comply with their discovery obligations under the Federal Rules of Civil

Procedure and in violation of numerous Court Orders issued throughout almost two years of

discovery in the matter (the "Report").  Among the sanctions recommended by this Court was

that the City of New York, but not the individual defendants, be held responsible and be required

to pay plaintiff's reasonable expenses, including attorney's fees, caused by the defendants' non-

compliance.  In her decision dated April 18, 2018, the Honorable Ann Donnelly, United States

District Judge, adopted that portion of the Court's Report and ordered that "the City (but not the

individual defendants) must pay the plaintiff's reasonable expenses, including attorneys' fees

caused by the defendants' noncompliance."  Martinez v. City of New York, No. 16 CV 79, 2018

WL 1835935, *3 (E.D.N.Y. Apr. 18, 2018).

Thereafter, the parties attempted to reach an agreed-upon resolution of the plaintiff's request for fees and costs. On May 9, 2018, when those efforts proved unsuccessful, plaintiff filed the instant motion seeking an award of fees and costs incurred as a result of defendants' failure to comply with their discovery obligations. In an order dated May 10, 2018, Judge Donnelly stated: "As I stated in my 4/18/2018 Order, the parties are to seek Judge Pollak's guidance in the event that they cannot resolve the question of fees and expenses. In other words, Judge Pollak will resolve this issue if the parties are unable to do so." (5/10/18 Order).[1]

Having reviewed the parties' submissions, the Court awards plaintiff's counsel $7,457.32 in costs and disbursements, and $134,610.00 in reasonable attorneys' fees.

BACKGROUND

The circumstances behind Ms. Martinez's arrest and confinement and the allegations of what occurred leading up to her injuries are set out in detail in the Court's earlier Report, along with a detailed history of the discovery disputes that led to the issuance of the sanctions recommendation. To the extent necessary to understand the context in which certain fees are requested, the Court has summarized the key procedural events; otherwise, the facts as set forth in the earlier Report are incorporated by reference herein.

Discovery in this matter commenced even before the initial conference held before this Court in April 2016. For months thereafter, plaintiff's counsel sought to determine the identities of the NYPD officers who allegedly assaulted plaintiff. Plaintiff's counsel issued numerous document requests and took multiple depositions in an effort to determine which NYPD officers

---

[1] Citations to "5/10/18 Order" refer to the electronic order of the district court, dated May 10, 2018.

were present at the time of plaintiff's detention and could testify as to the circumstances leading up to her injuries. Despite diligent efforts on the part of plaintiff's counsel, involving numerous discovery requests, emails and correspondence with the City, repeated motions to compel, and 14 Orders from this Court, it was not until December 18, 2017 – over one and a half years and 11 depositions later – that defendants, literally on the eve of the expiration of the statute of limitations and the close of discovery, suddenly disclosed that there were witnesses, documents, and entire investigative files that had not been previously produced. Contrary to the position that defendants had taken from the beginning of the case – namely, that plaintiff was lying about her injuries and that they had not occurred in the precinct as she claimed – defendants revealed, for the first time, that there were three separate investigations conducted by the NYPD into the events surrounding plaintiff's arrest and injury, and they disclosed the identity of the key witnesses that plaintiff had been seeking since the commencement of the action. Once produced, the information obtained by plaintiff's counsel altered the entire trajectory of the case, requiring plaintiff's counsel to revamp their litigation strategy, conduct additional depositions, and recall numerous witnesses now that they had been given some of the information they had been seeking all along.

In this Court's earlier Report, plaintiff's counsel was directed to provide defendants with a detailed list of fees and expenses which plaintiff's counsel contend were incurred unnecessarily as a result of defendants' conduct, including but not limited to the costs and fees expended in having to file motions and attend conferences and hearings held to adjudicate the numerous motions to compel and for sanctions, and for any depositions that were unnecessary in light of the recent disclosures or which would have to be reopened in light of the newly produced

discovery. The parties were directed to confer in order to reach an agreement regarding the amount of fees and expenses and to seek Court intervention only if they should be unable to resolve the total amount.

Plaintiff seeks $169,820 in attorney's fees, representing a total of 349.2 hours spent over a two-and-a-half-year period between May 27, 2016 and March 1, 2018, in an effort to obtain documents and witnesses with knowledge of the plaintiff's case. She also seeks an additional $3,250 for the time spent preparing the instant fee request, and $8,660.52 in expenses which counsel claim were unnecessarily incurred as a result of defendants' conduct. (Pl.'s Mot.;[2] Pl.'s Rep.[3]). In their May 9, 2018 motion seeking fees and costs as a sanction for defendant's discovery violations, plaintiff's counsel indicated that they "carefully and diligently reviewed the contemporaneous billing records" and forwarded to defendants' counsel the time and expenses they believed fell within the Court's ruling, eliminating 160 hours[4] as not related to the sanctions motion. (Id.) Defendants assert that they made a "reasonable opening offer of $40,000 to resolve past fees and costs." (Defs.' 5/16/18 Ltr at 1).[5] When the parties could not reach a resolution of the fee issue through negotiation, the plaintiff filed this instant motion.

---

[2] Citations to "Pl.'s Mot." refer to Plaintiff's Motion for Attorney Fees and Costs, dated May 9, 2018, ECF No. 137.

[3] Citations to "Pl.'s Rep." refer to Plaintiff's Reply in Support of Motion for Attorney Fees and Costs, dated May 21, 2018, ECF No. 141.

[4] Based on counsel's requested hourly rate of $500, the hours eliminated from the application represent an additional $80,000 in fees.

[5] Citations to "Defs.' 5/16/18 Ltr" refer to defendants' letter, dated May 16, 2018, ECF No. 139.

## DISCUSSION

A. Legal Standards for Sanctions - Rule 37 of the Federal Rules of Civil Procedure

As set forth in the Court's earlier Report, it is clear that sanctions may be imposed upon a party or counsel who deliberately fails to comply with a court order. See, e.g., United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 44 F.3d 1091, 1096 (2d Cir. 1995); Drywall Tapers, Local 1974 v. Local 530, 889 F.2d 389, 394 (2d Cir. 1989), cert. denied, 494 U.S. 1030 (1990). Rule 37 of the Federal Rules of Civil Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery orders. See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012). The Rule provides in relevant part that "if a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Even in the absence of a court order, Rule 37 provides for sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1).[6]

---

[6] As noted in the earlier Report, even where the court has not issued an explicit discovery order and there has not been a qualifying failure to disclose under Rule 37(c), "a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002); see also CAT3, LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016) (holding that "[w]here exercise of inherent power is necessary to remedy abuse of the judicial process, it matters not whether there might be another source of authority that could address the same issue"). In addition to the sanctions that are available under Rule 37, sanctions may also be imposed against an attorney under 28 U.S.C. § 1927. See United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1344-45 (2d Cir. 1991). Since the Court is recommending an award of fees and costs pursuant to Rule 37, this Order does not address the issue of fees under Section 1927 or the inherent authority of the Court.

In addition to other possible sanctions, the Rule requires that the court order the disobedient party, its attorney, or both, to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In considering an award of costs and attorneys' fees, the Court notes that Section 1988(b) of Title 42, United States Code, explicitly authorizes such an award in the context of civil rights litigation such as this. The statute provides that "[i]n any action or proceedings to enforce a provision of [the federal civil rights laws], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A plaintiff "prevails" for purposes of awarding fees "'when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" Integrity Commc'ns Corp. v. Baker, No. 10 CV 3238, 2013 WL 4830948, at *7 (S.D.N.Y. Sept. 10, 2013) (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)); see Kirk v. New York State Dep't of Educ., 644 F.3d 134, 137 (2d Cir. 2011) (stating "'[p]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit'") (citation omitted).

B. Attorneys' Fees

1) Calculating the Amount of Fees to be Awarded

Having established that plaintiff's counsel is entitled to fees and costs, the Court turns to a determination of exactly how much is owed. Courts employ the "lodestar" method in calculating reasonable attorney's fees, multiplying the number of hours reasonably spent by

counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). Courts in this circuit employ the same procedures for determining fees in the context of a sanction award. See, e.g., Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const., 88 F. Supp. 3d 250, 281 (S.D.N.Y. 2015).

The factors considered by the court in determining whether a fee is reasonable are "'(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained.'" Medina v. Donaldson, No. 10 CV 5922, 2015 WL 77430 at *2 (E.D.N.Y. Jan. 6, 2015) (quoting Aurora Commercial Corp. v. Approved Funding Corp., No 13 CV 230, 2014 WL 3866090, at *3 (S.D.N.Y. Aug. 6, 2014)). Although the fee must be "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," Perdue v. Kenny A., 559 U.S. at 552, the exact determination of what constitutes such a reasonable fee in a particular case is within the district court's discretion. Medina v. Donaldson, 2015 WL 77430 at *2.

It is also settled law that "[t]he fee applicant 'bears the burden of . . . documenting the appropriate hours expended'" and hourly rates. Struthers v. City of New York, No. 12 CV 242,

2013 WL 5407221, at *8 (E.D.N.Y. Sep. 25, 2013) (internal citations omitted).  It is clearly the attorney's burden to "establish his hourly rate with satisfactory evidence – in addition to the attorney's own affidavits," id. at *6 (citations and internal quotation marks omitted), and fee applications are subject to denial where the fees have not been adequately documented.  See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992).

In connection with the fee application in this case, counsel for plaintiff submitted sworn Declarations, along with invoices listing the time spent on this case, the attorney performing the services, the rate charged, and a description of the work performed.  See New York State Ass'n For Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (holding that an attorney "who applies for court-ordered compensation . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done").  (See Ex. 2;[7] Harvis Decl.;[8] Fett Decl.[9]).  Based on their contemporaneous billing records, plaintiff seeks compensation for 349.2 hours of attorney time spent in connection with their efforts to obtain discovery, plus 6.5 hours for the work involved in preparing the application for fees.  (See Pl.'s Mot. at 5 (citing John v. Demaio, No. 15 CV 6094, 2016 U.S. Dist. LEXIS 136339, at *31 (E.D.N.Y. Sep. 29, 2016); Pl.'s Rep. at 5).  In submitting these invoices, plaintiff's counsel indicates that they have excluded over 160 hours of attorney time which they do not attribute to work necessitated by defendants' discovery violations.  (Pl.'s

---

[7] Citations to "Ex. 2" refer to the "Annotated Hours" of plaintiff's counsel, filed as Exhibit 2 to Plaintiff's Motion for Attorney Fees and Costs, ECF No. 137-2.

