1

1   UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2

------------------------------x

3                         16-CV-79(AMD)

ROSIE MARTINEZ,

4                         United States Courthouse

        Plaintiff,       Brooklyn, New York

5

       - versus -         August 1, 2018

6                         2:30 p.m.

CITY OF NEW YORK, ET AL.,

7

        Defendants.

8

------------------------------x

9

10      TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
         BEFORE THE HONORABLE ANN M. DONNELLY

11           UNITED STATES DISTRICT JUDGE

12

APPEARANCES

13

Attorney for Plaintiff:  ELEFTERAKIS ELEFTERAKIS & PANEK

14                     80 Pine Street
                     38th Floor

15                     New York, New York 10005
                     BY:  GABRIEL PAUL HARVIS, ESQ.

16                        BAREE N. FETT, ESQ.

17

Attorney for Defendant:  NEW YORK CITY LAW DEPARTMENT

18                     100 Church Street
                     New York, New York 10007-2601

19                     BY:  KAVIN SURESH THADANI, ESQ.

20

Also Present:          CHIARA INGHIRAMI

21

22   Court Reporter:       LINDA D. DANELCZYK, RPR, CSR, CCR
                     Phone:  718-613-2330

23                     Fax:    718-804-2712
                     Email:  LindaDan226@gmail.com

24

25   Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                2

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              THE COURT:  Hi.  Everybody can have a seat.

4              THE COURTROOM DEPUTY:  This is civil cause for a

5    premotion conference, Docket Number 16-CV-79, Martinez versus

6    City of New York, et al.

7              Counsel, state your appearance, plaintiff first.

8              MR. HARVIS:  Gabriel Harvis for plaintiff, Rosie

9    Martinez.  Good afternoon, Your Honor.

10             THE COURT:  Hi.

11             MS. FETT:  Good afternoon, Your Honor.  Baree Fett

12   for plaintiff, Rosie Martinez.

13             And we have our associate here.

14             MR. HARVIS:  She started today, Your Honor.

15             THE COURT:  Congratulations.

16             This is your first day?

17             MS. INGHIRAMI:  Yes.

18             THE COURT:  Well, I expect you to handle the entire

19   case.  Chime in whenever you want.

20             Go ahead.

21             MR. THADANI:  Good afternoon, Your Honor.  Kavin

22   Thadani, Office of the Corporation Counsel, on behalf of

23   defendants.

24             THE COURT:  All right.  Good afternoon, everyone.

25             All right, now I got to tell you, you guys, you're

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                                    3

1    killing me, and I'm not even the one who is supervising

2    discovery in this case.

3           I don't want to see any more letters that say if

4    only so and so had called me before.

5           Work this stuff out, because I can tell you, I don't

6    want to be involved in it, and Judge Pollak doesn't want to be

7    involved in it.

8           So you got to figure out a way to put your

9    differences behind you and move ahead.  Because I have to tell

10   you, I guess maybe I picked the wrong job for not liking

11   conflict, but I tend to just tune it out.

12          So it's really -- I'm sure I was very guilty of it

13   in my days as an advocate, but it's annoying, so don't do it

14   any more.  It's not helpful.

15          So I take it from the letter this morning, and I

16   know that Judge Pollak is -- that's in her capable hands, but

17   you're going to work out this question of depositions with

18   her; is that right?

19          MR. HARVIS:  Yes, Your Honor.

20          THE COURT:  All right.

21          So there are -- this is just an anticipated motion

22   to dismiss, not all of the counts but some of the counts in

23   the amended complaint, and let's just go through the ones that

24   the defense is seeking to file a motion to dismiss on.

25          I will say that I think this conspiracy claim is

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                    4

1    not -- I don't think that's your strongest argument in this

2    case.  I don't see -- I mean, if there's some undefined person

3    in the hospital that conspired?

4              I don't know that that's going to be a winner or

5    not.  Maybe on a motion to dismiss, I'm not sure.

