# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

                    Plaintiff,

          -against-

CITY OF NEW YORK, et al.,

                    Defendants.

16 CV 79 (RPK) (CLP)

Plaintiff's Memorandum of Law in Opposition to Defendants' Partial
Motion for Summary Judgment and to Dismiss

Oral Argument Requested

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005

December 18, 2020

# Table of Contents

Table of Authorities ................................................................................................................... i

Preliminary Statement ............................................................................................................. 1

Statement of Facts ................................................................................................................... 3

    A.     Background ................................................................................................................ 3

    B.     Search Warrant Application ...................................................................................... 4

    C.     Warrant Execution .................................................................................................... 4

    D.    At the Precinct, Defendants Threaten, Brutalize and Deny Treatment to Ms.
           Martinez ................................................................................................................... 5

    E.     Defendants Attempt a Cover Up .............................................................................. 5

    F.     Ms. Martinez's Severe Injuries Persist for Five Years, Culminating in Surgery .......... 5

    G.    Investigations Reveal Misconduct by Defendants ..................................................... 6

    H.    Ms. Martinez Files a Timely Notice of Claim and Submits to Multiple
           Interviews and a 50-h Examination with the City ..................................................... 6

    I.     In this Civil Action, Defendants Obstruct Discovery Until the Statute of
           Limitations Expires Despite Fourteen Court Orders .................................................. 7

    J.     In Depositions after the R&R, Defendants Feign Lack of Memory ........................... 7

Governing Standards ............................................................................................................... 7

Argument ................................................................................................................................ 9

    Point I ...................................................................................................................................... 9

    Defendants' Partial Motion Lacks Color ................................................................................. 9

    A.     Notice ....................................................................................................................... 9

    B.     Personal Involvement .............................................................................................. 13

    C.     Supervisory Liability ............................................................................................... 14

    D.    Failure to Intervene ................................................................................................ 14

    E.     Vehicle Seizure and Search ..................................................................................... 15

    F.     Stolen Property ....................................................................................................... 18

    G.    Cover Up ................................................................................................................ 19

    H.    Denial of Medical Care, Civil Rights Law § 28 and Conditions of
           Confinement ........................................................................................................... 20

    Point II .................................................................................................................................. 23

    The Court Should Reconsider and Adopt the Honorable Chief Magistrate Judge's
    Recommendation for Terminating Sanctions ........................................................................ 23

Point III ............................................................................................................................ 24

In the Alternative, The Court Should Impose the Recommended Evidentiary Sanctions ......... 24

Conclusion ......................................................................................................................... 25

CASES

*Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328 (2d Cir. 2006) ...................... 8

*Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113 (2d Cir. 2004) ............................ 8

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ................................ 7

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009)................................................. 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ........................ 9

*Bell Atl. Corp. v. Twombley,* 550 U.S. 544 (2007) ......................................... 8

*Brass v. Am. Film Techs., Inc.,*
  *987 F.2d 142 (2d Cir. 1993)*..........................................................9

*Burgess v. City of New York,* 15 CV 5525 (RRM) (VMS), 2018 WL 1581971 (E.D.N.Y. Mar. 29,
  2018) ................................................................................ 10

*Byrd v. United States,* 138 S. Ct. 1518 (2018) ........................................... 15

*Carter v. Broome Cty.,* 394 F. Supp. 3d 228 (N.D.N.Y. 2019) .............................. 21

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)............................................ 8

*Charles v. Orange Cty.,* 925 F.3d 73 (2d Cir. 2019).......................................21

*Christopher v. Harbury,* 536 U.S. 403 (2002) ............................................ 19

*Conley v. Gibson,* 355 U.S. 41 (1957)..................................................... 8

*Coolidge v. New Hampshire,* 403 U.S. 443 (1971) ........................................ 17

*Darnell v. Pineiro,* 849 F.3d 17 (2d Cir. 2017)..........................................22

*Estate of Keenan v. Hoffman-Rosenfeld,* 16 CV 0149 (SJF) (AYS), 2019 WL 3416374 (E.D.N.Y. July
  29, 2019) ........................................................................... 14

*Fisher v. Cty. of Nassau,* 10 CV 0677 (JS) (ETB), 2011 WL 4899920 (E.D.N.Y. Oct. 13, 2011)... 10

*Frith v. City of New York,* 07 CV 5899 (JSR) (DF), 2011 WL 3477083 (S.D.N.Y. July 7, 2011) .. 18

*Gaston v. Coughlin,* 249 F.3d 156 (2d Cir. 2001)......................................... 13

*Harrell v. City of New York,* 138 F. Supp. 3d 479 (S.D.N.Y. 2015)......................... 16

*Herbert v. City of New York,* 12 CV 1096 (JG) (LB), 2012 WL 3779230 (E.D.N.Y. Aug. 30, 2012)
  ................................................................................... 18

*Horton v. California,* 496 U.S. 128 (1990) .............................................. 17

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007)............................................. 9

*Jackson v. Federal Express,* 766 F.3d 189 (2d Cir. 2014) ................................. 7

*Jean-Laurent v. Wilkinson,* 540 F.Supp. 2d 501 (S.D.N.Y. 2008).......................... 15

*Mark v. Gawker Media LLC,* 13 CV 4347 (AJN), 2016 WL 1271064 (S.D.N.Y. Mar. 29, 2016) ... 7

*Martinez v. City of New York,* 2018 WL 1835935 (E.D.N.Y. Apr. 18, 2018)................... 1, 2, 24

*Martinez v. City of New York,* 2018 WL 604019  (E.D.N.Y. Jan. 24, 2018) ..................passim

*Martinez v. D'Agata ,* 16 CV 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) ............ 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ................... 8

*Miranda v. City of Cornelius,* 429 F.3d 858 (9th Cir. 2005) .............................. 16

*O'Neill v. Krzeminski,* 839 F.2d 9 (2d Cir. 1988)........................................ 14

*Pereyra v. Eaddy,* 13 CV 4760 (PAC) (MHD), 2015 WL 3953606 (S.D.N.Y. June 29, 2015) ...... 15

*Pippins v. KPMG LLP,* 279 F.R.D. 245 (S.D.N.Y. 2012) .................................... 1

