UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ROSIE MARTINEZ,

                    Plaintiff,                              **MEMORANDUM AND ORDER**

            v.                                             16-CV-79 (RPK) (CLP)

CITY OF NEW YORK, Police Officer ERIC
RYAN, Lieutenant DAVID CAMHI, Sergeant
JOSEPH DIGENNARO, Sergeant KEITH
LALIBERTE, Sergeant ALBERT TROTTER,
Sergeant JOSEPH PONTECORVO, and
JOHN and JANE DOE 1 through 10
individually and in their official capacities
(the names John and Jane Doe being fictitious,
as the true names are presently unknown),

                    Defendants.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:


        Plaintiff Rosie Martinez brings eleven federal and state law claims against the City of New

York ("City"), six named officers of the New York Police Department ("NYPD"), and officers

John and Jane Doe, 1 through 10.  The City and the named officers have agreed that Ms. Martinez

can proceed to trial on her claim of excessive force in violation of the Fourth Amendment.  They

have sought summary judgment or dismissal of all other claims.  For the reasons that follow, I

grant defendants' motion with respect to all claims except for Ms. Martinez's assault-and-battery

and deliberate indifference claims, and Ms. Martinez's failure to intervene claims against

defendants David Camhi, Keith Laliberte, Eric Ryan, and Joseph DiGennaro pertaining to

excessive force and deliberate indifference.  Those claims, along with Ms. Martinez's excessive

force claim, may proceed to trial.

## BACKGROUND

### A.     Factual Background

On January 22, 2015, the NYPD arrested Danny Rivera inside Ms. Martinez's apartment, seizing thousands of dollars and 280 bags of cocaine. Danny Rivera Dep. I, Defs.' Ex. B, at 189:6 (Dkt. #184-2) ("Rivera Dep. I"); Pl.s' Local Rule 56.1 Counter Statement of Facts ¶ 6 (Dkt. #193) ("Pl.'s Statement"). When Ms. Martinez arrived home, Officer Ryan placed her under arrest, bringing her to the 107th Precinct. *Id.* at ¶ 8.D; Command Center Call Tr., Pl.'s Ex. 24, at 5:6-9 (Dkt. #194-24) ("Command Center Call Tr."). By all accounts, Ms. Martinez entered the precinct uninjured. *See* Pl.'s Statement ¶ 8.A; *see also* Keith Laliberte Dep., Pl.'s Ex. 23, at 145:9-16 (Dkt. #194-23) ("Laliberte Dep."). When she left five hours later, her right wrist was so severely swollen that officers could not fit it in a handcuff. Pl.'s Statement ¶ 8.C. What happened inside the precinct that night forms the crux of this suit.

In late 2014, Ms. Martinez, a housecleaner, began dating Mr. Rivera. *Id.* at ¶ 6 & n.1. Mr. Rivera began selling heroin out of Ms. Martinez's apartment. *Ibid.* Ms. Martinez asserts that he did so without her knowledge. Rosie Martinez Dep., Pl.'s Ex. 2, at 32:2-6 (Dkt. #194-2) ("Martinez Dep.").

Just how the NYPD learned Mr. Rivera was dealing drugs from Ms. Martinez's apartment is disputed. Pl.'s Statement ¶ 4. According to the defendants, in early January 2015, Officer Ryan arrested an individual who claimed knowledge of Mr. Rivera's criminal conduct. Eric Ryan Dep. I, Pl.'s Ex. 28, 33:17-34:23 (Dkt. #194-28) ("Ryan Dep. I"). Officer Ryan informed Sergeant DiGennaro. *Ibid.* Sergeant DiGennaro, in turn, states that the informant claimed to have purchased drugs from Mr. Rivera in Ms. Martinez's apartment. Joseph DiGennaro Dep. II, Pl.'s Ex. 6, at 206:24-207:4 (Dkt. #194-6) ("DiGennaro Dep. II").

2

According to Sergeant DiGennaro, the informant told him that Mr. Rivera used a car, a 1999 Ford Explorer, to "re-up" his supply on Thursdays or Fridays.  Joseph DiGennaro Dep. I, at 277:1-278:12 (Dkt. #194-4) ("DiGennaro Dep. I").   The police began surveilling this car on January 16.  *See* Complaint Follow-Up Informational PD313-081B, Defs.' Ex. 3  (Dkt #184-3) ("Follow-Up Informational").  This Ford Explorer was legally titled in Ms. Martinez's name, Pl.'s Statement ¶ 1, and while the parties dispute whether she had given legal ownership of it to Mr. Rivera, *ibid*, he "was in the process of transferring the insurance over to [his] name and . . . driving that car."  Danny Rivera Dep. II, Pl.'s Ex. 3, at 187:3-12 (Dkt. #194-3) ("Rivera Dep. II"). Shortly before January 22, the informant told Sergeant DiGennaro that Mr. Rivera would be driving the Ford Explorer that night to refill his supply in Brooklyn.  DiGennaro Dep. I, at 277:1-278:12.  Mr. Rivera contends that he could not have used the Ford to make that trip, because the Ford's timing belt had snapped about nine days earlier.  Rivera Dep. II, at 187:17-188:5.

Either way, on January 22, NYPD officers arrested Mr. Rivera in Ms. Martinez's apartment while Ms. Martinez was at work.  Rivera Dep. I, at 189:6; Pl.'s Statement ¶ 6.  On Mr. Rivera, they found 280 bags of cocaine.  Rivera Dep. I, at 189:6; Pl.'s Statement ¶ 6.  When Ms. Martinez came home, Officer Ryan arrested her, *id.* at ¶ 8.D; Command Center Call Tr., at 5:6-9, and Sergeant DiGennaro impounded the Ford Explorer, which was parked in front of the apartment complex.   DiGennaro Dep. I, 292:9-25.   Officers later searched the vehicle at Sergeant DiGennaro's direction.  Ryan Dep. I, at 118:20-24; Defs.' Statement ¶ 7.  Ms. Martinez testifies that police took about $100, one or two gift cards, and a phone charger from her purse when they processed her.  According to Ms. Martinez, they failed to return that property.  Martinez Decl. 81:7-24; CCRB Summary, Pl.'s Ex. 11 (Dkt. #194-11).

Ms. Martinez arrived at the station in "apparently normal" physical condition. Pl.'s Statement ¶ 8.A; 107th Command Log, Pl.'s Ex. 40, at 53 (Dkt. #194-40) ("Command Log"). She was then taken to the Juvenile Room and handcuffed by one hand to a bench. Pl.'s Statement ¶¶ 8.A, 8.B. As the desk officer that night, Sergeant Laliberte was stationed near the room with a partial view into it. Laliberte Dep. 140:6-15; 142: 2-8; 153:4-7. What happened next is disputed.

