16 CV 79 (RPK) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

Plaintiff,

-against-

CITY OF NEW YORK, ERIC RYAN, DAVID CAMHI,
JOSEPH DIGENNARO, KEITH LALIBERTE,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE*

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Kavin Thadani*
*Senior Counsel*
*Tel:  (212) 356-2351*

*September 30, 2022*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... v

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT

    POINT I

        THE CITY OF NEW YORK'S STATUS AS A
        DEFENDANT SHOULD NOT BE RELAYED TO
        THE JURY, PLAINTIFF SHOULD BE
        PRECLUDED FROM REFERRING TO DEFENSE
        COUNSEL AS "CITY ATTORNEYS," AND
        PLAINTIFF SHOULD BE PRECLUDED FROM
        OFFERING EVIDENCE OF INDEMNIFICATION ................................ 2

        A. The City of New York's Status as a Defendant
           Should Not Be Relayed to the Jury and Plaintiff
           Should Be Precluded from Referring to Defense
           Counsel as "City Attorneys" ................................................2

        B. Plaintiff Should Be Precluded from Offering
           Evidence of Indemnification ................................................4

    POINT II

        PLAINTIFF SHOULD BE PRECLUDED FROM
        REQUESTING A SPECIFIC DOLLAR AMOUNT
        FROM THE JURY ................................................................ 5

    POINT III

        PLAINTIFF SHOULD BE PRECLUDED FROM
        ELICITING EVIDENCE OF PRIOR ALLEGED
        MISCONDUCT, DISCIPLINARY HISTORIES,
        AND/OR PRIOR LAWSUITS ................................................ 7

        A. Unrelated Excessive Force Allegation Against
           Defendant Laliberte ................................................7

        B. Undercounting of Heroin Glassine Envelopes
           Found in Plaintiff's Apartment ................................................8

i

C.  Incomplete Memobook Entries Related to Search
    Warrant Execution ..................................................................9

D.  The CCRB Investigation Concerning Non-Party
    Danny Rivera and the IAB Investigation
    Concerning Alleged Stolen Property Should Be
    Precluded ...............................................................................9

E.  Disciplinary Histories, Other Prior Allegations of
    Misconduct and/or Prior Civil Rights Lawsuits ...................11

F.  Unrelated Instances of Misconduct by Non-
    Parties ...................................................................................13

POINT IV

    PLAINTIFF SHOULD BE PRECLUDED FROM
    INTRODUCING EVIDENCE CONCERNING
    THE INTERVIEW DATE AND TIME ERROR
    CONTAINED IN DECEASED CAPTAIN
    HANRAHAN'S REPORT ....................................................... 13

POINT V

    PLAINTIFF SHOULD BE PRECLUDED FROM
    INTRODUCING EVIDENCE THAT PLAINTIFF
    WAS NEVER READ HER MIRANDA RIGHTS
    AND/OR ARGUE THAT MIRANDA RIGHTS
    WERE REQUIRED TO BE READ ......................................... 15

POINT VI

    DANNY RIVERA SHOULD BE PRECLUDED
    FROM TESTIFYING THAT HIS PROPERTY
    WAS STOLEN OR THAT HE WAS SUBJECTED
    TO EXCESSIVE FORCE ....................................................... 16

POINT VII

    PLAINTIFF SHOULD BE PRECLUDED FROM
    ASSERTING HER EXCESSIVE FORCE CLAIM
    AGAINST FOUR DEFENDANTS AS SHE HAS
    CONSISTENTLY ALLEGED THAT ONLY TWO
    INDIVIDUALS USED EXCESSIVE FORCE
    AGAINST HER ....................................................................... 16

POINT VIII

      THE COURT SHOULD INSTRUCT THE JURY THAT PLAINTIFF'S ARREST WAS LAWFUL AND THAT THE SEARCH OF HER APARTMENT WAS LAWFUL, AND PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR CALLING WITNESSES TO TESTIFY ABOUT CLAIMS DISMISSED OR WITHDRAWN WITH PREJUDICE ............................................. 18

      A.  The Court Should Instruct the Jury that Plaintiff's Arrest Was Lawful and that the Search of Her Apartment Was Lawful ........................................................ 18

      B.  Plaintiff Should Be Precluded From Introducing Evidence About Claims Dismissed or Withdrawn with Prejudice ................................................ 19

      C.  Plaintiff Should Be Precluded from Testifying about Any Purported Damages Arising from Claims Dismissed with Prejudice or Withdrawn Claims. .................................................. 20

POINT IX

      THE TESTIMONY OF PLAINTIFF'S TREATING PHYSICIANS SHOULD BE LIMITED TO THEIR OWN TREATMENT OF PLAINTIFF AS REFLECTED IN THEIR RESPECTIVE MEDICAL RECORDS ................................................ 21

POINT X

      PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING THE NEW YORK CITY POLICE DEPARTMENT PATROL GUIDE OR STUDENT GUIDE ................................................ 23

POINT XI

      PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING THE PRIOR SANCTIONS ORDER ................................................ 25

POINT XII

      PLAINTIFF SHOULD BE PRECLUDED FROM SEEKING ECONOMIC DAMAGES ................................................ 26

POINT XIII

      JOSEPH POLLINI SHOULD BE PRECLUDED
      FROM TESTIFYING AT TRIAL ............................................................ 30

      A. Purported Expert Opinions That Have No
         Bearing on the Issues to Be Determined at Trial
         Should Be Excluded.................................................................30

      B. Mr. Pollini's Remaining Opinions Should Be
         Precluded.................................................................................32

         i. Mr. Pollini's Opinions Invade the Province
           of the Jury .........................................................................32

         ii. Opinions Concerning the Alleged Lack of
           Documentation..................................................................34

      C. Mr. Pollini's Opinions Concerning Plaintiff's
         Deliberate Indifference Claim................................................36

      D. Mr. Pollini's Improper Factual Narrative ...........................37

POINT XIV

      THE TESTIMONY OF DR. MARK MCMAHON
      SHOULD BE PRECLUDED.................................................... 38

POINT XV

      PLAINTIFF SHOULD BE PRECLUDED FROM
      CALLING AS WITNESSES CURRENT OR
      FORMER MEMBERS OF THE NYPD WHO
      HAVE NO RECOLLECTION AND/OR NO
      KNOWLEDGE OF, OR CONNECTION TO, THE
      EVENTS RELEVANT TO THE ISSUES TO BE
      DECIDED AT TRIAL .......................................................... 39

CONCLUSION.................................................................................... 43

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Armour Capital Mgmt. LP v. SS&C Techs., Inc.*,
    No. 3:17-cv-00790 (JAM),
    2020 U.S. Dist. LEXIS 2252 (D. Conn. Jan. 5, 2020) ..................................................... 32-33

*Ashley v. Civil*,
    No. 14-CV-5559 (NGG) (SMG), 2019 U.S. Dist. LEXIS 56006
    (E.D.N.Y. Apr. 1, 2019) ................................................................................................................5

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ...............................................................................................17

*Bah v. City of New York*,
    13-CV-6690 (PKC), 2017 U.S. Dist. LEXIS 13285
    (S.D.N.Y. Jan. 31, 2017) ........................................................................................................37

*Berkovich v. Hicks*,
    922 F.2d 1018 (2d Cir. 1991) ...............................................................................................11

*Bermudez v. City of New York*,
    No. 15-CV-3240 (KAM), 2019 U.S. Dist. LEXIS 3442
    (E.D.N.Y. Jan. 8, 2019) ....................................................................................... 10-11, 13, 20

*Boykins v. City of New York*,
    No. 13-cv-2299 (ENV) (RER), 2017 U.S. Dist. LEXIS 193768
    (E.D.N.Y. Nov. 22, 2017) .........................................................................................................3

*Callahan v. Wilson*,
    863 F.3d 144 (2d Cir. 2017) ..................................................................................................32

*Carey v. Piphus*,
    435 U.S. 247 (1978) ...........................................................................................................20-21

*Consorti v. Armstrong World Indus., Inc.*,
    72 F.3d 1003 (2d Cir. 1995) ................................................................................................5, 6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ..............................................................................................................30

*Davids v. Novartis Pharms. Corp.*,
    857 F. Supp. 2d 267 (E.D.N.Y. 2012) ..................................................................................22

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998) ..................................................................................................15

*Fate v. Vill. of Spring Valley*,
   No. 11 Civ. 6838 (JPO), 2013 U.S. Dist. LEXIS 83425
   (S.D.N.Y. June 12, 2013) ........................................................................38

*Figueroa v. Boston Sci. Corp.*,
   00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936
   (S.D.N.Y. June 25, 2003) ........................................................................12

*Gersbacher v. City of New York,*
   14 Civ. 7600 (GHW) ...............................................................................18

*Gyllenhammer v. Am. Nat'l Red Cross*,
   No. 3:15-cv-1143, 2018 U.S. Dist. LEXIS 228437
   (N.D.N.Y. Jan. 23, 2018) .........................................................................39

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992) .....................................................................33

*Jaquez v. Flores (In re Estate of Jaquez)*,
   No. 10 Civ. 2881 (KBF), 2016 U.S. Dist. LEXIS 34521
   (S.D.N.Y. Mar. 17, 2016) .............................................................. 3-4, 7, 29

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) ......................................................18

*Johnson v. City of New York,*
   No. 1:15-cv-8195-GHW, 2017 U.S. Dist. LEXIS 81359
   (S.D.N.Y. May 26, 2017) .........................................................................17

*Johnson v. City of New York,*
   No. 16 Civ. 9561 (LAP), Dkt. No. 74
   (S.D.N.Y. Jan 22, 2020) ..................................................................... 24-25

*Lewis v. FMC Corp.*,
   786 F. Supp. 2d 690 (W.D.N.Y. 2011) .....................................................39

*LinkCo, Inc. v. Fujitsu Ltd.*,
   No. 00 Civ. 7242 (SAS), 2002 U.S. Dist. LEXIS 12975
   (S.D.N.Y. July 15, 2002) ....................................................................33, 35

*Lippe v. Baimco*,
   288 B.R. 678 (S.D.N.Y. 2003) .................................................................33

*Loria v. Gorman*,
   306 F.3d 1271 (2d Cir. 2002) ...................................................................21

*McGrier v. City of New York*,
   No. 16-CV-5667 (VEC), 2019 U.S. Dist. LEXIS 38688
   (S.D.N.Y. Mar. 11, 2019) .........................................................................35

*Mileski v. Long Island R.R. Co.*,
   499 F.2d 1169 (2d Cir. 1974) ..................................................................5

*Miller v. Garrett*,
   695 F. Supp. 740 (S.D.N.Y. 1988) .........................................................15

*Myers v. Moore*,
   326 F.R.D. 50 (S.D.N.Y. 2018) ..............................................................17

*Nnodimele v. Derienzo*,
   No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357
   (E.D.N.Y. June 27, 2016) ..................................................................... 6-7

*Nunez v. Diedrick*,
   No. 14-CV-4182 (RJS), 2017 U.S. Dist. LEXIS 199926
   (S.D.N.Y. June 12, 2017) .....................................................................5, 6

*Othman v. Benson*,
   No. 13-CV-4771 (NGG) (SJB), 2019 U.S. Dist. LEXIS 38594
   (E.D.N.Y. Mar. 8, 2019) ....................................................................10, 11

*Pergament v. Tracey (In re Thilman)*,
   557 B.R. 294 (Bankr. E.D.N.Y. 2016) ...................................................37

