# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

                     Plaintiff,

       -against-

CITY OF NEW YORK, et al.,

                  Defendants.

**16 CV 79 (RPK) (CLP)**

Plaintiff's Memorandum of Law in
Support of her *In Limine* Motions

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005

September 30, 2022

Table of Contents

Table of Authorities ............................................................................................................ ii

Point I .................................................................................................................................. 1

   Defendants' Rule 36 Admissions are "Conclusively Established" ................................... 1

Point II ................................................................................................................................ 3

   Defendants' Proposed Exhibit II "Headshot Photos" Should be Precluded ................... 3

Point III ............................................................................................................................... 4

   Defendants' Proposed Exhibit O "Fortune Society Records" Should be Precluded ......... 4

Point IV ............................................................................................................................... 5

   Certain Facts regarding Defendant Laliberte's Prior Misconduct, but not Discipline,
   should be Admitted ...................................................................................................... 5

Point V .............................................................................................................................. 10

   Plaintiff should be Permitted to Question the Officer Defendants using Leading
   Questions 10

Point VI ............................................................................................................................ 12

   Defendants should be Precluded from Testifying about Promotions, Commendations
   and Awards ................................................................................................................. 12

Point VII ........................................................................................................................... 13

   The Jury should determine at the same time whether Punitive Damages are appropriate
   against the individual Defendants and, if so, the amount of Punitive Damages ............. 13

Point VIII .......................................................................................................................... 16

   Relevant Sections of the Patrol Guide should be Admitted .......................................... 16

Point IX ............................................................................................................................. 17

   Reference to Any Prior Arrest of Plaintiff or Plaintiff's Dispute with Her Neighbor or
   Co-Worker Should be Precluded ................................................................................. 17

Point X .............................................................................................................................. 18

   Given the Facts here, the Jury should not be Charged on Nominal Damages ............... 18

Point XI ............................................................................................................................. 19

   Plaintiff is Entitled to an Adverse Inference ............................................................... 19

Conclusion ........................................................................................................................ 20

Table of Authorities

CASES

*Bixby v. KBR, Inc.*, 09 CV 632, 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4, 2012) ...................................................................................................... 11

*Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015) ........................................... 16

*Chonich v. Wayne County Community College*, 874 F.2d 359 (6th Cir. 1989) ........... 12

*Collado v. City of New York*, 11 CV 9041 (DAB), 2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017) ................................................................................................. 16

*Cordero v. City of New York*, 282 F. Supp. 3d 549 (E.D.N.Y. 2017) ....................... 10

*Dallas v. Goldberg*, No. 95 CV 9076, 2002 U.S. Dist. LEXIS 8829, (S.D.N.Y. May 20, 2002) .................................................................................................. 15

*Hynes v. Coughlin*, 79 F.3d 285, 293–94 (2d Cir. 1996) ............................................. 7

*J & J Sports Prods., Inc. v. Belliard*, 18 CV 5088 (DLI) (RER), 2022 WL 1748626 (E.D.N.Y. Jan. 25, 2022) ........................................................................... 2

*Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ..................................................... 15

*Martinez v. City of New York*, 16 CV 79 (AMD) (CLP), 2018 WL 604019 (E.D.N.Y. Jan. 24, 2018) ............................................................................................ 3

*Martinez v. City of New York*, 2018 WL 1835935, (E.D.N.Y. Apr. 18, 2018) .......... 3

*Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997) ..................................................... 14, 15

*Mischalski v. Ford Motor Co.*, 935 F. Supp. 203 (E.D.N.Y. 1996) ............................. 6

*Nnodimele v. Derienzo,* 13 CV 3461 (ARR) (RLM), 2016 WL 3561708 (E.D.N.Y. June 27, 2016) ............................................................................................ 17

*Provost v. City of Newburgh*, 262 F.3d 146, 163 (2d Cir. 2001) .............................. 14

*Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393 (E.D.N.Y. 2013) .......... 6

*Rosales v. Kelly,* 07 CV 10554 (LAP), 2011 WL 5873374 (S.D.N.Y. Nov. 14, 2011) 8

*Sabir v. Jowett*, 143 F. Supp. 2d 217 (D. Conn. 2001) ............................................... 7

*Smith v. City of New York*, 2015 WL 4643125 (S.D.N.Y. Aug. 5, 2015) ................. 16

