16 CV 79 (RPK) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

                                      Plaintiff,

                 -against-

CITY OF NEW YORK, ERIC RYAN, DAVID CAMHI,
JOSEPH DIGENNARO, KEITH LALIBERTE,

                                   Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Kavin Thadani*
*Senior Counsel*
*Tel:  (212) 356-2351*

*October 17, 2022*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... iv

ARGUMENT ................................................................................................................................... 1

POINT I

PLAINTIFF'S MOTION CONCERNING DEFENDANTS' RULE 36 ADMISSIONS SHOULD BE DENIED .............................................................................. 1

POINT II

DEFENDANTS' EXHIBIT II SHOULD NOT BE PRECLUDED AS THE NYPD PHOTOGRAPHS PLAINIFF REVIEWED ARE, BY PLAINTIFF'S OWN ADMISSION, RELEVANT TO HER CREDIBILITY AND TO PERSONAL INVOLVEMENT AND BECAUSE PRECLUSION WOULD UNFAIRLY PREJUDICE DEFENDANTS ......................................................................... 6

POINT III

DEFENDANTS DO NOT OPPOSE PLAINTIFF'S MOTION TO THE EXTENT IT SEEKS TO PRECLUDE CERTAIN INFORMATION CONTAINED WITHIN DEFENDANTS' EXHIBIT O, SUBJECT TO PLAINTIFF OPENING THE DOOR TO ITS ADMISSIBILITY ............................................................. 9

POINT IV

PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE CONCERNING DEFENDANT LALIBERTE'S "PRIOR MISCONDUCT" ......................................................................... 9

POINT V

> DEFENDANTS DO NOT OPPOSE PLAINTIFF'S
> MOTION TO QUESTION THE DEFENDANTS
> WITH LEADING QUESTIONS BUT, TO THE
> EXTENT PLAINTIFF MOVES TO QUESTION
> NON-PARTY WITNESSES WITH LEADING
> QUESTIONS, SUCH MOTION SHOULD BE
> DENIED AS PREMATURE AND
> UNWARRANTED .................................................................................. 11

POINT VI

> DEFENDANTS DO NOT INTEND TO
> INTRODUCE EVIDENCE OF ANY
> PROMOTIONS, COMMENDATIONS OR
> AWARDS ............................................................................................... 12

POINT VII

> PLAINTIFF'S MOTION REGARDING PUNITIVE
> DAMAGES IS UNNECESSARY AND
> PREMATURE, AND BASED ON A FAULTY
> AND BASELESS PREMISE .................................................................. 12

POINT VIII

> PLAINTIFF SHOULD BE PRECLUDED FROM
> MENTIONING THE NEW YORK CITY POLICE
> DEPARTMENT PATROL GUIDE OR STUDENT
> GUIDE .................................................................................................... 13

POINT IX

> CERTAIN FACTS CONCERNING PLAINTIFF'S
> INTERACTION WITH HER NEIGHBOR AND
> POLICE ON FEBRUARY 28, 2019 AND
> MEDICAL TREATMENT ON MARCH 1, 2019
> SHOULD NOT BE PRECLUDED BECAUSE
> THEY ARE RELEVANT TO HER CREDIBILITY
> AND TO DAMAGES............................................................................. 14

POINT X

> PLAINTIFF'S MOTION CONCERNING NOMINAL DAMAGES SHOULD BE DENIED AS IT IS CONTRARY TO LAW AND BASED ON A FAULTY PREMISE .................................................................. 16

POINT XI

> PLAINTIFF'S MOTION FOR AN ADVERSE INFERENCE SHOULD BE DENIED .................................................... 17

CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*Corbett v. Tejas Tongs, Inc.*,
    No. 97-10977, 1998 U.S. App. LEXIS 39989 (5th Cir. June 2, 1998)......................................1

*Girbes-Pierce v. City of New York*,
    803. F. App'x 509 (2d Cir. 2020) ............................................................................16

*Great N. Ins. Co. v. Power Cooling, Inc.*,
    No. 06-CV-874 (ERK) (KAM), 2007 U.S. Dist. LEXIS 66798
    (E.D.N.Y. Sep. 10, 2007)........................................................................................19

*Lekomtsev v. City of New York*,
    No. 16-cv-4530 (RPK) (ST), 2020 U.S. Dist. LEXIS 183353
    (E.D.N.Y. Oct. 2, 2020) (Kovner, J.).....................................................................18

*Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*,
    No. CV 18-1997 (JS) (AKT), 2021 U.S. Dist. LEXIS 124711
    (E.D.N.Y. July 2, 2021) .........................................................................................18

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002).....................................................................................19

*Siani v. State Univ. of New York*,
    No. CV09-407 (JFB) (WDW), 2010 U.S. Dist. LEXIS 82562
    (E.D.N.Y. Aug. 10, 2010).......................................................................................19