[8] Citations to "Harvis Decl." refer to the Declaration of Gabriel P. Harvis, Esq., dated May 9, 2018, filed as Exhibit 4 to Plaintiff's Motion for Attorney Fees and Costs, ECF No. 137-4.

[9] Citations to "Fett Decl." refer to the Declaration of Baree N. Fett, Esq., dated May 9, 2018, filed as Exhibit 5 to Plaintiff's Motion for Attorney Fees and Costs, ECF No. 137-5.

Mot. at 5). They also seek an "upward departure" in terms of their hourly rates, asking to be paid at the rate of $500 per hour. (Id. at 4).

In challenging plaintiff's fee request, defendants object both to the rates charged by counsel and the number of hours billed. Accordingly, the Court addresses the rate issue first before turning to the number of hours billed.

### 2) Qualifications of Counsel

In determining the reasonableness of an hourly rate, the qualifications of counsel are a relevant factor to be considered by the Court. Courts in this district have held that "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their field." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 230 (E.D.N.Y. 2012).

Plaintiff has been represented in this action by Gabriel P. Harvis and Baree N. Fett, partners in the firm of Harvis & Fett LLP (the "Firm").[10] In his Declaration submitted in support of the fee request, Gabriel P. Harvis represents that he is a member of the New York Bar, and an attorney in good standing in the Eastern District of New York, the Southern District of New York, the Second Circuit, and the United States Supreme Court. (Harvis Decl. ¶ 4). According to Mr. Harvis' Declaration, he began practicing law in 2006 in the Office of the Corporation Counsel for the City of New York, as a member of the City Law Department's Special Federal

---

[10] Subsequent to the filing of the instant motion, plaintiff's counsel joined the firm of Elefterakis Elefterakis & Panek where both Mr. Harvis and Ms. Fett are partners.

Litigation Division, where he received formal training on federal civil rights litigation. (Id. ¶¶ 5-6). He represents that while at the Law Department, he handled "at least 101 false arrest, malicious prosecution and/or excessive force cases" in the Southern and Eastern Districts, as well as being selected to work on the McBean litigation, a major class action challenging strip search policies on Rikers' Island. (Id. ¶¶ 5-7).

In September 2010, Mr. Harvis entered private practice and founded the predecessor to the Firm, specializing in Section 1983 civil rights cases. (Id. ¶ 10). He claims that he has appeared as lead counsel in 347 federal civil rights cases in the Eastern and Southern Districts of New York. (Id. ¶ 13). He has also served as a panelist and lecturer on Section 1983 litigation and has been appointed to various committees, including the Civil Rights Committee of the NYC Bar Association. (Id. ¶¶ 14-18, 21).

Baree N. Fett has also submitted a Declaration in Support of the Motion for Attorney Fees and Costs, in which she states that she was initially admitted to practice law in 1997 in Arizona and then in New York in 1999. (Fett Decl. ¶ 3). She is a member of the district courts for the Southern and Eastern Districts of New York, as well as the Districts of New Jersey and Arizona. (Id.) From 1999 through 2006, she was an associate at the Law Offices of Alan J. Rich, Esq., litigating primarily civil rights matters involving discrimination based on disability, sexual orientation and race. (Id. ¶ 5). She began working for the Corporation Counsel's Office in the Special Federal Litigation Division in 2007. (Id. ¶ 6). While in that position, she defended the City and NYPD police officers in approximately 120 cases alleging false arrest, excessive force, and malicious prosecution. (Id. ¶ 7). In 2012, Ms. Fett joined the Firm, appearing in approximately 148 civil rights cases. (Id. ¶ 11). She also has taught several courses

10

on Section 1983 litigation and currently is the Chair of the Civil Rights Section of the Federal

Bar Association in the Southern District of New York.  (Id. ¶ 13).

Both Mr. Harvis and Ms. Fett seek to recover fees calculated at the hourly rate of $500

per hour, arguing that this is consistent with fees received by other attorneys who have been

admitted to the New York Bar for over 19 years.  (Id. ¶ 15 (citing cases); Harvis Decl. ¶ 30).

Plaintiff also seeks compensation for travel time at a fifty percent reduction, or $250 per hour,

and compensation for time spent devoted to paralegal tasks at the rate of $75 per hour.  (Fett

Decl. ¶ 19).

Defendants raise a number of arguments as to why plaintiff's counsel should not receive

the rates or the hours that they have requested.  Defendants contend that based on past decisions,

the hourly rate for both Mr. Harvis and Ms. Fett should be $350 per hour.  (Defs.' 5/16/18 Ltr at

2).  Among the cases cited by defendants to support their argument is a case that included a

recommendation made by this Court in 2016, urging a rate of $350 per hour for Harvis and Fett.

See John v. Demaio, 2016 U.S. Dist. LEXIS 136339, at *12-19; see also Shabazz v. City of New

York, No. 14 CV 6417, 2015 U.S. Dist. LEXIS 161728, at *4-10 (S.D.N.Y. Dec. 2, 2015)

(finding a rate of $350 per hour to be appropriate for both Harvis and Fett).

Defendants also appear to dispute the qualifications of plaintiff's counsel, asserting that

"Mr. Harvis also appears to exaggerate much of his prior litigation experience."  (Defs.' 5/16/18

Ltr at 2, n. 3).  Among examples, defendants challenge Mr. Harvis' claims regarding the work

that he did on the McBean class action.[11]  (Id.)  In questioning Mr. Harvis' credibility,

---

[11] Defendants also argue that, while Mr. Harvis claimed that during his time at the Law
Department he "was selected to handle the high-profile matter of Carmichel v. City of New
York," he was actually only assigned to the Carmichael litigation for a period of just two months

defendants contend that, contrary to Mr. Harvis' claim that he worked approximately 1,127 hours on McBean, he never formally appeared in the case and the case settled even before Mr. Harvis joined the Law Department.  (Id.)

In response, plaintiff has provided the Declarations of Muriel Goode-Trufant, currently Law Department Managing Attorney, and Genevieve Nelson, senior Law Department supervisor, which support Mr. Harvis' representations as to work done while at the Law Department.  Ms. Nelson's Declaration states that Mr. Harvis spent his first two years on McBean, engaging in discovery related activities, participating in witness preparation, and in the drafting of defendant's 56.1 Statement.  (Nelson Decl.[12] ¶¶ 18-22).  According to Ms. Nelson, Mr. Harvis also drafted a portion of the motion for summary judgment in McBean and obtained "specialized knowledge on all aspects of DOC search policies and procedures."  (Id. ¶¶ 23, 29).  Ms. Goode-Trufant's Declaration further corroborates Mr. Harvis' tenure in the Special Federal Litigation Division and his claim that he worked 1,127 hours on the McBean litigation.  (Goode-Trufant Decl.[13] ¶ 9).

---

and defendants suggest that his work in that case "amounted to little more than filing a notice of appearance and a two page letter response to a motion for an extension of time to complete discovery."  (Id. (citing Docket Nos. 65, 70 in Carmichael v. City of New York, No. 06 CV 1913)).  Mr. Harvis responds that the Carmichel litigation "was judged important by the Law Department and entrusted to [Mr. Harvis] based on merit" and the "reason for the brief representation" was that he "gave notice of his impending departure for private practice a short time after the case assignment was made."  (Pl.'s Rep. at 3).

[12] Citations to "Nelson Decl." refer to the Declaration of Genevieve Nelson, dated March 31, 2011, attached as Exhibit 1 to Plaintiff's Reply in Support of Motion for Attorney Fees and Costs, ECF. No. 141-1.

[13] Citations to "Goode-Trufant Decl." refer to the Declaration of Muriel Goode-Trufant, dated March 31, 2011, attached as Exhibit 2 to Plaintiff's Reply in Support of Motion for Attorney Fees and Costs, ECF. No. 141-2.

It is unclear why the City's current attorney raises these attacks against the work done by Harvis in prior cases years ago. Like it did in responding to the earlier motions for sanctions, the City continues to try to deflect attention from the conduct of the City's own lawyers in this case by impugning the integrity of plaintiff's attorneys and blaming the plaintiff's attorneys for their failure to discover the truth about the discovery problems earlier by not asking the right questions. (See Report at 36-37 (finding that "defendants' counsel's remarks at the hearing and in defendants' letter response . . . appear to shift the blame to plaintiff" as to the reason for defendants' counsel's failure to interview the arresting officer for over two years)). In making its recommendation on fees here, the Court finds it unnecessary to consider the City's continued unfortunate attacks on plaintiff's counsel.


3) Hourly Rates

In the Second Circuit, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d at 190. In making this determination, courts weigh twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 186 n.3. This calculus is locality-sensitive; in order to determine a reasonable hourly rate the court must look to "the prevailing market rates in the relevant community." Blum v. Stenson,

465 U.S. 886, 895 (1984). "The relevant community . . . is the district in which the court sits." Farbotko v. Clinton Cty., 433 F.3d 204, 208 (2d Cir. 2005) (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)).

The party seeking fees has the burden to establish the prevailing market rate. See Spencer v. City of New York, No. 06 CV 2852, 2013 U.S. Dist. LEXIS 161693, at *9 (S.D.N.Y. Nov. 12, 2013). Counsel must demonstrate "'by satisfactory evidence – in addition to the attorney's own affidavits'" that the hourly rate being requested is the prevailing market rate in that locale. Farbotko v. Clinton Cty., 433 F.3d at 209 (quoting Blum v. Stenson, 465 U.S. at 896 n.11). In this case, plaintiff's counsel have not supplied any evidence beyond the cases cited in their own affidavits. Moreover, plaintiff's counsel have not cited a single case in which they or any other civil rights attorney were awarded fees at the rate of $500 an hour in the Eastern District of New York.

Counsel do provide citations to cases awarding hourly rates of $500, but these cases were litigated in the Southern District of New York. (See Harvis Decl. ¶ 30; Fett Decl. ¶ 15). The Court notes that the Southern District has awarded different rates than this Court. See Thomas v. City of New York, No. 14 CV 7513, 2017 WL 6033532, at *3 (E.D.N.Y. Dec. 1, 2017) (stating that for a fee award in the Eastern District, "[t]hese Southern District of New York cases are not helpful in determining the appropriate rate in the present case"). Courts "'should use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" Id. (citing Simmons v. New York City Transit Auth., 575 F. 3d 170, 174 (2d Cir. 2009)); see also 246 Sears Road Corp. v. Exxon Mobil Corp., No. 09 CV 889, 2013 WL 4506973, at *10 (E.D.N.Y. Aug. 22, 2013) (finding that "district courts in the Eastern District

cannot rely on prevailing hourly rates from the Southern District in order to determine fee awards for litigation situated in the Eastern District.").