6              One thing that I would ask everybody to think about

7    is really what the case is about, which I know that the

8    motion -- I'm sorry, the complaint has additional claims that

9    are based on the discovery problems.  I think you should

10   consider to what extent those tend to muddy up what the case

11   is really about.

12             So I think that's a more problematic count of the

13   complaint.  Obviously, I have an open mind about it, I'll look

14   at it, but I think that's a weaker case for the plaintiff.

15             The denial of access to the courts.  I think that's

16   also not particularly compelling.  I think the defense has a

17   pretty strong argument on that.

18             The question about the negligent hiring is less

19   clear to me.  I'm not sure that the complaint makes it clear

20   or sufficiently pleads that the City knew or had reason to

21   know about the propensity for violent conduct.

22             I think on the defense side, the deliberate

23   indifference -- the defense argument on the deliberate

24   indifference to me is not particularly persuasive, given what

25   the allegations of the injuries here are.  I think that that's

PROCEEDINGS                                    5

1    a winner for the defense.

2              I think for some of the same reasons I said about

3    the negligence hiring, the *Monell* claim does not seem to be

4    particularly strong either.

5              I don't know why you need a *Monell* claim in a case

6    like this, but people always make them, but I don't -- I don't

7    know why.  As I said, I don't think it's the key to the case.

8              So I'll -- bearing in mind how people have gotten

9    along before, this is probably a triumph of hope over

10   experience, but I would wonder whether you would be willing to

11   look at some of your claims and maybe dismiss the ones -- the

12   conspiracy and the *Monell* are the ones that leap to mind --

13   otherwise I mean I can just rule on the whole thing, but it

14   seems to me that you might want to get this show on the road a

15   little bit in terms of getting a case together, and some of

16   this stuff seems like a waste of time to me.  It doesn't

17   advance your case and then -- so that's something I would ask

18   you to think about.

19             The question -- I'm not going to stay discovery

20   while the motion is briefed.

21             What was the other thing.  There is also a question

22   about which claims are going to be brought against which

23   defendants.

24             Is that something that you're able to -- you can

25   stay seated.  I think it's easier to use the microphone.

PROCEEDINGS                          6

1          MR. HARVIS:  So just very briefly.

2          First of all, I really appreciate Your Honor's

3    guidance, and we're very open to what Your Honor suggested and

4    we'll take a close look at it.  And in the context of doing

5    that, I'm happy to give some clarity.

6          If you closely read defendant's letter, you know,

7    they say that we haven't identified people, but then they

8    basically go on with each claim to say, well, it seems like

9    it's asserted against this person.

10          And so I don't think there's really a conceptual

11   lack of clarity.  I think it's just a literal naming of the

12   people.  And so that's really sort of an administerial thing

13   and we're happy to do that.

14          I just wanted to say, the overarching reason why you

15   see sort of like a kitchen sink approach was just because of

16   the context in which the actual --

17          THE COURT:  I'm familiar.

18          MR. HARVIS:  -- amendment had to be filed, and so we

19   sort of just wanted to make sure that to avoid any statute of

20   limitations concerns, we covered all of our basis.

21          The only problem that I have with Your Honor's

22   suggestion is just that we're in exactly, literally exactly

23   the same place that we were on January 22nd, 2018, in terms of

24   the discovery that we've received, having had nothing further.

25          So, you know, because that was our best reading of

PROCEEDINGS                                    7

1   the record at that time.

2            THE COURT:  Are you talking about depositions and

3   things like that?

4            MR. HARVIS:  And documents, and just the general

5   discovery.

6            THE COURT:  Wait.  So are all the documents turned

7   over now?

8            MR. HARVIS:  No.  We haven't -- I mean, we're still

9   in the middle of everything.  And there's depositions, there's

10  open issues.

11           And so I'm not suggesting that -- I mean, in terms

12  of the *Monell* claim and the conspiracy claim, I see the

13  weaknesses there and I certainly want to move the case

14  forward.  So I'm inclined to just sort of cut them out and try

15  and reach agreement.