*Provost v. City of Newburgh,* 262 F.3d 146 (2d Cir. 2001)................................. 13

*Ranta v. City of New York,* 14 CV 3794 (FB) (LB), 2018 WL 3127154 (E.D.N.Y. June 26, 2018) 19

*Samuels v. Air Transp. Local 504,* 992 F.2d 12 (2d Cir. 1993) ........................................... 9
*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ............................................................................. 8
*See Fla. v. Wells,* 495 U.S. 1 (1990) .................................................................................. 17
*Sommerville v. Wright,* 12 CV 165 (KAM) (JMA), 2014 WL 794275 (E.D.N.Y. Feb. 25, 2014)... 18
*States v. Jacobs,* No. 00–20074–01–JWL, 2000 WL 1701723 (D.Kan. Nov. 7, 2000) .................. 16
*Still v. DeBuono,* 101 F.3d 888 (2d Cir. 1996) ................................................................... 8
*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471 (2d Cir. 2006) ...................................... 8
*United States v. Conception,* 1986 WL 6830 (E.D.N.Y. Mar. 5, 1986) ............................... 16
*United States v. Squires,* 456 F.2d 967 (2d Cir.1972) ........................................................ 15
*United States v. Zimmerman,* 19 CR 414 (RRM), 2020 WL 4749855 (E.D.N.Y. Aug. 17, 2020).. 17
*Vasquez v. City of New York,*
    *99 Civ. 4606 (DC), 2000 U.S. Dist LEXIS 8887 (S.D.N.Y. June 29, 2000)* .............................. 9
*Williams v. County of Nassau,* 779 F.Supp.2d 276 (E.D.N.Y. 2011) .................................. 1

S<span>TATUTES</span>

42 U.S.C. § 1983 .................................................................................... 2, 3, 13, 22
Civil Rights Law § 28 .............................................................................. 2, 20, 21
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 8
GML § 50-e ............................................................................................................ 6
GML § 50-h ......................................................................................................... 11

R<span>ULES</span>

Fed. R. Civ. P. 56 ................................................................................................. 7
Fed. R. Civ. P. 56(a) ............................................................................................. 7
Fed. R. Civ. P. 56(e) ............................................................................................. 8
Loc. Civ. R. 56.1(b) .............................................................................................. 3

<u>Preliminary Statement</u>

If it should please the Court, defendants' motions lack color and should be denied in their entirety.

Defendants fail to acknowledge or contend with the findings of the presiding Honorable Chief Magistrate Judge, which include a well-founded recommendation for terminating sanctions that this Honorable Court has discretion – and plaintiff respectfully submits good cause – to reconsider and adopt. *See Martinez v. City of New York*, 2018 WL 604019, *29-30 (E.D.N.Y. Jan. 24, 2018) ("[T]he Court finds that the overwhelming prejudice to plaintiff weighs heavily in favor of dispositive sanctions for defendants' conduct in this case."); *id.* at * 33 ("The Court respectfully recommends that the district court impose a sanction either striking defendants' answer and entering judgment in plaintiff's favor on liability or granting summary judgment in favor of plaintiff on her claims, and sending the case to trial on damages."); *see, e.g., Williams v. County of Nassau*, 779 F.Supp.2d 276, 280 & n.2 (E.D.N.Y. 2011) ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd*, 581 Fed. App'x 56 (2d Cir. 2014); *Pippins v. KPMG LLP*, 279 F.R.D. 245, 253 (S.D.N.Y. 2012) ("[A] Magistrate Judge's resolution of discovery disputes deserves substantial deference.").

To the extent the Court concludes that a trial on liability is appropriate, plaintiff respectfully requests, given defendants' claimed amnesia and for other reasons described herein, that the Court adopt the lesser sanction of preclusion, as proposed by the Hon. Cheryl L. Pollak and contemplated by the Hon. Ann M. Donnelly. *See Martinez*, 2018 WL 604019 at *34 ("If the district court declines to adopt this Court's recommendation to strike defendants' pleadings and impose the sanction of default or summary judgment in plaintiff's favor on liability, the Court respectfully recommends that the court consider entering as a lesser sanction an order that would preclude

defendants from relying at trial on any of the recently produced documents or testimony of the witnesses recently identified who claim that plaintiff injured herself while in the Precinct."); *Martinez v. City of New York*, 2018 WL 1835935, *3 (E.D.N.Y. Apr. 18, 2018) ("I respectfully decline to impose this sanction *at this stage of the litigation*.…However, given the fluid nature of litigation, I will reconsider the sanction of preclusion if appropriate.") (emphasis added); *id.* at *4 ("Judge Pollak was appropriately concerned with the possibility that some witnesses might claim failure of memory due to the passage of time. (ECF No. 100 at 61.) Should that prove to be true, I will consider additional appropriate sanctions."); *see also id.* ("I will consider additional appropriate sanctions and curative measures at trial.").

Further, since defendants' misconduct deprived plaintiff of the opportunity to take discovery before the statute of limitations expired and she was forced to hastily amend without information to which she was entitled, and in the interest of economy and equity, plaintiff respectfully requests that the pleading be deemed conformed to the proof such that the following damages claims are presented to the jury at the trial or inquest:[1]

1. Assault & Battery under state law and Excessive Force pursuant to 42 U.S.C. § 1983 against Camhi, Laliberte, Ryan and DiGennaro (with the City of New York liable under *respondeat superior* for state law torts committed by any employee acting with the scope of employment);

2. New York State Civil Rights Law § 28 and Deliberate Indifference & Conditions of Confinement for Denial of Medical Care pursuant to 42 U.S.C. § 1983 against Camhi, Laliberte, Ryan and DiGennaro (with the City of New York liable under

---

[1] As the Court previously stated: "This case presents a clear instance of a plaintiff who acted diligently through her counsel and extraordinary circumstances caused by an opposing party that warrant reaching into equity to toll the statute of limitations. Should the district court decline to adopt the Court's recommendation that a case-terminating sanction be entered, the Court would further recommend that, if the statute of limitations is raised as a defense, the district court equitably toll the statute of limitations against the newly-identified defendants after further briefing on the issue." *Martinez*, 2018 WL 604019 at *29 n.23; *see id.* at n. 22 (noting that the operative pleading appears timely filed).