The officers claim that Ms. Martinez began punching a wall so fiercely that she injured her right hand. Command Center Call Tr., at 3:6-15; Pl.'s Statement ¶ 8.B. Lieutenant Camhi says he entered the room to restrain her. Command Center Call Tr., at 3:6-15; David Camhi Dep., Pl.'s Ex. 27, at 95:20-23 (Dkt. #194-27) ("Camhi Dep."). Officer Ryan reports checking on Ms. Martinez seventeen times that night, including nine times after the alleged incident occured. Eric Ryan Dep. II, Pl.'s Ex. 28, at 301:10-302:16 (Dkt. #194-28) ("Ryan Dep. II"). By their own accounts, Sergeant DiGennaro, Lieutenant Camhi, and Officer Ryan each questioned her, restrained her, or checked on her that night. DiGennaro Dep. II, at 485:8-24; 487:2-25; Ryan Dep. II, at 301:10-302:16; Camhi Dep., at 95:20-23.

Ms. Martinez offers a different account. According to her, two officers entered the room to interrogate her. When she told them that she did not know who Mr. Rivera's drug distributor was, they smacked her, pulled her hair, choked her, stomped on her feet, and bent her right thumb back. Martinez Dep. 57:1-59:24; Pl.'s Statement ¶ 8.A. Her right hand swelled, and she spent the next five hours in pain. Martinez Dep. 61:21-22; Pl.'s Statement ¶ 6. When she requested medical care, the officers refused, hoping that her swelling would decrease. Rosie Martinez IAB Interview, Pl.'s Ex. 13, at 39:20-40:23 (Dkt. #194-13) ("Martinez IAB Interview"); Pl.'s Statement ¶ 8.C. Ms. Martinez's description of one of her assailants matches Sergeant Laliberte. *Id.* at ¶ 8.B.

4

From here on, the parties agree.  Ms. Martinez suffered her injuries at around 12:30 AM. Pl.'s Statement ¶ 8.B; Command Center Call Tr. 5:17-19; DiGennaro Dep. II, at 292:15-17.  No officer gave medical care, and the officers did not record the incident.  Report & Recommendation 31 (Dkt. #100) ("R. & R."); Pl.'s Statement ¶ 8.C.  By the time officers sent Ms. Martinez to Central Booking, her right wrist was so swollen it took two handcuffs to secure it.  Martinez Dep. 73:14-21.

At Central Booking, medical screeners immediately redirected Ms. Martinez and the two officers with her, Officer Trotter and Sergeant Pontecorvo, to the emergency room.  *Id.* at 73:22-74:2.  Ms. Martinez's and the officers' conflicting accounts of how she sustained her injuries are memorialized in a medical report.  Unscheduled ED Physician Progress Note, Pl.'s Ex. 39 (Dkt. #193-39) ("Progress Note").  An X-ray showed no broken bones.   Queens Hospital Center Note, Pl.'s Ex. 51 (Dkt. #193-51) ("QHC Note").  The doctor gave Ms. Martinez a splint, prescribed Motrin and Maalox, and advised her to follow up with a hand specialist.  Progress Note; Pl.'s Statement at ¶ 16.  At 9:19 AM, Lieutenant Camhi made a call to the Internal Affairs Bureau (IAB) Command Center, in which he stated that Ms. Martinez had injured herself punching a wall. Command Center Call Tr. 5:6-17.

Afterward, medical records indicate Ms. Martinez continued to experience chronic pain in her hand.  Rose Martinez Medical Records, Pl.'s Ex. at 53 (Dkt. #194-53).  This pain resulted in multiple medical visits and ultimately culminated in surgery.  *Ibid.* at 53; Pl.'s Statement ¶ 14. Meanwhile, Lieutenant Camhi's call to IAB triggered investigations by the Queens Patrol Borough, the 107th Precinct, and IAB.  R. & R. at 31.

B.     **Procedural History**

5

Ms. Martinez filed her initial complaint in 2016, raising a number of claims against the City and unnamed officers relating to the day of her arrest.  Compl. ¶¶ 8-9, 26-52 (Dkt. #1).

During discovery, the City failed to comply with discovery orders issued by Magistrate Judge Cheryl L. Pollak.  R. & R. at 1.  Then, on December 18, 2017, the City suddenly made disclosures that "changed the entire landscape of the lawsuit," *id.* at 3, including the existence of Lieutenant Camhi's call to IAB and the NYPD's internal investigations of the incident.  *Id*. at 30. Ms. Martinez moved for sanctions.  As the Court considered sanctions, the defendants waived defenses based on the statute of limitations.  Mot. for Sanctions (Dkt. # 85); Ltr. re: Equitable Tolling (Dkt. #95).

On January 23, 2018, Ms. Martinez filed the operative Second Amended Complaint. Second Am. Compl. (Dkt. #99).  The Second Amended Complaint alleges (i) deprivation of due process, (ii) improper vehicle search, (iii) Section 1983 conspiracy, (iv) denial of access to courts/Section 1983 cover-up, (v) unreasonable force, (vi) assault-and-battery, (vii) negligent hiring, training, and retention, (viii) intentional infliction of emotional distress ("IIED"), (ix) negligent infliction of emotional distress ("NIED"), (x) failure to intervene, (xi) deliberate indifference, (xii) supervisory liability, and (xiii) *Monell* claims.  *Id.* at ¶¶ 81-135.  Ms. Martinez identified the City and the following named individuals as defendants: Lieutenant Jason Weitzman, Sergeant Jason Forgione, Officer Eric Ryan, Lieutenant David Camhi, Sergeant Joseph DiGennaro, Captain Paul Valerga, Sergeant Keith Laliberte, Sergeant Joseph Pontecorvo, Officer Blake Ficken, Officer Albert Trotter, Officer Peter Kandinov, Officer Matthew Rippel, Detective James Davneiro, Officer Byran Post, Officer Tiffany Wolf, Officer Casey Wolff, Sergeant Richard

Lavelle, Officer James Seddio, Officer Daniel Mendez, Officer Richard Russo.  She also listed 10 John and Jane Doe defendants.[*]

The day after Ms. Martinez filed the Second Amended Complaint, Magistrate Judge Pollak recommended granting summary judgment for her as a sanction for defendants' "egregious" discovery violations.  R. & R. at 61.  Then-presiding Judge Ann M. Donnelly adopted Magistrate Judge Pollak's findings regarding the violations.  But she declined to adopt that sanction.  Instead, she ordered the City to pay all of Ms. Martinez's reasonable expenses incurred as a result of its discovery failures.  Mem. Decision & Order, at 7-8 (Dkt. #113) ("Donnelly Order").  Judge Donnelly reserved the possibility of further sanctions at trial, especially if defendants feigned loss of memory due to the delay.  *Ibid*.