*Pierce v. City of New York*,
   No. 16 Civ 5703 (BMC), 2017 U.S. Dist. LEXIS 231208
   (E.D.N.Y. June 9, 2017) ............................................... 3, 4, 6, 10, 11-12

*Pierce v. City of New York*,
   No. 16 Civ 5703 (BMC), 2017 U.S. Dist. LEXIS 93087
   (E.D.N.Y. June 16, 2017) .......................................................................23

*Reyes v. Delta Dallas Alpha Corp.*,
   No. 92 Civ 4418 (AGS), 2000 U.S. Dist. LEXIS 5668
   (S.D.N.Y. May 2, 2000) ..................................................................... 35-36

*Reynolds v. Am. Airlines, Inc.*,
   No. 14 CV 2429 (CLP), 2017 U.S. Dist. LEXIS 192822
   (E.D.N.Y. Nov. 21, 2017) .......................................................................22

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................................................37

*Richmond v. General Nutrition Ctrs., Inc.*,
   No. 08 Civ. 3577 (PAE)(HBP),
   2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. Mar. 9, 2012) .........................12

*Salazar v. Deleon*,
   No. 15-cv-1989 (KBF), Dkt. No. 98 (S.D.N.Y. July 18, 2016).................24

*Sapienza v. United States Dep't of Veterans Affairs*,
 No. CV 09-1224(ARL),
 2012 U.S. Dist. LEXIS 75928 (E.D.N.Y. May 31, 2012) ....................................................23

*Scoma v. City of New York*,
 No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360
 (E.D.N.Y. May 4, 2021) ...................................................................................................6

*Shaw v. City of New York*,
 No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901
 (S.D.N.Y. Apr. 15, 1997)................................................................................................12

*Socha v. 110 Church, LLC (In re World Trade Ctr. Lower Manhattan Disaster
 Site Litig.)*,
 2014 U.S. Dist. LEXIS 156976 (S.D.N.Y. Nov. 5, 2014)....................................................22

*Soto v. City of New York*,
 No. 13-cv-8474 (KBF), 2017 U.S. Dist. LEXIS 223692
 (S.D.N.Y. Dec. 1, 2017)...................................................................................5, 6, 24, 25

*Spavone v. N.Y. State Dep't of Corr. Servs.*,
 719 F.3d 127 (2d Cir. 2013)............................................................................................17

*Stern v. Shammas*,
 No. 12-CV-5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879
 (E.D.N.Y. July 27, 2015) ...........................................................................................4, 33

*Sullivan v. Lakeram*,
 No. 13 Civ. 7677 (NRB), 2017 U.S. Dist. LEXIS 155254
 (S.D.N.Y. Sept. 13, 2017) ..............................................................................................38

*United States v. Duncan*,
 42 F.3d 97 (2d Cir. 1994)................................................................................................32

*United States v. Finazzo*,
 682 F. App'x 6 (2d Cir. 2017) ........................................................................................35

*United States v. Stewart*,
 433 F.3d 273 (2d Cir. 2006).............................................................................................30

*Vega v. Tekoh*,
 142. S. Ct. 2095, 2096 (2022)..........................................................................................15

*Wallace v. Hano*,
 No. 90 Civ. 2064 (WK), 1992 U.S. Dist. LEXIS 13388
 (S.D.N.Y. Sept. 3, 1992).................................................................................................12

*Woolfolk v. Baldofsky*,
 No. 19-CV-3815 (WFK) (ST), 2022 U.S. Dist. LEXIS 120838
 (E.D.N.Y. July 8, 2022) ............................................................................................6, 13

**Statutes**

42 U.S.C. § 1983 ...........................................................................................................1, 6, 20, 21

Fed. R. Civ. P. 26 ...............................................................................................................21, 27, 39

Fed. R. Civ. P. 37 .......................................................................................................................39

Fed. R. Evid. 402 ...................................................................................................................4, 24, 25

Fed. R. Evid. 403 .........................................................................................4, 8, 12, 18, 24, 25

Fed. R. Evid. 404 .............................................................................................................7, 8, 11

Fed. R. Evid. 802 .......................................................................................................................12

**Other Authorities**

4 Weinstein's Federal Evidence § 702.03 (2020) ...........................................................36

## PRELIMINARY STATEMENT

Plaintiff Rosie Martinez brings this action against defendants City of New York, Eric Ryan, David Camhi, Joseph DiGennaro and Keith Laliberte, alleging claims of excessive force pursuant to 42 U.S.C. § 1983, deliberate indifference pursuant to 42 U.S.C. § 1983, failure to intervene pursuant to 42 U.S.C. § 1983, and assault and battery pursuant to New York state law, arising out of her arrest on January 22, 2015, after over 280 glassines of heroin were found in her apartment during a lawful execution of a search warrant.  Specifically, plaintiff alleges that she was assaulted on January 23, 2015 behind closed doors by two employees of the New York City Police Department at the 107th police precinct and, thereafter, denied medical attention for a period of approximately five hours.

Defendants deny plaintiff's allegations and contend that they did not use excessive force on plaintiff and, rather, to the extent that plaintiff sustained any physical injuries, such injuries were self-inflicted as plaintiff repeatedly punched a wall and kicked a cabinet while she was being detained at the police precinct.  In addition, defendants deny that they were deliberately indifferent to plaintiff's alleged medical needs or that they were properly on notice of plaintiff's alleged medical needs and, in any event, defendants contend that plaintiff did not have a sufficiently serious injury and plaintiff is unable to establish any cognizable harm as a result of the alleged five hour delay of medical treatment.

Trial is scheduled to commence before the Honorable Rachel P. Kovner, United States District Judge for the United States District Court of the Eastern District of New York, on November 30, 2022.  Although there are now just four claims remaining for trial, and just five remaining defendants, after plaintiff previously asserted 12 claims against 21 defendants, and even though the primary issues to be decided at trial (i.e., whether plaintiff was subjected to excessive force by two individuals behind closed doors and whether defendants were deliberately indifferent

to her medical needs) are relatively straightforward, plaintiff still has listed **43 witnesses** that she apparently intends to call to testify at trial[1] and approximately **200 exhibits** that she apparently intends to offer into evidence at trial, *see* Proposed Joint Pre-Trial Order (Dkt. No. 201) at 4-12, 15-72, and apparently intends to significantly broaden the proper scope of this trial to include, *inter alia*, the presentation of irrelevant, unnecessary and/or inflammatory evidence and witnesses with no recollection and/or knowledge of the pertinent events.

Now, defendants City of New York, Eric Ryan, David Camhi, Joseph DiGennaro and Keith Laliberte, by their attorney, the Honorable Sylvia O. Hinds Radix, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion seeking *in limine* relief.

**ARGUMENT**

**POINT I**

**THE CITY OF NEW YORK'S STATUS AS A DEFENDANT SHOULD NOT BE RELAYED TO THE JURY, PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO DEFENSE COUNSEL AS "CITY ATTORNEYS," AND PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF INDEMNIFICATION**

**A. The City of New York's Status as a Defendant Should Not Be Relayed to the Jury and Plaintiff Should Be Precluded from Referring to Defense Counsel as "City Attorneys"**

Although the City of New York is a defendant in this matter, there are no direct claims being asserted against it at trial, and the City of New York's own conduct is not at issue. Rather,

---

[1]   Indeed, even after defendants pressed plaintiff with respect to the **43 witnesses** she apparently intends to call to testify at trial based simply on the premise that plaintiff could not possibly truly intend to call so many witnesses while at the same time estimating that the entire trial, inclusive of, *inter alia*, jury selection, opening statements, both parties' cases in chief, closing arguments, jury instructions, and deliberations, will last only five days, plaintiff declined to narrow her witness list to remove even a single witness.  *See* E-Mail Correspondence, annexed to the Declaration of Kavin Thadani dated September 30, 2022 ("Thadani Decl.") as Exhibit U; Joint Pre-Trial Order (Dkt. No. 201) at 3.

the City of New York's liability, if any, derives solely from the doctrine of *respondeat superior*, solely with respect to plaintiff's New York state law assault and battery claim.  Moreover, defendants have already represented that they "do not intend to assert that any of the individually named defendants were acting outside the scope of their employment." Dkt. No. 186 at 15.  Thus, any mention of the fact that the City of New York is a defendant would be unnecessary, substantially prejudicial and would only serve to confuse the jury.  Indeed, any mention of the City of New York would only be for the purpose of prejudicing the individual defendants because the jury may be inclined to award plaintiff more money under the assumption that the City of New York is a "deep pocket" that can afford to pay a higher judgment than the individual officers would be able to on their own.

Accordingly, the City of New York's status as a defendant should not be relayed to the jury, including in documents provided to the jury such as jury instructions and the verdict sheet. *See, e.g., Boykins v. City of New York*, No. 13-cv-2299 (ENV) (RER), 2017 U.S. Dist. LEXIS 193768, at *11-12 (E.D.N.Y. Nov. 22, 2017) (granting motion to remove City of New York from caption of any document submitted to the jury where City was "a defendant based solely on *respondeat superior* liability" and where "defendants concede that they were acting in the scope of their employment" because "the limited probative value of including the City of New York in the caption is significantly outweighed by the danger of unfair prejudice and confusing the jury as to whether the conduct of the City is at issue"); *Pierce v. City of New York*, No. 16 Civ. 5703 (BMC), 2017 U.S. Dist. LEXIS 231208, at *1 (E.D.N.Y. June 9, 2017) ("Plaintiff shall not reference the City of New York . . . as defendant[], as it would prejudice and confuse the jury for the same reasons several courts in this district have already found, i.e., suggestion of a deep pocket."); *Jaquez v. Flores (In re Estate of Jaquez)*, No. 10 Civ. 2881 (KBF), 2016 U.S. Dist.

LEXIS 34521, at *37-38 (S.D.N.Y. Mar. 17, 2016) (granting motion to remove City of New York from caption where "parties agree that the City of only liable . . . if at all, under the doctrine of *respondeat superior*" because "there is no need to inform the jury that the City remains potentially liable on a derivative theory").

Plaintiff should similarly be precluded from referring to defense counsel as "City attorneys" because such a reference would be not only irrelevant but "could cause the jury to view liability less critically, and suggest the presence of a deep pocket." *Jaquez*, 2016 U.S. Dist. LEXIS 34521, at *5 ("The Court concludes that any reference to defense counsel's employment the City shall be precluded. . . . While the City has been involved in the litigation, that fact is irrelevant to the determination of liability and damages, which should be based solely on the facts and the law."); *see also, e.g., Pierce*, 2017 U.S. Dist. LEXIS 231208, at *2 ("[P]laintiff is precluded from referring to Corporation Counsel as 'City of New York attorneys' or 'City attorneys' or any other way that indicates that they have an affiliation with the City of New York."); *Stern v. Shammas*, No. 12-CV-5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879, at *41 (E.D.N.Y. July 27, 2015) ("The court agrees that referring to defense counsel as 'City attorneys' could prejudice Defendants, as it may lead the jury to believe that Defendants will be indemnified by the City.").