*Tardif v. City of New York*, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607 (SDNY Aug. 23, 2017) ............................................................... 17

*United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir.) ................................................... 7

*United States v. Bravo*, 808 F.Supp. 311 (S.D.N.Y. 1992) ........................................ 6

*United States v. Davis*, 183 F.3d 231 (3d Cir. 1999) ................................................. 8

*United States v. Hicks*, 748 F.2d 854 (4th Cir. 1984) ............................................... 12

*United States v. Jones,* 900 F.2d 512 (2d Cir. 1990) ................................................. 8

*United States v. Kozlovski,* 10 CR 58 (RRM), 2011 WL 4916915 (E.D.N.Y. Oct. 14, 2011) ........................................................................................................ 9

*United States v. Nazzaro*, 889 F.2d 1158 (1st Cir. 1989) ......................................... 13

*United States v. Nelson*, 365 F.Supp.2d 381 (S.D.N.Y. 2005)....................................... 8

*United States v. Schatzle*, 901 F.2d 252 (2d Cir. 1990) ................................................ 7

*United States v. Sperling,* 726 F.2d 69 (2d Cir. 1984) ................................................. 9

*United States v. Tomblin*, 46 F.3d 1369 (5th Cir. 1995)............................................... 7

*United States v. Triumph Capital Grp.*, 237 Fed. App'x. 625 (2d Cir. 2007) ............. 8

*United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997) ................................... 13

*United States v. Weichert*, 783 F.2d 23 (2d Cir.)........................................................ 7

*Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir. 1991) ................................................ 14

*Wheatley v. Beetar*, 637 F.2d 863, 865 (2d Cir. 1980) ........................................ 18, 19

## Statutes

42 U.S.C. § 1983.......................................................................................................... 14

## Rules

Fed. R. Civ. P. 36 ...................................................................................................... 1, 2

Fed. R. Evid. 403 ........................................................................................................... 4

Fed. R. Evid. 404(a)(l) ................................................................................................ 13

Fed. R. Evid. 404(b) ............................................................................................... 13, 18

Fed. R. Evid. 608(b) ................................................................................................. 7, 18

Loc. Civ. R. 56.1(b) ...................................................................................................... 5

## Treatises

28 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure: Evidence.... 7

John W. Strong, McCormick on Evidence............................................................. 10

*Weinstein's Evidence Manual*, Student Edition, Tenth Edition 2015 ......................... 6

Weinstein's Federal Evidence ................................................................................. 11

Point I

Defendants' Rule 36 Admissions are "Conclusively Established"

During discovery in this action, plaintiff served defendants requests for admission in accordance with Fed. R. Civ. P. 36. Defendants responded denying some facts and admitting others. *See* Defendants' Responses to Plaintiff's Requests for Admission, annexed to the Declaration of Gabriel P. Harvis dated September 30, 2022 ("Harvis Decl.") as Exhibit 1. Based on defendants' admissions, plaintiff proposed the following factual stipulations for inclusion in § 10 of the parties' proposed Joint Pre-Trial Order:

1. On January 22, 2015 Rosie Martinez was arrested and brought to the 107th Precinct.

2. Pursuant to New York City Police Department ("NYPD") Patrol Guide Section 208-02, an arresting officer should complete a Prisoner Pedigree Card.

3. The 107th Precinct Command Log Entry pertaining to plaintiff's January 22, 2015 arrest reflects that plaintiff's physical condition at the time she was first brought into the precinct was "App. Normal."

4. Pursuant to NYPD Patrol Guide Section 208-02, a desk officer should file the Prisoner Pedigree Card by date and time of arrival at the command.

5. Defendants have been unable to locate the Prisoner Pedigree Card related to plaintiff's January 22, 2015, arrest.

6. Defendant Camhi secured plaintiff by handcuffing her behind her back and handcuffing those handcuffs to a bench in the room.

7. Defendant Camhi does not recall whether Rosie Martinez was crying (or sobbing) while in custody.

8. Defendant Ryan made no entries in his memo book to memorialize his observations of plaintiff's conduct in the 107th Precinct Juvenile Room.

9. Defendant Camhi made no entries in his memo book to memorialize his observations of plaintiff's conduct in the 107th Precinct Juvenile Room.