*United States v. Brown*,
    No. 07-CR-874 (KAM), 2009 U.S. Dist. LEXIS 14722
    (E.D.N.Y. Feb. 26, 2009).......................................................................................10

*Walsh v. McChain Foods, Ltd.*,
    81 F.3d 722 (7th Cir. 1996) ......................................................................................1

*Wheatley v. Beetar*,
    637 F.2d 863 (2d Cir. 1980)....................................................................................17

**<u>Statutes</u>**

Fed. R. Civ. P. 36 ...........................................................................................................1

Fed. R. Evid. 403 ............................................................................................2, 3, 4, 5, 6, 10

Fed. R. Evid. 404 ...................................................................................................10, 15

Fed. R. Evid. 608 .................................................................................................. 10, 14

**<u>Other Authorities</u>**

4 Weinstein's Federal Evidence § 608.20 (2021) .........................................................10

7 Moore's Federal Practice – Civil § 36.03 (2021) ......................................................1

**ARGUMENT**

**POINT I**

**PLAINTIFF'S MOTION CONCERNING DEFENDANTS' RULE 36 ADMISSIONS SHOULD BE DENIED**

Plaintiff moves the Court to deem as admitted twenty "facts" for the purposes of trial. While plaintiff is correct that, pursuant to Fed. R. Civ. P. 36, a matter that is admitted under Rule 36 is "conclusively established," that does not mean that any and all admissions are automatically admissible in a jury trial. Although she may wish she could, plaintiff does not get to decide admissibility simply by serving a request to admit. For example, just because a former defendant in an action may admit that he or she was once issued a summons for jaywalking does not make that otherwise inadmissible fact automatically admissible at trial, let alone automatically a proper trial stipulation.

Indeed, it is well-established that, while "[a]dmissions established under Rule 36 may be offered into evidence at the trial of the action . . . they are subject to all pertinent objections to admissibility that may be interposed at trial." 7 Moore's Federal Practice – Civil § 36.03 (2021); *see also, e.g., Corbett v. Tejas Tongs, Inc.*, No. 97-10977, 1998 U.S. App. LEXIS 39989, at *6 (5th Cir. June 2, 1998) ("Rule 36 admissions are subject to all admissibility objections"); *Walsh v. McChain Foods, Ltd.*, 81 F.3d 722, 726 (7th Cir. 1996) (same).

Here, plaintiff makes no attempt to justify the admissibility of any of the twenty "facts" she asks the Court to deem admitted for trial.[1] Without intending to waive any arguments

---

[1]   As a practical matter, defendants submit that plaintiff's motion is also premature as the proper time to raise defendants' Rule 36 admissions is upon a denial of a previously admitted fact.

concerning the admissibility of plaintiff's other proposed "facts," defendants raise the following admissibility issues regarding certain of plaintiff's proposed "facts":

**"Fact" Nos. 2 & 4:**  Defendants explicitly objected to the pertinent Requests for Admission on the grounds that they were not relevant to any claims or defenses, and responded without waiving or in any way limiting those objections.  *See* Objections and Responses to Request for Admission Nos. 3 & 4, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1).  Whether or not the patrol guide dictates that an arresting officer should complete a prisoner pedigree card, and whether or not a desk officer should file the prisoner pedigree card, has no bearing on the issues to be decided at trial. Furthermore, any potential limited probative value is substantially outweighed by the danger of confusing the issues.  *See* Fed. R. Evid. 403.  In addition, these "facts" should be precluded for the same reasons any reference to the patrol guide should be precluded.  *See* Point VIII below; *see also* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) at 23-25.

**"Fact" No. 5:**  Defendants explicitly objected to the pertinent Request for Admission on the grounds that it was not relevant to any claims or defenses, and responded without waiving or in any way limiting that objection.  *See* Objection and Response to Request for Admission No. 5, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1).  That defendants have been unable to locate the prisoner pedigree card has no bearing on the issues to be decided at trial.  In addition, as explained in Point XI below, this "fact" is further irrelevant because the information contained within the prisoner pedigree card is reflected in the command log entry related to plaintiff's arrest. Furthermore, any potential limited probative value is substantially outweighed by the

danger of unfair prejudice, confusing the issues and misleading the jury. *See* Fed. R. Evid. 403.

**"Fact" No. 6:** This statement is incomplete and taken out of context. Defendants' full admission was that "while plaintiff was in the 107th Precinct Juvenile Room, and after plaintiff, *inter alia*, punched a wall and kicked at cabinets several times, defendant Camhi secured plaintiff by handcuffing her behind her back and handcuffing those handcuffs to a bench in the room." Objection and Response to Request for Admission No. 9, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1). In any event, defendants contend there is no need for a stipulation in this regard because defendant Camhi is expected to testify at trial and does not intend to deny this "fact."

**"Fact" Nos. 7-9:** Defendants contend there is no need for a stipulation in this regard because defendants Ryan and Camhi are expected to testify at trial and do not intend to deny these "facts."