Thus, in this case, the Court looks to its own extensive experience in reviewing fee applications and to the decisions of other courts in prior cases in this district in awarding fees in comparable cases to determine what the prevailing reasonable hourly rates are in the Eastern District of New York.  See Farbotko v. Clinton Cty., 433 F.3d at 209 (holding that courts "may rely on 'judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district'"); see also Hugee v. Kimso Apts, LLC, 852 F. Supp. 2d at 298.  As the Second Circuit noted in Escalada v. Baybridge Enterprises Ltd, No. 14 CV 3639, 612 Fed. App'x. 54 (2d Cir. Sept. 9, 2015), the district court is afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters'" (citations omitted).  The Court in Escalada found no abuse of discretion by the district court, which surveyed decisions on attorneys' fees in this district and determined that the appropriate rate in an FLSA case in this district was $350 an hour, not the $500 to $600 an hour rate requested by counsel.  Id. at 54-55.

Courts within this district award fees based on "current rather than historic hourly rates" and must assess the rates in place at the time of the court's decision, rather than the rates in place at the time the work was performed.  Hargroves v. City of New York, Nos. 03 CV 1668, 03 CV 3869, 03 CV 5323, 03 CV 4646, 2014 WL 1270585, at *12 (E.D.N.Y. Jan. 6, 2014), report and recommendation adopted, 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014) (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).

15

Based on a survey of cases in the Eastern District of New York, experienced Section 1983 attorneys receive, on average, fees calculated at an hourly rate of between $300.00 and $450.00. See Thomas v. City of New York, 2017 WL 6033532, at *4; Smart v. City of New York, No. 15 CV 1505, 2017 WL 933080, at *3 (E.D.N.Y. Feb. 17, 2017) (stating that "[i]n recent years, fees have been awarded in the Eastern District of New York at an hourly rate of $300 to $450 for partners . . . in civil rights cases").

While "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their field," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d at 290, an hourly fee of $500 – the rate requested here – is highly unusual in a civil rights case. Indeed, decisions in Section 1983 civil rights cases in this district have awarded lower rates than those requested here, even where attorneys were found to be "high-caliber" and the actions were "more complicated than the usual § 1983 case." Hargroves v. City of New York, 2014 WL 1270585, at *12-13 (granting two attorneys their requested rates of $450.00 and $400.00 per hour); see also United States v. City of New York, No. 07 CV 2067, 2013 WL 5542459, at *8 (E.D.N.Y. Aug. 30, 2013) (applying rates of $550.00 per hour and $450.00 per hour to attorneys in a case requiring "extraordinary effort and skill"); Mariani v. City of New York, No. 12 CV 288, 2013 WL 11312399, at *2 (E.D.N.Y. July 1, 2013) (approving an hourly rate of $425.00 for an attorney with seventeen years' experience).

Given the Court's own knowledge of fee rates, the papers submitted by the parties, and the rates awarded in comparable cases, the Court finds that an hourly rate of $500 for plaintiff's counsel in this case is slightly higher than the usual prevailing rates in this district, even for

attorneys with extensive civil rights litigation over a period of 21 and 12 years, respectively.

See, e.g., Farbotko v. Clinton Cty. of N.Y., 433 F.3d at 209 (holding that the determination of a reasonable hourly fee requires the district court to consider the evidence proffered by the parties, in addition to taking judicial notice of rates awarded in previous cases and the court's own familiarity with prevailing rates); Hightower v. Nassau Cty. Sheriff's Dep't, 325 F. Supp. 2d 199, 212–13 (E.D.N.Y. 2004) (compiling rates since 1998 in this district).

The Court has also considered the difficult nature of this case and the amount of time and effort expended in pursuing discovery despite the obstacles presented by defendants. Although defendants cite to this Court's earlier recommendation in John v. Demaio, awarding an hourly rate of $350 to Ms. Fett (Def.'s 5/16/18 Ltr at 2-3 (citing 2016 U.S. Dist. LEXIS 136339)), the Court notes that that case presented a far different set of circumstances than the instant case. There, this Court noted that "defendants' Offer of Judgment was accepted before there was any motion practice; there were apparently no discovery disputes or depositions, and to the extent there were any complex legal issues involved, none were ever brought to the stage of briefing." 2016 U.S. Dist. LEXIS 136339, at *18. Moreover, that decision was issued more than two years ago, and in the intervening years, rates generally have risen, and both Ms. Fett and Mr. Harvis have continued to gain relevant experience. See Thomas v. City of New York, 2017 WL 6033532, at *5 (awarding an hourly rate of $450 in a Section 1983 case for an attorney previously awarded a rate of $425 "to take into account increased costs over time and [counsel's] increased experience as an attorney"). Thus, the Court's analysis in John v. Demaio, a two year old case with "no discovery disputes or depositions" is not a helpful metric for assessing the work completed in this case.

Defendants' citation to <u>Shabazz v. City of New York</u> to justify an award of $350 is similarly unavailing. In that matter, the initial pretrial conference in the case was held on March 31, 2015, and less than three months later, on June 25, 2015, plaintiff accepted defendants' offer of judgment. <u>See</u> 2015 U.S. Dist. LEXIS 161728, at *2-3.

In light of the foregoing, this Court declines to award plaintiff's counsel's requested hourly rate of $500.00 but instead finds that a rate of $425 per hour should be applied in this matter. The Court recognizes that counsel in the instant case have collectively litigated over 716 civil rights cases in this district and in the Southern District of New York, and both have extensive trial experience as detailed in their papers. Moreover, counsel spent an incredible amount of time in this case conducting what eventually turned out to be useless discovery: other attorneys would have given up and not persisted in the face of defendants' noncompliance and outright defiance of court orders. Considering that the claims involved in this action were relatively straightforward claims of excessive force that could have been litigated in a quarter of the time spent, had the defendants produced discovery in accordance with the Federal Rules, the Court finds the hourly rate of $425 to be more than justified. <u>See</u> <u>In re Nassau Cty. Strip Search Cases</u>, 12 F. Supp. 3d 485, 498 (E.D.N.Y. 2014) (awarding $450.00 per hour for "first rate" representation in a large civil rights class action).

As for the $75 per hour requested for the work performed on paralegal matters in this case, the average compensation rate for non-attorney support staff is $90 per hour in this district. <u>See, e.g.</u>, <u>Ferrara v. PI Trucking Corp.</u>, No. 11 CV 0661, 2011 WL 7091562, at *4 (E.D.N.Y. Dec. 20, 2011); <u>Finkel v. Alltek Sec. Sys. Group., Inc.</u>, No. 10 CV 4487, 2011 WL 4543498, at *10 (E.D.N.Y. Aug. 26, 2011), <u>report and recommendation adopted as modified</u>, 2011 WL

4543495 (E.D.N.Y. Sept. 29, 2011) (approving hourly rate of $85-$90 for work performed by a paralegal). Thus, the Court finds that the requested hourly rate of $75 per hour is reasonable for the time spent on paralegal tasks in this case.

Accordingly, the Court finds that a reasonable hourly rate for plaintiff's counsel's work is $425.00. The Court further finds a rate of $212.50 per hour for travel time and a rate of $75 per hour for time spent on paralegal tasks to be appropriate.

    4)  <u>Number of Hours Billed</u>

Having determined a reasonable hourly rate to use in compensating plaintiff's counsel, the Court now turns to determining the reasonableness of counsel's claimed number of hours. This circuit generally requires all fee applications to be accompanied by contemporaneously created time records; only in the "rarest of cases" will failure to provide such documentation be excused. <u>Scott v. City of New York</u>, 643 F.3d 56, 57-59 (2d Cir. 2011) (holding that, without contemporaneous time records, even the district court's "personal observations" of an attorney's work could not constitute grounds for awarding relief and instructing that "[n]o accommodation is to be made for travel time or out-of-court preparation because that will vary from attorney to attorney and issue by issue"); <u>New York State Ass'n For Retarded Children, Inc. v. Carey</u>, 711 F.2d at 1154 (explaining that "[a]ll applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done").

Even if counsel provides some contemporaneous time records in support of an application for fees, a trial court may reduce the claimed hours and, accordingly, counsel's award, where proposed billing schedules are unsupported by evidence or objectively unreasonable.  See Hensley v. Eckerhart, 461 U.S. 424, 433-434 (1983) (explaining that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly.  The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended'") (internal citations omitted).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly."  Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, 2013 WL 5407221, at *8-9 (reducing fees because those requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorney's fees because the attorney's billing records contained duplicative entries, and his litigation of the suit made apparent his "lack of experience"); Quinn v. Nassau Cty. Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Where entries on a time sheet are vague or duplicative or otherwise insufficient, a court need not itemize individual entries as excessive; rather, it may make an "across-the-board reduction, or percentage cut, in the amount of hours." T.S. Haulers, Inc. v. Cardinale, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)); see also Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's 20% reduction in attorneys' fees for "vagueness, inconsistencies, and other deficiencies in the billing records"); Moore v. Diversified Collection Servs., Inc., 2013 WL 1622949, at *4 (reducing attorney's fees by 10% due to the "vagueness and incompleteness" of some of the entries); Tucker v. Mukasey, No. 03 CV 3106, 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008) (reducing fees by 30% in part because although some entries were detailed, others were vaguely worded or inconsistent); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97 (S.D.N.Y. 2000) (concluding that "the vagueness of some of the time records prevents the Court from determining why plaintiffs were required to expend so many hours on these tasks" and accounting for this factor in reducing fees by 15%); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994).

In response to plaintiff's request for fees, defendants submitted a "mark-up" of plaintiff's invoices, striking almost 71% of the time entries and 97% of plaintiff's costs. Among other things, defendants struck plaintiff's work on briefing and arguing some of the motions to compel and many of the depositions that were taken. (See Ex. 3[14]). Defendants contend that there

---

[14] Citations to "Ex. 3" refer to the "Defendants' Mark-Up of Annotated Hours" of plaintiff's counsel, filed as Exhibit 3 to Plaintiff's Motion for Attorney Fees and Costs, ECF No. 137-3.

should be no compensation for 1) fees and costs related to the depositions of defendants Forgione and Weitzman; 2) the depositions of individuals plaintiff later named as defendants; 3) the depositions of non-party witnesses; 4) time spent scheduling depositions; 5) time spent reviewing discovery responses and document productions; 6) amending the complaint; 7) inspecting Central Booking; 8) filing new document requests; 9) requests for adjournments and extensions; 10) meetings re case strategy etc.; 11) scheduled discovery/status conferences not related to motions to compel or for sanctions; 12) fees related to identifying Forgione and Weitzman; 13) fees incurred in outlining and discussing purported deficiencies and in meet and confers; 14) improper motions to compel or motions to compel which were denied.  (Defs.' 5/16/18 Ltr at 3-4).