16           But I just wanted to reemphasize that we're really

17  just in a static position.  It's a little painful to do that

18  without the benefit that additional -- you know, the sort of

19  comfort that additional information would give us.

20           THE COURT:  I'm going to give you a chance to

21  respond, but I also -- I know, and I'm not minimizing it, I

22  know very well what has led us to this point.

23           But I feel like we're on a better track now.  I

24  don't think some of the same things are happening, and so I

25  don't think we need to keep revisiting the past.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                              8

1            So I can look forward, and it seems to me that

2    except for the snippy letters back and forth, which I can do

3    without, that things are progressing in a better way.

4            So -- but I'm not asking you to make a decision

5    today, I just want you to think about it.

6            What do you want to say?

7            MR. THADANI:  Sure.

8            Just briefly to touch on the discovery point first

9    is, we had, I believe, at least two conferences before the

10   magistrate judge.  I think one relatively recently, one a

11   couple months ago.

12           Plaintiff's counsel indicated that the outstanding

13   discovery with respect, just generally to the case was first

14   was depositions, which I do want to address briefly --

15           THE COURT:  But --

16           MR. THADANI:  -- and then in terms of --

17           THE COURT:  The only thing I will say about that is

18   that I think that's in front Judge Pollak, and I'm delighted

19   to have her make those decisions.

20           MR. THADANI:  Totally understood, Your Honor.  I

21   promise not to touch on that too much, understanding that.

22           With respect to document discovery, plaintiff's

23   counsel indicated that what they were looking for were memo

24   books from the defendants, which there was a deadline set for

25   that, and they were all produced to the extent they hadn't

PROCEEDINGS                                    9

1    been already, and disciplinary discovery.

2              THE COURT:  Right.

3              MR. THADANI:  Which our contention was we may be

4    looking at a motion to dismiss here, and whether or not these

5    18 new individuals have now been named as a defendant, if they

6    remain as a defendant, our contention is that none of them

7    should be defendants in the case, and that the proper scope of

8    the case, as Your Honor discussed earlier, was really this

9    case has always been about what happened to the plaintiff; was

10   she assaulted by the defendant officers, as plaintiff alleges,

11   or did she injure herself in the precinct causing her own

12   injuries, as the defendants allege.

13             All these other claims and all these other

14   defendants is something that's now been added.  I know

15   plaintiff is contending that they're because of additional

16   documents being produced relatively recently at the end of

17   last year, however, if you really look at the claims, that's

18   not really the case.

19             Claims such as like a deliberate indifference to

20   medical needs, that could have been brought from day one by

21   the plaintiff.  The plaintiff knows whether she asked any

22   defendants for medical treatment and whether that was denied.

23             THE COURT:  Okay, but that's in the complaint, so --

24   and, you know, I'm not making -- I'm not really making a

25   decision about whether there's enough in the complaint, but

PROCEEDINGS                                    10

1    it's the complaint.  I think there's probably enough.

2             I mean, the injuries are -- based on the case law,

3    the injury that they're claiming she suffered, in my mind that

4    that's sort of the grand mal on this one.  I mean it's not

5    like she scrapped her finger or something like that.

6             But the only thing that -- I mean, I have asked the

7    plaintiffs to think about -- you know, I think it's beneficial

8    to everybody to have something that's sort of focused on what

9    the question at hand is.  And so I've asked them to do that.

10            But I also, because this has been stalled for kind

11   of a long time, you know, I'm sure, and I don't want to beat

12   this poor dead horse any more, but I don't -- I think it was

13   just a series of mistakes.  I don't think anybody was setting

14   out to not find anything out.  But that's behind us.

15            But the reason why we're in a position where I'm not

16   inclined, and I'm not going to stay discovery, is because it's

17   taken so long already.

18            So I think this is a case that it would behoove

19   everybody to focus on the people that they have to focus on

20   and move the case forward.

21            Now, I don't even know why I'm asking this question,

22   another time for hope over experience, but have you talked

23   about settling?

24            MR. THADANI:  We --

25            THE COURT:  You're just too mad at each other.

PROCEEDINGS                                11

1          MR. THADANI:  No.  I think, again, we're always open

2     to discussing settlement.