*respondeat superior* for state law torts committed by any employee acting with the scope of employment);

3. Denial of Access to Courts pursuant to 42 U.S.C. § 1983 against Camhi, Laliberte, Ryan, DiGennaro, Trotter and Pontecorvo;

4. Search and Seizure and Due Process violations in connection with the seizure of Ms. Martinez's vehicle and the theft of her property pursuant to 42 U.S.C. § 1983 against Ryan and DiGennaro;

5. Supervisory liability on a direct involvement theory pursuant to 42 U.S.C. § 1983 against Camhi, Laliberte, DiGennaro and Pontecorvo; and

6. Failure to Intervene as an alternative theory of liability on the § 1983 claims.[2]

Statement of Facts

In accordance with Loc. Civ. R. 56.1(b), plaintiff identified genuine disputes of material fact in a separately filed counterstatement. Plaintiff respectfully refers the Court to that document ("Pl. 56.1") and to the facts presented in Judge Pollak's Report and Recommendation dated January 24, 2018, accessible at 2018 WL 604019.

A.    Background

Rosie Martinez is a hard-working and law abiding middle-aged New Yorker. *See* Pl. 56.1, ¶ 6 n.1. For many years she has been a housekeeper, including in mansions on the Upper East Side of Manhattan. Unbeknownst to Ms. Martinez, a man she started dating at the end of 2014, Danny Rivera, was apparently involved in criminal activity. *Id.* For several weeks, while Ms. Martinez was at work cleaning houses, Rivera was apparently selling heroin from her apartment in a Queens housing project known as the Pomonok Houses. *Id.*

In January 2015, defendant Ryan arrested an individual for criminal mischief and, according to Ryan, that person volunteered information about Rivera's criminal conduct. Ryan claims to have

---

[2] Accordingly, and pursuant to Fed. R. Civ. P. 41, plaintiff respectfully consents to the dismissal of the following defendants from the action: Weitzman, Forgione, Ficken, Rippel, Davneiro, Post, Wolf, Wolff, Lavelle, Seddio, Mendez and Russo.

3

brought the informant to the attention of defendant Joseph DiGennaro, a Sergeant in the NYPD's Intelligence Division working within the 107th Precinct.[3]

## B. Search Warrant Application

The informant, who DiGennaro compensated, claimed to have purchased drugs from Rivera inside plaintiff's apartment. The alleged transactions were not "controlled" by the police (i.e. verified) and there is nothing to suggest that Ms. Martinez was present for them or aware they had taken place. *See* Pl. 56.1, ¶¶ 3-6. There is also no indication that Ms. Martinez's 1999 Ford Explorer was connected to the sales in any manner.[4] Based on an affidavit filed by DiGennaro, a search warrant for plaintiff's apartment was issued on January 20, 2015. Defendants did not apply for a warrant to search plaintiff's vehicle. *See* Pl. 56.1, ¶¶ 4-7.

## C. Warrant Execution

On the afternoon of January 22, 2015, a large team of officers forcibly entered plaintiff's apartment while she was at work. Rivera was found in the apartment and arrested. Other than heroin in Rivera's duffle bag, there was no contraband in plaintiff's apartment. *See* Deposition Transcript of Joseph DiGenarro, February 28, 2019, annexed to Harvis Decl. as Exhibit 4, p. 298, ln. 5-7 (describing plaintiff's apartment as "neat and organized"). While she was at work, plaintiff

---

[3] Deposition Transcript of Eric Ryan annexed to the Declaration of Gabriel P. Harvis dated December 18, 2020 ("Harvis Decl."), as Exhibit 28, p. 33, ln. 17 through p. 34, ln. 23.

[4] *See* Deposition Transcript of Joseph DiGennaro, February 28, 2019, annexed to Harvis Decl. as Exhibit 4; p. 385, ln. 25 through p. 386, ln. 7; *id.* at p. 277, ln. 23-25 (no prior dealings with informant); *id. at* p. 335, ln. 1-5 (Q. [I]s anything in [the investigative reports] to indicate Rosie Martinez was selling drugs? A. No.); *id.* at p. 337, 13-25 (Q. Prior to this, did you have intelligence regarding the sale of drugs from [plaintiff's apartment]? A. I don't remember. Q. If you did, would it be noted anywhere? A. It would be noted in my narrative. Q. So fair to say that this appears to indicate you didn't have any prior information about this? A. Yes.)

received a call from her neighbor explaining that police were in plaintiff's apartment and wished to speak with her. Ms. Martinez left work and came home.[5]

Plaintiff arrived to find defendants Ryan and DiGennaro at her house. She was searched, her money confiscated, and arrested. The officers took her to the 107th Precinct. Using keys in her apartment, they also took plaintiff's vehicle. *See* Pl. 56.1, ¶ 8(A), (D).

D.     At the Precinct, Defendants Threaten, Brutalize and Deny Treatment to Ms. Martinez

As detailed in Section A of Pl. 56.1 at ¶ 8 (pp. 6-8), there is significant evidence that defendants assaulted plaintiff at the 107th precinct when she was unable to provide them with information about Rivera's criminality. Plaintiff respectfully refers the Court to the evidentiary matter recited therein.

E.     Defendants Attempt a Cover Up

As described in the R&R and plaintiff's factual counterstatement, defendants appear to have taken a number of affirmative steps to conceal and obscure the facts surrounding plaintiff's injury, including failing to report it, falsifying her medical records, filing false official reports and feigning a total lack of memory in a coordinated manner intended to frustrate the factfinding process. *See* Pl. 56.1, ¶ 8 (C).