Ms. Martinez subsequently withdrew her *Monell* and Section 1983 conspiracy claims, and the parties stipulated to the dismissal of Officers Post, Wolf, Seddio, Mendez, and Russo.  *See* Ltr. from Parties re: Mot. to Dismiss and Deps. (Dkt. #154).  Ms. Martinez later withdrew her negligent hiring, training, and retention claim, with the proviso that she could reinstate that claim if the City asserted that any of the individual defendants were acting outside the scope of their employment.  Defs.' Mem. in Supp. of Summ. J., at 4-5 (Dkt. #186) ("Defs.' Mem. in Supp.").

On August 14, 2020, defendants filed a motion styled as a motion for partial summary judgment and motion to dismiss.  Defendants moved for judgment on the pleadings for the failure to intervene, assault-and-battery, IIED, and NIED claims against the City, Lieutenant Weitzman,

---

[*] The complaint is unclear as to which claims are being pursued against which defendants.  But Ms. Martinez's response to the instant motion specifies that she seeks to pursue her assault-and-battery claim against Lieutenant Camhi, Sergeant Laliberte, Officer Ryan, Sergeant DiGennaro, and the City via *respondeat superior*; her excessive force and deliberate indifference claims against Lieutenant Camhi, Sergeant Laliberte, Officer Ryan, and Sergeant DiGennaro; her denial of access claim against Lieutenant Camhi, Sergeants DiGennaro, Pontecorvo, and Laliberte, and Officers Ryan and Trotter; her search-and-seizure claim against Sergeant DiGennaro and Officer Ryan; her supervisory liability claim against Lieutenant Camhi and Sergeants DiGennaro, Pontecorvo, and Laliberte; and her failure to intervene claim in the alternative on all the constitutional claims.  Pl.'s Mem. in Opp. 2-3.

and Sergeant Forgione.  Defs.' Notice of Mot. for Summ. J. (Dkt. #183).  Defendants seek summary judgment on all of plaintiff's remaining claims except her Fourth Amendment excessive force claim.  *Ibid*.

Ms. Martinez has opposed the motion.  In her response brief, Ms. Martinez also urges the Court to reconsider Judge Donnelly's decision regarding sanctions for defendants' misconduct, and to adopt Magistrate Judge Pollak's sanctions recommendation in full.  Pl.'s Mem. of L. in Opp. to Mot. for Summ. J. 23 (Dkt #189) ("Pl's Mem. in Opp.").  Ms. Martinez also states for the first time that she also wishes to raise claim under Section 28 of New York's Civil Rights Law. *Id.* at 2.  In their reply, defendants moved to dismiss any Section 28 claim.  Defs.' Reply in Supp. 6 (Dkt. #192).

After the briefing of defendants' motion was completed, the parties stipulated to the dismissal of another nine defendants: Captain Valerga, Detective Davneiro, Lieutenant Weitzman, Sergeants Forgione and Lavelle, and Officers Ficken, Rippel, Wolff, and Kandinov.  *See* Ltr. re: Stipulation of Voluntary Dismissal (Dkt. #196).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law."  *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant.  See *ibid*.  A nonmoving party can survive summary judgment only if there is sufficient

evidence to permit a rational trier of fact to find in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Given the stage of the litigation, the Court construes defendants' motion to dismiss as a motion for judgment on the pleadings.  *See Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[A] motion to dismiss for failure to state a claim (or one of the other non-waivable defenses under Rule 12(h)) that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c).").  Motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6) are evaluated under the same standard.  *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).  In evaluating either motion, a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)).  To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

Defendants' motion for summary judgment and for judgment on the pleadings is granted in part and denied in part.  For the reasons explained below, summary judgment is granted to all defendants on the deprivation of due process, vehicle search, denial of access, deliberate indifference, and supervisory liability claims.  I grant the individual defendants summary judgment on the IIED and NIED claims and dismiss those claims against the City.  Defendants' motion for summary judgment is granted on plaintiff's failure to intervene claim, except as to defendants Camhi, Laliberte, DiGennaro, and Ryan.  Ms. Martinez's Section 28 allegations cannot proceed because they are not pleaded in the complaint and in any event would not state a claim. Defendants' motion for summary judgment on Ms. Martinez's assault-and-battery and deliberate indifference claims is denied.  Finally, I decline to revisit Judge Donnelly's ruling regarding discovery sanctions.

## I.  Summary Judgment Is Granted on Plaintiff's Due Process Claim

Defendants' motion for summary judgment on plaintiff's due process claim is granted. Claims arising from a deprivation of property without due process of law come in two forms: deprivations deriving from (1) "established state procedures" and (2) "random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).  While claims of the former sort may proceed, claims of the latter kind are barred if the State provides an adequate postdeprivation remedy.  Since Ms. Martinez's claim is of the latter sort, and Ms. Martinez has not adequately pleaded the absence of an adequate postdeprivation remedy, defendants prevail.

The Supreme Court has recognized that "'there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers.'"  *Parratt v. Taylor*, 451 U.S. 527, 542 (1981),

10

*overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (quoting *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (1976)). States have an affirmative duty not to violate the Fourteenth Amendment by creating procedures "lacking in due process." *Ibid.* Therefore, when someone is deprived of property by a deficient "established state procedure," a due-process claim accrues automatically. *Ibid.* Conversely, while states must remedy "random and unauthorized" property deprivations by their employees, "predict[ing]" such random and unauthorized acts may be impossible. *Id.* at 541. Therefore, the provision of "adequate state post-deprivation remedies" satisfies the Fourteenth Amendment with respect to such acts. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*).

Ms. Martinez brings a "random and unauthorized acts" claim. She alleges that Officer Ryan and Sergeant DiGennaro violated her Fourteenth Amendment due process rights by "stealing" money and gift cards from her, and then neither vouchering nor returning those items. Second Am. Compl. ¶ 82; *id.* at ¶¶ 19-20, 81-83. In claiming a due process violation, Ms. Martinez invokes a line of cases finding Fourteenth Amendment violations when plaintiffs' property was seized and vouchered by NYPD officers pursuant to a vouchering system that the Second Circuit found inadequate. Specifically, the court of appeals found the vouchering system (i) made proving ownership of seized property too difficult, (ii) provided misleading instructions— or no instructions at all—for retrieving property, and (iii) provided an insufficient mechanism for adjudicating ownership disputes between different claimants. *See Alexandre v. Cortes*, 140 F.3d 406, 412 (2d Cir. 1998); *Butler v. Castro*, 896 F.2d 698, 701-03 (2d Cir. 1990); *McClendon v. Rosetti*, 460 F.2d 111, 115(2d Cir. 1972). But those cases do not control here. The Second Circuit was careful to distinguish between harms arising from the "official policy or custom of the City"— as when plaintiffs lost property as a result of the City's deficient vouchering procedures—and

11

harms arising from "random and unauthorized" acts. *See Alexandre*, 140 F.3d at 411-12. Ms. Martinez alleges the latter type of harm. She alleges that defendants "stole" her property. Second Am. Compl. ¶ 82; *id.* at ¶¶ 19-20, 81-83. Her alleged deprivation of property resulted from theft by individual officers, not from any asserted lack of notice about how to navigate the NYPD's property custody system, or the burdens it places on claimants.