### B.  Plaintiff Should Be Precluded from Offering Evidence of Indemnification

Indemnification also has no bearing on the facts of plaintiff's claims or damages, and would only serve to unfairly prejudice the individual defendants.  Therefore, pursuant to Fed. R. Evid. 402 and 403, plaintiff should not be allowed to introduce or otherwise refer to the possibility that the City of New York will indemnify the individual defendants.  Defendants do not intend to proffer evidence regarding their personal financial resources and ability to pay punitive damages at trial.  Therefore, based upon the established precedent in this Circuit, there is no relevant basis

for the admission of possible indemnification evidence at trial and, accordingly, such evidence should be precluded. *See, e.g., Ashley v. Civil*, No. 14-CV-5559 (NGG) (SMG), 2019 U.S. Dist. LEXIS 56006, at *28-29 (E.D.N.Y. Apr. 1, 2019) ("The court agrees that evidence regarding indemnification would be prejudicial against Defendant, as such evidence might 'encourage a jury to inflate its damages award because it knows the government – not the individual defendant[] – is footing the bill.'") (citation omitted); *Soto v. City of New York*, No. 13-cv-8474 (KBF), 2017 U.S. Dist. LEXIS 223692, at *4 (S.D.N.Y. Dec. 1, 2017) ("While the City may indemnify the individual defendants under certain circumstances, those facts are irrelevant to the determination of liability and damages, which should be based solely on the facts and the law."); *Nunez v. Diedrick*, No. 14-CV-4182 (RJS), 2017 U.S. Dist. LEXIS 199926, at *7 (S.D.N.Y. June 12, 2017) ("[T]he Court, like several other district judges in this Circuit, finds that references to the City's potential indemnification obligations would serve no probative value and potentially cause unwarranted prejudice.").

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY

While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award. *See, e.g., Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. *See, e.g., id.*; *see also, e.g., Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel."). The court in *Consorti* went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations.

*Consorti*, 72 F.3d at 1016.  Indeed, "absent a specific 'reason to contravene the [C]ircuit's well-established policy disfavoring' suggestions of specific damages figures, courts within this Circuit have routinely granted motions to 'preclude plaintiffs from requesting a specific dollar amount from the jury.'"  *Nunez*, 2017 U.S. Dist. LEXIS 199926, at *5-6 (citation omitted).

As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during her opening statement, during the testimony of any witness and/or during summation.  *See, e.g., Scoma v. City of New York*, No. 16-CV-6693 (KAM)(SJB), 2021 U.S. Dist. LEXIS 85360, at *39 (E.D.N.Y. May 4, 2021) ("In light of the Second Circuit's guidance, the court will not permit plaintiff to submit to the jury a specific dollar amount regarding his non-economic damages, including pain and suffering, in either his opening statement, witness testimony, or closing argument."); *Woolfolk v. Baldofsky*, No. 19-CV-3815 (WFK) (ST), 2022 U.S. Dist. LEXIS 120838, at *8-9 (E.D.N.Y. July 8, 2022) ("[T]he Court adopts the approach of other courts in this Circuit and prohibits Plaintiff from submitting to the jury a request for a specific dollar amount regarding his non-economic damages."); *Soto*, 2017 U.S. Dist. LEXIS 223692, at *5 ("The Court shares the concern that articulating a particular dollar figure to the jury will unfairly influence them—and indeed believes that the only reason to articulate a number is for the purpose of doing just that."); *Pierce*, 2017 U.S. Dist. LEXIS 231208, at *2 ("Plaintiff is precluded from suggesting a specific dollar amount to the jury.  Such identification could unduly influence the jury's independent determination of compensation if it finds that defendants are liable for excessive force."); *Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, at *8 (E.D.N.Y. June 27, 2016) ("This court exercises its discretion to preclude

plaintiff's counsel from requesting a specific dollar amount from the jury.  The court's proposed

jury charge on damages contains sufficient information for the jury to understand the nature of the

damages it may award."); *Jaquez*, 2016 U.S. Dist. LEXIS 34521, at *9 ("This Court is persuaded

by the reasoning in *Consorti* that the better practice is to preclude counsel from suggesting a dollar

amount to the jury.  Counsel's choice of a dollar amount has the potential to unduly tether the jury

to a number that lacks any evidentiary basis.").

**POINT III**

**PLAINTIFF SHOULD BE PRECLUDED FROM
ELICITING EVIDENCE OF PRIOR ALLEGED
MISCONDUCT, DISCIPLINARY HISTORIES,
AND/OR PRIOR LAWSUITS**

**A.      Unrelated Excessive Force Allegation Against Defendant Laliberte**

Defendants have reason to believe that plaintiff intends to introduce evidence that, in

November 2013, approximately 14 months prior to the alleged incident, defendant Laliberte

punched a prisoner in the face.  *See, e.g.,* Plaintiff's Proposed Trial Ex. 241; Plaintiff's Loc. Civ.

R. 56.1(b) Counterstatement (Dkt No. 205) at 10-11.  As an initial matter, the only purpose for

admitting evidence of this single, prior act would be to prove action in conformity therewith – i.e.,

that because defendant Laliberte may have improperly used force against an individual on one

occasion in the past, he improperly used force against plaintiff.  However, such evidence is not

admissible by the clear terms of Fed. R. Evid. 404(b)(1), which provides that "[e]vidence of any

other crime, wrong, or act is not admissible to prove a person's character in order to show that on

a particular occasion the person acted in accordance with the character."

To the extent that plaintiff asserts that such evidence is admissible as to Laliberte's

credibility because, during the underlying internal investigation, and before being shown

surveillance footage showing him punching an arrestee, Laliberte denied observing any <u>other</u>

7

members of service punch anyone, denied that any arrestee had any injuries, and denied that any arrestee made any complaints against any member of service, such assertion is without merit. As an initial matter, there is no evidence in the record that Laliberte ever denied that he himself punched anyone. In addition, Laliberte was not charged with, nor disciplined for, lying.

In any event, it is clear that a credibility argument in this regard would merely be a thinly veiled attempt to circumvent Rule 404(b)(1) and back door otherwise inadmissible evidence. Indeed, when first presenting this evidence to the Court, plaintiff focused on the "sucker punching" and included a still photograph of the punch, relegating the alleged "lie" to a footnote. Plaintiff's Loc. Civ. R. 56.1(b) Counterstatement (Dkt No. 205) at 10-11. And, of course, now, plaintiff has listed the video as a proposed trial exhibit. *See* Plaintiff's Proposed Trial Ex. 241. Certainly, neither a still photograph of the punch nor the video itself is necessary or relevant to attack credibility; rather, such evidence would run afoul of Fed. R. Evid. 404(b)(1) and only function to inflame the passions of the jury and unfairly prejudice defendants. Indeed, any discussion of this unrelated incident would necessarily involve revealing to the jury that Laliberte may have previously used force against an arrestee which, again, would not only violate Fed. R. Evid. 404(b)(1) but Fed. R. Evid. 403 as well, as such evidence would unfairly prejudice the defendants.

**B.      Undercounting of Heroin Glassine Envelopes Found in Plaintiff's Apartment**

Defendants also have reason to believe that plaintiff intends to introduce evidence that defendant Ryan was found to have inadvertently undercounted the number of glassine envelopes of heroin that were recovered from plaintiff's apartment and that defendant DiGennaro, as defendant Ryan's supervisor, was found to have failed to identify the undercounting. *See, e.g.,* Plaintiff's Proposed Trial Ex. 200 at DEF005810 – DEF005857; Plaintiff's Proposed Trial Ex. 235. As an initial matter, and notwithstanding that an undercounting would have been favorable

to plaintiff and the criminal charges against her, defendant Ryan's undercounting and defendant DiGennaro's failure to identify the undercounting has no relevance to the issues to be determined at trial. Rather, any such evidence would only serve to prejudice the defendants, confuse the jury and waste time. Accordingly, plaintiff should be precluded from admitting any such evidence.

### C.    Incomplete Memobook Entries Related to Search Warrant Execution

Defendants also have reason to believe that plaintiff intends to introduce evidence that defendant DiGennaro was found to not have proper and complete entries in his memobook concerning the execution of the search warrant for plaintiff's apartment. *See, e.g.,* Exhibit 8 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt No. 194-8). Specifically, defendant DiGennaro was found to have failed to "document . . . who executed the S/W, what was recovered at the S/W, who was present during the S/W and if any arrest[s] were made and by whom." *Id.* Again, this has no relevance to the issues to be determined at trial. Indeed, the search warrant execution has no bearing on the plaintiff's remaining claims. Rather, any such evidence would only serve to prejudice the defendants, confuse the jury and waste time. Accordingly, plaintiff should be precluded from admitting any such evidence.

### D.    The CCRB Investigation Concerning Non-Party Danny Rivera and the IAB Investigation Concerning Alleged Stolen Property Should Be Precluded

Plaintiff has listed as proposed trial exhibits numerous documents from the Civilian Complaint Review Board ("CCRB") investigation file concerning, *inter alia*, non-party Danny Rivera and his exonerated and/or unsubstantiated allegations against non-party Brian Brown and other unspecified police officers that, *inter alia*, the entry and search that were conducted pursuant to a lawful search warrant were improper and that he was subjected to excessive force. *See, e.g.,* Plaintiff's Proposed Trial Exs.14, 16, 18, 24, 26, 52, 55, 57, 58, 59, 61, 62, 71, 72.

Plaintiff has further listed as a proposed trial exhibit the entire nearly 1,000 page New York City Police Department Internal Affairs Bureau ("IAB") investigation file concerning both plaintiff's and non-party Danny Rivera's unsubstantiated allegations that, *inter alia*, their property was stolen during the search warrant execution. *See, e.g.,* Plaintiff's Proposed Trial Ex. 201; *see also* Plaintiff's Proposed Trial Exs. 195, 200.

These exhibits, as well as references to the fact that there even were prior CCRB and IAB investigations, should be precluded as irrelevant, confusing, misleading and unfairly prejudicial,[2] especially in light of the fact that neither investigation resulted in pertinent substantiated allegations against any of the defendants, and given the fact that the CCRB investigation relates to allegations of a non-party and not plaintiff,[3] and the IAB investigation relates to a stolen property claim that was dismissed by the Court on summary judgment. *See,* e.g., *Othman v. Benson*, No. 13-CV-4771 (NGG) (SJB), 2019 U.S. Dist. LEXIS 38594, at *15 (E.D.N.Y. Mar. 8, 2019) (precluding reference to a CCRB investigation into the underlying matter and precluding the introduction of evidence of it because "[t]he fact that a CCRB investigation took place does not make any material fact more or less likely (particularly where, as here, the investigation did not result in a finding that the allegations were substantiated)"); *Pierce*, 2017 U.S. Dist. LEXIS 231208, at *4 (precluding mention of the IAB investigation into the use of force at issue in the case because "[s]uch references are inadmissible under Rule 403 as more prejudicial than probative and as having a propensity to mislead the jury. . . . [T]he mere mention of an investigation has the propensity to cause prejudice"); *see also, e.g.*, *Bermudez v. City of New York*, No. 15-CV-3240

---

[2]   Many of the exhibits should also be precluded as inadmissible hearsay.

[3]   Indeed, plaintiff herself has previously conceded that "the CCRB never investigated the matters in dispute in this case." Aug. 16, 2016 Ltr. from Plaintiff (Dkt. No. 18) at 1.

(KAM), 2019 U.S. Dist. LEXIS 3442, at *17 (E.D.N.Y. Jan. 8, 2019) (precluding evidence regarding CCRB investigation into same incident giving rise to lawsuit because "the conclusions reached by the CCRB [we]re not relevant to the ultimate issue in [that] Section 1983 litigation").

To the extent that either party seeks to utilize at trial a prior statement made during the course of these investigations, that can be done without the need to reference that the statements were made in the context of a CCRB and/or IAB investigation. *See, e.g., Othman*, 2019 U.S. Dist. LEXIS 38594, at *14-15.