10. No entries were made in the precinct command log to memorialize plaintiff's conduct inside the 107th Precinct Juvenile Room.

11. No entries were made in the precinct command log to memorialize defendant Camhi's call to the Internal Affairs Command Center regarding Rosie Martinez's injury on January 23, 2015.

12. No UF-49 was prepared in connection with plaintiff's injury in police custody.

13. An ambulance was not called for Rosie Martinez.

14. No Medical Treatment of Prisoner Form was prepared for plaintiff prior to her arrival at Queens Central Booking.

15. Defendant DiGennaro did not make any notes or take any action concerning his observations of plaintiff in the 107th Precinct Juvenile Room

16. *Miranda* warnings were not administered to plaintiff.

17. Rosie Martinez was not in police custody at 8:00 p.m. on January 22, 2015.

18. The date listed in the "Interview of MOS' section on Def9484 is incorrect.

19. Defendants have been unable to locate the 107th Precinct Prisoner Holding Pen Roster listing plaintiff as a prisoner for January 22-23, 2015.

20. Defendant Ryan did not mention plaintiff punching a wall when he was interviewed by CCRB.

Defendants struck plaintiff's proposed stipulations from the draft Joint Pre-Trial Order and refused to agree to them. Plaintiff now respectfully moves this Honorable Court to enforce defendants' admissions. "Once admitted, the matter that is the subject of a request for admission 'is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.'" *J & J Sports Prods., Inc. v. Belliard*, 18 CV 5088 (DLI) (RER), 2022 WL 1748626, *5 (E.D.N.Y. Jan. 25, 2022) (quoting Fed. R. Civ. P. 36(b)).

If it should please the Court, defendants have made no motion to withdraw or amend their admissions and no grounds exist to grant such motion.

Thus, facts 1-20, *supra*, should be deemed admitted for purposes of the trial.

<u>Point II</u>

<u>Defendants' Proposed Exhibit II "Headshot Photos" Should be Precluded</u>

In the Joint Pre-Trial Order, defendants indicate that they intend to move to preclude plaintiff from referencing the order issued by the Hon. Cheryl L. Pollak recommending terminating sanctions for defendants' violation of fourteen discovery orders. *See* Joint Pre Trial-Order, DE #2016, p. 80 at Defendants' Anticipated Motion in Limine 13; *Martinez v. City of New York*, 16 CV 79 (AMD) (CLP), 2018 WL 604019 (E.D.N.Y. Jan. 24, 2018); *adopted in part Martinez v. City of New York*, 2018 WL 1835935, (E.D.N.Y. Apr. 18, 2018).

If it should please the Court, plaintiff has no intention of referencing the sanctions order in her case-in-chief, but anticipates that defendants may open the door to such evidence based on their proposed exhibits. Specifically, defendants have listed as their proposed Exhibit II "headshots" of police officers produced during discovery as supposed impeachment evidence regarding plaintiff's credibility. But it would be highly prejudicial, unfair and improper for defendants to be permitted to advance such arguments, and particularly improper to allow them to do so in a vacuum. Plaintiff respectfully submits that this defense exhibit should be precluded on the grounds that

it lacks relevance and, in any event, would result in unfair prejudice, confusion, would mislead the jury and cause undue delay and wasted time. Fed. R. Evid. 403.

However, to the extent that defendants are permitted to offer or reference these "headshot photographs," fairness dictates that plaintiff be permitted to reveal to the jury the context in which those headshots were produced, i.e., an egregiously incomplete and inaccurate discovery record that the Court has held – as law of the case - resulted solely from defendants' refusal to abide by orders of this Honorable Court and their discovery obligations. *See Martinez*, 2018 WL 604019, at \*29 ("The Court completely rejects defendants' efforts to shift the blame to plaintiff or her counsel…").

Plaintiff respectfully submits that permitting defendants to use this proposed exhibit will inevitably cause the proceedings to devolve into a mini trial (on settled issues related to defendants' discovery misconduct) that will waste time, confuse the jury and muddy the waters to plaintiff's prejudice. We respectfully submit that more prudent course is to preclude defendants' use of the "headshot photographs" (defendants' Proposed Exhibit II) on relevance and Rule 403 grounds.