**"Fact" Nos. 10-12:** Defendants contend there is no need for a stipulation in this regard because defendants do not intend to deny these "facts." However, defendants note that these "facts" are not relevant (as stated in defendants' responses, *see id.* at Objections and Responses to Request for Admission Nos. 19-21) and also misleading as they suggest that there was a requirement that these events be documented in such a manner.

**"Fact" No. 13:** As an initial matter, this "fact" is incomplete and out of context. Defendants' full admission was that "an ambulance was not called for plaintiff however, plaintiff was transported to Queens Hospital Center after she complained of an alleged injury to her thumb." *See id.* at Objection and Response to Request for Admission No. 23. In any event, defendants contend there is no need for a stipulation in this regard because

defendants do not intend to deny this "fact." However, defendants note that this "fact" is not relevant and also misleading as it is undisputed that plaintiff was transported to the hospital, albeit not by an ambulance.

**"Fact" No. 14:** As an initial matter, this "fact" is incomplete and out of context. Defendants' full admission was that "no Medical Treatment of Prisoner Form was prepared for plaintiff prior to her arrival at Queens Central Booking because she had not complained of any alleged injury until that time." *See id.* at Objection and Response to Request for Admission No. 24. In any event, defendants contend there is no need for a stipulation in this regard because defendants do not intend to deny this "fact."

**"Fact" No. 15:** Defendants contend there is no need for a stipulation in this regard because defendant DiGennaro is expected to testify at trial and does not intend to deny this "fact."

**"Fact" No. 16:** Defendants explicitly objected to the pertinent Request for Admission on the grounds that it was not relevant to any claims or defenses, and responded without waiving or in any way limiting that objection. *See id.* at Objection and Response to Request for Admission No. 28. Whether or not *Miranda* warnings were administered has no bearing on the issues to be decided at trial. Furthermore, any potential limited probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury and confusing the issues. *See* Fed. R. Evid. 403. In addition, this "fact" should be precluded for reasons outlined in Point V of defendants' motions *in limine*. *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) 15-16. Finally, this proposed "fact" is incomplete and out of context as defendants' full admission was that "*Miranda* warnings were not administered and were not required." *See* Objection

4

and Response to Request for Admission No. 28, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1).

**"Fact" No. 17:**  Defendants contend there is no need for a stipulation in this regard because defendants do not intend to deny this "fact."

**"Fact" No. 18:**  As an initial matter, this "fact" is incomplete as defendants further referred plaintiff to IAB Log No. 2015-1307.  *See id.* at Objection and Response to Request for Admission No. 37.  In any event, this "fact" should be precluded for the reasons stated in Point IV of defendants' motions *in limine*.  *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) 13-14.

**"Fact" No. 19:**  Defendants explicitly objected to the pertinent Request for Admission on the grounds that it was not relevant to any claims or defenses, and responded without waiving or in any way limiting that objection.  *See* Objection and Response to Request for Admission No. 39, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1).  That defendants have been unable to locate the prisoner pen roster listing plaintiff has no bearing on the issues to be decided at trial.  Furthermore, any potential limited probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury.  *See* Fed. R. Evid. 403.

**"Fact" No. 20:**  As an initial matter, this "fact" is incomplete.  Defendants further noted that "during his CCRB interview, defendant Ryan was not asked any specific questions about plaintiff and further note[d] that the CCRB investigation related to allegations concerning non-party Danny Rivera, and not plaintiff."  *See* Objection and Response to Request for Admission No. 43, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1).  For that very reason, this "fact" is not relevant and,

even if it were, its limited probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury pursuant to Rule 403. Moreover, this "fact" implicates defendants' motion *in limine* seeking to preclude the CCRB investigation concerning non-party Danny Rivera. *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) at 9-11.

Accordingly, plaintiff's motion should be denied.

## POINT II

### DEFENDANTS' EXHIBIT II SHOULD NOT BE PRECLUDED AS THE NYPD PHOTOGRAPHS PLAINIFF REVIEWED ARE, BY PLAINTIFF'S OWN ADMISSION, RELEVANT TO HER CREDIBILITY AND TO PERSONAL INVOLVEMENT AND BECAUSE PRECLUSION WOULD UNFAIRLY PREJUDICE DEFENDANTS

Plaintiff moves to preclude defendants' proposed exhibit II, which consists of six headshot photographs of former defendants Forgione and Weitzman, and current defendants Ryan, DiGennaro, Laliberte and Camhi.