Defendants argue that these tasks were not undertaken as a result of defendants' conduct but represent the types of fees and costs normally incurred in the course of discovery and litigation.  (Id. at 4) (citing Romeo & Juliet Laser Hair Removal v. Assara I, LLC, No. 08 CV 442, 2013 U.S. Dist. LEXIS 93691, at *8-9 (S.D.N.Y. July 2, 2013) (stating that in seeking costs associated with defending against an unsuccessful motion to compel, "a party is entitled only to the 'costs that [the party] would not have incurred but for' the other party's conduct").  Defendants assert that plaintiff's counsel would have had to review discovery responses and documents produced by defendants and would have had to take depositions of witnesses, amend the pleadings and prepare for and attend court conferences regardless of defendants' conduct and therefore all of these tasks should be eliminated from the fee application.  (Def.'s 5/16/18 Ltr at 5).

Defendants raise several other challenges to the hours requested, arguing that the application seeks excessive numbers of hours for certain tasks,[15] including 1) 51.3 hours spent in preparing a six page reply in connection with the December 30, 2017 motion for sanctions; and 2) 7.6 hours for the May 23, 2017 motion to compel which was a two and one half page letter.[16] (Id.)

The Court also takes notice that four depositions – those of officers Forgione, Weitzman, DiGennaro, and Laliberte – had to be reopened following the defendants' production of the delinquent discovery, and that plaintiff does not seek compensation for time spent or on costs related to, these rescheduled depositions.

The Court has reviewed the fee application in the context of the events leading up to the issuance of the sanctions order.  To assist in understanding what plaintiff has requested in terms of fees, it is necessary to review the chronology of events in conjunction with the entries in the fee application.

5) Chronology of Discovery Requests, Motions to Compel and Court Orders

a) On April 15, 2016, at the initial conference held before the Court, the City was Ordered to obtain plaintiff's medical records, determine the officers' identities,[17] and respond to written discovery by May 20, 2016.  (4/15/16 Minute Order, ECF No. 10).

---

[15] The Court has attempted to verify defendants' calculations of the total number of hours spent on certain filings and tasks by examining plaintiff's billing records, but in some instances has been unable to independently replicate defendants' calculations.

[16] See discussion infra at 33-34, 46.

[17] On April 14, 2016, plaintiff served defendants with her first set of document requests and interrogatories.  Interrogatory Number 1 sought the identities of 12 categories of NYPD officers in the 107 Precinct on the night of Ms. Martinez's arrest.  (See Pl.'s 4/16/16 1st Set of Interrogs. and Reqs. for Prod. ("Pl.'s 4/16/16 Discovery Requests"), attached as Exhibit A to Pl.'s 7/6/16 Mot. to Compel, ECF No. 14-1)).

In her fee application, plaintiff has requested fees for the time spent by counsel from May 27, 2016 until June 27, 2016, reviewing the defendants' discovery responses, outlining the deficiencies in the responses, and considering requests from the City's attorney for more time to try to identify the officers' identities as Ordered by the Court.

Although plaintiff may not have had to undertake a certain amount of the time listed here in outlining defendants' deficiencies had the defendants provided the officers' names as Ordered, the Court agrees with defendants that this time is not compensable as part of the sanctions ordered by the Court. It is likely that, in the ordinary course of litigation, plaintiff's counsel would have spent time in the initial phases of discovery reviewing and outlining defendants' responses as the parties attempted to sort out who was involved in the incident. The same cannot be said of later repeated efforts to obtain this information. As a result, the Court is not awarding the 3.8 hours spent during this initial time period.

    b) On June 28, 2016, when more than 60 days had passed from the time of plaintiff's original discovery requests, and the City still had not provided the identity of any of the officers who had been involved in or who witnessed the injury to plaintiff, the Court held a conference and then issued a second Order, requiring defendants to identify the officers who interrogated plaintiff within 30 days or the Court would entertain an application to produce the photographs and memo books sought by plaintiff. (6/29/16 Minute Order, ECF No. 13).

Plaintiff seeks fees for the time spent by Mr. Harvis reviewing the file in preparation for the June 28, 2016 Court conference, at which he argued for the production of photographs to assist in the identification of the officers – a request the City vigorously opposed. Unlike the period in May and early June 2016, the City's refusal to provide the photographs and memo books despite having had 60 days to identify the officers without success, necessitating an application and a second Court Order, was time that plaintiff's counsel should not have had to

spend had defendants provided the information and files that ultimately were provided over a year and a half later. Thus, the Court finds these 1.3 hours are compensable as part of this motion.

c) On July 6, 2016, plaintiff filed her first motion to compel. (Pl.'s 7/6/16 Ltr at 1, ECF No. 14). Since the City still had not identified the officers who interrogated plaintiff, the Court ordered the production of photographs in an effort to determine the identity of the officers. (7/27/16 Minute Order, ECF No. 17).

Plaintiff seeks compensation for the time spent preparing the motion to compel, and time spent participating in a telephone conference on July 27, 2016 to address the motion to compel. Plaintiff also seeks compensation for work done reviewing other documents such as the search warrant, TAC Plan, and the CCRB files, in an effort to learn the identities of the officers which the City still had not provided. For the same reasons stated above, this motion to compel would have been entirely unnecessary had the City produced the records identifying the officers as Ordered by this Court. Given this Court's experience over 20 plus years supervising similar cases brought against the City, defendants' counsel's repeated refusal to provide photographs to expedite the identification of the officers was unusual and concerning to the Court at the time. It was perhaps a harbinger of the delays and obfuscation that continued with this case. The Court therefore finds that the hours associated with the drafting, filing and arguing the motion to compel are compensable.

Once the City complied with the Court's Order and counsel received the photographs, counsel then reviewed them with their client and discussed the results of the review with the assigned City attorney. Although that time would not have been necessary had the City provided the identities of the officers, the Court considers this time to be something that the plaintiff's counsel would normally have spent, particularly if they were concerned that not all officers had

been identified.  Thus, the Court is not including 2.7 hours expended during this period, but does award the remaining hours associated with the motion to compel.

On August 2, 2016, counsel prepared correspondence to send to the City's attorney prior to a meet and confer relating to the City's other deficiencies in responding to discovery.  It is unclear what other deficiencies are encompassed in this entry and therefore, the Court excludes 3.4 hours from the calculation of fees relating to the sanctions motion.

Also, on August 2, 2016, August 5, 2016, and August 15, 2016, plaintiff's counsel lists several entries involving meetings, emails and phones calls re "strategy."  These three entries, totaling 0.4 hours are not sufficiently detailed for the Court to determine whether they relate to the motion to compel or the continuing search for the officers' identities, and therefore, are excluded from the calculation.

d) On August 16, 2016, plaintiff moved to compel certain additional discovery, including an inspection of the Precinct, along with the officers' photographs and memo books, noting that the deadline for production of the officers' identities had expired with no information being provided by defendants.  (Pl.'s 8/16/16 Ltr at 1, ECF No. 18).  In a letter dated August 18, 2016, the City took the position that the motion was "moot" because the City had "identified all the individuals who 'interrogated' plaintiff or participated in plaintiff's arrest."  (Defs.' 8/18/16 Ltr at 1, ECF No. 19).  The defendants' assertion was clearly not accurate as demonstrated by subsequent events.

Plaintiff seeks fees for time spent drafting this motion to compel and preparing for the court conference dealing with this motion.  Defendants appear not to dispute that this time, totaling 3.7 hours, was compensable, given that these entries were not struck out on the invoice.

e) On August 19, 2016, when defendants' counsel would not agree to produce certain information before October 3, 2016, despite the fact that it had been demanded almost six months earlier, the Court held a conference, after which it issued an Order directing defendants to produce various information and photographs by September 9, 2016, and to arrange for an inspection of the Precinct before September 30, 2016. (8/19/16 Minute Order, ECF No. 20).

Although defendants do not appear to object to the time spent at the conference or to the time spent by plaintiff's counsel in preparing for the conference, they do object to entries of 0.2 on August 16, 2016, and 0.2 on August 23, 2016, relating respectively to an exchange with the City's attorney regarding overdue discovery and a case planning meeting with the client. The Court concludes that the case planning meeting on August 23 should not be included in this fee award due to the inadequate explanation in the entry as to the topic addressed in the meeting, but the conversation with City counsel is clearly covered because, in the absence of his failure to comply with the Court's discovery Orders, no such email exchange would have been required. As a result, the Court does not include the 0.20 spent in a meeting with the client on August 23, 2016.

f) On September 26, 2016, plaintiff's counsel moved to compel the production of "labeled photographs" and memo books which the Court had earlier ordered, but which still had not been produced. (Pl.'s 9/26/16 Ltr, ECF No. 21). Defendants raised a new objection to production on grounds of "law enforcement privilege" and represented that "any identification of officers beyond those already identified would be futile as there was no evidence any other officers interacted with plaintiff on the night of the incident." (Defs.' 9/28/16 Ltr at 2, ECF No. 22).

Not only was this a completely frivolous objection, but, as subsequent disclosures proved, defendants' counsel's representation that no other officers had interacted with plaintiff was false. Nevertheless, defendants object to counsel's fee requests for time spent on September 9, 12, and 14, 2016, relating to time spent dealing with defendants' counsel on the failure to provide the photographs as requested. The Court finds that had the City complied with the Court's Order and not continued to raise frivolous objections, this time would have been unnecessary. Therefore, the Court is including the hours spent during this time in the fee award.

g) On October 3, 2016, the Court issued its second Order in response to plaintiff's motion to compel. (10/3/16 Order, ECF No. 24).

Leading up to this Order, plaintiff's counsel expended time reviewing defendants' letter, asserting that defendants were in compliance with the Court's Order; plaintiff's counsel also spent time discussing the letter between themselves. Defendants have not objected to the inclusion of this time but strangely object to the time spent by plaintiff's counsel drafting a letter motion to compel, discussing the issues with counsel for defendants, and appearing for a telephone conference to address the defendants' continued noncompliance with Court Orders. The Court Ordered plaintiff to "provide defendants with a narrower time frame between which the alleged incident occurred" and Ordered defendants to produce responsive photographs within one week of that information. (10/3/16 Order at 2). The Court further Ordered defendants' counsel to "see if there was any way to determine if other officers outside of the precinct officers and the previously identified intelligence officer were present at the time of plaintiff's alleged incident." (Id.)