3          We had talked about it in connection with, as we

4     were ordered to do, to talk about it with respect to the fees

5     and costs motion, which is currently pending before Magistrate

6     Judge Pollak.

7          THE COURT:  Not me.

8          MR. THADANI:  We did have brief discussions about

9     globally resolving the case as well.

10          To be honest, they didn't go very far, it wasn't a

11     lengthy discussion, at least from our perspective, we're open

12     to continuing those discussions, but to be frank, we haven't

13     really had those discussions while that motion has been

14     pending.

15          Your Honor, if I may just briefly, I understand your

16     ruling and your rationale with respect to the stay of

17     discovery, however -- and not granting that, however, I think

18     one thing that our position is on this is assuming Your Honor

19     allows us to move --

20          THE COURT:  I can move.  I mean, I don't -- do

21     judges ever tell you you're not allowed to file motions?

22          MR. THADANI:  No, no.

23          MR. HARVIS:  Sometimes they orally deny it.  I've

24     seen that happen, but it's unusual.

25          THE COURT:  That's not really the way I rule.

PROCEEDINGS                    12

1          So I'm going to let you file it, and I'm cutting you

2    off because I'm hoping that while you're going on discovery

3    you're not going to do discovery on something that is remote.

4          I mean, why don't you just cut to the chase and get

5    to the people that you want to get deposed?  Some people

6    probably do have to be -- their depositions have to be

7    reopened.

8          To me this does not seem, and I know I'm sitting at

9    some removed from the battleground, but some of this is not

10   rocket science.  I mean, just move the ball forward.

11         So, you know, I try to decide motions pretty

12   quickly, but we're kind of busy, although we are getting new

13   judges, maybe I'll transfer the case.

14         MR. HARVIS:  No, thank you, Your Honor.

15         THE COURT:  Believe me.  That happened to me quite a

16   bit when I was new.  But I'm not going to do anything like

17   that.

18         But I do think we just have to be a little more

19   expeditious about this.  So this is one you're going to come

20   in second on, and it happens sometimes.

21         So what I'm going to propose is that I'm going to

22   set a briefing schedule, and then what I'm -- you're going to

23   let us know what you're going to clean out of this complaint.

24         And you all are professionals, and I have great

25   faith in you, and I know that you're going to abide by your

PROCEEDINGS                              13

1    promise not to snipe at each other in writing, at least so

2    that I can see it.  All right?

3              Okay.  So can you get your motion in by

4    September 3rd, and if that, you know, ruins anyone's vacation

5    schedule, let me know that, too.  I'm not, you know --

6              MR. THADANI:  That should be fine, Your Honor.

7              THE COURT:  -- I don't want to wreck your summer.

8              MR. THADANI:  That should be okay.

9              THE COURT:  All right, September 3rd.

10             And then the opposition will be due October 3rd.

11             And any reply will be October 17th.

12             And there is no harm in seeing if you can work it

13   out in the meantime.  All right?

14             MR. HARVIS:  Sure.

15             THE COURT:  I have confidence in you.

16             And tell me your name again?

17             MS. INGHIRAMI:  My name is Chiara Inghirami.

18             THE COURT:  I hope I get to see you a lot.  Not

19   fighting with people.

20             Congratulations.  I think you'll really enjoy it.

21             MS. INGHIRAMI:  Thank you.

22             THE COURT:  Okay.

23             Anything else?

24             MR. THADANI:  No, Your Honor.

25             MR. HARVIS:  Not from the plaintiff.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                              14

1          THE COURT:  This wasn't so bad.

2          Okay, thank you.

3          MR. HARVIS:  Thank you very much, Your Honor.

4

5          (Whereupon, the matter was concluded.)

6

7                    *     *     *     *     *

8

9

10   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

11

12   s/ Linda D. Danelczyk                March 24, 2020

13

      LINDA D. DANELCZYK                     DATE
14

15

16

17

18

19

20

21

22

23

24

25