F.     Ms. Martinez's Severe Injuries Persist for Five Years, Culminating in Surgery

It is a matter of record that Ms. Martinez sustained severe and to this point permanent injuries inside the 107th Precinct in January 2015. *See* Pl. 56.1, ¶ 14; *Martinez*, 2018 WL 604019 at *28 (describing a "serious injury" to plaintiff's hand); DE #182 (transcript of August 1, 2018 proceedings before the Hon. Ann M. Donnelly), p. 10, ln. 2-5 (THE COURT: [T]he defense

---

[5] *See* Deposition Transcript of Rosie Martinez, December 29, 2016, annexed to Harvis Decl. as Exhibit 2; pp. 38-40.

argument on the deliberate indifference to me is not particularly persuasive, given what the allegations of the injuries here are….based on the case law, the injury that they're claiming she suffered, in my mind that that's sort of the grand mal on this one. I mean it's not like she [scraped] her finger or something like that.). Indeed, plaintiff's injuries, which have interfered with her work and required, *inter alia*, surgery, physical therapy and injections, are supported by significant medical evidence. *See* Pl. 56.1, ¶¶ 12-14.

G.    Investigations Reveal Misconduct by Defendants

As explained in the Report & Recommendation dated January 24, 2018, at plaintiff's letter to the Court at DE #102 and in Pl. 56.1, ¶ 8(D), defendants avoided any scrutiny of the circumstances surrounding plaintiff's injury by misrepresenting and causing it to be miscategorized. Nevertheless, defendants Ryan and DiGennaro were substantiated for failing to make proper memo book entries and miscounting drug evidence. Plaintiff's allegations of missing property and Rivera's complaints to CCRB were unsubstantiated. *See* Pl. 56.1, ¶ 8 (D).

H.    Ms. Martinez Files a Timely Notice of Claim and Submits to Multiple Interviews and a 50-h Examination with the City

Despite defendants' efforts to obstruct, Ms. Martinez filed a timely notice of claim in compliance with § 50 of the General Municipal Law. *See* Notice of Claim annexed to Harvis Decl. as Exhibit 47. Both she and Mr. Rivera are also documented as having reported the misconduct to medical staff and investigators from internal affairs and the civilian complaint review board. Ms. Martinez also answered questions under oath at a 50-h examination and appeared for two depositions and an independent medical examination. *See* Plaintiff's 50-h Transcript annexed to Harvis Decl. as Exhibit 14. In every forum, Ms. Martinez has been consistent and credible.

I. **In this Civil Action, Defendants Obstruct Discovery Until the Statute of Limitations Expires Despite Fourteen Court Orders**

Judge Pollak's report and recommendation describes the contempt and defiance that led the Court to recommend terminating sanctions. *See e.g. Martinez,* 2018 WL 604019, at *23–26.

J. **In Depositions after the R&R, Defendants Feign Lack of Memory**

As forecasted in the sanctions orders, defendants Camhi, Ryan, Lalibert, DiGennaro, Trotter and Pontecorvo each arrived at depositions claiming a lack of memory concerning the circumstances surrounding plaintiff's injuries. *See* Pl. 56.1, ¶ 8 (E).

Governing Standards

Federal Rule of Civil Procedure 56 allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim are undisputed and that those facts entitle the party to the judgment sought. *Jackson v. Federal Express*, 766 F.3d 189, 194 (2d Cir. 2014). "The Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Mark v. Gawker Media LLC*, 13 CV 4347 (AJN), 2016 WL 1271064, *2 (S.D.N.Y. Mar. 29, 2016) (quoting Fed. R. Civ. P. 56(a)) (quotation marks omitted).

A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility

assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Under Rule 12, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *accord, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006). In assessing a Rule 12(b)(6) motion, the court must assume the truth of the well-pled factual allegations of the Complaint and must draw all reasonable inferences against the movant. *See*, *e.g.*, *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006); *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996).

The traditional test on a Rule 12(b)(6) motion required that the Complaint not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Still*, 101 F.3d at 891 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Supreme Court has revisited the test, however, and a complaint is now subject to dismissal unless its factual allegations, if credited, make the claim "plausible." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 556, 560-61 (2007). The court thus must look first to the well-pled factual allegations, determine whether they are plausible, and then determine whether those plausible allegations, if proven, suffice to establish liability. *See*,

*e.g.*, *Iqbal*, 129 S.Ct. at 1949-50. *Twombly* does not impose "a universal standard of heightened fact pleading, but … instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds sub. nom. Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (emphasis in original). In short, the pleading must "'raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombley*, 550 U.S. at 555).

In deciding a motion to dismiss, a court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Vasquez v. City of New York*, 99 Civ. 4606 (DC), 2000 U.S. Dist LEXIS 8887, *3 (S.D.N.Y. June 29, 2000) (citations omitted); *see also*, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

<u>Argument</u>

<u>Point I</u>
<u>Defendants' Partial Motion Lacks Color</u>

Defendants' partial motions do not accurately present the factual record or the governing law.

A. <u>Notice</u>

Defendants concede that plaintiff filed a timely notice of claim and commenced the instant action within the limitations period, but argue that Ms. Martinez's state law claims should nevertheless be dismissed with prejudice because Ms. Martinez did not identify the individual

officers by name or notify the City that the claim concerned an assault was committed by NYPD officers. DE #186, Point VI. Defendants are incorrect.

As the Hon. Roslynn R. Mauskopf explained in *Burgess v. City of New York*:

> "[T]he Second, Third, and Fourth Departments have rejected [the] requirement [that individual defendants be named in a notice of claim]…Because the Court of Appeals has not ruled on this issue, 'we must make our best estimate as to how New York's highest court would rule in this case.' Upon reviewing the above decisions, the Court predicts that the New York Court of Appeals will follow the reasoning of the Second, Third, and Fourth Departments because the purpose of Municipal Law § 50-e is to notify governmental authorities, not individual defendants. Accordingly, the Court concludes that there is no requirement that an NOC name each individual defendant.

15 CV 5525 (RRM) (VMS), 2018 WL 1581971, *6 (E.D.N.Y. Mar. 29, 2018) (citations omitted) (collecting cases).

The question is whether, considering plaintiff's timely notice of claim, 50-h hearing testimony and "any other evidence properly before the Court," the municipality was provided with facts sufficient to investigate the claims. *See Fisher v. Cty. of Nassau*, 10 CV 0677 (JS) (ETB), 2011 WL 4899920, *3 (E.D.N.Y. Oct. 13, 2011) ("The Notice need not provide that information with literal nicety or exactness; rather, the test is whether the Notice provides facts sufficient to enable the [municipality] to investigate.") (citations and quotation marks omitted) (collecting cases). On these facts, the test is well satisfied.