Accordingly, Ms. Martinez's claims are barred by the presence of "adequate state post-deprivation remedies," *Hudson*, 468 U.S. at 533, such as causes of action for negligence, replevin, or conversion under New York state law, *see, e.g.*, *Kneitel v. Rose*, No. 19-CV-3742 (PKC) (LB), 2019 WL 3804678, at *3 (E.D.N.Y. Aug. 13, 2019); *Cantave v. N.Y.C. Police Officers*, No. 09-CV-2226 (CBA) (LB), 2011 WL 1239895, at *7 (E.D.N.Y. Mar. 28, 2011) (collecting cases). Since Ms. Martinez does not allege that New York's postdeprivation remedies are insufficient, she must pursue this claim through those channels. *See Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action."). Accordingly, I grant defendants summary judgment on the due process claim.

## II.    Defendants prevail on plaintiff's unlawful-search claim.

I also grant defendants' motion for summary judgment on plaintiff's claim that defendants engaged in an unreasonable search of her vehicle. In support of their motion, defendants raise four arguments: 1) Ms. Martinez lacks standing to challenge the search, 2) defendants had probable cause to conduct the search, 3) the community caretaker exception permitted seizure of the car and a subsequent inventory search, and 4) qualified immunity covers their actions. The record shows that the officers had probable cause for the vehicle search. *See Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (Fourth Amendment standing "is not a jurisdictional question and hence need

not be addressed before addressing other aspects of the merits of a Fourth Amendment claim."). I therefore grant defendants' motion on that basis and do not consider their other arguments.

**A. Probable cause existed to search the car.**

Because there is no genuine dispute of material fact regarding probable cause for the vehicle search, defendants are entitled to summary judgment. The defendants argue that they possessed the probable cause required to perform a search under the "automobile exception" to the warrant requirement. Under that exception, officers "may conduct a warrantless search of a movable vehicle when they have probable cause to believe it contains contraband or evidence of a crime." *United States v. Vassiliou*, 820 F.2d 28, 30 (2d Cir. 1987). The government has the burden of establishing probable cause. *United States v. White*, 298 F. Supp. 3d 451, 456 (E.D.N.Y. 2018). Probable cause for a vehicle search exists "where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This is a "practical," "all-things-considered" standard evaluated based on the totality of the circumstances. *Florida. v. Harris*, 568 U.S. 237, 244 (2013). To establish probable cause, officers may rely on hearsay, and a court may properly consider such hearsay at summary judgment. *See United States v. Premises & Real Prop. at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1267 (2d Cir. 1989).

On the undisputed facts here, officers had probable cause to search the vehicle at issue in this case. As a basis for probable cause, defendants primarily rely on (i) reports from Sergeant DiGennaro's informant that Mr. Rivera transported drugs in the car and sold them from Ms. Martinez's apartment, *see* DiGennaro Dep. II, at 205:24-206:4; Pl.'s Statement. ¶ 6, (ii) surveillance identifying the Ford Explorer Mr. Rivera was driving, *see* Follow-Up Informational, and (iii) the fact that when they arrested Mr. Rivera in Ms. Martinez's apartment, he possessed

13

280 bags of cocaine, *see* Rivera Dep. I, at 189:6; Pl.'s Statement ¶ 6.  The time-of-arrest seizure provided important corroboration for the informant's tip regarding Mr. Rivera's activities.  *See Illinois v. Gates*, 462 U.S. 213, 241 (1983) ("Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work.").  Taken together, those facts establish probable cause for the vehicle search.

Ms. Martinez does not dispute that the constellation of facts noted above suffices for probable cause.  Instead, she first argues that the informant's reports must be disregarded as "anonymous *post hoc* hearsay," Pl.'s Mem. in Opp. at 16.  But even if it is hearsay, the government may rely on the informant's report to establish probable cause at summary judgment.  "[F]or the purpose of summary judgment," the government may "use whatever evidence traditionally establishes probable cause," and probable cause "traditionally may be established by hearsay." *United States v. Premises & Real Prop. at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1267 (2d Cir. 1989).

Ms. Martinez alternatively urges that Sergeant DiGennaro's account of receiving a tip from an informant should be treated as "contradicted by the broader record."  Pl.'s 56.1 Statement ¶ 4.  But Ms. Martinez has not put forward evidence controverting Sergeant DiGennaro's statements that he received this tip from an informant.  While Mr. Rivera suggests that he could not have actually driven the Ford in the manner that the informant predicted because of a timing-belt problem, *compare* Rivera Dep. II, at 187:17-188:5 *with* DiGennaro Dep. I, at 279:16-280:17, that testimony does not contradict Sergeant DiGennaro's testimony regarding the tip he received.  Nor does Mr. Rivera's account of car trouble render the informant's tip irrelevant for the purposes of probable cause.  Even if the informant had provided Sergeant DiGennaro with inaccurate

information about Mr. Rivera's plans, "[i]t is well-settled that even where the information on which a police officer relies later turns out to be mistaken, probable cause still exists as long as the arresting officer acted reasonably in relying on that information," *Torres v. City of New York*, No. 16-CV-6719 (BMC), 2017 WL 4325822, at *3 (E.D.N.Y. Sept. 27, 2017) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

Ms. Martinez also points to some inconsistencies in Sergeant DiGennaro's testimony. Sergeant DiGennaro did testify inconsistently about Ms. Martinez's whereabouts on the day of her arrest, R&R, at 18 n.10, and whether he had conducted controlled drug buys from Mr. Rivera, DiGennaro Dep. I, at 207:3-208:14; Pl.'s Statement ¶ 4.   But Ms. Martinez identifies no inconsistencies in the key testimony:  that the informant told Sergeant DiGennaro that Mr. Rivera used the car to transport drugs. *Ibid.* Ms. Martinez has not established a genuine dispute about the *material* facts bearing on probable cause by pointing to these inconsistencies on other matters. Since the facts establishing probable cause are not disputed in the record, and the nonmoving party may not rely "on mere assertions that affidavits supporting the motion are not credible" at summary judgment, *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996), I grant defendants' motion for summary judgment on the vehicle-search claim.

## III.      Defendants Also Prevail on the Denial of Access Claim

Defendants are also entitled to summary judgment on Ms. Martinez's claim that defendants Camhi, Laliberte, Ryan, DiGennaro, Trotter, and Pontecorvo denied Ms. Martinez access to the courts.  Ms. Martinez brings a "backward-looking" denial of access claim, alleging that official action prevented her claims from being tried with all material evidence, or from being tried at all. Pl.'s Mem. in Opp. at 19; *see Christopher v. Harbury*, 536 U.S. 403, 414 (2002) (defining a "backward-looking" claim as covering suits that "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.").  "The viability" of such claims

15

"is far from clear in this Circuit." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012); *see Blandon v. Aitchison*, No. 17-CV-65 (KMK), 2019 WL 1206370, at *5 (S.D.N.Y. Mar. 14, 2019). To the extent that they exist, such claims "would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely," or if a "judicial remedy was 'completely foreclosed' by [public officials'] false statement or nondisclosure." *Sousa*, 702 F.3d at 128 (citing *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006)).