Further to that point, however, plaintiff's trial exhibits reflecting the notes of an investigator as to what a particular individual said during an interview should be precluded (*see* Plaintiff's Proposed Trial Exs. 16, 18, 24, 26, 58, 59, 61, 62, 71, 72, 195) as inadmissible hearsay and further under the best evidence rule. Indeed, the best evidence of what an individual said during these interviews is not the notes of a third party observer, but rather the audio recording of said interview, all of which have been produced in this litigation.

### E. Disciplinary Histories, Other Prior Allegations of Misconduct and/or Prior Civil Rights Lawsuits

Plaintiff should further be precluded from inquiring about any disciplinary histories, other prior allegations of misconduct, and/or civil rights lawsuits which have been filed against the defendant officers or any non-party officers because such questioning is in direct conflict with Federal Rule of Evidence 404(b). Indeed, any attempt by plaintiff to introduce evidence of prior or subsequent complaints would be solely for the purpose of suggesting that defendants (or non-party officers) had a propensity to engage in misconduct, which, as explained, is strictly prohibited by Rule 404(b). *See, e.g., Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir. 1991) (upholding the exclusion at trial of all references to the defendant police officers' history of prior civilian complaints pursuant to 404(b) and 403 of the Federal Rules of Evidence); *Pierce*, 2017 U.S. Dist.

LEXIS 231208, at *3 ("Plaintiff is precluded from inquiring about any disciplinary histories or other civil rights actions filed against the defendant or witness officers.  These lines of questioning are inadmissible pursuant to Federal Rule of Evidence 404(b) as the information does not fall into one of the delineated exceptions and moreover is more prejudicial than probative under Rule 403."); *Shaw v. City of New York*, No. 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at *17-18 (S.D.N.Y. Apr. 15, 1997) (finding that plaintiff did not establish that IAB report showed motive, opportunity, or intent and was, thus, inadmissible under Rule 404(b)); *Wallace v. Hano*, No. 90 Civ. 2064 (WK), 1992 U.S. Dist. LEXIS 13388, at *7-8 (S.D.N.Y. Sept. 3, 1992) (motion in *limine* granted to exclude records of prior complaints against defendant in § 1983 case alleging false arrest and use of excessive force).

Here, evidence of unrelated allegations of misconduct is also substantially more prejudicial than probative and is therefore inadmissible pursuant to Rule 403.  Admitting evidence of unrelated complaints would unfairly burden defendants, who would then be required to explain the particular facts and circumstances of unrelated incidents, which would in turn confuse and distract the jury from the ultimate issue of whether defendants violated plaintiff's constitutional rights in this case. Similarly, unrelated allegations of misconduct are inadmissible hearsay pursuant to Fed. R. Evid. 802.  Thus, any purported similar act evidence offered by plaintiff is inadmissible, and plaintiff should be precluded from introducing defendants' (or any non-party officer's) disciplinary history or inquiring about unrelated allegations of misconduct at trial.[4]

---

[4] Courts in this Circuit have applied the same analysis to prior civil lawsuits, finding that the probative value of introducing prior lawsuits is outweighed by the prejudicial effect such evidence could have and its potential to confuse the jury.  *See, e.g., Richmond v. General Nutrition Ctrs., Inc.*, No. 08 Civ. 3577 (PAE)(HBP), 2012 U.S. Dist. LEXIS 32070, at *31 (S.D.N.Y. Mar. 9, 2012) (precluding the introduction of evidence of lawsuits against defendant because "the risk of unfair prejudice and confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims"); *see also, e.g., Figueroa v. Boston Sci. Corp.*, 00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936, at *11 (S.D.N.Y. June 25, 2003) (finding that the probative value of introducing evidence of other lawsuits is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time").

### F.      Unrelated Instances of Misconduct by Non-Parties

Plaintiff should precluded from referring to any unrelated instances of police misconduct by non-parties or from using any terms such as "testilying" and "blue wall of silence" as such references are irrelevant, inadmissible and would only serve to inflame the jury.  *See, e.g., Woolfolk,* 2022 U.S. Dist. LEXIS 120838, at *13-14 ("The Court agrees that references to misconduct by other police officers who are not parties to this case are not relevant. . . . Moreover, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion because it may suggest to the jury that Defendant[s] acted in conformity with the wrongful conduct of other officers. . . . Likewise, terms such as 'testilying' and 'blue wall of silence' evoke similar prejudicial overtones and must also be excluded."); *Bermudez,* 2019 U.S. Dist. LEXIS 3442, at *28 ("Testimony and argument regarding police actions not the subject of plaintiff's claims are not relevant to the jury's task. Further, evidence concerning police misconduct in general can be viewed as a form of Rule 404(b) evidence and risks confusion and prejudice under Rule 403, leading the jury to find that *these defendants* acted in conformity with the alleged misconduct of other officers.") (emphasis in original).

**POINT IV**

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE CONCERNING THE INTERVIEW DATE AND TIME ERROR CONTAINED IN DECEASED CAPTAIN HANRAHAN'S REPORT**

Defendants have reason to believe that plaintiff intends to introduce evidence that the report prepared by deceased Captain Hanrahan concerning plaintiff, *inter alia*, punching the wall while she was at the precinct contains errors concerning, *inter alia*, the date and time of Captain Hanrahan's interviews with defendants Ryan and Camhi.  *See, e.g.,* Plaintiff's Loc. Civ. R. 56.1(b) Counterstatement (Dkt No. 205) at 15; Second Amended Complaint (Dkt. No. 99) at § 66.

Unfortunately, Captain Hanrahan is deceased and therefore not able to explain any errors in his report.  However, defendants have produced documentation to plaintiff which makes it clear that Captain Hanrahan's error in this regard was due to his use of a report that he previously used in connection with a prior, unrelated, but similar, incident, as a template, combined with an inadvertent failure to remove and/or update certain information.  *Compare* IAB Log No. 2015-1307, Thadani Decl., Ex. A (referring to incident involving a prisoner injured in custody at the 107th Precinct on January 17, 2015 with IAB Log No. 2015-1307 that was investigated by Captain Hanrahan and reported at approximately 6:30 a.m.) *with* Disposition and Penalty Form (Dkt. No. 194-19) (relating to incident involving a prisoner – plaintiff – injured in custody at the 107th Precinct that was investigated by Captain Hanrahan and which mistakenly cites to IAB Log No. 2015-1307 and contains an interview date and time of January 17, 2015 at approximately 7:00 a.m.).  Any reference to this error would not only be irrelevant but serve to substantially and materially confuse the jury.  In addition, should such error be made known the jury, defendants would be required to explain it, in part by introducing a document which has no bearing whatsoever on the alleged incident, which would not only be necessarily cumbersome but further waste the time of both the Court and jury.  Accordingly, plaintiff should be precluded from introducing any evidence related to the interview date and time error in Captain Hanrahan's report.[5]

---

[5]   To the extent any version of Captain's Hanrahan report is entered into evidence, defendants contend that the incorrect interview date and time should be redacted.

**POINT V**

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE THAT PLAINTIFF WAS NEVER READ HER *MIRANDA* RIGHTS AND/OR ARGUE THAT *MIRANDA* RIGHTS WERE REQUIRED TO BE READ**

Defendants have reason to believe that plaintiff intends to introduce evidence that plaintiff was never read any *Miranda* rights and/or argue that a reading of such rights was required either by law and/or the N.Y.P.D. Patrol Guide.   *See, e.g.,* Plaintiff's Loc. Civ. R. 56.1(b) Counterstatement (Dkt No. 205) at 6 n.2.

As an initial matter, "[t]he Supreme Court has repeatedly held that *Miranda* warnings are not themselves required by the Constitution . . . . [U]nless statements taken in the absence of *Miranda* warnings are used in some way to incriminate the speaker, his constitutional rights have not been violated."  *Miller v. Garrett*, 695 F. Supp. 740, 745-46 (S.D.N.Y. 1988); *see also, e.g.*, *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (holding that an officer's "failure to inform plaintiffs of their [Miranda] rights . . . does not, without more, result in § 1983 liability" because "warnings are only a procedural safeguard designed to protect a person's right against self-incrimination").

In addition, whether plaintiff was read *Miranda* rights or not has no bearing on any issues to be decided at trial and any evidence concerning whether plaintiff was read such rights and/or any argument that a reading of such rights was required would not only serve to confuse the jury but also could substantially prejudice the defendants as the jury may believe that liability is warranted solely as a result of the failure to administer the reading of *Miranda* rights, which would run afoul of the United States Supreme Court's recent decision in *Vega v. Tekoh*, 142. S. Ct. 2095, 2096 (2022), which held that a violation of one's *Miranda* rights does not provide a basis for a

claim under 42 U.S.C. 1983.  Indeed, plaintiff could have no other purpose in seeking to introduce such evidence but to create confusion and prejudice.  Plaintiff should be precluded from doing so.

### POINT VI

### DANNY RIVERA SHOULD BE PRECLUDED FROM TESTIFYING THAT HIS PROPERTY WAS STOLEN OR THAT HE WAS SUBJECTED TO EXCESSIVE FORCE

Defendants anticipate that plaintiff will seek to illicit testimony from non-party Danny Rivera, who has been listed on plaintiff's proposed trial witness list, concerning his allegations that he was, *inter alia*, subjected to excessive force or had his personal property stolen.  Indeed, as discussed in Point III.D. above, plaintiff has listed numerous exhibits from the CCRB and IAB investigations concerning these very allegations.

Such allegations have no bearing on the issues to be decided at trial and therefore are irrelevant and further constitute improper character evidence.  In any event, the prejudicial effect of these allegations substantially outweigh any potential probative value.  Accordingly, plaintiff should be precluded from eliciting from Danny Rivera any evidence concerning his own allegations of police misconduct.

### POINT VII

### PLAINTIFF SHOULD BE PRECLUDED FROM ASSERTING HER EXCESSIVE FORCE CLAIM AGAINST FOUR DEFENDANTS AS SHE HAS CONSISTENTLY ALLEGED THAT ONLY TWO INDIVIDUALS USED EXCESSIVE FORCE AGAINST HER

Plaintiff now alleges that defendants Ryan and one (and only one) of either defendants DiGennaro, Camhi or Laliberte assaulted her on January 23, 2015.  *See* Affidavit of Rosie Martinez (Dkt. No. 194-1) at ¶ 2. However, both the law and fairness require that, prior to trial, plaintiff should have to definitively select her second alleged assailant from one of DiGennaro, Camhi or

Laliberte and plaintiff should be precluded from asserting her excessive force claim against all three as alternate defendants.  Indeed, "[i]t is well settled in this Circuit that personal involvement in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks and citation omitted).  "As a corollary to the personal-involvement rule, complaints that . . . 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'"  *Johnson v. City of New York*, No. 1:15-cv-8195-GHW, 2017 U.S. Dist. LEXIS 81359, at *26 (S.D.N.Y. May 26, 2017) (citation omitted); *see also, e.g., Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (observing that Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," and that a complaint fails to meet that minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct"); *Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) (dismissing Section 1983 claim for failure to identify which specific defendant was involved in the acts allegedly giving rise to a constitutional violation).

Plaintiff has not offered any reason why she cannot select from one of DiGennaro, Camhi and Laliberte, particularly after having their headshot photographs and after having video recorded their depositions.  It would be patently unfair and improper under the law for all three of DiGennaro, Camhi and Laliberte to stand trial on plaintiff's excessive force claim under these circumstances.