Point III

Defendants' Proposed Exhibit O "Fortune Society Records" Should be Precluded

In the Joint Pre-Trial Order, defendants list as their proposed Exhibit O medical and psychological records of the plaintiff from the Fortune Society that pre-date the incident by approximately two years and primarily relate to gynecological and obstetric

issues. Plaintiff suspects that defendants intend to offer this evidence because within the records is a reference to a dispute plaintiff had with the resident of a neighboring apartment in her building and a 2008 arrest for charges relating to a dispute with a co-worker that were dismissed. These records have no probative value and will be confusing to the jury, waste time and prejudice Ms. Martinez. The two extrinsic incidents – one of which is an arrest that appears to have taken place 14 years ago where the charges were dismissed and the other an argument – are not admissible pursuant to Rule 404(b)(1) and could be offered only as inadmissible character and propensity evidence.

Accordingly, defendants' proposed Exhibit O should be precluded.

<u>Point IV</u>

<u>Certain Facts regarding Defendant Laliberte's Prior Misconduct, but not Discipline, should be Admitted</u>

As described and depicted in plaintiff's Loc. Civ. R. 56.1(b) Counterstatement submitted in opposition to defendants' summary judgment motion, defendant Laliberte, the desk officer positioned a few feet from plaintiff at the time of her injury who was responsible for the command log and made no entries and now claims not to remember the events, was caught on video sucker punching a handcuffed arrestee in his custody in 2013. When the matter was investigated, defendant Laliberte lied to internal affairs and only admitted the truth when he was confronter with the video. *See* DE #205 at p. 9-11, Figure 2 & n.3-n.4 ("When asked if he observed any MOS…punch any of

the party goers, he stated no…. When asked if any of the arrestees had any injuries or made any complaints against any MOS, he stated no. After viewing the video footage that showed him punching Mr. in the face, Sgt. Laliberte stated that punching Mr. was a bad decision, he made a mistake and is embarrassed by his actions.").

Such a substantiated act of dishonesty, rendered more transgressive by Laliberte's position of public trust, is presumptively admissible. *Weinstein's Evidence Manual*, Student Edition, Tenth Edition 2015, § 12.03(3)(a): Attacking Character: Cross-Examining Witness About Specific Instances of Probative Conduct ("Acts such as forgery, perjury, and fraud are probative of untruthfulness, and are presumptively admissible under Rule 608(b). Other acts of dishonesty, of course, may also be probative of dishonesty."); *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 403 (E.D.N.Y. 2013) ("[T]he Federal Rules of Evidence explicitly permit inquiry on cross-examination into any specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.") (internal quotation marks omitted); *United States v. Bravo,* 808 F.Supp. 311, 321–22 (S.D.N.Y. 1992) ("Rule 608 of the Federal Rules of Evidence allows impeachment of witnesses by evidence of specific instances of dishonesty regardless of whether there has been an official finding to that effect."); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 207 (E.D.N.Y. 1996)

("Evidence that a witness has made false statements is obviously a matter that tends to impugn a witness's credibility.").

Trial courts in this circuit have broad discretion to allow or prohibit cross-examination regarding specific acts of prior misconduct that bear on truthfulness. In *Hynes v. Coughlin* the Second Circuit explained:

> With respect to attacks on, or bolstering of, a witness's credibility, Rule 608 gives the trial court discretion to permit cross-examination (but not extrinsic evidence) as to "[s]pecific instances of [the witness's] conduct" if those instances will be "probative of [the witness's character for] truthfulness or untruthfulness." Fed. R. Evid. 608(b). *See generally* 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure: Evidence* § 6117 (1993). Under this Rule, we have upheld, for example, cross-examination into an attorney's disbarment, *see United States v. Weichert,* 783 F.2d 23, 25 (2d Cir.) *cert. denied,* 479 U.S. 831, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986), into a witness's failure to disclose a prior arrest on his bar application, *see United States v. Schatzle,* 901 F.2d 252, 255–56 (2d Cir. 1990), and into a prior finding by an Immigration Judge that the witness's testimony in a deportation proceeding was not credible, *see United States v. Bagaric,* 706 F.2d 42, 65 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *see also United States v. Tomblin,* 46 F.3d 1369, 1389 (5th Cir. 1995) (upholding cross-examination into a defendant's alleged acts of fraud, bribery, and embezzlement).