Plaintiff reviewed all of these photographs, among many others, early on in this litigation in order to identify the two individuals whom she claims assaulted her on January 23, 2015. That review led to plaintiff specifically discounting defendants Ryan, DiGennaro, Laliberte, Camhi, and others as her assailants. *See, e.g.,* Aug. 16, 2016 Ltr. from Plaintiff (Dkt. No. 18) at 2 ("The eight photographs contained in the [CCRB] file [which include photographs of Ryan and DiGennaro] were of officers involved in the underlying search and arrest, events not in dispute here. While plaintiff was able to identify two of the eight officers as collaterally involved in the disputed events, the file brought her no closer to identifying the individuals who actually assaulted her."); Third

Supplemental Disclosure dated Sept. 9, 2016 (Dkt. No. 21-1) at 1 (documenting disclosure of 30 photographs, including those of Camhi and Laliberte).

Indeed, from November 14, 2016 until December 19, 2020, plaintiff had long maintained that now-dismissed defendants Forgione and Weitzman assaulted her. *See, e.g.,* Nov. 14, 2016 Ltr. from Plaintiff (Dkt. No. 26) at 1 ("[P]laintiff Rosie Martinez alleges that NYPD officers violently assaulted her on January 22, 2015 during the course of an interrogation while she was in custody at the 107th Precinct. . . . Following her review of photographs produced by the defense, plaintiff has been able to identify two NYPD officers as proper defendants."); Proposed First Amended Complaint (Dkt. 26-1) (naming Forgione and Weitzman as defendants); *see also, e.g.,* Dec. 2, 2016 Ltr. from Plaintiff (Dkt. No. 33) at 1 ("[T]o this point the parties have focused their efforts on identifying the officers allegedly responsible for assaulting Ms. Martinez inside of a precinct following her arrest.  That process is complete and plaintiff has amended the complaint to name these two officers as defendants."); Second Amended Complaint (Dkt. No. 99) at ¶¶ 35-37.

On December 19, 2020, plaintiff, for the very first time in this litigation, which was initiated on January 7, 2016, alleged that defendants Ryan and one of either DiGennaro, Camhi or Laliberte used excessive force against her on or around January 23, 2015.  *See* Affidavit of Rosie Martinez (Dkt. No. 194-1) at ¶ 2.

As an initial matter, plaintiff has herself already conceded and explained the relevance of the photographs she now apparently seeks to preclude.  Indeed, plaintiff listed as proposed exhibits 23 and 25 **the very same photographs** of defendants Ryan and DiGennaro that defendants listed in their proposed exhibit II.  *See* Proposed Joint Pre-Trial Order (Dkt. No. 201) at 20-21. Moreover, with respect to both photographs, plaintiff further stated that each of these defendants'

"**appearance is relevant to personal involvement and plaintiff's credibility**."  *Id.* (emphasis added).

Of course, plaintiff is right.  That plaintiff reviewed photographs of each of the remaining individual defendants and did not identify them as her assailants, and instead identified two others, clearly bears on her credibility, and on personal involvement, and is relevant to the central issues to be determined at trial.  Indeed, preclusion of these photographs would severely and unfairly prejudice one of the defendants' primary defenses in this case.  Although plaintiff states, in conclusory fashion, that admission of these photographs "would result in unfair prejudice, confusion, would mislead the jury and cause undelay delay and wasted time," she does not explain how or why, nor does plaintiff explain how such concerns would substantially outweigh the considerably high probative value of this evidence.

Plaintiff further claims that admission of these photographs would somehow open the door to sanctions previously issued by the Court, which were precipitated by the disclosure of documents concerning internal investigations conducted by the NYPD, and which were issued against not a single one of the remaining individual defendants in this case.  Yet, plaintiff's arguments are conclusory in nature.  It is altogether unclear how or why it would be necessary for the jury to hear about the prior sanctions issued (again, not against any of the current individual defendants) just because plaintiff is questioned about photographs she reviewed at the outset of this litigation for the purpose of identifying the individuals she claims assaulted her.  As explained in Point XI of defendants' motions *in limine*, reference to the prior sanctions should be precluded.  *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) at 25-26.

Accordingly, plaintiff's motion should be denied in its entirety.

## POINT III

### DEFENDANTS DO NOT OPPOSE PLAINTIFF'S MOTION TO THE EXTENT IT SEEKS TO PRECLUDE CERTAIN INFORMATION CONTAINED WITHIN DEFENDANTS' EXHIBIT O, SUBJECT TO PLAINTIFF OPENING THE DOOR TO ITS ADMISSIBILITY

Plaintiff seeks to preclude defendants' proposed trial exhibit O **in its entirety** on the basis that, among the twelve pages of medical records, it contains references to "two extrinsic incidents." Pl. Mot. at 4-5. However, that is not a proper basis for moving to preclude the exhibit in its entirety.

Defendants do not oppose plaintiff's motion to the extent it seeks to have all references to these "two extrinsic incidents," including plaintiff's arrest for disorderly conduct from approximately 14 years ago, redacted from the exhibit, subject to plaintiff opening the door at trial to their admissibility.