The Court includes the time spent on the motion to compel as part of the sanctions motion, again noting that had the defendants produced the investigative files produced over a year later, all this time would have been unnecessary.

h) Following the issuance of the Court's October 3, 2016 Order, the plaintiff received and reviewed certain photographs and identified several additional officers. (Pl.'s 10/21/16 Ltr, ECF No. 25). Based on this review and plaintiff's counsel's belief that they had finally identified the proper defendants, plaintiff filed an Amended Complaint on November 17, 2016, naming NYPD Lieutenant Jason Weitzman and Sergeant Jason Forgione as defendants, in lieu of the John Doe defendants previously sued. (See generally Am. Compl.).

Between October 4, 2016 and the filing of the Amended Complaint on November 17, 2016, counsel spent time reviewing the photographs received, outlining and communicating with

defendants' counsel with respect to continued deficiencies in defendants' responses, attempting to determine the officers' service addresses, which defendants' counsel was required to provide, and drafting the motion to amend, naming Forgione and Weitzman as defendants based on the information received from defendants.

Defendants object to all of this time, without explanation. However, following the defendants' belated disclosures in December 2017, both Forgione and Weitzman remain defendants in plaintiff's Second Amended Complaint; therefore, work on this motion to amend was not wasted time or expense. The Court declines to award plaintiff 2.6 hours spent on the motion to amend in 2016.[18]

The time spent reviewing the photographs and seeking additional information from defendants relating to the identification of the officers, however, could have been avoided had the December 2017 disclosures been timely provided, and this time was thus unnecessary and should be included in the fee award.

There are several entries during this period that are vague and it is impossible to determine if the time reflected work on this aspect of the case or some other issues. Thus, there are two emails of 0.2 each on October 17, 2016 "re timing of incident;" it is unclear what this refers to. There is also an entry of 0.1 for a meeting on October 24, 2016, with no description as to topic other than "case planning." The Court has also excluded these times from the calculation, but finds that plaintiff should be reimbursed for the remainder of the entries between October 20 and November 18, 2016 relating to the review of the photographs.

    i)   On January 5, 2017, defendants were Ordered to produce certain personnel and disciplinary files for the named defendant officers, and the parties were directed to

---

[18] Plaintiff also seeks hours spent in connection with the filing of the Second Amended Complaint filed in 2018. (See discussion infra at 47).

conduct depositions. (1/5/17 Minute Order, ECF No. 39). As it soon became clear from the depositions, the officers all denied any involvement or knowledge as to what had occurred to cause plaintiff's injuries and additional discovery disputes arose.

Among the entries for which fees are sought during this period is time spent pursuing the inspection of the precinct. In August 2016, plaintiff had requested an Order directing the defendants to arrange for an inspection of the precinct area where plaintiff allegedly suffered her injury and the Court Ordered that such an inspection be conducted by September 19, 2016. (See 8/19/16 Order).[19] Again, in violation of the Court's Order, no such inspection had occurred as of January 2017, and there are a series of entries during the time period of January 2017 in which plaintiff's counsel continued in their efforts to obtain the City's voluntary compliance with prior Court Orders. This time is compensable because it was only required as a result of the City's general pattern of simply ignoring this Court's Orders.

Also, during the January 5, 2017 conference, this Court Ordered the production of the disciplinary files for the two named officers, Forgione and Weitzman. Time entries after that Order from January 23, 2017 through February 21, 2017 reflect plaintiff's counsel's continued efforts to obtain voluntary compliance with the defendants' discovery responsibilities, including numerous emails, phone conferences, and meetings with the assigned Assistant Corporation Counsel ("ACC") in an effort to obtain the disciplinary records that had been ordered produced, and discussing other continued deficiencies in defendants' production. Defendants have attempted to eliminate all of these time entries from the sanctions analysis presumably based on their argument that these are the types of normal activities counsel engages in when conducting discovery. This Court disagrees and finds that once again, the pattern of conduct exhibited by

---

[19] Citations to "8/19/16 Order" refer to the Electronic Order of this Court, dated August 19, 2016, ECF No. 20.

the City in responding to the discovery obligations imposed by the Federal Rules and more importantly, in obeying specific Orders of the Court, was one of complete disregard, and should not be considered part of normal litigation practice.

The Court has excluded an entry on January 20, 2017 of two hours spent "digesting D431-577." Time spent digesting discovery responses would have had to be done regardless of the defendants' conduct.

j)   On March 2, 2017, this Court held a conference to address the status of discovery.

Although plaintiff's counsel has designated time entries in preparing for, traveling to, and attending this conference, the Court excludes these 3.1 hours because the conference was mainly a routine scheduling and status conference.

k)   On May 19, 2017, counsel for plaintiff filed a letter seeking to compel the production of the complete personnel file and disciplinary records for defendant Forgione that defendants had not disclosed prior to his deposition despite an Order from this Court. (Pl.'s 5/19/17 Ltr at 1, ECF No. 45).

Between the scheduling conference held on March 2, 2017 and the May 19 letter motion to compel, plaintiff's counsel spent time dealing with the continued quest to identify responsible officers, scheduling and preparing for depositions, and dealing with additional discovery deficiencies. The main focus was the preparation for the deposition of Forgione, including correspondence with defendants' counsel in an effort to obtain Forgione's personnel records which the Court had Ordered produced almost six months earlier in January. Although defendants object to these entries in the plaintiff's billing invoices on the theory that this deposition was necessary and plaintiffs' preparation time would have been required in any event, plaintiff's May 19 2017 letter made it clear that, prior to the deposition, defendants had failed to provide all of Forgione's disciplinary records and personnel file, instead producing records for only certain time periods. Among the missing records were the files for the year of plaintiff's

arrest and for the period between 2012 and 2013 when defendants were conducting an IAB investigation into a complaint lodged by another individual which implicated Forgione's credibility. Although defendants argued after the fact that "core" material had been provided, they never notified the Court or counsel prior to the Forgione deposition that they were unilaterally withholding discovery and they never provided a satisfactory explanation as to why this information was not subject to production. The Court finds it particularly concerning that the information withheld related to a period of time surrounding plaintiff's arrest and the absence of an explanation as to why these records were not provided suggests an intention to withhold material. Accordingly, because plaintiff's counsel did not have all of the relevant documentation necessary to prepare for and take this witness' deposition, and a subsequent deposition was required (see Defs.' 8/14/18 Ltr[20]), the Court is Ordering reimbursement of the fees incurred during this period.

The Court is also granting the request by plaintiff for time spent seeking the opportunity to reopen Forgione's deposition, including entries from May 11 and May 19, 2017. Although defendants argue that Forgione would have been deposed in any event since he remains a defendant in the case, and therefore, plaintiff should not be reimbursed for any of the time spent preparing for and taking Forgione's deposition, the Court finds this time is compensable: the first deposition was conducted without important discovery that defendants were unilaterally withholding, and while plaintiff seeks reimbursement for time spent attempting to get defendants to agree to reopen the deposition, plaintiff does not seek reimbursement for the time spent conducting the second deposition.

---

[20] Citations to "Defs.' 8/14/18 Ltr" refer to defendants' letter, dated August 14, 2018, ECF No. 154.

l)   On May 23, 2017, plaintiff also moved to compel the production of certain other outstanding items that plaintiff had requested and that this Court had previously Ordered be produced by September 30, 2016.  (Pl.'s 5/23/17 Ltr at 2, ECF No. 49 (citing Order, dated August 19, 2016)).  In addition, plaintiff moved to compel compliance with this Court's January 5, 2017 Order requiring production of various personnel and disciplinary files.  (Pl.'s 5/23/17 Ltr at 2).

Given that the time spent between May 12 and May 23 2017, seeking voluntary compliance from defendants and then moving to compel and for sanctions would have been unnecessary had defendants simply complied with the Court's Orders and their own discovery obligations under the Federal Rules of Civil Procedure, the Court includes the majority of these entries in the sanctions award.  Time spent in connection with the motion to compel is also recoverable, and indeed, it appears that defendants do not oppose fees for this time.

Defendants do object to the amount of time spent on the May 23, 2017 motion to compel. (Defs.' 5/16/18 Ltr at 5).  Defendants claim that plaintiff seeks fees for 7.6 hours of time spent on this motion to compel.  The Court has examined plaintiff's billing records and remains unsure how defendants have reached this total, as the Court calculates 6.8 hours spent on this motion. Moreover, the Court notes that while defendants characterize this letter as a "two and a half page letter motion to compel," the motion in question moved to compel outstanding discovery and also served to respond to two previous letter motions concerning discovery filed by defendants, on May 19, 2017 and May 23, 2017.  (See Pl.'s 5/23/17 Ltr[21]).  In moving to compel, plaintiff's counsel were required to assess the discovery previously produced in order to assess what was missing.  This time included reviewing "tranches of unlabeled documents stamped with duplicative Bates numbers" amounting thousands of pages, and examining defendants' productions which included "in several instances . . . only closing reports or partial files."  (Id.)

---

[21] Citations to "Pl.'s 5/23/17 Ltr" refer to plaintiff's letter, filed May 23, 2017, ECF No. 49.

In light of the nature of the work required to file the motion to compel, and the fact that plaintiff was also responding to two separate letters from defendants, the Court finds this time is compensable.

Defendants object to the time spent in May 2017, reviewing defendants' production and taking the first and second depositions of Lieutenant Robinson.  Lieutenant Robinson was one of the NYPD personnel in the Precinct the night of plaintiff's arrest.  (Report at 6).  Since he resembled plaintiff's description of the involved officers, defendants provided photographs of and memo books from Lieutenant Robinson to plaintiff in 2016 in response to plaintiff's request. (Id.)  Plaintiff subsequently prepared for and took Robinson's deposition on May 18, 2017.  Due to a "work-related emergency, the witness had to leave the deposition early" and a second deposition of Robinson was therefore conducted on June 27, 2017.  (See Pl.'s 5/19/17 Ltr).  The subsequent disclosures from defendants, received after the second Robinson deposition, revealed that Robinson was involved in conducting the previously undisclosed Internal Affairs Bureau investigation into Ms. Martinez's injuries.  Due to defendants' failure to timely provide this information, plaintiff's depositions of Robinson likely involved irrelevant lines of questioning and failed to address important lines of inquiry of which plaintiff's counsel was unaware at the time.  The Court therefore awards plaintiff fees incurred in connection with Robinson's depositions.