Less than two months after the incident in March 2015, Ms. Martinez duly filed a notice of claim with the City of New York, identifying the date, time and location of her arrest and that she was "subjected to…assault and battery…by members of the New York City Police Department" and that the officers' conduct deprived plaintiff of her "constitutional, civil and common law rights." *See* Notice of Claim, annexed to Harvis Decl. as Exhibit 47.

On July 13, 2015, Ms. Martinez contacted the Civilian Complaint Review Board ("CCRB") and mentioned her assault. *See* Martinez CCRB Intake Call Transcript annexed to Harvis Decl. as Exhibit 46, p. 24, ln. 5 through p. 27, ln. 21. The CCRB investigator told Ms. Martinez that her complaint would be forwarded to NYPD's internal affairs department and that plaintiff would be hearing from an investigator. *Id.* at p. 31, ln. 5-18. Indeed, Ms. Martinez spoke to Internal Affairs at length on September 9, 2015, providing a detailed account of the assault, including a description of her assailants, and discussing her denial of medical treatment and the unlawful seizure of her property. *See* Transcript of Rosie Martinez IAB Interview, September 9, 2015, annexed to Harvis Decl. as Exhibit 13, p. 10, ln. 2-10; p. 14, ln. 9 through p. 18, ln. 21; p. 38, ln. 4 through p. 40, ln. 25.

Plaintiff then appeared at a hearing with the City of New York pursuant to § 50-h of the General Municipal Law on December 28, 2015:

> Q.  You said the first officer, the one in his thirties, he grabbed your hair, he stepped on your feet, and he choked you, correct, while the other officer watched; is that correct?
>
> A.  The other officer watched for a few minutes.
>
> Q.  What did the second officer do?
>
> A.  And then proceeded took my right hand, and bent over my thumb (indicating).
>
> Q.  Can you describe the second officer to me, race?
>
> A.  White.
>
> Q.  Age; twenties, thirties, forties?
>
> A.  I would say fifties.
>
> Q.  What was he wearing?
>
> A.  A white shirt.
>
> Q.  …Height; taller or shorter than the other one?
>
> A.  Shorter than the other one.
>
> Q.  …What color hair?

A.      On the side salt and pepper.

50-h Transcript annexed to Harvis Decl. as Exhibit 14, p. 39, ln. 11 through p. 40, ln. 20.

During the same period, the individual defendants were concealing the incident, including from their own attorneys. *See Martinez*, 2018 WL 604019 at *35 ("[G]iven the Court's review of the numerous documents, transcripts, and other filings recently provided, it is not clear to the Court how much of the fault for the delays in this litigation lies with counsel and how much is attributable to the clients themselves."); *id.* at * 16 ("It is of further concern that Officer Ryan was also questioned during the course of a CCRB investigation into injuries allegedly suffered by Danny Rivera during his arrest. Despite being questioned about events in the precinct that night, Ryan, plaintiff's arresting officer, apparently never mentioned Ms. Martinez's self-inflicted injuries during that inquiry."); *id.* at at *29 ("The Court completely rejects defendants' efforts to shift the blame to plaintiff or her counsel for not [knowing what defendant Ryan would say at deposition or how the City had investigated the incident].")

Of course, the real party in interest on the state law claims subject to notice of claim requirements is the City of New York, which is responsible for its employees conduct, including their concealment, under the doctrine of *respondeat superior*. *See Martinez*, 2018 WL 604019 at *17 ("[E]ven in light of plaintiff's efforts to ferret out information about that night, defendants responded to plaintiff's April 2016 request for files relating to any investigation conducted by CCRB, IAB, etc. that 'upon information and belief, ... no such documents exist,' but they were continuing to search. This response was provided while some of these investigations were still ongoing. Defendants gave the same response to the same request six months later in January 2017, denying the existence of documents relating to these four investigations, three by the IAB and one by the CCRB.") (citations omitted); *id.* at *29, n.23 ("[I]f the statute of limitations is raised as a

defense, [it is recommended that] the district court equitably toll the statute of limitations against the newly-identified defendants after further briefing on the issue.").[6]

### B. Personal Involvement

Defendants' personal involvement arguments fail. They claim that plaintiff has never "formally" identified her assailants and there is thus uncertainty as to their identities, but that is simply false. The assailants' identities were disclosed and discussed before the Court in the presence of defense counsel at several conferences and obvious upon review of the record.

In any event, the record at summary judgment, including plaintiff's affidavit, establishes the personal involvement of defendants Ryan, Camhi, Laliberte, DiGennaro, Trotter and Pontecorvo in the § 1983 claims asserted against them as a matter of law. *See* Martinez Affidavit annexed to Harvis Decl. as Exhibit 1, ¶¶ 2-4; *Provost v. City of Newburgh*, 262 F.3d 146, 154–55 (2d Cir. 2001) (defining personal involvement as "personal participation by one who has knowledge of the facts that rendered the conduct illegal") (citing *Gaston v. Coughlin,* 249 F.3d 156, 165–66 (2d Cir. 2001) (footnote omitted).

Plaintiff respectfully submits that defense counsel, as officers of the Court, owe the tribunal a duty of candor that these arguments fail to meet, and that such conduct is particularly unseemly given the Court's prior findings. *See Martinez*, 2018 WL 604019 at *25 ("Such a disingenuous claim indicates willfulness and weighs in favor of severe sanctions.") (citation omitted).

---

[6] By the same token, plaintiff's timely claims for negligent and intentional infliction of emotional distress should also survive.