The record here does not support such a claim. That defendants violated their obligations during discovery there can be no doubt. *See* Donnelly Order at 6. But Ms. Martinez does not identify any specific claims that defendants prevented her from bringing. *See* Second Am. Compl. ¶¶ 87-90. Ms. Martinez relies on Judge Pollak's statement that she would lose certain claims due to defendants' discovery misconduct "[s]hould it be determined that there is no way around the statute of limitations." Pl.'s Mem. in Opp. at 19 (quoting R. & R. 62). But defendants provided plaintiff a "way around the statute of limitations," *ibid*, by agreeing not to press that defense, Ltr. re: Equitable Tolling. And after defendants' belated discovery disclosures, plaintiff amended her complaint to add new claims and defendants. Plaintiff now argues that there are still further claims that she "was not able to include in the hastily amended pleading." Pl.'s Mem. in Opp. at 20. But the only claim that plaintiff points to is her Section 28 claim. Plaintiff has not explained why she could not have included that claim in the Second Amended Complaint or sought to file a third amended complaint at a later date. *See* p. 28, *infra*. And in any event, New York law does not allow for a Section 28 claim based on events—like these—that occurred prior to the section's enactment. *Ibid.*

In the alternative, plaintiff argues that "in failing to document their version of the incident, defendants have deprived plaintiff of vital information" and that "Ms. Martinez may obtain a

smaller damages award than she otherwise would." Pl's. Mem. in Opp. at 20. These assertions are insufficient to support a claim because they are conclusory. *See Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015); *Christopher v. Harbury*, 536 U.S. 403, 416-17 (2002). And in any event, the Second Circuit has indicated that a claim for denial of access to courts is not available unless the plaintiff claims that "the governmental action caused the plaintiff's suit to be dismissed as untimely" or that a "judicial remedy was completely foreclosed." *Sousa*, 702 F.3d at 128 (citation omitted). Allegations of reduced damages do not suffice. *Ibid.*

## IV.      The Assault-and-Battery Claim Survives Dismissal

Defendants' motion to dismiss Ms. Martinez's assault-and-battery claim based on a purportedly defective notice of claim is denied.

Under Section 50-e of the New York General Municipal Law, a plaintiff who wishes to bring a tort action against the City must generally file a notice of claim within the ninety days after the claim arises. N.Y. Gen. Mun. Law § 50-e(a) (McKinney 2021). Where, as here, the City has a statutory obligation to indemnify individual defendants, a notice is also a prerequisite for suit against the indemnified individuals. *Id.* §§ 50-e(b), 50-j(3). The notice triggers a Section 50-h hearing where the plaintiff may be heard. *Id.* § 50-h. "Failure to comply with [notice-of-claim] requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.,* 164 F.3d 789, 793-94 (2d Cir. 1999). However, New York interprets these requirements pragmatically. While Section 50-e provides that notices should describe "the time when, the place where and the manner in which the claim arose," N.Y. Gen. Mun. Law § 50-e(a), "the statute does not require those things to be stated with literal nicety or exactness." *Brown v. City of New York*, 95 N.Y.2d 389, 393 (N.Y. 2000) (internal quotations omitted). Rather, courts "should focus on the purpose served by a Notice of Claim." *Ibid.* Accordingly, standard is "merely whether [the notice] includes information sufficient to enable the

[C]ity to investigate."  *Brown v. City of New York*, 95 N.Y.2d 389, 393 (N.Y. 2000) (internal quotations omitted).

Furthermore, Section 50-e also include a provision for correcting errors.  Often, the facts surrounding an alleged claim remain murky well past ninety days.  Therefore, Section 50–e(6) provides that a "mistake, omission, irregularity or defect" in the notice may be "disregarded . . . in the discretion of the court," if the mistake, omission, irregularity, or defect was made "in good faith" and the City "does not appear prejudiced thereby."  N.Y. Gen. Mun. Law § 50-e(6); *see Ingle v. New York City Transit Auth.*, 777 N.Y.S.2d 154, 155 (N.Y. App. Div. 2004).  "Whether the notice of claim substantially complies with the requirements of the statute depends on the circumstances of each case," but accurate testimony at the 50-h hearing may cure prejudice.  *Id.* at 155 (collecting cases).

Defendants argue that Ms. Martinez's assault and battery claim should be dismissed based on two asserted deficiencies.  First, though they allege no bad faith, defendants argue that Ms. Martinez's notice of claim prejudiced the City by misdescribing the alleged assault and battery. Specifically, Ms. Martinez stated in the notice that the assault occurred at approximately 9:00 PM in her apartment, not at 12:30 AM at the 107th Precinct.  *Compare* Notice of Claim, Defs.' Ex. J (Dkt. #184-10) ("Notice of Claim") *with, e.g.,* Pl.'s Statement ¶ 8.  However, nothing in the record indicates that the City was prejudiced by the variance.  After Lieutenant Camhi's call, the NYPD launched at least three independent investigations into the events that night, R. & R. at *15, and Ms. Martinez revised her account at the 50-h hearing, Martinez 50-h Hearing, Pl.'s Ex. 14 (Dkt. #194-14).  Nor has the City indicated how it would have acted differently without the error.  Since the City does "not appear prejudiced" by the variance, N.Y. Gen. Mun. Law § 50-e(6), this deficiency in plaintiff's notice of claim does not warrant dismissal.

Defendants next argue that Ms. Martinez's assault-and-battery claim should be dismissed because the caption of her notice of claim only listed the "City of New York" and the "New York City Police Department" as defendants, and failed to include individual defendants, even with placeholders like "John Doe." New York's Appellate Divisions are divided over whether failure to name individual defendants is a defect in the notice of claim. The First Department requires naming individual defendants; the Fourth Department does not. *See Scott v. City of New Rochelle*, 986 N.Y.S.2d 819, 826-31 (N.Y. Sup. Ct. 2014); *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at *9 (S.D.N.Y. Mar. 27, 2018). Federal courts have divided as well. *Compare Hatcher,* 2018 WL 1583036, at *9 (collecting decisions declining to dismiss claims for failure to name individual defendants) *with DiRuzza v. Vill. of Mamaroneck*, No. 14-CV-1776 (VB), 2014 WL 6670101, at *2 (S.D.N.Y. Oct. 6, 2014) (dismissing a claim for failing to name an individual defendant) *and D.C. v. Valley Cent. Sch. Dist.*, No. 09-CV-9036 (WWE), 2011 WL 3480389, at *1 (S.D.N.Y. June 29, 2011) (same). This disagreement prevents me "from confidently 'predicting how the New York Court of Appeals' would construe the statutory obligation." *DiRuzza v. Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017) (quoting *Schoenefeld v. New York*, 748 F.3d 464, 470 (2d Cir. 2014)).