**POINT VIII**

**THE COURT SHOULD INSTRUCT THE JURY THAT PLAINTIFF'S ARREST WAS LAWFUL AND THAT THE SEARCH OF HER APARTMENT WAS LAWFUL, AND PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR CALLING WITNESSES TO TESTIFY ABOUT CLAIMS DISMISSED OR WITHDRAWN WITH PREJUDICE**

**A. The Court Should Instruct the Jury that Plaintiff's Arrest Was Lawful and that the Search of Her Apartment Was Lawful**

For clarity, the Court should instruct the jury—whether in its case introduction to the jury or in its jury instructions—that the arrest of plaintiff was lawful, and that the search of her apartment was lawful, and cannot be the basis for a finding of liability or an award of damages. *See e.g., Gersbacher v. City of New York,* 14 Civ. 7600 (GHW) (Dkt. No. 165) ("Defendant's request for a jury instruction on the lawfulness of plaintiff's arrest is granted."); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 548 (E.D.N.Y. 2011) (precluding plaintiff from referring to his arrest and subsequent prosecution as "unlawful"). Indeed, not only has plaintiff never asserted that her arrest was unlawful, either through raising a false arrest claim or otherwise, but plaintiff's guilty plea precludes her from doing so. Similarly, plaintiff has never asserted that the search warrant for her apartment was unlawfully obtained.

Accordingly, as neither the propriety of plaintiff's arrest nor the search of her apartment is at issue, the Court should instruct the jury that neither her arrest nor the search of her apartment violated her constitutional rights. The purpose of this instruction would be to avoid any juror confusion. *See* Fed. R. Evid. 403. The jury may naturally be led to believe that because they are assessing the circumstances surrounding plaintiff's arrest, and because there may be some testimony referencing that plaintiff's apartment was searched, they should also be assessing the

constitutionality of plaintiff's arrest and/or the search of plaintiff's apartment.  The jury may be interested in compensating plaintiff for an overall incident, rather than assessing the single claim before them.  To avoid this, the Court should instruct the jury that plaintiff's arrest was lawful, and that the search of her apartment was lawful, and focus the jury's attention on the claims to be tried.  Therefore, the jury should be instructed that plaintiff's arrest was lawful and the search of her apartment was lawful and, therefore, neither are at issue for the jury's determination.   At the very least, plaintiff should be precluded from suggesting to the jury that her arrest was unlawful or that the search of her apartment was unlawful.

## B. Plaintiff Should Be Precluded From Introducing Evidence About Claims Dismissed or Withdrawn with Prejudice

Plaintiff's claims for deprivation of due process & improper vehicle search, conspiracy, denial of access to courts / §1983 cover-up, negligence, negligent hiring, training & retention, intentional infliction of emotional distress, negligent infliction of emotional distress, supervisory liability and municipal liability have all either been dismissed or withdrawn with prejudice.[6]

Nevertheless, plaintiff clearly intends to introduce evidence concerning at least some of these dismissed and withdrawn claims at trial.  For example, plaintiff has listed several proposed trial witnesses, including non-parties Davneiro, Lavelle, Rippel, Post, and Robinson, for the purpose of testifying as to the search of plaintiff's apartment, which is no longer in issue.  *See, e.g.,* Proposed Joint Pre-Trial Order (Dkt. No. 201) at 4-6.   Notably, plaintiff previously represented to the Court that the "underlying search" was an "event[] not in dispute here."  Aug. 16, 2016 Ltr. from Plaintiff (Dkt. No. 18) at 2.  Plaintiff has further listed as proposed trial exhibits

---

[6]     In addition, 16 prior individual defendants have been dismissed.

several documents related solely to the execution of the search warrant for plaintiff's apartment. *See, e.g.,* Plaintiff's Proposed Trial Exs. 9, 39, 41, 42.

However, plaintiff should be precluded from raising any of her dismissed or withdrawn claims at trial or introducing evidence concerning those dismissed or withdrawn claims. Simply, the Court should not allow plaintiff the opportunity to re-litigate already-dismissed (with prejudice) claims or revive claims against dismissed (with prejudice) defendants.

Likewise, allowing at trial any evidence or testimony regarding the claims previously dismissed with prejudice by the Court would be unduly prejudicial as defendants have already expended significant resources briefing these claims on motions and would be required to expend additional resources preparing for the potential defense of these issues at trial. Lastly, allowing evidence or testimony claims against these individuals previously advanced by plaintiff, and dismissed with prejudice by the Court or withdrawn by plaintiff, would confuse the issues and could result in an unfair or inconsistent verdict. Any evidence regarding the litany of already-dismissed with prejudice claims or dismissed-defendants that previously have been adjudicated and dismissed with prejudice by the Court or withdrawn by plaintiff should be barred as irrelevant to plaintiff's remaining claims. *See, e.g., Bermudez*, 2019 U.S. Dist. LEXIS 3442, at *9 ("[P]laintiff may not raise or mention dismissed claims brought against former defendants, or reference damages arising from claims that are not part of this trial. Such dismissed claims are not probative of the ultimate issue before the jury.").

### C. Plaintiff Should Be Precluded from Testifying about Any Purported Damages Arising from Claims Dismissed with Prejudice or Withdrawn Claims

Plaintiff should be barred from presenting testimony or evidence on any purported damages stemming from claims dismissed with prejudice, withdrawn claims, or the actions of dismissed defendants. The purpose of § 1983 is to adapt to the constitutional context "the common law of

torts [which] has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights." *Carey v. Piphus*, 435 U.S. 247, 257 (1978).  The Second Circuit has held that in § 1983 cases, the plaintiff must prove that the defendant's actions are the proximate cause of plaintiff's injuries. *See Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002).  Here, as any claims for deprivation of due process & improper vehicle search, conspiracy, denial of access to courts / §1983 cover-up, negligence, negligent hiring, training & retention, intentional infliction of emotional distress, negligent infliction of emotional distress, supervisory liability and municipal liability have been dismissed with prejudice or withdrawn, any associated purported physical and/or emotional damages cannot be introduced at trial.  Plaintiff's potential damages award is limited to compensation arising from the alleged excessive force or alleged delay in medical treatment.   Accordingly, Plaintiff should be precluded from testifying about purported damages pertaining to dismissed and/or withdrawn claims.

### POINT IX

### THE TESTIMONY OF PLAINTIFF'S TREATING PHYSICIANS SHOULD BE LIMITED TO THEIR OWN TREATMENT OF PLAINTIFF AS REFLECTED IN THEIR RESPECTIVE MEDICAL RECORDS

On December 31, 2019, plaintiff served purported expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C), which listed twenty of plaintiff's treating physicians as "treating expert witnesses."  Plaintiff's Rule 26(a)(2)(C) Expert Disclosures, Thadani Decl., Ex. B.  In her disclosures (and in the Proposed Joint Pre-Trial Order), plaintiff essentially copied and pasted the exact same language for each of the twenty treating physicians, notwithstanding that there are material differences concerning, *inter alia*, each physician's treatment, diagnoses and available information (and notwithstanding that **each treating physician does not address each of the various topics plaintiff lists in her disclosures, including, by way of example, causation and**

**future costs**).  In any event, among that language is the clear representation that, for each treating physician, "[t]he facts to which the expert will testify are based upon the contents of the associated treatment records as previously exchanged by the parties." and that "[t]he records relevant to [the treating physician's] testimony are the treatment records for which plaintiff previously provided a duly executed authorization."  *Id.* at 1-2; *see also* Proposed Joint Pre-Trial Order (Dkt. No. 201) at 7-13.  Moreover, plaintiff's disclosures do not suggest in any way whatsoever that any of the treating physicians would rely upon any information acquired from outside sources.

Defendants now seek to confirm that, pursuant to both plaintiff's representations and the established case law, the testimony of each of the treating physicians listed in plaintiff's disclosures, to the extent that they testify at trial, will be limited to their own respective treatment of plaintiff as can be reasonably gleaned from their respective medical records, as listed in the Proposed Joint Pre-Trial Order.

Indeed, it is well established that "treating physicians who are designated as non-retained experts . . . are not . . . permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records."  *Davids v. Novartis Pharms. Corp.*, 857 F. Supp. 2d 267, 280 (E.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also, e.g., Reynolds v. Am. Airlines, Inc.*, No. 14 CV 2429 (CLP), 2017 U.S. Dist. LEXIS 192822, at *15 (E.D.N.Y. Nov. 21, 2017) ("[W]hen there is no expert report provided, the treating physician may only testify as to facts acquired and opinions formed during the treatment of the patient, as reflected in his contemporaneously-generated medical records."); *Socha v. 110 Church, LLC (In re World Trade Ctr. Lower Manhattan Disaster Site Litig.)*, 2014 U.S. Dist. LEXIS 156976, at *52 (S.D.N.Y. Nov. 5, 2014) ("I hold that Plaintiffs must provide expert reports pursuant to FRCP 26(a)(2)(B) if they wish to elicit testimony from any of the 18 physicians based upon facts, evidence, or expertise

22

outside the scope of the individual Plaintiffs' course of treatment.  This includes opinion testimony regarding causation that was not formed solely during consultation with, and treatment of, a particular Plaintiff."); *Pierce v. City of New York*, No. 16 Civ. 5703 (BMC), 2017 U.S. Dist. LEXIS 93087, at \*8-9 (E.D.N.Y. June 16, 2017) ("[C]ourts have required expert reports pursuant to Rule 26(a)(2)(B) 'where the treating physician intends to offer opinions based upon information the opposing side cannot easily glean from medical records.'") (citation omitted); *Sapienza v. United States Dep't of Veterans Affairs*, No. CV 09-1224(ARL), 2012 U.S. Dist. LEXIS 75928, at \*2-3 (E.D.N.Y. May 31, 2012) ("A treating physician for whom no expert report is supplied is not permitted to go beyond the information acquired or the opinion reached as a result of the treating relationship to opine as to the causation of the injury or give an opinion regarding the view of an expert called by the defendant.") (internal quotation marks and citation omitted).

Accordingly, the testimony of plaintiff's treating physicians should be limited to their own treatment of plaintiff, as reflected in their respective medical records.

## POINT X

### PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING THE NEW YORK CITY POLICE DEPARTMENT PATROL GUIDE OR STUDENT GUIDE

Plaintiff has listed as proposed trial exhibits New York City Police Department ("NYPD") patrol guide sections regarding prisoners requiring medical treatment and unusual occurrences, as well as over 150 pages from the NYPD police student guide from 2014 (well after any of the individual defendants received their initial NYPD training) regarding mostly irrelevant topics such as executing an arrest warrant, warrant checks, search warrants, questioning juveniles, eyewitness ID procedures, show-ups, and photo arrays.  *See* Plaintiff's Proposed Trial Exs 181, 251 252.

Plaintiff should be precluded from referring to, offering any evidence of, or crossing and/or questioning witnesses on these or any other NYPD procedure or patrol guide provisions. Alleged violations of NYPD procedure by the defendants is irrelevant to the determination of whether plaintiff's constitutional rights were violated. Thus, any NYPD procedure or patrol guide provision should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, the standards set forth as per NYPD procedure are merely guidelines established by the New York City Police Department, and are not the standards of the United States Constitution. *See, e.g., Salazar v. Deleon*, No. 15-cv-1989 (KBF), Dkt. No. 98 at 4-5 (S.D.N.Y. July 18, 2016) ("The NYPD Patrol Guide is not a statement of constitutional standards and does not create legal duties.") (holding that the NYPD Patrol Guide is irrelevant to the determination of whether plaintiff's constitutional rights were violated and would be potentially confusing and prejudicial to the defendant).