79 F.3d 285, 293–94 (2d Cir. 1996); *see Sabir v. Jowett*, 143 F. Supp. 2d 217, 218 (D. Conn. 2001) ("The first step in a 608(b) analysis is whether the specific conduct is

probative of the witness' character for truthfulness or untruthfulness.") (collecting cases) (citations omitted).

In *Rosales v. Kelly*, as here, plaintiff sought "only to inquire into the underlying circumstances surrounding Williams's discipline for impeachment purposes under Rule 608(b)" and did not intend to "offer the disciplinary records themselves into evidence." 07 CV 10554 (LAP), 2011 WL 5873374, *2 (S.D.N.Y. Nov. 14, 2011). Under such circumstances, the *Rosales* court permitted cross-examination:

> Since the Court finds that the underlying circumstances of the disciplinary proceeding are probative of Williams's character for untruthfulness, Plaintiff's counsel may inquire into them on cross-examination. *See, e.g.,* [*United States v.*] *Davis,* 183 F.3d [231,] 257 n.12 [3d Cir. 1999] ("To impugn [the witness's] credibility, the government properly can question [him] about misappropriating departmental gasoline for personal use and putting a false name in a gas log, and it may question [him] about lying to an Internal Affairs officer about ripping up an individual's subway pass."); *United States v. Nelson,* 365 F.Supp.2d 381, 389 (S.D.N.Y. 2005) ("Case law in this circuit indicates that questions [for Rule 608(b) impeachment purposes] that convey the fact of an adverse credibility finding against a witness in a previous [administrative proceeding] are permissible.").

*Id; see, e.g., United States v. Triumph Capital Grp.*, 237 Fed. App'x. 625, 630 (2d Cir. 2007) ("This Court has held that it can be appropriate to introduce false statements ... under Rule 608(b)(1) to shed light on a witness' credibility."); *United States v. Jones,* 900 F.2d 512, 520 (2d Cir. 1990) (witness could be cross-examined regarding false

statements made on applications for employment, an apartment, a driver's license, a loan, and membership in an association); *United States v. Kozlovski,* 10 CR 58 (RRM), 2011 WL 4916915, *2 (E.D.N.Y. Oct. 14, 2011) (permitting cross-examination regarding submission of false time sheets to employer) (citation omitted); *United States v. Sperling,* 726 F.2d 69, 74–75 (2d Cir. 1984) (approving cross-examination regarding false credit card application).

Here, plaintiff respectfully submits that the conduct at issue falls squarely within the recognized ambit of Rule 608(b)(1) and cross-examination should be permitted. The specific prior act of deceit occurred while the defendant was employed as a sworn government official and was substantiated (and admitted), as well as proximate in time to plaintiff's injury.

Lastly, the thrust of the misconduct – lying to NYPD investigators about assaulting a restrained prisoner – is similar to the conduct surrounding the instant dispute, supporting the application to allow cross-examination. *See Nelson*, 365 F. Supp. at 390:

> In evaluating the probity of specific instances of conduct, courts consider numerous factors, including "whether the testimony of the witness in question is crucial or unimportant, the extent to which the evidence is probative of truthfulness or untruthfulness, the extent to which the evidence is also probative of other relevant matters, the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony, [and] the nearness or remoteness in time of the specific instances to

trial ...." John W. Strong, *McCormick on Evidence* § 41; *see
also* Weinstein & Berger, *supra*, § 608.22[2][c][iv].

Plaintiff further respectfully submits that preclusion of the evidence tending to

discredit Laliberte would result in grave prejudice to Ms. Martinez. With such a ruling,

the jury would be left with the unfair impression that Laliberte is cloaked in the

credibility of his official position and does not have a founded history of dishonesty. *See

Cordero v. City of New York*, 282 F. Supp. 3d 549, 554 (E.D.N.Y. 2017) (noting that

"most jurors find officers more credible than persons accused of crimes").

<u>Point V</u>

<u>Plaintiff should be Permitted to Question the Officer Defendants using Leading
Questions</u>

In her case-in-chief, plaintiff intends to call several police officers with direct

knowledge of the disputed events, including the defendants.