## POINT IV

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE CONCERNING DEFENDANT LALIBERTE'S "PRIOR MISCONDUCT"

Plaintiff's motion to admit unspecified "certain facts regarding defendant Laliberte's prior misconduct" relies entirely on the unsupported premise that "defendant Laliberte lied to internal affairs and only admitted the truth when he was confronter [sic] with the video." Pl. Mot. at 5. Contrary to plaintiff's contention, nothing in the investigation report clearly indicates that defendant Laliberte lied about punching an individual until he was shown video footage showing him doing so. Rather, plaintiff is generously interpreting the investigator's notes contained in this report to her benefit.

Importantly, despite plaintiff's stating that there was a "substantiated act of dishonesty" and that defendant Laliberte has a "founded history of dishonesty," defendant Laliberte was **never** accused of lying or making false statements and he was **never** found to have lied or made any false statements, nor was he disciplined for doing so.

Moreover, plaintiff's use of video footage, still photographs and/or the investigation report is barred by Fed. R. Evid. 608(b).   Indeed, "[u]nder the plain mandate of Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness.  Because of this categorical bar on extrinsic evidence of prior instances of conduct, the cross-examiner may not introduce documents or other proof to contradict a witness who denies committing the prior act or does not recall all or some of its details."  *United States v. Brown*, No. 07-CR-874 (KAM), 2009 U.S. Dist. LEXIS 14722, at *7 (E.D.N.Y. Feb. 26, 2009); *see also, e.g.,* 4 Weinstein's Federal Evidence § 608.20 (2021) ("Specific instances of a witness's conduct, other than a conviction of a crime, that are offered to attack or support a witness's character for truthfulness may not be proved by extrinsic evidence.  Evidence is "extrinsic" if offered through documents or other witnesses, rather than through cross-examination of the witness himself or herself.").  In addition, the contents of the report are hearsay.

In any event, plaintiff's desire to admit this evidence solely for the sake of attacking defendant Laliberte's credibility is belied by the fact that plaintiff has listed as a proposed exhibit the video footage of this incident and repeatedly focuses on the fact that, in her view, this was a "sucker punch."  As explained in Point III.A. of defendants' motions *in limine*, plaintiff's thinly-veiled attempt to back door this evidence should be rejected and reference to this incident should be precluded under Rules 403 and 404.  *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) at 7-8.

Accordingly, plaintiff's motion should be denied.

**POINT V**

**DEFENDANTS DO NOT OPPOSE
PLAINTIFF'S MOTION TO QUESTION THE
DEFENDANTS WITH LEADING QUESTIONS
BUT, TO THE EXTENT PLAINTIFF MOVES
TO QUESTION NON-PARTY WITNESSES
WITH LEADING QUESTIONS, SUCH
MOTION SHOULD BE DENIED AS
PREMATURE AND UNWARRANTED**

Defendants do not oppose plaintiff's motion seeking permission to question the individual defendants using leading questions. However, to the extent that plaintiff further seeks permission to question non-party witnesses, particularly current or former members of the NYPD, with leading questions, defendants respectfully contend that such motion should be denied as premature and unwarranted at least at this time.

In support of her motion, plaintiff merely states in conclusory fashion that "[w]e have every reason to believe that the law enforcement witnesses will side with their fellow member [sic] of the NYPD, the defendants." Pl. Mot. at 11. However, that is not enough of a showing.

Indeed, as noted in Point XV of defendants' motions *in limine*, many of the non-party witnesses plaintiff seeks to call to testify and presumably ask leading questions have no recollection of plaintiff and/or the relevant events. *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt No. 212) at 39-43. Thus, it cannot be said that any of these witnesses are sufficiently hostile to warrant the use of leading questions on direct examination. Accordingly, plaintiff's motion seeking permission to question non-party police witnesses with leading questions should be denied.

11

## POINT VI

**DEFENDANTS DO NOT INTEND TO INTRODUCE EVIDENCE OF ANY PROMOTIONS, COMMENDATIONS OR AWARDS**

Plaintiff's motion to preclude defendants from testifying about promotions, commendations and awards should be denied as moot because defendants do not intend to offer such evidence, subject to plaintiff's examinations of the defendants opening the door to such evidence.

## POINT VII

**PLAINTIFF'S MOTION REGARDING PUNITIVE DAMAGES IS UNNECESSARY AND PREMATURE, AND BASED ON A FAULTY AND BASELESS PREMISE**

Plaintiff's request that "the issue of whether she is entitled to an award of punitive damages against the individual defendants and, if so the amount of punitive damages, be presented to the jury for its consideration during its initial deliberations" is unnecessary because defendants have not requested, and do not intend to request, that the jury's consideration of punitive damages be bifurcated.  Furthermore, plaintiff's request is premature as the propriety of whether the issue of punitive damages should be put forth before the jury at all should be determined after the close of evidence.

Although defendants do not currently oppose plaintiff's motion to the extent it requests that the issue of punitive damages be determined by the jury during its initial deliberations, pending the evidence at trial, they do note that the premise upon which plaintiff's motion is based - that the City of New York "always indemnifies police officers it represents when punitive damages are awarded against them" - is incorrect and unsupported.