> m)  On May 31, 2017, plaintiff submitted a third letter, complaining that although subpoenas had been provided for six non-party NYPD officers, identified by the City as being expected to offer relevant testimony, defendants refused to produce these witnesses, and indeed, moved to quash on the grounds that the witnesses "have no or minimal connection to plaintiff."[22]  (Pl.'s 5/31/17 Ltr, ECF No. 52; see also Defs.' 6/1/17 Ltr at 1, ECF No. 53).

---

[22] It is unclear why the City initially identified these witnesses as being expected to offer relevant testimony.

Although the Court finds that the 0.5 hours spent preparing deposition subpoenas is part of the ordinary course of litigation and not the result of the defendants' refusal to produce witnesses, the Court finds that time spent negotiating with defendants' counsel over witnesses that defendants had initially listed as having relevant testimony, but subsequently refused to produce, is compensable, wasted time. Similarly, time spent writing to the Court and researching the issue is also covered.

    n)   On June 2, 2017, the Court held a conference at which time defendants were Ordered to provide a written response to plaintiff's May 23, 2017 letter, indicating if they had provided the listed information. (6/2/17 Minute Order, ECF No. 54).

Time spent in preparation for, travel to and from, and attendance at the conference is chargeable to defendants. Defendants do not appear to object to this time.

    o)   On June 29, 2017, after a telephone conference with the parties, the Court entered yet another Order requiring defendant to produce certain information, including documents previously ordered by the Court to be produced. (6/29/17 Minute Order, ECF No. 58).

Prior to the June 29 conference, plaintiff's counsel expended time dealing with the defendants' attorney in an effort to obtain compliance, including reviewing the letter Ordered by the Court on June 2, discussing the missing documents, and preparing for and attending the conference. This time is compensable.

However, defendants object to time spent in connection with the deposition of Officer Mendez, as not clearly related to the instant dispute. Officer Mendez remains a defendant following the filing of plaintiff's Second Amended Complaint and is alleged to have failed to provide plaintiff with medical treatment. (See SAC[23] ¶¶ 46-49). Officer Mendez is also alleged

---

[23] Citations to "SAC" refer to plaintiff's Second Amended Complaint, dated January 23, 2018, ECF No. 99.

to be one of the officers who eventually transported plaintiff to the hospital.  (Id. ¶¶ 50, 55).

Mendez's deposition was also not reopened following the delayed discovery productions.  The

Court therefore finds that Mendez's deposition would have been conducted even absent

defendants' discovery delays and denies plaintiff's request for 2.1 hours spent preparing for and

conducting this deposition.

The Court, however, awards the 3.6 hours spent preparing for and conducting the

Laliberte deposition.  Defendants eventually agreed with plaintiff that Laliberte needed to have

his deposition reopened in light of the discovery that had not yet been provided to plaintiff at the

time of the first deposition.  (See Defs.' 8/14/18 Ltr).

> p)  On July 11, 2017, plaintiff filed a letter motion for sanctions pursuant to Fed. R. Civ.
> P. 37(b)(2)(A). (Pl.'s 7/11/17 Ltr, ECF No. 61).  Despite two prior Court Orders,
> defendants still had not provided critical documents, and plaintiff's counsel was
> forced to take four (4) depositions without these documents.  Two days beyond the
> deadline set by the Court for producing the discovery, defendants submitted a letter
> on July 12, 2017, stating that plaintiff's counsel could go to Queens Central Booking
> and the 107 Precinct to review the documents the plaintiff had been seeking for
> months.  (Defs.' 7/12/17 Ltr, ECF No. 62).  As for the two additional officers who
> were scheduled to be deposed that week, defendants again raised an objection that
> these officers had no relevant knowledge.  (Id.)

Plaintiff seeks compensation for the time spent from July 5, 2017 through July 11, 2017,

requesting that the City produce the medical treatment of prisoner form, which counsel had been

attempting to obtain and the defendants had been ordered to produce for months.  Also during

this time period, plaintiff's counsel's time records show time spent preparing the motion to

compel.  Based on the limited information available at the time, and defendants' representation

in response to the motion for sanctions that some of the documents at issue would be produced

that day, as well as believing that defendants' counsel was simply overwhelmed by his caseload,

but was not deliberately trying to delay the case, the Court declined to issue sanctions and

granted an extension of time to complete discovery to September 11, 2017. Defendants have argued that plaintiff should not receive compensation for motions that were not granted. However, in retrospect, knowing what the Court now knows, the Court should have issued a sanctions Order at this time. Thus, even though the plaintiff was not successful in seeking sanctions in July 2017, the Court finds the time spent on this motion to be fully compensable as a result of defendants' failure to comply with discovery obligations and this Court's Orders.

Although defendants appear not to object to time spent on the motion to compel, they have reduced the plaintiff's request for fees by eliminating any of the efforts of counsel in dealing with the City's attorney in an effort to meet and confer. If the Court were to limit its fee award in this matter only to the time spent by counsel in petitioning the Court for relief and not for time spent attempting to reach a resolution without Court involvement, the Court would be encouraging parties to ignore the "meet and confer" requirement of the Local Rules. The meet and confer requirement is designed to encourage attorneys to resolve discovery disputes on their own. Denying fees for time spent engaging in a meet and confer would discourage counsel from making such an attempt, filing motions instead with the court, for which they may be compensated. This Court declines to recommend that such a distinction be implemented.

q) On September 12, 2017, plaintiff moved again to compel the production of discovery which had previously been requested and ordered. (Pl.'s 9/12/17 Ltr at 2, ECF No. 69). Defendants' counsel argued that "[t]he information sought by plaintiff is highly duplicative of material already produced by defendants and therefore there is no good cause to reopen discovery to obtain these materials." (Defs.' 9/19/17 Ltr at 1, ECF No. 71).

Between the time the parties submitted letters relating to the July motion and the September 12, 2017 motion to compel, the plaintiff conducted a number of depositions of Officers Donovan, Rehman, Russo, and Seddio. The Court finds the time spent on the depositions of Donovan and Rehman to be compensable. The day before Donovan's deposition

and two days before Rehman's deposition, defendants had yet to comply with this Court's August 19, 2016 and June 29, 2017 Orders requiring the production of the Queens Central Booking medical screening form, medical treatment of prisoner form, and Central Booking command log. (See Pl.'s 7/11/17 Ltr). Plaintiff therefore had to complete these two depositions without this necessary discovery.

As for the depositions of Russo and Seddio, it is not clear why these depositions or the time spent in preparing for them would be included in this request for fees. Both officers remain defendants in plaintiff's Second Amended Complaint and were not re-deposed. The Court therefore does not compensate plaintiff for the 5.6 hours spent on these two depositions. However, time spent seeking the production of previously requested information from defendants' counsel, such as the prisoner movement slip, as well as time seeking Russo's memo book, which was requested prior to and after his deposition, is compensable, as is time spent seeking information relating to materials that had not been provided prior to certain depositions.

In August, counsel spent time preparing for and taking the Weitzman deposition. Much of the time taken during Weitzman's deposition was consumed by plaintiff's efforts to understand certain abbreviations related to his scheduled assignments – something that would have been unnecessary had defendants' counsel been more forthcoming in its discovery production. (See Report at 16-17).

r)   On September 21, 2017, this Court held a conference to address the issues raised in counsel's letters. Plaintiff sought to conduct an inspection of Queens Central Booking, and reiterated a request to inspect the log and the original of an illegible Medical Treatment of Prisoner Form. (Id.) Although the Court had Ordered defendants to arrange for such inspection, and the ACC had agreed, the City reneged on the agreement, objecting on grounds of relevance and the fact that discovery in the

case had closed as of August 15, 2017, with the exception of two remaining depositions. (Defs.' 9/19/17 Ltr at 3).

Counsel for defendants do not seem to oppose the time spent prior to September 21 relating to the preparation of the motion to compel or appearing at the conference before the Court. However, they do oppose the entries relating to counsel's efforts to obtain discovery from the City. This discovery had been Ordered by the Court. Simply because defendants did not agree with the Court's Order was not a basis to ignore it and therefore, plaintiff's efforts to obtain compliance should be compensated.

      s)   During the September 21, 2017 Court conference, plaintiff's counsel reported that defendants had withheld certain documents from production, including buy reports and DD5s that had been requested long before Sergeant DiGennaro's deposition. (9/21/17 Tr. at 2, ECF No. 77). Despite plaintiff's request for such documents in April 2016, defendants' counsel argued they were not relevant because they "were [not] related to excessive force," and contained confidential information. (Id. at 3:25-4:2). However, there was no dispute that defendants never previously identified these documents as privileged and never submitted a privilege log or asked the Court for a protective Order. Counsel simply decided not to disclose them. At the conclusion of the proceeding, this Court issued an Order requiring defendants to produce not only the DD5s and buy reports, but a number of other documents sought by plaintiff, as well as an Order to arrange for an inspection that had previously been Ordered. (9/21/17 Minute Order, ECF No. 72).

The time spent by plaintiff's counsel in attempting to obtain the DD5s from Sergeant DiGennaro both before and after the deposition is compensable. Not only did defendants represent that these documents were irrelevant but DiGennaro's deposition testimony about the content of these documents (which neither he or plaintiff's counsel had at the time he testified) later proved to be directly contrary to statements made in the documents. This time and the time spent during his deposition is compensable because had the documents been produced prior to the deposition and made available to the witness, the deposition would not have had to be retaken. (See Defs.' 8/14/18 Ltr).

Similarly, time spent reviewing Weitzman's deposition and preparing a request for the CRV documents would not have been necessary had defendants timely provided the investigative files that were subsequently produced in December. The vast majority of these depositions were necessitated because plaintiff's counsel, despite numerous depositions, was unable to identify any witnesses who could testify as to what happened to plaintiff. Despite repeated representations that all relevant witnesses had been disclosed, none of the people who, according to the ACC, allegedly interacted with plaintiff had any recollection of the events. Additionally, once the documents were produced, plaintiff was required to re-depose Weitzman.

t) On September 26, 2017, plaintiff's counsel wrote to defendants reminding them of the Court's prior Order, noting that defendants were still not in compliance, and warning that if the materials outlined in the letter were not produced by September 29, 2017, plaintiff reserved the right to seek costs pursuant to Fed. R. Civ. P. 37(b)(2)(A). (Pl.'s 9/26/17 Ltr to Defs., ECF No. 73-1).