## C. Supervisory Liability

The supervisory liability arguments are baseless. Defendants first cite the pleading to argue that plaintiff's supervisory liability allegations are "boilerplate," a mischaracterization that also ignores the summary judgment record containing genuine disputes of material fact sufficient to survive summary judgment and establish direct participation by Camhi, Laliberte, DiGennaro and Pontecorvo. *See* Pl. 56.1, ¶ 8. Defendants then argue that plaintiff cannot establish an underlying constitutional violations to support her supervisory liability claim. But defendants are not even attempting to move on plaintiff's excessive force claim and therefore concede the point. Next, defendants claim that plaintiff's supervisory liability claim is somehow prohibited by *Iqbal*; but the law in the Second Circuit is clear that the direct participation theory of supervisory liability at issue here remains viable. *See, e.g., Estate of Keenan v. Hoffman-Rosenfeld*, 16 CV 0149 (SJF) (AYS), 2019 WL 3416374, *18 n.12 (E.D.N.Y. July 29, 2019), *aff'd,* 19 CV 2730, 2020 WL 6494881 (2d Cir. Nov. 5, 2020) (noting that "the weight of authority among the district courts in the Eastern District of New York suggests" that the "direct participation" theory of supervisory liability survives Iqbal). Lastly, defendants claim that plaintiff cannot premise her direct and supervisory claim on the same conduct, but she does not seek to do so – rather she claims that the supervisory defendants, each of whom had knowledge of the facts that rendered the conduct illegal – participated in it, facilitated it, failed to prevent it and helped to cover it up.

## D. Failure to Intervene

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases). Liability attaches if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position

would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F.Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11-12).

Defendants claim that plaintiff's failure to intervene claim should be dismissed because it is vague and lacking an underlying constitutional violation However, the evidence clearly establishes material questions of fact as to the individual defendants' liability on plaintiff's failure to intervene claims, precluding summary judgment. Indeed, the events here, which took place over many hours and involve allegedly coordinated efforts to injury plaintiff, deny her treatment and cover up the misconduct, are particularly suited to failure to intervene liability. Pl. 56.1, ¶ 8; *see, e.g., Pereyra v. Eaddy*, 13 CV 4760 (PAC) (MHD), 2015 WL 3953606, *8 (S.D.N.Y. June 29, 2015) (Crotty, J.) ("Generally, the question of whether intervention was feasible is one for the jury.").

### E. Vehicle Seizure and Search

Defendants contend that plaintiff lacks standing to challenge the seizure of her vehicle and that, in any event, it was lawful. DE #186, Point I(B). These arguments have no merit.

It is beyond cavil that Ms. Martinez was the vehicle's lawful owner and thus had an expectation of privacy sufficient to confer standing under the Fourth Amendment. Pl. 56.1, ¶ 1; *see, e.g., Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) ("One who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it.").

Defendants also concede that Ms. Martinez's vehicle was "legally parked" and seized without a warrant, but claim – in conclusory fashion – that the seizure was somehow justified based on the "community caretaking function." DE #186, This is incorrect. *See United States v. Squires,* 456 F.2d 967, 970 (2d Cir.1972) ("However, since the Cadillac was parked in the parking lot behind the apartment house in which appellant lived, which was an appropriate place for it to be, and appellant

did not consent to its removal, the officers did not have a reasonable basis for concluding that it was necessary to take the Cadillac to the police station in order to protect it."); *Miranda v. City of Cornelius,* 429 F.3d 858, 860 (9th Cir. 2005) ("[T]he impoundment of Plaintiffs' vehicle was an unreasonable seizure not justified by the community caretaking doctrine because the police have no duty to protect a vehicle parked on the owners' property and there was no reason to believe that impoundment would prevent any threat to public safety from its unlawful operation...."); *United States v. Jacobs,* No. 00–20074–01–JWL, 2000 WL 1701723, *3 (D.Kan. Nov. 7, 2000) ("This court agree[s] with other jurisdictions that police may not seize a vehicle lawfully parked on a driver's property simply because the driver is arrested."); *Harrell v. City of New York*, 138 F. Supp. 3d 479, 489-90 (S.D.N.Y. 2015), *on reconsideration in part sub nom. Harrell v. Joshi*, 14 CV 7246 (VEC), 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015) ("The fact that the vehicles are seized in public is of no moment.") (collecting cases).

> When the government engages in any kind of warrantless search, it bears the burden of proving by a preponderance of the credible evidence that the intrusion was exempted from the fourth amendment's warrant requirement....The government must demonstrate with particularity that each element of the inventory search exception has been met. In addition, in order to prevent impoundment and inventory from becoming a convenient bypass around the fourth amendment, the reasonableness of each search must be strictly reviewed.

*United States v. Conception*, 1986 WL 6830, *3 (E.D.N.Y. Mar. 5, 1986) (citations omitted); *see id.* at *5 ("It is well settled that police may not undertake criminal investigations under the mantle of 'community caretaking.' [A]n inventory search cannot serve as a pretext for a criminal investigation.") (citation omitted).

Defendants admit that they lacked probable cause to obtain a warrant for the vehicle and there is no admissible evidence even offered in support of the anonymous *post hoc* hearsay defendants now

purport to invoke in support of the seizure. Pl. 56.1, ¶¶ 4-7 ("I didn't have enough information at the time to get a search warrant for the car….[it was searched] to see if I had enough to get the search warrant for the car.").  This is plainly impermissible. *See Fla. v. Wells*, 495 U.S. 1, 1 (1990) ("inventory searches [may not be] turned into a ruse for a general rummaging in order to discover incriminating evidence"); *United States v. Zimmerman*, 19 CR 414 (RRM), 2020 WL 4749855, *5 (E.D.N.Y. Aug. 17, 2020) ("[a] valid inventory search is not done to detect crime or to serve criminal prosecutions") (citations and internal quotation marks omitted). Notably, defendant DiGennaro provided false testimony regarding the information obtained during the investigation preceding the search surrounding the investigation. *See Martinez*, 2018 WL 604019 at *9 n. 10 ("As it turned out, contrary to DiGennaro's testimony, the records, when finally produced, showed that plaintiff was not in the apartment at the time of the sale."). There is nothing to suggest, let alone establish, that the objective justifications of the community caretaker exception apply here, or that defendants even seized the vehicle in good faith.

Defendants also seek to assert qualified immunity as a shield against liability for the seizure, search and extended impoundment of plaintiff's vehicle. This is not a winning argument, since the right at issue has been clearly established for approximately fifty years. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 472–73, (1971), *holding modified on other grounds by Horton v. California*, 496 U.S. 128 (1990) ("The police had ample opportunity to obtain a valid warrant; they knew the automobile's exact description and location well in advance; they intended to seize it when they came upon Coolidge's property. And this is not a case involving contraband or stolen goods or objects dangerous in themselves. The seizure was therefore unconstitutional, and so was the subsequent search at the station house.") (citations omitted).