But on balance, statutory text and precedent indicate that the notice of claim's failure to refer to the individual defendants does not warrant dismissal of plaintiff's assault-and-battery claim. Section 50-e specifies the "contents" that "shall [be] set forth," in a notice of claim. N.Y. Gen. Mun. Law § 50-e(a). These contents include the name and address of the claimant, the nature of the claim, and the time, place, and manner in which the claim arose. *Ibid.* They do not include the identities of the officers involved. A requirement that those officers be identified in the notice of claim therefore appears to lack a textual basis. *Cf. Tannenbaum v. City of New York*, 819

N.Y.S.2d 4, 5 (N.Y. App. Div. 2006) (construing Section 50-e to contain a notice requirement without citing the statutory text).

Moreover, the Court of Appeals has indicated that "[t]he test of the sufficiency of a Notice of Claim" is "merely 'whether it includes information sufficient to enable the [C]ity to investigate.'" *Brown*, 95 N.Y.2d at 393 (citation omitted).  Here, the notice of claim alleges that plaintiff was "assaulted and battered by police officers."  Notice of Claim.  And the City has not explained how the failure to include placeholder identifiers for then-unknown officers in the notice's caption prejudiced the City.  *Cf. Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 397 (S.D.N.Y. 2013) (declining to dismiss claims against individual officers for failure to identify individual defendants on the ground that the notice contained enough information to allow the City to investigate); *Hatcher*, 2018 WL 1583036, at *9 (similar).  In light of the statutory text and the Court of Appeals' guidance, I decline to dismiss plaintiff's assault-and-battery claim based on the purported notice-of-claim deficiencies.

## V.      Summary Judgment Is Denied on Plaintiff's Deliberate Indifference Claim

Defendants' motion for summary judgment on plaintiff's deliberate indifference claim is denied.  The Fourteenth Amendment's Due Process Clause bars officials from acting with "'deliberate indifference" to the "serious medical needs'" of a pretrial detainee.  *Charles v. Orange Cty.*, 925 F.3d 73, 85-86 (2d Cir. 2019) (explaining that conduct constituting deliberate indifference to medical needs in violation of the Eighth Amendment for convicted prisoners would also violate the Fourteenth Amendment rights of pretrial detainees).   To prevail on a deliberate indifference claim, a plaintiff must offer evidence that (1) her medical need was "a condition of urgency," and (2) that the defendants treated that need with deliberate indifference.  *Id.* at 86.

When a detainee's deliberate indifference claim involves delay in treatment, not denial of treatment, the analysis of the medical need "focus[es] on the challenged *delay* . . . rather than the

prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original; internal quotations omitted). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). While Ms. Martinez has submitted no evidence that the delay in treatment worsened her injury, allegations of a "condition of urgency" that "may produce . . . extreme pain" satisfy the objective prong of the analysis." *Dotson v. Fischer*, 613 F. App'x 35, 38 (2d Cir. 2015) (internal quotation omitted; ellipses in original); *see Hunter v. City of New York*, 35 F. Supp. 3d 310, 319 (E.D.N.Y. 2014) (finding that a serious medical need may exist even if a delay in treatment does not result in a worse long-term prognosis); *McMillon v. Davidson*, 873 F.Supp.2d 512, 514 (W.D.N.Y.2012) ("[S]evere pain can itself constitute a serious medical need for Eighth Amendment purposes.").

The record contains evidence from which a factfinder could infer that Ms. Martinez was left in serious, untreated pain for hours. Pl.'s Statement ¶ 8A. Ms. Martinez testified repeatedly that she was "feeling a lot of pain," Martinez Dep. at 61:21, and that she was "begging [the police] to take me to the hospital because I was in a lot of pain," *Id*. at 72:3-4; *see id.* at 60:5 ("I was screaming"). Mr. Rivera testified that he heard her cries from the juvenile room. Rivera IAB Interview, Pl.'s Ex. 17, at 18:11-19 (Dkt. #194-17) ("Rivera IAB Interview") ("I heard [Ms. Martinez] screaming, literally screaming and crying"). When he saw Ms. Martinez next, "right after the screams," "her tears was coming, she couldn't hold her right hand, she was literally drinking her own boogers." Rivera Dep. II, at 19:21-20:2. In his call to AIB, Lieutenant Camhi confirmed that Ms. Martinez "complained about pain in her right hand." Command Center Call Tr. 3:18-19. Both Ms. Martinez and Mr. Rivera say they requested medical care. Rosie Martinez

21

Tr. II, at 47:21-23 (Dkt. #194-16); Rivera IAB Interview 19:17-18; *see* Pl.'s Statement ¶¶ 8.A, 8.C.  During her fingerprinting, Ms. Martinez reportedly "kept telling the officer, ['] it hurts, I can't do it, I can't do it, it hurts, I'm trying.[']"  Rivera Dep I, at 138:25-139:3.  And while she was being transported to Central Booking, Ms. Martinez "was crying and in pain." *Id*. 40:17-18.

Taking the facts in the light most favorable to Ms. Martinez, the obviousness of the injury provided further, visible confirmation that the pain she complained of was significant.  Her hand was too swollen to be fit in normal handcuffs, and the injury was sufficiently visible that medical screeners at Central Booking redirected her and her escorts to the emergency room.  Pl.'s Statement ¶ 8.  While the degree of pain and its urgency is in dispute, the existence of pain itself is not.  Based on the record, a reasonable jury could find that Ms. Martinez' pain was sufficiently severe that its treatment qualified as a serious medical need. *Cf. Hunter*, 35 F. Supp. 3d at 320 (holding that the pain from a fractured rib "rises to the level of a serious medical condition" even when a delay in treatment did not worsen the injury).