In light of plaintiff's claims that her constitutional rights were violated, any NYPD guidelines, whether or not followed to the letter, are irrelevant to the determination of whether plaintiff's constitutional rights were violated since NYPD procedure does not create legal duties. *See, e.g., Soto v. City of New York*, No. 13-cv-8474 (KBF), 2017 U.S. Dist. LEXIS 223692, at *6-7 (S.D.N.Y. Dec. 1, 2017) ("[A] violation of the Patrol Guide is not the equivalent or even some evidence of a violation of plaintiff's constitutional rights. . . . Thus a violation of the Patrol Guide, if one occurred, is not relevant to whether a violation of the Constitution occurred; references to the Patrol Guide are thus excluded under Rule 402.").

Second, any reference to alleged "violations" of NYPD procedure, meaning that defendants did not follow the exact guidelines, would only confuse the jury. *See, e.g., Johnson v. City of New York*, No. 16 Civ. 9561 (LAP), Dkt. No. 74 at 2 (S.D.N.Y. Jan 22, 2020) ("Plaintiff is precluded

from introducing or referencing the NYPD Patrol Guide or Police Student Guide.  Those police documents do not create legal duties . . . and introducing them would substantially risk confusing the jury about the applicable standard for assessing whether defendants' conduct was unconstitutional.").   The jury will be called upon to determine whether defendants violated plaintiff's constitutional rights.  If the jury is presented with the proffered portions of NYPD procedure, it is likely to wrongly assume that NYPD procedure sets out the standard by which they are to evaluate defendants' alleged unconstitutional actions, notwithstanding a contrary instruction from the Court.  It is certainly in the realm of possibility that an officer could follow NYPD procedure and still violate an individual's constitutional rights or not follow NYPD procedure and not violate an individual's rights.  Therefore, any references to alleged "violations" of NYPD procedure are irrelevant, unfairly prejudicial, and would only confuse the issues and the jury.  *See, e.g., Soto*, U.S. Dist. LEXIS 223692, at *7 ("[T]here is substantial risk that use of the [Patrol] Guide would mislead or confuse the jury into a belief that a violation of its provision(s) equates with liability in this case. Those concerns substantially outweigh any probative value.").

Accordingly, the Patrol Guide as evidence, as well as testimony regarding NYPD procedure, should therefore be precluded pursuant to Fed. R. Evid. 402 and 403.

### POINT XI

### PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING THE PRIOR SANCTIONS ORDER

Plaintiff unsurprisingly seeks to introduce evidence at trial of the Court's prior discovery sanctions against defendants City of New York and former defendants Forgione and Weitzman. *See, e.g.,* Proposed Joint Pre-Trial Order (Dkt. No. 201) at 79 ("Defendants' discovery misconduct is law of the case and relevant and cannot be excluded").  As an initial matter that bears repeating since plaintiff conveniently continues to ignore it at every stage of this litigation:  the Court's prior

discovery sanctions or, as plaintiff puts it, "[d]efendants' discovery misconduct," occurred at a time before any of the remaining individual defendants in this case were even named as defendants. For that reason alone, it would be extraordinarily prejudicial and improper to permit any reference to the Court's prior discovery sanctions at trial.

Moreover, the Court's prior discovery sanctions have no bearing whatsoever on the issues to be adjudicated at trial and therefore are irrelevant and, any theoretical probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury and undue delay.  If the Court were to permit plaintiff to introduce such evidence, defendants would have no choice but to address and explain the bases for the sanctions, defendants' objections to them, and the lack of connection of them to the individual defendants, thereby leading to a trial within a trial on a collateral and irrelevant matter.

As District Judge Donnelly expressed long ago, plaintiff needs to move on.  *See, e.g.,* Aug. 1, 2018 Tr. (Dkt. No. 182) at 7:25, 10:12-14 ("I don't think we need to keep revisiting the past. . . . I think it was just a series of mistakes.  I don't think anybody was setting out to not find anything. But that's behind us.").

It remains clear that plaintiff has no intent of doing so and seeks to introduce such evidence solely for the purpose of having the jury render its decision based on improper grounds.  Plaintiff should be precluded from doing so.

## POINT XII

### PLAINTIFF SHOULD BE PRECLUDED FROM<br>SEEKING ECONOMIC DAMAGES

In the Proposed Joint Pre-Trial Order, plaintiff indicates that she seeks as relief, *inter alia*, "compensatory damages for . . . lost wages, diminished earning capacity," even though she has repeatedly represented that she is not seeking lost wages and even though she never provided

promised calculations regarding diminished earning capacity, and "future medical costs to the extent described by plaintiff's expert witnesses," even though, upon information and belief, none of plaintiff's expert witnesses have described plaintiff's future medical costs, save for Dr. McMahon, who should be precluded from testifying at trial as explained in Point XV below, and who, in any event, isn't in a position to opine on future medical costs given the large gap of time and the considerable medical treatment, including plaintiff's surgery, since he has seen and assessed the plaintiff.  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 3.

Plaintiff should be precluded from seeking economic damages, including for lost income or medical expenses, based on her failure to provide a computation of damages pursuant to Rule 26(a)(1)(A)(iii).  Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), a party is required to disclose "a computation of each category of damages claimed," as well as any documents or other evidentiary materials underlying those computations.  Further, pursuant to Fed. R. Civ. P. 26(e)(1)(A), "[a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure of response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."

In this case, plaintiff has failed to make the necessary disclosures regarding the categories of damages she seeks, and should specifically be precluded from pursuing economic damages in the form of lost income or medical expenses.  Indeed, in her initial disclosures, when indicating "[a] computation of each category of damages claimed," plaintiff merely noted "his" [sic] damages for emotional distress, punitive damages, "his" [sic] costs, and reasonable attorneys' fees.  *See* Plaintiff's Initial Disclosures, Thadani Decl., Ex. C.  Thereafter, upon information and belief, plaintiff never supplemented her disclosures in this regard.

In addition, in response to defendants' interrogatory requesting that plaintiff "[i]dentify all economic injuries claimed by plaintiff as a result of the Incident, including but not limited to, expenditures for medical, psychiatric, or psychological treatment; [and] lost income" and further "[i]dentify the specific amounts claimed for each injury," plaintiff merely responded as follows:

> Subject to and without waiver of the foregoing general objections, if plaintiff prevails in this action, she intends to seek appropriate attorneys' fees and costs pursuant to 28 U.S.C. § 1988. **Plaintiff is not claiming lost wages**. Plaintiff will search her files and supplement this response if responsive information exists.

Response and Objection to Interrogatory No. 5, Plaintiff's Responses & Objections to Defendants' First Set of Interrogatories and Request for Production of Documents, Thadani Decl., Ex. D (emphasis added). Similarly, in response to a document request for "all documentation of damages that plaintiff alleges stem from the Incident, including, but not limited to, expenditures for medical, psychiatric, or psychological treatment; [and] lost income," plaintiff responded as follows:

> Subject to and without waiver of the foregoing general objections, plaintiff will search her files and supplement this response if she is in possession of any such documents. **Plaintiff further states that she is not claiming lost wages**.

Response and Objection to Document Request No. 5, Plaintiff's Responses & Objections to Defendants' First Set of Interrogatories and Request for Production of Documents, Thadani, Decl., Ex. D (emphasis added).

On December 21, 2018, after plaintiff represented for the first time that she was in fact apparently seeking lost wages, defendants served plaintiff with a deficiency letter in light of the above-referenced responses. *See* Dec. 21, 2018 Ltr. from Defendants, Thadani Decl. Ex. E.

In response to defendants' letter, plaintiff stated that she is "appropriately claiming a degradation of her earning capacity and lost future earnings as a result of her permanent injury, **not lost wages or the loss of her job**." Jan. 7, 2019 Ltr. from Plaintiff at 1, Thadani Decl., Ex. F (emphasis added). Plaintiff then supplemented her prior interrogatory response to "include the

impairment of her earning capacity, lost future earnings and anticipated future medical expenses." *Id.* at 1.  Plaintiff also stated that she "is presently tabulating the total anticipated amount of these losses, which are expected to be the subject of expert testimony," apparently acknowledging that she had not yet complied with her discovery obligations in this respect.  *Id.*  However, plaintiff never provided any such tabulations nor did she ever disclose any relevant expert witness. Notably, plaintiff did not supplement her prior document response, instead merely referring "to her prior response and objection, and to the documents previously exchanged by the parties in this action."  *Id.* at 2.

Although plaintiff produced certain income tax records, and releases for such records, as well as releases for employment records, that is not enough to satisfy the requirements of the Federal Rules.  *See, e.g., Jaquez*, 2016 U.S. Dist. LEXIS 34521, at *21-22 ("Plaintiffs cite no authority for the proposition that defendants' possession of [plaintiff's] tax forms excuses their obligation to disclose a computation of damages for lost income."); *21 ("The fact that the defendants may have been aware of facts which might be used in some manner to support plaintiffs' damages for lost income based on [sworn testimony], or by receiving authorization forms to obtain [a] W-2 form, does not take the place of plaintiffs' discovery obligations.")

As a result of plaintiff's failures to properly disclose, plaintiff should be precluded from seeking economic damages, including for lost income and medical expenses, and plaintiff's income tax record exhibits (Plaintiff's Proposed Trial Exs. 238, 265) should be precluded.  *See, e.g., id.* at *23 (granting motion to preclude economic damages and stating that "[p]laintiffs proceeded at their peril when they decided not to furnish the required information to defendants during discovery. They now must live with that tactical choice").

## POINT XIII

## JOSEPH POLLINI SHOULD BE PRECLUDED
## FROM TESTIFYING AT TRIAL

Plaintiff has listed Joseph Pollini, a purported expert in police practices, on her witness list. As explained further below, Mr. Pollini should be precluded from testifying at trial because his report contains both (a) opinions that either (i) are not relevant to the issues to be determined at trial, (ii) improperly invade the province of the jury, or (iii) are unhelpful and unnecessary because they relate to lay matters, and (b) an improper factual narrative. Moreover, the central remaining issue of this case (i.e., whether plaintiff was unjustifiably assaulted by two individuals, who deny using any force whatsoever, behind closed doors in a police precinct) is not one which a jury would require the aid of an expert witness to determine.

### A. Purported Expert Opinions That Have No Bearing on the Issues to Be Determined at Trial Should Be Excluded

As an initial matter, many of the purported expert opinions proffered by Mr. Pollini are not even remotely relevant to the issues to be determined at trial and, as such, should be excluded. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal quotation marks and citation omitted); *United States v. Stewart*, 433 F.3d 273, 312 n.10 (2d Cir. 2006) ("[E]xpert testimony regarding an issue not relevant to the [claims] under consideration has the potential to confuse the jury even further.").

For example, Mr. Pollini's discussions concerning whether plaintiff had ever been identified as being present for and/or involved in the sale of illegal drugs prior to her arrest, which appears to be based simply on a lack of documentation and not any expertise, has no bearing whatsoever on any of plaintiff's remaining claims for trial. *See* Report of Joseph A. Pollini ("Pollini Rpt.") at ¶ 6, Thadani Decl., Ex. T. Similarly, Mr. Pollini's criticism concerning

defendant DiGennaro's purported failure to document the criminal activity preceding the search warrant application is not only irrelevant because it is based on testimony that was subsequently corrected at a second deposition to clarify that there were no police-observed drug transactions[7] but also because such activity is not related to any of plaintiff's claims for trial.  *See id.* at ¶ 22. Mr. Pollini's purported opinions concerning the disputed allegation that defendant DiGennaro promised to release plaintiff in exchange for Mr. Rivera and/or plaintiff providing the police with certain information also have no bearing on plaintiff's remaining claims for trial and should be precluded as a result.  *See id.* at ¶ 28.