Rule 611 of the Federal Rules of Evidence provides, in relevant part, as follows:

> (c) Leading Questions. Leading questions should not be used
> on direct examination except as necessary to develop the
> witness's testimony. Ordinarily, the court should allow
> leading questions:
>
> (1) on cross-examination; and
> (2) when a party calls a hostile witness, an adverse party, or
> a witness identified with an adverse party.

Sound reason exists to permit plaintiff to examine these law enforcement witnesses

through the use of leading questions. As the Hon. Jack B. Weinstein has noted, three

10

reasons have historically been given in favor of requiring non-leading questions on direct examination: "First, that the witness is presumed to have a bias in favor of the party calling him; secondly, that the party calling a witness, knowing what that witness may prove, might by leading bring out only that portion of the witness' story favorable to his own case; and thirdly, that a witness, intending to be entirely fair and honest might assent to a leading question which did not express his real meaning." Weinstein's Federal Evidence § 611.06, at 4-611 (citation and footnote omitted). None of these rationales apply to these witnesses, who were members of the NYPD at the time of plaintiff's injury and who were involved and prepared (or failed to prepare) related paperwork.

We have every reason to believe that the law enforcement witnesses will side with their fellow member of the NYPD, the defendants. As Judge Weinstein has recognized, "[t]he prohibition against leading is inapplicable to hostile or biased witnesses, or to witnesses who sympathize with the opponent's cause or are unwilling for any other reason to reveal what they know." *Id. See Bixby v. KBR, Inc.*, 09 CV 632, 2012 U.S. Dist. LEXIS 143807, *11 (D. Or. Oct. 4, 2012) ("I interpret the phrase 'a witness identified with an adverse party' as referring to a witness whose relationship to an opposing party is such that the witness' interests vis-a-vis the litigation proceedings in which the witness' testimony is offered can reasonably be expected, under all the

11

applicable circumstances, to be either identical to those of the adverse party or, at minimum, both closely aligned with those of the adverse party and of comparable significance.") (relying on *Chonich v. Wayne County Community College*, 874 F.2d 359, 368 (6th Cir. 1989), and *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984)). Accordingly, Ms. Martinez should be able to examine the law enforcement witnesses through the use of leading questions.

<u>Point VI</u>

<u>Defendants should be Precluded from Testifying about Promotions, Commendations and Awards</u>

In police misconduct trials, law enforcement officers, whether testifying as defendants or non-party witnesses, frequently attempt to discuss awards and commendations that they have received throughout their career relating to acts of bravery, valor, etc. Because such testimony is irrelevant to any issue at trial, represents impermissible bolstering and propensity evidence in violation of Rule 404(b) of the Federal Rules of Evidence, is inadmissible hearsay and otherwise unduly prejudicial, Ms. Martinez respectfully seeks an order precluding the defendants, and any law enforcement witnesses, from presenting such evidence.

Whether the individual defendant or non-party law enforcement officers received commendations in the past has no relevance on whether excessive force was used against Rosie Martinez inside the Juvenile Room. In fact, the sole purpose of presenting such

testimony in police misconduct litigation is to convince the jury that the law enforcement officers are heroes who put their lives on the line to protect the citizenry and, as a result, more trustworthy. This purpose, however, constitutes impermissible propensity evidence. *See* Fed. R. Evid. 404(b). As mentioned, it is also inadmissible hearsay, whose non-existent probative value is necessarily and substantially outweighed by its danger of unfair prejudice. *See United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (in criminal prosecution for conspiracy to commit mail fraud and perjury, among other things, appropriate to exclude evidence of commendations as impermissible opinion evidence and inadmissible hearsay). *See also United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations not admissible under Fed. R. Evid. 404(a)(l), 405(a) or 405(b)).

<u>Point VII</u>

<u>The Jury should determine at the same time whether Punitive Damages are appropriate against the individual Defendants and, if so, the amount of Punitive Damages</u>

Ms. Martinez requests that the issue of whether she is entitled to an award of punitive damages against the individual defendants and, if so, the amount of punitive damages, be presented to the jury for its consideration during its initial deliberations.

While the Second Circuit has previously indicated that generally bifurcating the jury's consideration of the amount of punitive damages to be awarded is appropriate because "[p]unitive damages are to be tailored to the defendant's ability to pay, and

normally that class of evidence is not admitted or desirable during the liability and compensatory damages phase of the case," *Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991), the City has conceded in prior litigation that it always indemnifies police officers it represents when punitive damages are awarded against them. As discussed below, the City's decision to indemnify its police officers renders any evidence of the police officers' financial ability to pay irrelevant; thus, there is no reason to bifurcate this issue.