12

To the extent that plaintiff's motion requests to introduce evidence of indemnification, the motion should be denied because, as explained in Point I of defendants' motions *in limine*, defendants "do not intend to proffer evidence regarding their personal financial resources and ability to pay punitive damages at trial," and, therefore, "plaintiff should not be allowed to introduce evidence or otherwise refer to the possibility that the City of New York will indemnify the individual defendants." Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) at 4-5.

## POINT VIII

### PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING THE NEW YORK CITY POLICE DEPARTMENT PATROL GUIDE OR STUDENT GUIDE

In her motion seeking to admit "relevant sections of the patrol guide," plaintiff states that she seeks admission of evidence and testimony related to only two patrol guide sections (210-04 and 210-07) and "relevant topics" in the NYPD Student Guide. Pl. Mot. at 16. However, plaintiff neglects to point out that, in Point I of her motions *in limine*, she further seeks to introduce evidence concerning one other patrol guide section (208-02) and that her purported expert witness, Joseph Pollini, apparently intends to discuss an additional four other patrol guide sections (208-03, 208-09, 210-13 and 221-01). *See, e.g.,* Pollini Rpt. (Dkt No. 211-20) at ¶ 38.

In any event, defendants contend that evidence concerning any patrol guide section or any topic in the NYPD Student Guide should be precluded for the reasons set forth in Point X of defendants' motion *in limine*. *See* Memorandum of Law in Support of Defendants' Motions *in Limine* (Dkt. No. 212) at 23-25.

In addition, defendants note that plaintiff has offered no justification supporting why, even if the Court were inclined to admit evidence concerning certain sections of the NYPD patrol guide,

the sections she has listed on her exhibit list and now seeks to move to admit are relevant to the issues to be decided at trial.  Moreover, plaintiff certainly has not, and frankly cannot, justify the admissibility of over 150 pages from a 2014 NYPD Student Guide, which relates primarily to irrelevant topics such as executing an arrest warrant, warrant checks, search warrants, questioning juveniles, eyewitness ID procedures, show-ups, and photo arrays.  More importantly, there is no evidence whatsoever to suggest that any of the individual defendants were ever provided with or are even aware of the contents of the 2014 NYPD Student Guide given that none of them were "students" in 2014.

Accordingly, plaintiff's motion seeking admission of certain sections of the NYPD patrol guide and 2014 Student Guide should be denied.

### POINT IX

**CERTAIN FACTS CONCERNING PLAINTIFF'S INTERACTION WITH HER NEIGHBOR AND POLICE ON FEBRUARY 28, 2019 AND MEDICAL TREATMENT ON MARCH 1, 2019 SHOULD NOT BE PRECLUDED BECAUSE THEY ARE RELEVANT TO HER CREDIBILITY AND TO DAMAGES**

As an initial matter, and as explained in Point III above, defendants do not intend to introduce evidence of plaintiff's arrest for disorderly conduct from approximately fourteen years ago, or the facts thereof, unless plaintiff opens the door to its admissibility.  However, defendants do oppose plaintiff's motion to the extent it moves to preclude the introduction of certain facts concerning her interaction with her neighbor and police on February 28, 2019 and her subsequent medical treatment on March 1, 2019 because, contrary to plaintiff's assertions, such evidence does bear on plaintiff's truthfulness (which plaintiff ironically concedes by citing to Rule 608(b)) and does have "probative value to the issues in dispute."  Pl. Mot. at 18.

14

To be clear, this incident is not relevant because it resulted in plaintiff's arrest.  Rather, this incident is relevant to plaintiff's credibility and to damages because, on February 28, 2019, according to plaintiff's neighbor, Ramon Torres, plaintiff struck him with a blunt object that she was holding in her hand, despite the fact that plaintiff claims to have been suffering from significant pain in both hands and wrists and was contemplating surgery.  Moreover, following the incident, plaintiff was handcuffed behind her back by police and did not in any way indicate to the police that she had pain to her hands or wrists.  For example, plaintiff did not request that she not be handcuffed or that she be handcuffed in a different manner.  Nor did plaintiff verbally communicate to the police that she had significant pain in her hands and wrists.  That plaintiff failed to mention this alleged significant pain is crucial evidence suggesting that plaintiff's allegations of pain are at the very least exaggerated, if not entirely fabricated.  Finally, following this incident, plaintiff went to Queens Hospital Center due to complaints of, *inter alia*, facial pain. However, notably, plaintiff did not complain of any pain to her hands or wrists.  Again, plaintiff's failure to mention such pain is relevant to both plaintiff's credibility and to her alleged damages.

Defendants respectfully submit that the high probative value of this evidence, which bears heavily on the crucial issue of plaintiff's credibility and damages, is not substantially outweighed by the danger of unfair prejudice.  Moreover, Rule 404(b) is not a ground for preclusion because, as explained, defendants do not intend to offer this evidence to prove propensity.