Although defendants seek to strike all of the entries between September 26, 2017 and October 6, 2017, the time spent during this period by plaintiff's counsel relates to efforts to obtain discovery that had previously been ordered and to follow up on documents that had not been provided during depositions. Specifically, plaintiff's counsel submitted a letter, indicating that despite the Court's prior Order from September 21, 2017, defendants had not confirmed dates for the inspection, nor had they produced the DD5s and buy reports which the Court had Ordered be produced immediately. (Pl.'s 9/26/17 Ltr to Defs., ECF No. 73-1). Plaintiff also noted that the overtime reports, Prisoner Movement Slip and Live Scan printouts had still not been produced, nor had affidavits been provided as ordered. (Id. at 2). Plaintiff also listed some of the information sought with respect to defendant Weitzman's CRV assignment, indicating that if the materials outlined in the letter were not produced by September 29, 2017, plaintiff reserved the right to seek costs pursuant to Fed. R. Civ. P. 37(b)(2)(A). (Id.)

This time is compensable.

u)   On October 12, 2017, plaintiff notified the Court that defendants had still failed to produce the DD5s and buy reports, the Prisoner Movement Slip, and the Live Scan printout which had been ordered by the Court, nor had defendants submitted an affidavit from a records custodian as Ordered.  (Pl.'s 10/12/17 Ltr at 1-2, ECF No. 73).  Although plaintiff had received some records relating to the CRV documentation and overtime activity reports for defendant Forgione, plaintiff still had not received Weitzman's overtime reports.  (Id. at 1-2).  Defendants represented that despite performing "a diligent search," defendants had "not been able to locate any DD5s or Buy Reports" (Defs.' 10/13/17 Ltr at 2, ECF No. 74), and they were preparing an affidavit certifying that the Prisoner Movement Slip could not be located.  As for the Live Scan machine report, counsel represented for the first time that such records, "if any exist," were not within the City's custody and control, but rather were kept by the State of New York.[24]  (Id.)  In conclusion, counsel stated: "Based on the foregoing, defendants submit they have complied with their discovery obligations pursuant to the Court Order."  (Id.)

All of plaintiff's counsel's time as listed in the submitted invoices leading up to the motion that they filed on October 12, including the time spent reviewing defendant's submissions, the discovery that had been produced, the time spent preparing for yet another conference with the court, travel time, and attendance in court is compensable as a result of defendants' continued failure to comply with the Court's Orders.

Defendants object to certain entries related to the inspection of Queens Central Booking and the log book.  These had previously been Ordered by the Court on August 19, 2016 in part because defendants denied that the plaintiff had been injured in the precinct, and because the documents sought by plaintiff were illegible in the manner produced.  Thus, this time is compensable.

v)   The Court held a conference on October 17, 2017 to address the issues of nondisclosure and noncompliance.  At that time, the Court directed the production of

---

[24] Defendants did not address whether they had requested such records from the State or whether they possessed the legal right to request the records.

certain discovery, authorized plaintiff to take depositions of new officers, and ordered discovery to be completed by November 17, 2017.

Following that conference, the plaintiff's counsel expended certain time contacting the defendants' counsel about outstanding discovery, reviewing the open issues and strategizing about the case given that discovery was close to conclusion.  Although the Court has not awarded fees for strategy sessions of counsel up until this point, here, with discovery set to close and counsel in possession of what they believed was the universe of information relating to their client's case, the Court finds that this time was potentially wasted since approximately a month later, the entire case was thrown in disarray by the production of information and documents that should have been produced over a year earlier, leaving plaintiff's counsel in the position where they were forced to re-think their entire case strategy.  Accordingly, the Court has included this time in the calculations of fees.

   w)   On November 2, 2017, plaintiff moved pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii) to hold defendants in contempt for their continuing failure to comply with this Court's Orders.  (Pl.'s 11/2/17 Ltr, ECF No. 76).

The time spent in preparation of this motion is compensable.  The time spent preparing for and conducting the deposition of Police Officer Jason Graham is also compensable:  counsel had to conduct the deposition without Graham's memo book, despite the fact that the Court had previously Ordered its production.  (See Report at 26).

   x)   On November 9, 2017, the Court held a hearing on plaintiff's motion for contempt.  (11/9/17 Minute Order, ECF No. 80).

In their November 2d letter, plaintiff's counsel complained that:  1) despite the September 21, 2017 Order, no DD5s or buy reports had been produced seven weeks (7) later

Pl.'s 11/2/17 Ltr[25] at 2; 11/9/17 Tr.[26] at 3:12-25); 2) no affidavit from the custodian of records regarding search efforts had been produced as ordered (id.); 3) defendant Forgione's disciplinary file was not produced prior to his deposition, forcing plaintiff's counsel to proceed without that information (11/9/17 Tr. at 7:18-19); 4) the memo book of Officer Walsh, who plaintiff had been led to believe transported plaintiff to the Hospital, was not produced until a half hour before his deposition on November 2, 2017, at which time plaintiff learned that he was not the transporting officer (id. at 8: 6-16, 20-25); 5) the memo book of Officer Jason Graham, who was scheduled to be deposed on November 2, 2017, had not been produced despite numerous requests and a Court Order. (Pl.'s 11/2/17 Ltr at 2).

The night before the contempt hearing was when defendants finally produced "computer generated" copies of the DD5s and buy reports, with no explanation why they could not have been provided earlier. (11/9/17 Tr. at 4:1-5). More problematic was the fact that the buy reports contradicted the testimony of Sergeant DiGennaro that plaintiff was implicated in drug sales. (Id. at 4:9-13). It was clear to plaintiff's counsel that DiGennaro had gone into his deposition unprepared, and thus, plaintiff requested an opportunity to re-depose Sergeant DiGennaro. (Id. at 4:13-5:2).

Plaintiff's counsel argued that throughout discovery, defendants had been "blindsiding [counsel] with information during a deposition," forcing plaintiff's counsel to spend time during depositions "playing catch-up," and unnecessarily prolonging discovery. (Id. at 5:3-7:3). At the conclusion of the proceeding, this Court again declined to recommend that the defendants be

---

[25] Citations to "Pl.'s 11/2/17 Ltr" refer to plaintiff's letter, dated November 2, 2017, ECF No. 76.

[26] Citations to "11/9/17 Tr." refer to the transcript of proceedings before this Court on November 9, 2017, ECF No. 88.

held in contempt, finding that defendants' counsel was "overwhelmed" and not "acting deliberately" in violation of the Court's Orders. (Id. at 26:17-27:20). Despite the Court's decision not to hold defendants in contempt at the time, there is no question that the time spent by plaintiff's counsel was due to defendants' failure to comply with discovery Orders.

y) On December 14, 2017, in response to a joint status letter indicating that there was still outstanding discovery owed, the Court Ordered defendants to produce all outstanding discovery by December 18, 2017. (12/14/17 Order, ECF No. 83).

Between November 9, 2017 and the status letter on December 14, 2017, plaintiff's time entries reflect time spent discussing with the original ACC and his replacement ACC the outstanding discovery that had been ordered by the Court, including discussions regarding a proposed motion by defendants for summary judgment which the Court held had been waived due to the defendants' failure to comply with another Court Order. (See Report at 30). This time is compensable.

z) On December 18, 2017, defendants produced, for the first time, documents demonstrating that on January 23, 2015, the morning of plaintiff's injury, a recorded call was placed by NYPD Lieutenant David Camhi of the 107 Precinct to the Internal Affairs Bureau ("IAB"), prompting multiple investigations by IAB, by the Queens Patrol Borough, and by the 107 Precinct – none of which had been disclosed to plaintiff's counsel in the two years of discovery prior to December 18, 2017. (Pl.'s 12/21/17 Ltr at 3-4, ECF No. 85). Not only were there over 1,000 pages of documents generated as a result of these investigations that had never been disclosed, but there were "multiple substantiated findings" and numerous additional witnesses identified. (1/3/18 Tr. at 3:17-18, ECF No. 94). Defendants' response to plaintiff's April 2016 request for files relating to any investigation conducted by CCRB, IAB, etc. represented that "no such documents exist." (Id. at 6:3-6). This response was provided while some of these investigations were still ongoing. (Id.) Defendants gave the same response to the same request six months later in January 2017, denying the existence of documents relating to these four investigations, three by the IAB and one by the CCRB. (Id. at 6:6-10; see id. at 18:21-24). It was not even clear whether all of the documents previously Ordered had finally been produced by the date of the hearing or whether all of the relevant parties and witnesses have been identified. (Id.) For these reasons, plaintiff requested the imposition of sanctions.

The disclosure of this information long after discovery had closed and after plaintiff's counsel had wasted thousands of dollars in time and expense conducting 11 police depositions, and filing countless discovery requests and motions to compel, demonstrated that the City, in consistently asserting that nothing had happened to the plaintiff at the 107 Precinct, had been in possession of the discovery all along. The December 18, 2017 production "profoundly changed the landscape of the litigation to plaintiff's prejudice and revealed that the Law Department never conducted any legitimate investigation of the events, in spite of this Court's orders and defense counsel's repeated representations." (Pl.'s 12/30/17 Ltr 2). Plaintiff could have avoided multiple depositions, and it was clear that others would need to be retaken. Citing Judge Weinstein's decision in DaCosta v. City of New York, No. 15 CV 5174, 2017 WL 5176409 (E.D.N.Y. Nov. 8, 2017), plaintiff argued that Ms. Martinez, like many civil rights plaintiffs, did not know the identity of her assailants. It is clear that the information available to the parties is "uneven" and it is the defendants who have access to that information. (1/4/18 Tr.[27] at 5:10-12). However, in this case, plaintiff made every effort to get this information and "defendants' [counsel] have an affirmative obligation not just to its clients but to the citizens of this city to do an investigation." (Id. at 5:14-17).

Following the disclosure of this new information, plaintiff's counsel expended time reviewing the newly produced discovery, researching and preparing the motion for sanctions based on the defendants' failure to produce the missing discovery. Although defendants concede that time spent drafting the Rule 37 letter is compensable, they have struck every other entry relating to the belated disclosure of these over one thousand pages of documents that had been

---

[27] Citations to "1/3/18 Tr." refer to the transcript of proceedings before this Court on January 3, 2018, ECF No. 94.

requested over a year and a half before. The Court finds all of the time entries between December 18, 2017 and January 3, 2018, when the Court held a hearing on plaintiff's motion, to be compensable. Although defendants have struck entries relating to the review of audio recordings from the CCRB, the Court finds that it was reasonable for counsel to review these newly produced recordings in order to properly prepare for the contempt hearing. This time is compensable.