Defendants have failed to meet their burden to justify the warrantless seizure and exploratory search of plaintiff's automobile. At the very least, genuine disputes of material fact preclude summary judgment on this issue.

F.  Stolen Property

According to defendants, Ms. Martinez cannot assert a due process claim in connection with money and gift cards that she claims defendants took from her and her apartment on January 22, 2015 and never vouchered. DE #186, Point I(A). This argument fails as a matter of law.

The cases defendants cite do not apply because Ms. Martinez was never given a voucher and thus could not avail herself of post-deprivation remedies available under state law. Pl. 56.1, ¶ 6 (Q. Did you receive a voucher for that cash? A. No...); *See*, e.g., *Herbert v. City of New York*, 12 CV 1096 (JG) (LB), 2012 WL 3779230, *2 (E.D.N.Y. Aug. 30, 2012) (noting that a due process claim will lie where – as here – the plaintiff was not provided with a voucher for the property at issue and that the claim may be brought against the municipality directly pursuant to *Monell*); *Sommerville v. Wright*, 12 CV 165 (KAM) (JMA), 2014 WL 794275, *6 (E.D.N.Y. Feb. 25, 2014) (In *Butler*, the Second Circuit rejected the argument that *Parratt* bars a procedural due process claim when the plaintiff is not given a property voucher …After *Butler* and *Alexandre*, an arrestee can succeed on a procedural due process claim by demonstrating that: (1) the City arrested him and seized his property; (2) it did not give him a property voucher with the constitutionally-required notice printed on it; (3) it did not otherwise notify him of the procedures he could follow to reclaim his property; and (4) he was deprived of the property as a result") (citations and internal quotation marks omitted); *Frith v. City of New York*, 07 CV 5899 (JSR) (DF), 2011 WL 3477083, *3 (S.D.N.Y. July 7, 2011), *report and recommendation adopted*, 07 CV 5899 (JSR), 2011 WL 3478141 (S.D.N.Y. Aug. 8, 2011) (where "the discovery record does not demonstrate that either Plaintiff or his counsel

actually *did* receive [a voucher for the property at issue], the Second Circuit has held that granting summary judgment to the City would constitute reversible error") (citations omitted).

Here, the record demonstrates an enforceable due process violation: Ms. Martinez was arrested, not given a voucher or information on how to reclaim the stolen property and deprived of it as a result. Accordingly, summary judgment is unwarranted.

G. <u>Cover Up</u>

A so-called backward looking denial-of-access claim, grounded in the First Amendment and premised on *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), arises where defendants' concealment has deprived plaintiff of an identifiable cause of action and remedy. *See Ranta v. City of New York*, 14 CV 3794 (FB) (LB), 2018 WL 3127154, *1 (E.D.N.Y. June 26, 2018), *reconsideration denied*, 2019 WL 2568725 (E.D.N.Y. June 20, 2019).

Here, as Judge Pollak correctly recognized, the concealment efforts that evidently followed plaintiff's assault, taken together with the defendants' claimed lack of memory, have materially diminished plaintiff's ability to prosecute her damages claims in this action and assert all available claims. *Martinez*, 2018 WL 604019, at *29 (E.D.N.Y. Jan. 24, 2018) ("Should it be determined that there is no way around the statute of limitations, plaintiff's claims against the newly-identified officers, such as Ryan and Camhi, will be lost forever, all due to defendants' failure to provide the discovery that would have identified them long ago. In the context of a motion for sanctions, the Court construes the uncertainty caused by defendants' misconduct against them. Viewed in that light, the prejudice to plaintiff is overwhelming.").

Illustrating the prejudice defendants' cover up has caused plaintiff are defendants arguments as to notice. Had defendants admitted to the incident involving plaintiff from the outset rather than attempting to conceal it, plaintiff might have had more information, including the officers' names,

to include in her notice of claim. Now, defendants urge this Court to dismiss plaintiff's claims and, although their arguments are defective and unmeritorious, they present an unnecessary additional potential obstacle for plaintiff to overcome. Likewise, in failing to document their version of the incident, defendants have deprived plaintiff of vital information for use at trial (or inquest) and Ms. Martinez may obtain a smaller damages award than she otherwise would. Additionally, there are claims that plaintiff was not able to include in the hastily amended pleading, which plaintiff must now seek to assert on equitable grounds. As Judge Pollak determined, plaintiff did not create these issues, but must contend with them due to defendants' concealment. Such grounds support denial of defendants' motion on the denial-of-access claim.

Plaintiff respectfully notes that the denial-of-access claim will be properly extinguished if the Court grants her primary request that it reconsider and adopt the recommenda terminating sanctions. *See Ranta*, 2018 WL 317154 at *1 "(There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.") (citation omitted).

H. <u>Denial of Medical Care, Civil Rights Law § 28 and Conditions of Confinement</u>

Under the law of New York State:

> When a person is under arrest or otherwise in the custody of a police officer, peace officer or other law enforcement representative or entity, such officer, representative or entity shall have a duty to provide attention to the medical and mental health needs of such person, and obtain assistance and treatment of such needs for such person, which are reasonable and provided in good faith under the circumstances. Any person who has not received such reasonable and good faith attention, assistance or treatment and who, as a result, suffers serious physical injury or significant exacerbation of an injury or condition shall have a cause of action against such officer, representative, and/or entity. In any such civil action, the court, in addition to awarding actual damages and costs, may award reasonable attorneys' fees to a successful plaintiff. The provisions of this section

> are in addition to, but shall not supersede, any other rights or
> remedies available in law or equity.

New York State Civil Rights Law § 28. Clearly, the evidence at summary judgment raises material questions of fact under this standard, including whether defendants complied with their duty to provide reasonable care in good faith. *See* Pl. 56.1, ¶ 8(C). In accordance with the January 24, 2018 Report and Recommendation, and given that plaintiff timely filed a notice of claim as required to assert state law claims in this action, plaintiff respectfully requests that the Court "reach into equity" and permit plaintiff to assert a claim under Section 28 of the Civil Rights Law.