Similarly, a genuine dispute of material fact exists as to whether defendants treated her injury with deliberate indifference.  "A plaintiff can prove deliberate indifference by showing that the defendant official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee." *Charles*, 925 F.3d at 87 (internal quotations omitted).  This "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Ibid*; *see Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  Here, Ms. Martinez raises a triable question of fact regarding defendants' mental state.  Ms. Martinez's injuries were known to the defendants, and she requested medical care.  Pl.'s Statement ¶ 8A; Command Center Call Tr. 3:18-19 ("She did have some visible swelling").  The record does not show that defendants sought to assess her injury, diagnose it, or treat her.  Pl.'s Statement ¶ 8;

22

Martinez Dep. at 72:6-8 (An officer "came and he says let me see what happened.  He just look at my hand and left.").  In fact, Ms. Martinez testifies that some of the officers "started laughing" when they saw her injury, saying "'[l]ook at what she got for not cooperating,'" before "walk[ing] away." *Id.* at 72:12-17.  In her interview with the Internal Affairs Bureau ("IAB"), Ms. Martinez also claims that the officers delayed transporting her, saying that they would not take her to the hospital until the swelling in her hand had subsided.  Martinez IAB Interview 39:22-40:14.  And nothing indicates that they would have taken her to the hospital at all had the medical screeners at Central Booking not redirected them.  Pl.'s Statement ¶ 8.  Taking the facts in the light most favorable to Ms. Martinez, a trier of fact could find that, given Ms. Martinez's cries of pain, requests for medical treatment, and visible injuries, defendants' delay in providing care amounted to deliberate indifference. *Cf. Warren v. City of New York Dep't of Corr. Med. Staff*, No. 17-CV-1125 (PKC) (LB), 2021 WL 1163105, at *9 (E.D.N.Y. Mar. 26, 2021) ("[W]here an inmate repeatedly asks for medical attention and has visible injuries, a reasonable jury could find that a defendant's delay in providing medical care rises to the level of deliberate indifference.").  Accordingly, summary judgment is denied on the deliberate indifference claim.

## VI.        Defendants Are Entitled to Summary Judgment on all Supervisory Liability Claims

Defendants' motion for summary judgment on Ms. Martinez's supervisory liability claims is granted.  The complaint alleges that "[t]he individually-named supervisory defendants" are liable to plaintiff on a theory of supervisory liability.  Second Am. Compl. ¶ 122.  While the complaint does not identify those defendants by name, *ibid*, plaintiff's memorandum in opposition to summary judgment indicates those defendants are Lieutenant Camhi and Sergeants Laliberte, DiGennaro, and Pontecorvo, Pl.'s Mem. in Opp. at 3, 14.  The complaint does not cite any source of law as a basis for supervisory liability, but the parties' motion papers treat the claim as arising under Section 1983.  *Id.* at 3; *see* Defs'. Mem. in Supp. at 25-26 (same).

The Second Circuit has recently clarified that "there is no special rule for supervisory liability" under Section 1983. *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020). To state a claim against a supervisory official, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Id.* at 620. A plaintiff may not instead establish liability "by reason of [the official's] supervision of others who committed the violation." *Id.* at 619. Moreover, as plaintiff acknowledges, plaintiff cannot press both direct and supervisory claims against a single defendant, with both claims premised "on the same conduct." Pl.'s Mem. 14; *see, e.g., Burch v. City of New York*, No. 11-CV-2841 (CBA) (VMS), 2016 WL 11430773, at *16 (E.D.N.Y. Apr. 22, 2016) ("To the extent [plaintiff's] supervisory claim is premised on [a defendant's] participation in the alleged constitutional[] violation . . . it is duplicative" of the underlying claim); *Chamberlain*, 986 F. Supp. 2d at 394.

These principles are fatal to plaintiff's supervisory liability claims.

First, Lieutenant Camhi and Sergeants Laliberte, DiGennaro, and Pontecorvo are entitled to summary judgment on the claims of due-process violations, deliberate indifference, denial of access to courts, and illegal search and seizure. Where "there [is] no underlying constitutional violation, there is also no supervisory liability." *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014). Since summary judgment is warranted on those underlying claims, there can be no supervisory liability either.

Second, all three defendants are entitled to summary judgment on the supervisory liability claim for excessive force. A plaintiff "may not assert a second set of identical claims premised on the same conduct under the label 'supervisory liability.'" *Burch v. City of New York*, No. 11-CV-2841 (CBA) (VMS), 2016 WL 11430773, at *16 (E.D.N.Y. Apr. 22, 2016). Ms. Martinez's supervisory liability claim is premised on a theory of direct liability. Pl.'s Mem. in Opp. at 3. In

other words, she argues that Lieutenant Camhi and Sergeants DiGennaro and Laliberte directly participated in using excessive force. But Ms. Martinez already brings excessive force claims against Lieutenant Camhi and Sergeants DiGennaro and Laliberte. This claim merely duplicates it. Therefore, I grant them summary judgment. As for Sergeant Pontecorvo, Ms. Martinez has never alleged Sergeant Pontecorvo's "personal involvement" in the assault at all. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Accordingly, I grant summary judgment for Sergeant Pontecorvo on this claim as well.

**VII.      Defendants' Motion Is Granted in Part on the Failure to Intervene Claims**

Police officers "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). To hold an officer liable on this theory, a plaintiff must demonstrate that the officer's failure to intervene "permitted fellow officers to violate" the plaintiff's "clearly established statutory or constitutional rights," and that it was "objectively unreasonable . . . to believe that his fellow officers' conduct did not violate those rights." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). Moreover, the officer faulted for failing to intervene must have had "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson,* 17 F.3d at 557. A plaintiff may plead direct liability and failure to intervene in the alternative. Fed. R. Civ. P. 8(d)(2), (3); *see, e.g., Buchy v. City of White Plains*, No. 14-CV-1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015). Applying these principles, the individual defendants' motion for summary judgment is granted on plaintiff's failure to intervene claims, except as against Lieutenant Camhi, Sergeants Laliberte and DiGennaro, and Officer Ryan concerning Ms. Martinez's allegations of excessive force and deliberate indifference.

25

**A. Summary judgment is granted on failure to intervene claims related to plaintiff's unsuccessful claims.**

Defendants are entitled to summary judgment on the failure to intervene claims linked to allegations of denial of access to courts, illegal search, due-process violation, and supervisory liability. Because a plaintiff may recover on a failure to intervene theory only by showing that the purported failure led to the denial of clearly established statutory or constitutional rights, *Ricciuti*, 124 F.3d at 129, a "failure to intervene claim is contingent upon the disposition of the [underlying] primary claims," *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013). Since summary judgment is appropriate for the defendants on those underlying claims, summary judgment is also appropriate on the failure to intervene claims predicated upon them.