As the Court has dismissed plaintiff's vehicle search claim, Mr. Pollini's purported opinions related to that claim, which are improper legal conclusions in any event, should be excluded.  *See, e.g., id.* at  ¶ 23.  Similarly, because plaintiff has voluntarily withdrawn her negligent hiring, training and retention claim against the City of New York, *see* Dkt. No. 186 at 15, Mr. Pollini's purported opinions concerning the City's failure to supervise and/or train, which are also improper legal conclusions, should be excluded.  *See* Pollini Rpt. at ¶ 37.

Mr. Pollini's purported opinion that "police supervisors failed to conduct a thorough and impartial investigation into the circumstances that led to the plaintiff's injuries," Pollini Rpt. at ¶ 37, should likewise be precluded because plaintiff's supervisory liability claim has been dismissed and, in any event, the propriety of the internal investigation has no bearing on plaintiff's remaining claims for trial.

As explained in Point III.B. above, evidence relating to the undercounting of the glassine envelopes of heroin found in plaintiff's apartment should be excluded.  Accordingly, Mr. Pollini's

---

[7]  Mr. Pollini's opinion in this regard raises serious questions as to whether he thoroughly reviewed the relevant deposition testimony in this matter in forming his opinions as he does not even acknowledge that the testimony upon which he relies was subsequently corrected and clarified.

purported opinions concerning that undercounting should likewise be excluded.  *See* Pollini Rpt. at ¶ 24.

Similarly, as explained in Point V above, evidence that plaintiff was never read, or should have been read, her *Miranda* rights should be precluded.  Accordingly, Mr. Pollini's purported opinions concerning the reading of *Miranda* rights, which are legally incorrect in any event, should likewise by excluded.  *See* Pollini Rpt. at ¶ 27(a) ("Not giving someone in custody their Miranda Warnings, clearly violates their constitutional rights.").

Mr. Pollini's purported opinions concerning the errors in deceased Captain Hanrahan's report, *see id.* at ¶ 35, should also be precluded because, as an initial matter, Captain Hanrahan is not a defendant in this case and, furthermore, for the reasons outlined in Point IV above.

## B.  Mr. Pollini's Remaining Opinions Should Be Precluded

### i.   Mr. Pollini's Opinions Invade the Province of the Jury

It is well settled that an expert may not "tell the jury what result to reach," because such testimony "does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."  *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see also, e.g., Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017) ("[E]xpert testimony is not admissible under Federal Rule of Evidence 702 if it 'usurp[s] . . . the role of the jury in applying th[e] law to the facts before it,' as such testimony 'undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.") (citation omitted) (affirming preclusion of opinion that officer "did not act reasonably under the circumstances"); *Armour Capital Mgmt. LP v. SS&C Techs., Inc.*, No. 3:17-cv-00790 (JAM), 2020 U.S. Dist. LEXIS 2252, at *22 (D. Conn. Jan. 5, 2020) ("[T]he Second Circuit has found error in a police-excessive-force case for an expert

to testify that the officer's 'conduct was not 'justified under the circumstances,' not ' warranted under the circumstances,' and totally improper.''") (citations omitted).

Similarly, courts routinely preclude experts whose testimony would amount to "in essence, a summation from the witness stand." *Lippe v. Baimco*, 288 B.R. 678, 687-88 (S.D.N.Y. 2003); *see also, e.g., LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 U.S. Dist. LEXIS 12975, at *7 (S.D.N.Y. July 15, 2002) ("[The expert's] report 'does no more than counsel [for plaintiff] will do in argument, i.e., propound a particular interpretation of defendant's conduct. This is not justification for the admission of expert testimony.'") (citation omitted).

Moreover, "[t]his circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *see also, e.g., Stern v. Shammas*, No. 12-CV-5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879, at *8-9 (E.D.N.Y. July 27, 2015) (precluding expert from offering legal conclusions, including "any opinions that the force used by Defendants was 'unreasonable' or that Defendants lacked probable cause").

Here, the vast majority of Mr. Pollini's opinions are inadmissible because they (i) invade the province of the jury by improperly resolving material fact disputes in plaintiff's favor and explicitly telling the jury what result to reach, (ii) are in the form of legal conclusions, and (iii) are nothing more than pure advocacy equivalent to a summation from the witness stand. For example, Mr. Pollini's report includes the following "opinions":

- "Based on the facts of the vehicle seizure, the officers in this case had no lawful authority to seize Ms. Martinez's vehicle and voucher it as investigatory evidence." Pollini Rpt. at ¶ 23.[8]

---

[8] To the extent that Mr. Pollini claims that defendants' seizure of the vehicle "was a violation of proper police practice and procedure," Mr. Pollini offers no explanation whatsoever for such his conclusory opinion. *Id.*

- "There is no question that[] Ms. Martinez was severely assaulted and battered and subjected to unreasonable force, while she was in police custody, at the 107 Precinct. Officers also stood by and failed to intervene, while Ms. Martinez was being subjected to repeated assaults and battery and unreasonable force by members of the NYPD.  This conduct is an extreme example of excessive and unnecessary force.  These officers violated proper police practice and procedure and violated the law as well."  *Id.* at ¶ 32(c).

- No reasonable police officer would have used excessive force and unreasonable force on an arrestee that posted no immediate threat to police officers or civilians.  The defendants were careless, reckless and negligent and intentionally used unnecessary and excessive force during the interrogation of Ms. Martinez."  *Id.* at ¶ 37.

- "They also violated New York State and Federal Law dealing with the necessary use of force."  *Id.* at ¶ 38.

These "opinions," as well as those similar to them, should be precluded.

### ii.    Opinions Concerning the Alleged Lack of Documentation

In his report, Mr. Pollini repeatedly criticizes the alleged lack of proper documentation, specifically as to how plaintiff was allegedly injured and as to plaintiff's alleged injuries.  *See, e.g.*, Pollini Rpt. at ¶ 25 ("If this incident occurred, as Officer Ryan described it, he should have made a permanent record in his activity log, describing the incident that occurred the identity of witnesses that were present.  There should have also been a command log entry describing what occurred while Ms. Martinez was in the juvenile room."); ¶ 26(f) ("If there was in fact an officer guarding Ms. Martinez, at the time she allegedly was kicking the filing cabinet, punching the wall and ripping items of the wall . . . . The guarding officer should have made an entry in the [sic] his/her activity log, that she was guarding Ms. Martinez."); 34(c) ("[E]ntries should have been made in the command log by the desk officer or other supervisors that were present.  The arresting officer should have made entries in his activity log and on the Medical Treatment of Prisoner Form."); ¶ 37 ("[O]fficers failed to follow proper police procedures in documenting plaintiff's injury.").

As an initial matter, Mr. Pollini generally fails to explain the basis for these conclusory opinions.  For example, Mr. Pollini generally does not cite to any generally accepted police practices or guidelines to support the contention that these matters were required to have been documented in the manner that Mr. Pollini suggests.  Mr. Pollini further conveniently neglects to acknowledge that these matters were documented, albeit in a different form than Mr. Pollini conclusorily opines they should have been.  *See, e.g.,* Dkt Nos. 194-19 (Hanrahan report), 194-24 (Camhi call to IAB transcript), 194-36 (IAB log), 194-54 (Camhi memobook).  Nevertheless, whether certain matters were properly documented or not is not relevant to whether plaintiff was subjected to excessive force or not.

To the extent plaintiff asserts that the alleged lack of proper documentation is relevant to the issues to be determined at trial insofar as it may undermine the defendants' contention that plaintiff's alleged injuries were self-inflicted, expert testimony in this regard would still be improper.  Indeed, Mr. Pollini's opinion that "[i]f information is not properly documented in a case, then it did not happen" has been previously rejected in this Circuit because "[t]his conclusion is far too speculative to be admissible expert opinion – and, in fact, defies common sense and borders on frivolous."  *McGrier v. City of New York*, No. 16-CV-5667 (VEC), 2019 U.S. Dist. LEXIS 38688, at *13 n.7 (S.D.N.Y. Mar. 11, 2019).

In any event, it is well-settled that an expert opinion is inadmissible if it merely "addresse[s] lay matters that the jury is capable of understanding and deciding without the expert's help." *United States v. Finazzo*, 682 F. App'x 6, 10 (2d Cir. 2017); *see also, e.g., Linkco., Inc.*, 2002 U.S. Dist. LEXIS 12975, at *10-11 (expert opinions excluded in part because they "address[ed] evidence and issues that are within the understanding of the jury"); *Reyes v. Delta Dallas Alpha Corp.*, No. 92 Civ. 4418 (AGS), 2000 U.S. Dist. LEXIS 5668, at *8 (S.D.N.Y. May 2, 2000) ("The

Court excludes [the expert's] conclusions . . . because, as defendants point out, these conclusions will not assist the trier of fact to better understand the evidence or determine a fact in issue. . . . In arriving at these conclusions, there is no evidence that [the expert] relies on anything more than common sense guidelines, as opposed to industry standards.").

This general principle has been explained as follows:

> Expert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people, because it would not help the trier of fact to understand the evidence or determine a fact in issue.  The trier of fact is, under those circumstances, fully capable of understanding the evidence and deciding the issues through the use of its common knowledge and common sense.
>
> Proffered expert testimony should be excluded when it will not help the trier of fact to any degree beyond the assistance that the lawyers representing the parties could provide during their closing argument

4 Weinstein's Federal Evidence § 702.03 (2020).

There is no reason why plaintiff cannot cross examine witnesses concerning their lack of documentation (and duty to do so) or cannot argue the relevance of such alleged lack of documentation during her closing arguments.  Furthermore, it is certainly not beyond the ken of a juror to understand the significance (or lack thereof) of not documenting something, without the help of an expert witness.

Accordingly, Mr. Pollini's purported opinions concerning the alleged lack of proper documentation should be precluded.

**C.  Mr. Pollini's Opinions Concerning Plaintiff's Deliberate Indifference Claim**

Mr. Pollini offers several opinions concerning defendants' alleged failure to obtain medical treatment for plaintiff.  *See, e.g.,* Pollini Rpt. at ¶¶ 26(b), 34(c), 37.  However, these opinions regarding purported proper police practices and procedure are different than the constitutional standards the jury will be asked to evaluate in connection with plaintiff's deliberate indifference

claim.  As such, Mr. Pollini should be precluded from offering any opinions based on, or evidence of, the NYPD procedure or patrol guide provisions as any alleged violations of NYPD procedure by defendants is irrelevant to the determination of whether plaintiff's constitutional rights were violated.  *See, e.g., Bah v. City of New York*, 13-CV-6690 (PKC), 2017 U.S. Dist. LEXIS 13285, at *19 (S.D.N.Y. Jan. 31, 2017) ("Section 1983 provides a remedy for the violation of rights protected by the Constitution or federal law.  It does not provide a remedy for violations of best police practices.  A violation of the Patrol Guide or departmental policy does not, in and of itself, amount to the violation of a right protected by the Constitution or federal law.") (internal citation omitted); *see also, e.g.,* Point XI above.

Moreover, to the extent Mr. Pollini's opinions are merely based on the NYPD patrol guide provisions, which they appear to be, it is unclear why an expert witness is required or necessary to explain to the jury the clear language of the pertinent police guidelines.  Accordingly, Mr. Pollini's opinions should be precluded.