In actions brought pursuant to 42 U.S.C. § 1983, it has traditionally been appropriate to have the jury consider a police officer's financial condition when considering the amount of punitive damages to assess. It is the officer's obligation to present evidence regarding his or her limited financial state if he or she wants the jury to consider this evidence. *Provost v. City of Newburgh*, 262 F.3d 146, 163 (2d Cir. 2001) (quotation omitted). In the situation presented here, however, where the City indemnifies its officers in the case of punitive damages awards, the Second Circuit has made clear that a plaintiff is permitted to present evidence of the fact of indemnification. *Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997). As the *Mathie* Court wrote:

> [a]lthough we do not decide the question of whether a fact-finder can rely upon the existence of an indemnity agreement in order to *increase* an award of punitive damages, we rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some

14

> *reduction* in the amount that would otherwise be awarded. It
> would be entirely inappropriate for a defendant to raise the
> issue of his limited financial resources if there existed an
> indemnity agreement placing the burden of paying the
> award on someone else's shoulders. See *Kemezy v. Peters*, 79
> F.3d 33, 37 (7th Cir. 1996) ("The defendant should not be
> allowed to plead poverty if his employer or an insurance
> company is going to pick up the tab.").

*Id.* at 816 (emphasis in original). *See also Dallas v. Goldberg*, No. 95 CV 9076, 2002
U.S. Dist. LEXIS 8829, *14-15 (S.D.N.Y. May 20, 2002) (Swain, J.) ("[t]he
uncertainty of indemnification here is not an appropriate ground for preclusion of the
evidence proffered by Plaintiff, if such evidence is presented in rebuttal to an argument
for reduction of an otherwise appropriate punitive damages award").

As a result of the City's indemnification of officers in the event of an award of
punitive damages, there is no need for the defendant officers to provide information
about his financial ability to pay an award of punitive damages – since an officer's ability
to pay is irrelevant if the City indemnifies. With this otherwise irrelevant evidence
removed from the picture, the focus of the jury's decision to award punitive damages
concerns the actions of the officers and the need to deter other police officers. Equally
important, if the jury decides that an award of punitive damages is appropriate, then
there is no reason to delay its determination of the amount of those damages – it should
not have to be impaneled anew to consider additional evidence, since there is no
additional evidence which is relevant. This is especially so since plaintiff will not elicit

from the defendant officers any evidence regarding their financial resources.[1]

Point VIII

Relevant Sections of the Patrol Guide should be Admitted

As reflected in the Joint Pre-Trial Order (at Proposed Exhibits 181, 251-252), plaintiff respectfully seeks to offer evidence and elicit testimony related to the following relevant NYPD Patrol Guide sections:

- PG§ 210-04 Prisoners Requiring Medical Treatment
- PG§ 210-07 Prisoners -Unusual Occurrence
- NYPD Student Guide (on relevant topics)

In cases such as this one, where a jury is called upon to evaluate the reasonableness of officers' conduct, courts in this circuit routinely admit patrol guide evidence. *See, e.g., Collado v. City of New York*, 11 CV 9041 (DAB), 2017 WL 4533772, *3 (S.D.N.Y. Sept. 27, 2017) (Batts, J.) (collecting cases, and acknowledging that "a violation of the Patrol Guide is not necessarily a violation of constitutional rights" but is nonetheless relevant to an excessive force claim); *Smith v. City of New York*, 2015 WL 4643125, *3 (S.D.N.Y. Aug. 5, 2015) (Buchwald, J.). ("The [NYPD] Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer."); *Brown v. City of New* York, 798 F.3d 94, 101 n.11 (2d Cir. 2015); *Tardif v. City of New*

---

[1] If the Court permits the defendants to present evidence of their ability to pay punitive damages, then plaintiff will seek to introduce evidence of the City's actual indemnification practice, as evidenced by interrogatory responses.

*York*, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607, *18-19 (SDNY Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity."); *Tardif v City of NY*, 344 F Supp 3d 579, 608 (SDNY October 1, 2018).