Accordingly, defendant should be permitted to introduce certain evidence of this February 28, 2019 incident.

## POINT X

**PLAINTIFF'S MOTION CONCERNING NOMINAL DAMAGES SHOULD BE DENIED AS IT IS CONTRARY TO LAW AND BASED ON A FAULTY PREMISE**

Plaintiff contends "that it would be error to charge the jury on nominal damages" because she "alleges, with the support of medical evidence, that the force used against her resulted in the [sic] serious injuries requiring surgery." Pl. Mot. at 18.

As an initial matter, plaintiff's motion focuses solely on her excessive force claim while conveniently failing to note that her claim for deliberate indifference to medical needs will also be tried. With respect to plaintiff's deliberate indifference claim, it is certainly possible that the jury could find for plaintiff while at the same time finding that she suffered no compensatory damages. Indeed, as the Court acknowledged in its Memorandum and Order on defendants' motion for summary judgment, plaintiff "has submitted no evidence that that delay in treatment worsened her injury." Memorandum and Order (Dkt. No. 198) at 21.

Moreover, contrary to plaintiff's apparent contention, "a jury finding of excessive force does not automatically entitle a claimant to compensatory damages as a matter of law." *Girbes-Pierce v. City of New York*, 803. F. App'x 509, 511 (2d Cir. 2020) (internal quotation marks and citation omitted). "[R]ather, in certain circumstances, a jury could reasonably determine that compensatory damages are inappropriate even where excessive force was used." *Id.* (internal quotation marks and citation omitted). Moreover, "a nominal damages award is appropriate where a plaintiff has demonstrated only *de minimis* damages that lack monetary value." *Id*.

Here, defendants intend to introduce evidence that plaintiff's alleged injuries were self-inflicted and/or caused by a variety of other factors, such as pre-existing or subsequent medical conditions and subsequent trauma. Thus, contrary to plaintiff's assertion, it would not "be

16

impossible for a rational jury to credit plaintiff's account on the question of liability and not award compensatory damages."  Pl. Mot. at 19.

Plaintiff's motion should also be denied as premature.  Indeed, the only case plaintiff cites in support of her argument is one which thoroughly considered the evidence introduced at trial to determine that that evidence mandated an award of more than nominal damages because the award of nominal damages "was inconsistent with the jury's express finding that excessive force has been used" and because "[t]he only direct evidence, indeed the only evidence at all, was that [plaintiff's welts] were the result of the beating."  *See Wheatley v. Beetar*, 637 F.2d 863, 865-867 (2d Cir. 1980).  As explained, defendants intend to introduce evidence that plaintiff's alleged injuries were not caused by the alleged excessive force.  Thus, it is quite possible the jury could find for plaintiff on her excessive force claim yet still find no compensable damages.

Notably, in *Wheatley*, the Second Circuit further found that "the failure to award damages for [plaintiff's] alleged ear injury could rationally be justified" based on, *inter alia*, evidence that the injury was "a completely subjective symptom" and "could have been caused by any number of things" such that "a rational jury could conceivably have concluded that the injury was not caused by the police." *Id.* at 865-66.

Accordingly, plaintiff's motion should be denied and the jury should be instructed on nominal damages.

## POINT XI

## PLAINTIFF'S MOTION FOR AN ADVERSE INFERENCE SHOULD BE DENIED

Plaintiff claims that she is entitled to an adverse inference because defendants were unable to locate and produce the plaintiff's prisoner pedigree form and the prisoner holding pen roster listing plaintiff.  Plaintiff justifies her motion by asserting that "[b]ecause these records would, by

their very nature, bear on questions of liability that will be presented to the jury, they are material and plaintiff is entitled to a curative remedy for their absence." Pl. Mot. at 20. Plaintiff's request should be denied because she not only overstates the significance of these documents, and the significance of their absence, but she fails to even attempt to satisfy the applicable legal standard, which she cannot satisfy.

"'To obtain sanctions for spoliation, a party must establish by a preponderance of the evidence that (i) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (ii) the evidence was destroyed with a culpable state of mind; and (iii) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Lekomtsev v. City of New York*, No. 16-cv-4530 (RPK) (ST), 2020 U.S. Dist. LEXIS 183353, at *6 (E.D.N.Y. Oct. 2, 2020) (Kovner, J.) (citation omitted). "[A] sanction in the form of an adverse inference instruction is . . . 'an extreme sanction and should not be imposed lightly.'" *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. CV 18-1997 (JS) (AKT), 2021 U.S. Dist. LEXIS 124711, at *53 (E.D.N.Y. July 2, 2021) (citation omitted).