Defendants also object to the "whopping 51.3 hours" plaintiff spent "in connection with her December 30, 2017 six page reply motion for sanctions." (Defs.' 5/16/18 Ltr at 5). The Court notes that this six page reply had 738 pages of exhibits, attached in response to the Court's December 28, 2017 Order directing plaintiff "to provide any discovery materials or other documents relevant" as part of the filing. (12/28/17 Order).[28] While the Reply may have only been six pages, the Court assumes that much of counsel's time and efforts in preparing the Reply included reviewing the discovery, including the numerous files and documents recently produced, and collecting the necessary items to compile the lengthy exhibits. Given the amount of time spent on the Reply and the fact that counsel had previously billed for some time reviewing the newly produced discovery, the Court finds that much of this time is compensable but reduces the number of hours for the Reply by 10 percent. The Court therefore awards plaintiff 46.2 hours for the Reply.

From January 3, 2018 through January 17, 2018, plaintiff's counsel continued to confer with defendants' counsel regarding the production of officers' memo books and the rescheduling of DiGennaro's deposition which was necessitated by defendant's failure to provide the DD5s in

---

[28] Citations to "12/28/17 Order" refer to the Electronic Order of this Court, dated December 28, 2017.

a timely fashion. The Court excludes the entries of January 3, 16, and 17, 2018 relating to the Trotter and Pontecorvo memo books as not clearly related to the sanctions motion, but includes the time spent dealing with the scheduling of DiGennaro's deposition and two-thirds of the time spent by Ms. Fett on January 17, reviewing the IAB Log and the letter disclosing Pontecorvo's memo book; the IAB Log should have been produced as a result of normal discovery but was withheld for no apparent reason by defendants until December 2017.

Also in late January 2018, plaintiff's counsel spent time preparing for and filing the Second Amended Complaint. Defendants object to 15.5 hours allegedly incurred in total between preparing this amendment to the Complaint and preparing the first Amended Complaint. (Defs.' 5/16/18 Ltr at 4). The Court has excluded 2.6 hours spent in connection with the First Amended Complaint (see discussion supra at 29), but awards the remaining time spent on the Second Amended Complaint as this entire process would not have been necessary had plaintiff received the information from defendants' counsel as to the officers who were actually involved a year before.

The Court excludes the time entries amounting to 0.4 hours on January 24, 2018 reflecting conversations with the ACC about a new witness and with the plaintiff on unspecified matters. Time spent reviewing the Court's Report and Recommendation on sanctions is compensable and defendants do not seem to oppose these entries.

Similarly, it appears that defendants do not object to the time entries requested by plaintiff from January 25, 2018 through March 1, 2018. Thus, they are covered by the Court's Order.

The Court notes that in their letter, defendants object to including all of the time spent identifying and deposing Forgione and Weitzman, which defendants claim amount to

"approximately 19.9 hours" plus "6.6 hours." (Defs.' 5/16/18 Ltr at 3-4). In addition, they seek to exclude 17.4 hours relating to the depositions of individuals later named as defendants. (Id. at 3). The Court has addressed the issue of these hours supra and finds that they are compensable. Defendants also seek to exclude time spent on non-party depositions totaling approximately 18.4 hours, as well as fees relating to scheduling depositions. For the reasons stated above, unless the Court has excluded the depositions of certain witnesses in its analysis, the plaintiff is entitled to receive fees for those depositions that were either unnecessary or needed to be retaken because of defendants' failure to provide the necessary documentation and information when ordered by the Court.

Defendants seek to exclude all time reviewing discovery responses and document productions, which they claim amounts to 32.5 hours, as well as "Fees related to making new document requests." Apart from failing to provide any specific rationale for the exclusion of this time, defendants ignore the fact that time initially spent by plaintiff's counsel reviewing nonresponsive discovery responses would have been totally unnecessary had defendants produced discovery as Ordered. Even though some documentation was eventually produced, which plaintiff's counsel reviewed, the Court finds this time that defendants now seek to exclude was largely necessitated by defendants' continuing failure to produce the critical mass of discovery until over two years into the case. Indeed, even after the investigative files were produced, plaintiff still was uncertain as to whether there had been full compliance, requiring the service of follow-up discovery requests. This time is all attributable to defendants' misconduct.

Defendants object to case planning and strategy meetings and appearances related to discovery/status conferences not related to motions to compel or sanctions. (Defs.' 5/16/18 Ltr at 4). Where appropriate, the Court has excluded this time. (See discussion supra at 23-25).

Defendants seek to exclude 42.7 hours of time outlining and addressing the City's deficient discovery responses and in meet and confers. For the reasons stated above, the Court declines to subtract such time as contrary to the policy behind encouraging parties to resolve their disputes without the need for court intervention. (See discussion supra at 37). The fact that plaintiff's counsel had to spend over 42 hours just trying to get voluntary compliance with Court Orders and still had to file repeated motions resulting in 14 Court Orders demonstrates once again in this case, the City's utter lack of respect for the Federal Rules of Civil Procedure and this Court's Orders.

In total, the Court reduces plaintiff's requested fee award by 31 hours as discussed supra and as summarized in the charts below. Furthermore, for the hours the Court is awarding, the Court has reduced counsel's requested hourly rate to $425 per hour for legal work, $212.5 per hour for travel time, and $75 per hour for paralegal work.

Fees Eliminated:

| Date | Quantity | Hourly rate sought | See supra page(s): |
|---|---|---|---|
| 5/27/2016 | 0.5 | $500.00 | 23-24 |
| 3/31/2016 | 0.4 | $500.00 | 23-24 |
| 6/3/2016 | 1.4 | $500.00 | 23-24 |
| 6/8/2016 | 0.8 | $500.00 | 23-24 |
| 6/10/2016 | 0.1 | $500.00 | 23-24 |
| 6/24/2016 | 0.1 | $500.00 | 23-24 |
| 6/27/2016 | 0.2 | $500.00 | 23-24 |
| 6/27/2016 | 0.1 | $500.00 | 23-24 |
| 6/27/2016 | 0.2 | $500.00 | 23-24 |
| 7/29/2016 | 0.8 | $500.00 | 26 |
| 7/29/2016 | 1.7 | $500.00 | 26 |
| 8/2/2016 | 0.2 | $500.00 | 26 |
| 8/2/2016 | 1.2 | $500.00 | 26 |
| 8/2/2016 | 0.8 | $500.00 | 26 |
| 8/2/2016 | 0.4 | $500.00 | 26 |
| 8/2/2016 | 0.2 | $500.00 | 26 |
| 8/5/2016 | 0.1 | $500.00 | 26 |

| | | | |
|---|---|---|---|
| 8/15/2016 | 0.1 | $500.00 | 26 |
| 8/23/2016 | 0.2 | $500.00 | 27 |
| 11/14/2016 | 1.0 | $500.00 | 29 |
| 11/14/2016 | 0.2 | $500.00 | 29 |
| 11/14/2016 | 1.0 | $500.00 | 29 |
| 11/14/2016 | 0.2 | $500.00 | 29 |
| 11/17/2016 | 0.2 | $500.00 | 29 |
| 10/17/2016 | 0.2 | $500.00 | 29 |
| 10/17/2016 | 0.2 | $500.00 | 29 |
| 10/24/2016 | 0.1 | $500.00 | 29 |
| 1/20/2017 | 2.0 | $500.00 | 31 |
| 3/2/2017 | 0.4 | $500.00 | 31 |
| 3/2/2017 | 0.9 | $250.00 | 31 |
| 3/2/2017 | 0.4 | $500.00 | 31 |
| 3/2/2017 | 0.8 | $250.00 | 31 |
| 3/2/2017 | 0.6 | $500.00 | 31 |
| 5/30/2017 | 0.3 | $75.00 | 35 |
| 5/30/2017 | 0.2 | $500.00 | 35 |
| 6/22/2017 | 0.6 | $500.00 | 36 |
| 6/22/2017 | 1.3 | $500.00 | 36 |
| 7/12/2017 | 0.2 | $500.00 | 36 |
| 7/31/2017 | 1.0 | $500.00 | 38 |
| 8/1/2017 | 0.5 | $500.00 | 38 |
| 8/1/2017 | 1.3 | $500.00 | 38 |
| 8/8/2017 | 0.3 | $500.00 | 38 |
| 9/7/2017 | 0.7 | $500.00 | 38 |
| 9/7/2017 | 1.6 | $500.00 | 38 |
| 9/25/2017 | 0.2 | $500.00 | 38 |

Fees Reduced:

The Court further reduced the time awarded for the Reply by 10 percent from 51.3 hours

to 46.2 hours.  (See discussion supra at 46).

In total, taking into account the reduced fee rate recommended by the Court and the time

entries excluded from plaintiff's request, the Court Orders that plaintiff be awarded $134,610.00

in fees, representing 303.1 hours of legal work at an hourly rate of $425; 6.5 hours spent on the

motion for attorney fees at a rate of $425; 13.8 hours of travel time at a rate of $212.5; and 1.3

hours of paralegal tasks at a rate of $75.

C. Costs

Plaintiff has also requested an award of $8,660.52 in costs, which encompass the costs of videographers and stenographers used to take the depositions of Forgione on May 11, 2017, of Laliberte and of Mendez on July 7, 2017, of Robinson on July 12, 2017, of Donovan on August 7, 2017, of Raham also on August 7, 2017, of Russo on August 14, 2017, of Weitzman on September 5, 2017, of Seddio on October 2, 2017, of DeGennaro on October 11, 2017, and of Jason Graham on November 20, 2017.  These costs total $8,330.16.  Defendants object to these costs but do not appear to object to $330.36 in other costs requested by plaintiff.  The Court has determined supra that plaintiff should be compensated for the time spent on all depositions with the exception of the depositions of Mendez, Russo, and Seddio.  The Court therefore awards the $330.36 in costs that defendant does not object to as well as deposition costs in the amount of $7,126.96 for 6 of the depositions, for a total award of $7,457.32.  The Court declines to award costs for the Mendez, Russo, and Seddio depositions.

CONCLUSION

As set forth above, the Court Orders that plaintiff be awarded $134,610.00 in fees and $7,457.32 in costs based on defendants' and their counsel pattern of willful noncompliance with the Court's Orders and basic discovery obligations over almost two years despite 14 Court Orders.  Their noncompliance has severely prejudiced plaintiff and warrants an award of reasonable expenses, including attorney's fees, caused by the defendants' non-compliance.  The award is to be paid by the City of New York and not the individual defendants.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 18, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York