Defendants' obligations under the Fourteenth Amendment to provide medical treatment to plaintiff as a pre-trial detainee requires evidence of an objectively serious medical condition, a standard met on these facts. *Carter v. Broome Cty.*, 394 F. Supp. 3d 228, 240 (N.D.N.Y. 2019) ("In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, we consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain.") (citing *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019)). Each factor of the test strongly supports denial of defendants' motion: any doctor would consider a swollen hand resulting from a thumb being bent backwards while the other hand is handcuffed to be worthy of treatment and there is no question that it significantly affected Ms. Martinez, as testimony of her and Danny Rivera makes clear. There can also be no question that plaintiff was in tremendous pain. *See* Pl. 56.1, ¶¶ 8(C), 9-16 and Figures 4, 7; *Martinez*, 2018 WL 604019 at *28 (describing a "serious injury" to plaintiff's hand); DE #182 (transcript of August 1, 2018 proceedings before the Hon. Ann M. Donnelly), p. 10, ln. 2-5 (THE COURT: [T]he defense

argument on the deliberate indifference to me is not particularly persuasive, given what the allegations of the injuries here are….based on the case law, the injury that they're claiming she suffered, in my mind that that's sort of the grand mal on this one. I mean it's not like she [scraped] her finger or something like that.); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause ....").[7]

The second, subjective prong requires evidence that a "defendant official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or *should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety." *Carter*, 394 F. Supp. 3d at 240 (citation omitted) (emphasis in original). This record raises genuine disputes of material fact on the question of defendants' subjective knowledge that defeat summary judgment. *See, e.g.,* Pl. 56.1, ¶ 8(A) ("I was not feeling— my hands were getting numb, they said 'Good for you.'…I was in there in that room, and I was handcuffed and I was feeling a lot of pain."); *see also, e.g., Martinez v. D'Agata* , 16 CV 44 (VB), 2019 WL 6895436, *10 (S.D.N.Y. Dec. 18, 2019) (denying summary judgment on § 1983 deliberate indifference claim where defendants knew of injury and delayed care four hours).

---

[7] Defendants' argument on subjective knowledge misses the mark entirely. According to defendants, the first prong of the due process analysis, concerning the severity of plaintiff's injury, is allegedly unmet because plaintiff subjectively believed she had broken her finger, when the record reflects that the actual injury was much worse, more persistent and more debilitating. But the case law is clear that the only subjective determination relevant to the deliberate indifference analysis applies to the second prong and, as discussed below, concerns the defendants' subjective knowledge. Plaintiff's belief as to her condition and its severity is irrelevant as a matter of law to the defendants' obligation to render care. *See, e.g., Knight v. New York State Dep't of Corr.*, 18 CV 7172 (KMK), 2020 WL 3893282, *12 (S.D.N.Y. July 10, 2020) ("A fact-finder could infer from such conduct that Defendants consciously chose an easier and less efficacious treatment plan that would likely cause pain and other medical problems.") (brackets, ellipses, quotation marks and citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (describing defendants' subject knowledge as "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence").

None of the cases cited by defendants are persuasive and they are easily distinguished. Those cases broadly arise in circumstances, unlike here, where the plaintiff cannot establish disputes as to the officers' subjective knowledge and where evidence suggests that defendants acted in good faith and did not, as here, intentionally withhold care. By the same token, the cases defendants cite do not grapple with the circumstances comparable to those presented here, where male officers are alleged to have inflicted injury on a handcuffed female prisoner and then taken affirmative steps to conceal their conduct instead of providing the care due under the constitution.

Accordingly, defendants' motion should be denied in its entirety.

Point II<br>
The Court Should Reconsider and Adopt the<br>
Honorable Chief Magistrate Judge's<br>
Recommendation for Terminating Sanctions

For the reasons set forth herein, and based on the full record of this case including defendants' recently claimed lack of memory, plaintiff respectfully submits that the Court should reconsider and adopt the recommendation for terminating sanctions. *See Martinez*, 2018 WL 604019 at *29-30 ("[T]he Court finds that the overwhelming prejudice to plaintiff weighs heavily in favor of dispositive sanctions for defendants' conduct in this case."); *id.* at * 33 ("The Court respectfully recommends that the district court impose a sanction either striking defendants' answer and entering judgment in plaintiff's favor on liability or granting summary judgment in favor of plaintiff on her claims, and sending the case to trial on damages."); *see, e.g., Williams*, 779 F.Supp.2d at 280 & n.2 ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd*, 581 Fed. App'x 56 (2d Cir. 2014); *Pippins*, 279 F.R.D. at 253 ("[A] Magistrate Judge's resolution of discovery disputes deserves substantial deference.").

To the extent the Court concludes that a trial on liability is appropriate, plaintiff respectfully requests that the Court adopt the lesser sanction of preclusion,. *See* Pl. 56.1, ¶ 8(E); *Martinez*, 2018 WL 604019 at *34 ("If the district court declines to adopt this Court's recommendation to strike defendants' pleadings and impose the sanction of default or summary judgment in plaintiff's favor on liability, the Court respectfully recommends that the court consider entering as a lesser sanction an order that would preclude defendants from relying at trial on any of the recently produced documents or testimony of the witnesses recently identified who claim that plaintiff injured herself while in the Precinct."); *Martinez*, 2018 WL 1835935 at *3 ("I respectfully decline to impose this sanction *at this stage of the litigation.*…However, given the fluid nature of litigation, I will reconsider the sanction of preclusion if appropriate.") (emphasis added); *id.* at *4 ("Judge Pollak was appropriately concerned with the possibility that some witnesses might claim failure of memory due to the passage of time. (ECF No. 100 at 61.) Should that prove to be true, I will consider additional appropriate sanctions."); *see also id.* ("I will consider additional appropriate sanctions and curative measures at trial.").

<u>Conclusion</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motions in their entirety, enter judgment in plaintiff's favor and grant such other and further relief as the Court deems just and proper.

Dated:      December 18, 2020
            Briarcliff Manor, New York


                        Elefterakis, Elefterakis & Panek

                        _____
                        Gabriel P. Harvis
                        Baree N. Fett
                        80 Pine Street, 38th Floor
                        New York, New York 10005
                        (212) 532-1116

                        *Attorneys for plaintiff*