**B. Summary judgment is denied in part as to failure to intervene claims tied to Ms. Martinez's surviving claims.**

Ms. Martinez is entitled to proceed on a failure to intervene theory on her surviving constitutional claims for deliberate indifference and excessive force against defendants Camhi, Laliberte, DiGennaro, and Ryan. In pressing a failure to intervene claim, Ms. Martinez invokes a portion of her Rule 56.1 statement that summarizes the conflicting accounts of the source of Ms. Martinez's injuries and her requests for medical aid. Pl.'s Mem. in Opp. at 15; *see* Pl.'s 56.1 ¶ 8. The conflicting accounts described there raise a genuine dispute of material fact as to whether Lieutenant Camhi, Sergeants Laliberte and DiGennaro, and Officer Ryan failed to intervene in the use of excessive force or failed to intervene with medical care. Ms. Martinez points to evidence that plausibly ties each to Ms. Martinez while she was in custody. Sergeant Laliberte was reportedly stationed at a desk with a full view of the Juvenile Room where Ms. Martinez was handcuffed. Pl.'s Statement ¶ 8B. Officer Ryan "checked" on Ms. Martinez seventeen times. *Id.* at ¶ 8D. Lieutenant Camhi claims he "restrained" Ms. Martinez. *Id.* at ¶¶ 8B, 8E. And Sergeant DiGennaro at various points had custody over Ms. Martinez in the Precinct. *Id.* at ¶ 8A. These

26

accounts, coupled with Ms. Martinez's description of physical abuse by several officers, is sufficient to raise a genuine issue of material fact as to whether some of the officers present injured her or turned a blind eye to a serious medical need, and, if they did, whether others failed to intervene. Accordingly, these two of Ms. Martinez's failure to intervene claims survives against defendants Camhi, Laliberte, DiGennaro, and Ryan.

Plaintiff does not indicate that she brings failure to intervene claims against Sergeant Pontecorvo or Officer Trotter for deliberate indifference or excessive force. *See* Pl.'s Mem. in Opp. at 2-3. Insofar as plaintiff seeks to bring those claims, I grant summary judgment to these two officers because nothing on the record indicates that they had any "opportunity to intervene." *Anderson*, 17 F.3d at 557.

### C.     The City is granted judgment on the pleadings.

The City moves for judgment on the pleadings "with respect to plaintiff's claims of failure to intervene" against the City. Defs.' Mem. in Supp. at 4. It is unclear from the Second Amended Complaint that plaintiff actually brought this claim against the City. *See* Second Am. Compl. ¶¶ 115-16. And if she did, it is unclear under what theory of liability, since these claims typically apply to individual officers. *See, e.g., O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (describing the duty to intervene as one borne by "[a] law enforcement officer" to intervene on "behalf of a citizen whose constitutional rights are being violated in his presence by other officers."). In any event, if plaintiff did bring this claim, she has abandoned it. In response to defendants' motion for summary judgment, plaintiff specifies that she only brings her failure to intervene claim as an alternative theory of liability for her constitutional claims, and the City is not a defendant on those claims. "[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Kovaco*

*v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (internal quotations omitted).  Accordingly, I grant the City's motion.

**VIII.      Ms. Martinez's IIED and NIED Claims Are Abandoned**

Ms. Martinez has abandoned her IIED and NIED claims.  Those claims do not appear in her Memorandum in Opposition's list of claims "to be presented to the jury."  *See* Pl.'s Mem. in Opp. at 2-3.  And plaintiff offers no response to defendants' arguments for dismissal of those claims, save for a single cryptic sentence in a footnote.  *Id.* at 13 n.6.  I "infer from [her] partial opposition" that Ms. Martinez has "abandoned" this particular claim.  *Kovaco*, 834 F.3d at 143.  Since Ms. Martinez has not defended the IIED and NIED claims, the motion for summary judgment for the individual officers and judgment on the pleadings for the City on those claims is granted.

**IX.      Plaintiff Has Not Stated a Claim Under Section 28 of the New York Civil Rights Law**

I do not consider Ms. Martinez's allegation that defendants violated New York Civil Rights Law § 28 by denying her appropriate medical care.  That claim is not contained in the complaint.  And "[a] plaintiff may not assert a claim for the first time in opposition to a motion for summary judgment."  *Vitti v. Macy's Inc.*, 758 F. App'x 153, 158 (2d Cir. 2018); *see also Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006).  Plaintiff "requests that the Court 'reach into equity'" to allow her to pursue this claim.  Pl.'s Mem. in Opp. 21.  But even assuming that the Court could do so, plaintiff has not justified doing so here.  While the City engaged in discovery misconduct at the outset of the case, more than two years have elapsed since the obstruction abated.  Ms. Martinez filed her Second Amended Complaint on January 23, 2018, and the defendants did not move for summary judgment until August 14, 2020.  *Compare* Second Am. Compl. *with* Defs. Notice of Mot. for Summ. J.  Ms. Martinez has had ample time to seek to amend her claims further.

28

In any event, this claim would fail as a matter of law.  New York enacted Section 28 on June 15, 2020—more than four years after this litigation began. Absent a clear statement, New York's statutes lack retroactive effect.  *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (citing *Majewski v. Broadalbin-Perth Cent. School Dist.*, 91 N.Y.2d 577, 584 (1998)). Section 28 contains no such clear statement.  In fact, the legislation enacting Section 28 stated that Section 28 should be "effective immediately."  2020 N.Y. Sess. Laws Ch. 103 (S. 6601-B) § 2 (McKinney).  Such language typically indicates that the statute should be given prospective effect only.  *See Wilson v. Aetna Life & Cas. Co.*, 195 F. Supp. 2d 419, 425 (W.D.N.Y. 2002); *see also Durkin v. Shea*, 957 F. Supp. 1360, 1374 (S.D.N.Y. 1997) (collecting cases).  Ms. Martinez fails to make any argument for retroactivity, or even to acknowledge the statute's recent enactment. Section 28 is unavailable to redress harms alleged to have occurred five years ago.

## X.      Further Sanctions Are Not Appropriate at This Time

Finally, I decline to grant plaintiff's request for additional sanctions.  Courts "generally adhere to prior decisions in subsequent stages of the same case unless cogent and compelling reasons militate otherwise."  *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (internal quotations omitted).  In 2018, Judge Donnelly considered defendants' discovery misconduct and imposed sanctions.  Plaintiffs have offered no evidence of obstruction since then, nor have they shown a clear error in the Court's earlier decision.  *Ibid* (explaining that "compelling reasons justifying a departure from the law of the case may include . . . availability of new evidence or the need to correct a clear error or prevent a manifest injustice" (internal quotations omitted)). Accordingly, I decline to revisit Judge Donnelly's determination regarding sanctions.

## CONCLUSION

Defendants' motion for summary judgment and for judgment on the pleadings is granted in part and denied in part.  Defendants' motion is granted for the due-process violation, vehicle

29

search, denial of access, deliberate indifference, and supervisory liability claims, and I grant the individual defendants summary judgment for the IIED and NIED claims while also dismissing these claims against the City.  Plaintiff's Section 28 claim cannot proceed.  Defendants' motion is granted on plaintiff's failure to intervene claim, except as to defendants Lieutenant Camhi, Sergeants Laliberte and DiGennaro, and Officer Ryan insofar as it serves as an alternative theory of liability for plaintiff's excessive force and deliberate indifference claims.  Defendants' motion for summary judgment on Ms. Martinez's assault-and-battery and deliberate indifference claims is denied.

The Clerk of Court is directed to amend the case caption to reflect the dismissal from this action of Sergeant Pontecorvo and Officer Trotter.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2021
        Brooklyn, New York