### D.  Mr. Pollini's Improper Factual Narrative

Mr. Pollini's factual narrative, which is contained in the "Summary of Facts" section as well as the majority of the "Summary of Opinions" section of his report, and which is largely based upon testimony of witnesses who are expected to testify at trial, also improperly invades the province of the jury.  Indeed, it is the province of the jury, not an expert witness, to construct a factual narrative from the evidence.  *See Pergament v. Tracey (In re Thilman)*, 557 B.R. 294, 301 (Bankr. E.D.N.Y. 2016) ("[A]n expert may not 'supplant . . . the role of the jury [in] interpreting the evidence.'") (citation omitted); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (holding that it is not appropriate for an expert to present a mere "narrative of the case which a juror is equally capable of constructing") (internal quotation marks and citation

omitted).  Moreover, Mr. Pollini's factual narrative, which generally accepts plaintiff's version of events as true, does not draw on his (or any) specialized knowledge or methodology and therefore provides no assistance, and is not helpful, to the jury.  *See, e.g., Sullivan v. Lakeram*, No. 13 Civ. 7677 (NRB), 2017 U.S. Dist. LEXIS 155254, at *14 (S.D.N.Y. Sept. 13, 2017) (excluding expert's narration of video evidence because it was "not the product of any expertise and is therefore improper").  It is the jury's role, not Mr. Pollini's, to determine which version of events is more credible. *See, e.g., Fate v. Vill. of Spring Valley*, No. 11 Civ. 6838 (JPO), 2013 U.S. Dist. LEXIS 83425, at *17 (S.D.N.Y. June 12, 2013) ("[The expert] may not . . . offer testimony about what he believes actually happened or about the credibility of any witness.").  Mr. Pollini does nothing more than a jury could and would do on its own.

In sum, Mr. Pollini constructs an inadmissible factual narrative by presenting the evidence produced in the case in a manner favorable to plaintiff.  He further draws inappropriate legal conclusions regarding the facts, engages in arguments properly reserved for counsel, and interprets the evidence in a manner that makes no use of his purported specialized knowledge and instead supplants the role of the jury.  Accordingly, Mr. Pollini should be precluded from testifying at trial.

## POINT XIV

### THE TESTIMONY OF DR. MARK MCMAHON SHOULD BE PRECLUDED

On or about February 3, 2017, plaintiff served expert disclosures for purported expert witness Dr. Mark McMahon.  However, since that time, plaintiff received treatment in connection with her alleged injuries for over at least another three years from several different providers, and even had surgery in October 2019.  Nevertheless, plaintiff has never supplemented her disclosures concerning Dr. McMahon, not even in connection with the Court's December 31, 2019 deadline for plaintiff to provide expert disclosures. *See* Dkt. Entry dated Dec. 16, 2019.  Most importantly,

plaintiff never served a revised expert report reflecting the review of the pertinent medical records post-dating February 3, 2017.  However, it is well-settled that "[a]n expert witness has a duty to supplement his or her report 'in a timely manner if the party learns that in some materials respect the disclosure . . . is incomplete or incorrect.'"  *Gyllenhammer v. Am. Nat'l Red Cross*, No. 3:15-cv-1143 (BKS/DEP), 2018 U.S. Dist. LEXIS 228437, at *10 (N.D.N.Y. Jan. 23, 2018) (quoting Fed. R. Civ. P. 26(e)(1)(A)); *see also, e.g., Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011) ("The duty to supplement arises when the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate.").

As a result, Dr. McMahon's testimony (and his report, which plaintiff has listed as proposed trial exhibit number 261) should be entirely precluded pursuant to Fed. R. Civ. P. 37(c)(1) as plaintiff failed to properly supplement her disclosures and further because it is no longer relevant or valid.  At the very least, Dr. McMahon's testimony should be limited to only his opinions as of the time his report was served.

### POINT XV

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING AS WITNESSES CURRENT OR FORMER MEMBERS OF THE NYPD WHO HAVE NO RECOLLECTION AND/OR NO KNOWLEDGE OF, OR CONNECTION TO, THE EVENTS RELEVANT TO THE ISSUES TO BE DECIDED AT TRIAL

Seemingly as a thinly-veiled attempt to divert defense counsel's preparation of this case for trial, and contrary to plaintiff's apparent belief that "plaintiff did not list a single improper or incompetent witness," E-Mail Correspondence at 2, Thadani Decl. Ex. U, plaintiff has listed 13 current or former members of the NYPD as proposed non-party trial witnesses who should be precluded from testifying at trial either because they have no recollection whatsoever of the events

relevant to the issues to be decided at trial (and their memory cannot be refreshed by review of documents or even plaintiff's photograph) and/or they have no knowledge of, or connection to, any of the events relevant to the issues to be decided at trial, on the grounds that the testimony of these witnesses is irrelevant and a waste of time.[9]

1. **James Davneiro**:  As an initial matter, plaintiff has indicated that she has listed this witness to testify as to "his involvement in searching plaintiff's apartment," which is not relevant to any of plaintiff's remaining claims.  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 4.  In any event, this witness testified at deposition that he never even saw the plaintiff.  *See, e.g.,* Davneiro Dep. at 19:2-11, Thadani Decl., Ex. G.  As a result, this witness cannot possibly have any relevant testimony to offer at trial.

2. **Richard Donovan**:  As an initial matter, plaintiff has indicated that she has listed this witness to testify concerning "his approval of the medical treatment of prisoner form."  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 4.  However, it is unclear how that makes this witness relevant to the issues to be tried.  In any event, this witness testified at deposition that he has no specific recollection of any of the events during his tour on January 23, 2015 and further, that, even after viewing her photograph, plaintiff did not look familiar to him.  *See, e.g.,* Donovan Dep. at 26:11-14, 66:10-13, Thadani Decl., Ex. H.

3. **Jason Graham**:  Plaintiff has indicated that she has listed this witness to testify about "his transport of Rosie Martinez from the 107th Precinct to Queens Central Booking on January 23, 2015."  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 5.  However, it is unclear how that

---

[9]    The memobook entries of these individuals, many of which plaintiff has listed as proposed trial exhibits, should also be precluded.

transport is relevant here and, in any event, this witness testified at deposition that he has no recollection of transporting plaintiff.  *See, e.g.,* Graham Dep. at 8:25-9:3, Thadani Decl., Ex. I.

4. **Peter Kandinov**:  Plaintiff has indicated that she has listed this witness to testify about "his transport of plaintiff from the hospital to the 107th Precinct."  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 5.  However, it is unclear how that transport is relevant here and, in any event, this witness testified at deposition that he has no recollection of transporting plaintiff or of going to the hospital and, further, that, even after reviewing plaintiff's photograph, she was not familiar to him.  *See, e.g.,* Kandinov Dep. at 32:22-33:5, 48:9-17, Thadani Decl., Ex. J.

5. **Richard Lavelle**:  As an initial matter, plaintiff has indicated that she has listed this witness to testify as to "his involvement in executing the warrant at plaintiff's apartment," which is not relevant to any of plaintiff's remaining claims.  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 5.  In any event, this witness testified at deposition that he has no specific recollection of his tour that day.  *See, e.g.,* Lavelle Dep. at 30:20-22, Thadani Decl., Ex. K.

6. **Joseph Pontecorvo**:  Plaintiff has vaguely indicated that this witness will testify as to "events at the 107th Precinct and hospital."  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 5. However, this witness testified at deposition that he has no recollection of going to the hospital or seeing plaintiff at the hospital or the precinct and, further, that, even when shown plaintiff's photograph, she did not look familiar to him.  *See, e.g.,* Pontecorvo Dep. at 17:9-16, 61:13-62:6, 120:2-5, Thadani Decl., Ex. L.

7. **Zaka Rehman**:  Plaintiff has indicated that she has listed this witness to testify about his involvement with "updating NYPD databases regarding plaintiff's physical condition." Proposed Joint Pre-Trial Order (Dkt. No. 201) at 5-6.  However, it is unclear why that would be relevant here and, in any event, this witness testified at deposition that he has no recollection of

his tour or plaintiff, even after being shown a photograph of plaintiff.  *See, e.g.,* Rehman Dep. at 45:12-18, 78:8-14, Thadani Decl., Ex. M.

**8.   Brian Post:**  Despite plaintiff's representation concerning what this witness would testify about if called at trial, plaintiff has no basis for doing such representations as he was never deposed and, upon information and belief, his name is not reflected in any documents as being involved in the search of plaintiff's apartment (which is not relevant anyway) or any relevant events at the precinct.  Indeed, this witness was assigned to rear security on January 22, 2015 and his tour ended **before** the time plaintiff alleges she was assaulted.  *See, e.g.,* Post Jan. 22, 2015 Memobook Entries, Thadani Decl., Ex. N.

**9.   Blake Ficken:**   Plaintiff has indicated that she has listed this witness to testify about "transporting plaintiff from the hospital to the 107th Precinct."  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 5.  However, it is unclear how that transport is relevant here and, in any event, this witness testified at deposition that he has no specific, relevant recollection of transporting plaintiff or of plaintiff in general and, further, that, even after reviewing plaintiff's photograph, she was not familiar to him.  *See, e.g.,* Ficken Dep. at 38:20-39:5, 41:18-21, 42:18-21, 43:8-12, 44:2-7, 44:23:45:5, Thadani Decl., Ex. O.

**10. Eric Robinson:**  As an initial matter, plaintiff has indicated that she has listed this witness to testify as to the "execution of the search warrant at plaintiff's apartment" and "events at plaintiff's apartment," which are not relevant to any of plaintiff's remaining claims.  Proposed Joint Pre-Trial Order (Dkt. No. 201) at 6.  Moreover, although plaintiff has also indicated that this witness will testify about "events at . . . the 107th Precinct," *id.*, this witness testified at deposition

that he has no specific recollection of seeing plaintiff at the precinct, or interacting with her in any way. *See, e.g.,* Robinson Dep. at 63:22-25, Thadani Decl., Ex. P.

**11. James Seddio:** This witness testified at deposition that he has no specific recollection of his tour on January 22-23, 2015. *See, e.g.,* Seddio Dep. at 26:25-27:5, Thadani Decl., Ex. Q. Therefore, he has no relevant testimony to offer at trial.

**12. Albert Trotter:** Plaintiff has indicated that she has listed this witness to testify about "the time he spent with plaintiff at the Queens Hospital Center." Proposed Joint Pre-Trial Order (Dkt. No. 201) at 6. However, it is unclear why that time is relevant to any of the claims to be tried. In any event, this witness testified at deposition that he has no recollection of anything at the hospital except for calling to say that a prisoner was having an x-ray taken, and further, that he did not recognize the plaintiff after viewing her photograph. *See, e.g.,* Trotter Dep. at 21:20-23:23, 68:24-25, Thadani, Decl., Ex. R.

**13. Paul Valerga:** This witness testified at deposition that he has no specific recollection of any of the relevant events. *See, e.g.,* Valerga Dep. at 42:19-22, 46:5-19, Thadani Decl., Ex. S. Therefore, he has no relevant testimony to offer at trial.

## CONCLUSION

For the reasons set forth above, defendants respectfully submit that their motions *in limine* should be granted in their entirety.

Dated:  New York, New York
     September 30, 2022

              HON. SYLVIA O. HINDS-RADIX
              Corporation Counsel of the City of New York
              *Attorney for Defendants*

              By:    */s/ Kavin Thadani*
                     Kavin Thadani

TO:    Gabriel Harvis, Esq. & Baree Fett, Esq., *Attorneys for Plaintiff* (VIA ECF)