In *Nnodimele v. Derienzo*, the Hon. Allyne R. Ross permitted introduction of relevant sections of the NYPD Patrol Guide over defendants' objection:

> This court will also permit the parties to introduce relevant portions of the Patrol Guide and related testimony. Defendants seek to exclude such evidence because it contains guidelines that are distinct from standards imposed by the United States Constitution. Accordingly, defendants argue, the jury could be misled that violations of the Patrol Guide establish violations of the federal constitution. However, Chief Judge Mann has already ruled…that Patrol Guide evidence is admissible. This court agrees and joins a growing number of courts holding that in constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful.

13 CV 3461 (ARR) (RLM), 2016 WL 3561708, *13-14 (E.D.N.Y. June 27, 2016) (brackets, citations and internal quotation marks omitted).

Point IX

Reference to Any Prior Arrest of Plaintiff or Plaintiff's Dispute with Her Neighbor or Co-Worker Should be Precluded

Aside from the arrest at issue in this case, plaintiff has testified that she was arrested approximately fourteen years ago, which is the same dismissed disorderly conduct arrest

17

involving a co-worker mentioned in the Fortune Society records as discussed at Point III, *supra*. In 2019, plaintiff was arrested on the cross-complaint of her neighbor after Ms. Martinez alleges she was attacked. The disposition of those charges does not appear in the record, but, upon information and belief, they were resolved without a felony conviction.

If it should please the Court, evidence related to either event should be precluded as the first arrest is exceedingly remote, the second arrest post-dates the incident, both arrests were resolved without felony conviction and neither incident has any bearing on Ms. Martinez's truthfulness or any probative value to the issues in dispute. Admission would severely prejudice Ms. Martinez as the jury would view her in the light of the other arrests.

Thus, the evidence should be precluded under Fed. R. Evid. 404(b) and 608(b).

Point X

Given the Facts here, the Jury should not be Charged on Nominal Damages

Ms. Martinez alleges, with the support of medical evidence, that the force used against her resulted in the serious injuries requiring surgery. The defendants deny the incident occurred and claim they never used force and that Ms. Martinez injured herself. Under these circumstances, plaintiff respectfully submits that it would be error to charge the jury on nominal damages.

18

In *Wheatley v. Beetar*, the Second Circuit considered an appeal following a trial in which "[t]he jury specifically found that Wheatley had been the victim of an unconstitutional use of force despite testimony from police officers that no force whatsoever had been used." 637 F.2d 863, 865 (2d Cir. 1980). The Second Circuit reversed the trial court and ordered a new trial:

> Reviewing the evidence on damages in this case and drawing all factual inferences in favor of the appellees as we must, we conclude that in light of the jury's verdict on liability the evidence mandates an award of more than nominal damages. It was error to charge the jury that an award of nominal damages was permissible and an abuse of discretion not to set it aside.

*Id.*

Here, plaintiff respectfully submits that it would be impossible for a rational jury to credit plaintiff's account on the question of liability and not award compensatory damages. Accordingly, plaintiff respectfully requests that the jury instructions and verdict sheet omit any mention of nominal damages.

## Point XI

### Plaintiff is Entitled to an Adverse Inference

If it should please the Court, it is undisputed that defendants failed to maintain and were unable to produce the prisoner pedigree form – a record of plaintiff's physical condition at the time of her arrival at the precinct – and the prisoner holding pen roster

19

for the female cells at the precinct – which would have recorded both plaintiff's condition and the number of times officers went in to "check on" her. *See* Point I at Facts 4-5 & 19. Because these records would, by their very nature, bear on questions of liability that will be presented to the jury, they are material and plaintiff is entitled to a curative remedy for their absence. Plaintiff respectfully proposes that the Court, in its instructions, allow, but not require, the jury to conclude that the missing evidence would have been favorable to Ms. Martinez's claims.

<u>Conclusion</u>

For the foregoing reasons, plaintiff respectfully requests that the Court grant plaintiff's motions *in limine* and grant plaintiff such other and further relief as the Court deems just and proper.

Dated:      September 30, 2022
            Briarcliff Manor, New York

                            Elefterakis, Elefterakis & Panek

                            _____
                            Gabriel P. Harvis
                            Baree N. Fett
                            80 Pine Street, 38th Floor
                            New York, New York 10005
                            (212) 532-1116

                            *Attorneys for plaintiff*