As for the first prong, plaintiff has not established that the defendants had an obligation to preserve these two documents, nor has she even attempted to do so. Moreover, it would be improper and unfair for there to be an adverse inference against the individual defendants where there is no evidence that they were "in any way involved in the failure to preserve" these documents. *See Lekomtsev*, 2020 U.S. Dist. LEXIS 183353, at *8-9 (citation omitted) (Kovner, J.) ("Plaintiff has made no argument as to why the individual officer defendants had control over plaintiff's knife after the knife was turned over to the NYPD's property clerk. Nor has he established that the individual officers had a duty to maintain the knife after that point or that the

18

individual defendants were in any way involved in the knife's destruction.   Under these circumstances, I do not find that the individual defendants had a duty to preserve the knife at the time that it was destroyed.").

    As for the second prong, plaintiff has not established that these two documents were "destroyed with a culpable state of mind."  Indeed, there is no evidence that the documents were destroyed at all.  Rather, defendants have simply been unable to locate the documents.  Either way, plaintiff has failed to meet her burden in this regard, nor has she even attempted to do so.

    As for the third prong, plaintiff has not established that these two documents were "relevant to [her] claim . . . such that a reasonable trier of fact could find that it would support that claim." In the context of an application for an adverse inference, "relevant" "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).  Rather, plaintiff must show that these documents would have been favorable to her case and unfavorable to defendants.  *See, e.g., Siani v. State Univ. of New York*, No. CV09-407 (JFB) (WDW), 2010 U.S. Dist. LEXIS 82562, at *27 (E.D.N.Y. Aug. 10, 2010) ("To satisfy the third prong of the spoliation claim, [plaintiff] must establish that . . . the destroyed evidence would have been favorable to him."); *Great N. Ins. Co. v. Power Cooling, Inc.*, No. 06-CV-874 (ERK) (KAM), 2007 U.S. Dist. LEXIS 66798, at *29-30 (E.D.N.Y. Sep. 10, 2007) ("[W]here the culpable party was negligent, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party.") (internal quotation marks and citation omitted).  Plaintiff cannot make any such showing.

    Plaintiff states that the prisoner pedigree form is relevant because it contains "a record of plaintiff's physical condition at the time of her arrival at the precinct," Pl. Mot. at 19, however it

is undisputed that such information, as well as other pedigree information, is contained within the precinct's command log, which indicates that plaintiff's physical condition upon her arrival at the precinct was documented as "app. normal."   Command Log (Dkt. No. 194-40) at 53; *see also* Response to Request for Admission No. 2, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1).  Moreover, it has been explained that the command log entry related to plaintiff's arrest should reflect the information contained within the prisoner pedigree form.  *See, e.g.,* Objection and Response to Request for Admission No. 5, Defendants' Responses and Objections to Plaintiff's First Requests to Admit (Dkt. No. 214-1); *see also* Laliberte Dep. at 33:10-21, annexed to the Declaration of Kavin Thadani in Support of Defendants' Opposition to Plaintiff's Motions *in Limine*, dated October 17, 2022 ("Thadani Decl.") as Exhibit A (indicating that the information from the prisoner pedigree card is copied into the command log).

Plaintiff states that the prisoner holding pen roster is relevant because it "would have recorded both plaintiff's condition and the number of times officers went in to 'check on' her."  Pl. Mot. at 19-20.  As an initial matter, there is no evidence in the record to suggest that this document would have recorded plaintiff's condition.  Indeed, a portion of the prisoner holding pen roster was produced in this litigation by virtue of its inclusion in the Civilian Complaint Review Board file related to its investigation concerning allegations made by non-party Danny Rivera and it contains no specific section for a prisoner's condition.  *See* Prisoner Holding Pen Roster, Thadani Decl., Ex. B.  In any event, defendant Ryan testified that he did not observe any visible signs of injury thus there is no reason to believe he would have documented anything in the prisoner holding pen roster concerning plaintiff's physical condition anyway.  *See, e.g.,* Ryan Dep. at 283:13-15, Thadani Decl., Ex. C.  Moreover, defendant Ryan testified that he checked in on plaintiff every

thirty minutes, which is precisely what the missing document would reflect.  *See, e.g., id.* at 243:2-4, Thadani Decl., Ex. C.

There is simply no basis for plaintiff to credibly claim, let alone prove, that these documents would have been "favorable" to her claims and "unfavorable" to defendants such as to justify an adverse inference instruction.  Accordingly, plaintiff's motion should be denied.

## **CONCLUSION**

For the reasons set forth above, defendants respectfully submit that plaintiff's motions *in limine* should be denied.

Dated:  New York, New York
        October 17, 2022

> HON. SYLVIA O. HINDS-RADIX
> Corporation Counsel of the City of New York
> *Attorney for Defendants*
> 100 Church Street
> New York, New York 10007
> (212) 356-2351
>
> By:     */s/ Kavin Thadani*
> _____
> Kavin Thadani
> *Senior Counsel*
> Special Federal Litigation Division

TO:     **VIA ECF**
        Gabriel Harvis, Esq.
        Baree Fett, Esq.
        *Attorneys for Plaintiff*

21