## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

                    Plaintiff,

       -against-

CITY OF NEW YORK, et al.,

                  Defendants.

**16 CV 79 (RPK) (CLP)**

Plaintiff's Memorandum of Law in
Opposition to Defendants' *In Limine* Motions

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005

October 17, 2022

Table of Contents

Table of Authorities .................................................................................................................. ii

Response to Defendants' Preliminary Statement ................................................................. 1

Point I ....................................................................................................................................... 1

    The Caption Should be Accurately Presented to the Jury ................................................ 1

Point II ...................................................................................................................................... 2

    Plaintiff Should be Permitted to Request a Dollar Amount ........................................... 2

Point III ..................................................................................................................................... 4

    Plaintiff Can Cross-Examine Defendants on their False Statements ............................. 4

Point IV ..................................................................................................................................... 6

    The Jury Should be Informed of Errors in the Hanrahan Report ................................. 6

Point V ....................................................................................................................................... 7

    The Admitted Fact that Plaintiff was Not *Mirandized* is Relevant ............................... 7

Point VI ..................................................................................................................................... 8

    Danny Rivera Should be Permitted to Testify as to his Recollection of the Incident ................. 8

Point VII .................................................................................................................................... 9

    Plaintiff Only Asserts her Excessive Force Claim Against Two Defendants............................... 9

Point VIII ................................................................................................................................ 10

    The Jury Should Not Be Instructed About the "Lawfulness" of the Arrest or Search ............... 10

Point IX ................................................................................................................................... 11

    Testimony from Plaintiff's Treaters is Properly Offered .......................................... 11

Point X ..................................................................................................................................... 12

    Portions of the New York City Patrol Guide are Relevant and Helpful .................... 12

Point XI ................................................................................................................................... 13

    Plaintiff Does Not Intend to Reference Defendants' Discovery Misconduct Unless Defendants Open the Door ...................................................................................................... 13

Point XII .................................................................................................................................. 14

    Plaintiff Should be Permitted to Seek Economic Damages ....................................... 14

Point XIII ................................................................................................................................ 15

    Plaintiff's Police Practices Expert is Qualified, Will Assist the Trier of Fact and Should be Permitted to Testify ............................................................................................ 15

Point XIV ................................................................................................................................. 19

There is No Basis to Preclude Dr. McMahon ............................................................. 19

Point XV ...................................................................................................................... 20

Plaintiff Only Intends to Call Competent Witnesses with Relevant Testimony ....................... 20

Conclusion .................................................................................................................... 22

## Table of Authorities

### CASES

*Brutton v. United States*, 687 F. App'x 56 (2d Cir. 2017) .......................................... 11

*Cerbelli v. City of New York*, 99 CV 6846, 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006).................................................................................................................. 15

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013)........................................ 16

*Kogut v. Cnty. of Nassau*, 06 CV 6695 (JS) (WDW), 2012 WL 3704710 (E.D.N.Y. Aug. 27, 2012) .................................................................................................... 8

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ..................................... 17

*Nnodimele v. Derienzo*, 13 CV 3461 (ARR) (RLM), 2016 WL 3561708 (E.D.N.Y. June 27, 2016)................................................................................................ 12, 17

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017)........................................... 15, 18

*Scott v. City of New York*, 591 F.Supp.2d 554 (S.D.N.Y. 2008) .............................. 15

*Snead v. City of New York*, 463 F. Supp. 3d 386 (S.D.N.Y. 2020) ............................ 9

*Snead v. LoBianco*, 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021) ................................ 9

*Tardif v. City of New York*, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607 (SDNY Aug. 23, 2017).......................................................................... 12

*Valentin v. New York City*, 94 CV 3911 (CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997)..................................................................................................... 15

*Vazquez v. City of New York*, 10 CV 6277 (JMF), 2014 WL 4388497 (S.D.N.Y. Sept. 5, 2014)............................................................................................... 15, 17

<u>Response to Defendants' Preliminary Statement</u>

If it should please the Court, defendants' motions have little merit and, for the reasons below, the Court should generally reject them. Contrary to defendants' arguments, plaintiff offers relevant evidence narrowly tailored to the state and federal claims presented, and defendants' motions seek to tip the scales and mislead the jury.

<u>Point I</u>

<u>The Caption Should be Accurately Presented to the Jury</u>

According to defendants, the City of New York is not truly a defendant in this case, although defendants concede that the City is a proper party and the real party in interest that will satisfy any damages awarded by the jury. Defendants nevertheless ask the Court to conceal the fact of indemnification and the City's involvement as a party to this case. The risk, according to the City, is that the jury will overcompensate plaintiff by the mere mention of the City.

However, defendants' proposal will result in further prejudice to Ms. Martinez, who this Honorable Court has already held was prejudiced by defendants' misconduct, as it would give the jury the false impression that the officers are personally responsible for satisfying any judgment through their salaries as public servants, very likely resulting in an inaccurate and deflated damages assessment.

Particularly given the individual defendants' denials of involvement, there could be good reason for the jury to consider serious punitive damages in this case (which are

meant to send a message to other officers apart from these defendants), and that process will be unfairly inhibited if the jury is wrongly led to believe that the officers themselves will be financially responsible.

Plaintiff respectfully submits that the appropriate compromise is the truth, *i.e.*, the jury should be instructed that the City of New York is a defendant on the state law claims under *respondeat superior* and that the officers are the defendants on the federal claims. We respectfully submit that this proposal will avoid needless subterfuge and any mention or undue consideration of indemnification.

Point II

Plaintiff Should be Permitted to Request a Dollar Amount

As defendants acknowledge, plaintiff alleges that the injuries she sustained during the incident have rendered her unable to work as a housekeeper. In compliance with the damage calculation requirements of Rule 26(a)(1)(A)(iii), at a settlement conference before the Court on December 19, 2018, plaintiff conveyed to defendants her calculation that her economic damages totaled $1,250,000 – determined by multiplying $60,000, the approximate amount Ms. Martinez had been earning per year at the time of her injury, by 20.8 years, the estimated number of years Ms. Martinez could have continued earning had it not been for her injury. *See* DE #167 at p. 4 and Minute Entry dated December 19, 2018.

As reflected on the docket, defendants then demanded information to support plaintiff's calculation, and the issue was the subject of a Court ruling at the settlement conference. *Id*. In accordance with the Court's ruling, plaintiff provided extensive disclosures and information in support of her earning degradation calculation, including authorizations to allow defendants to access several years of plaintiff's tax returns and employment records. Plaintiff also submitted to a second five-hour deposition with defendants, where defendants questioned Ms. Martinez about her economic damages based on the supplemented disclosures.

The docket also establishes that defendants ignored their December 31, 2018 deadline to "submit letter re: employment records, etc." that had been set by the Court in its December 19, 2018 Minute Entry. Defendants ignored that deadline because the calculation and supporting disclosures provided to them by plaintiff were sufficient and left defendants with no reason to seek further relief from the Court.

Under these circumstances, Ms. Martinez should be permitted to request $1,250,000 in economic damages from the jury.

With respect to suggesting a dollar amount for non-economic damages, plaintiff respectfully submits that the trial evidence in this case may also support such a request. Accordingly, plaintiff respectfully requests that the Court defer its determination of this issue until the parties appear for a charging conference. *See, e.g., Lightfoot v. Union*

*Carbide Corp.*, 110 F.3d 898, 912–13 (2d Cir. 1997) (rejecting a bright-line rule prohibiting dollar amount suggestions for non-economic damages, noting that the Second Circuit "favor[s] a more flexible approach" and affirming District Judge's decision to permit plaintiff's counsel to recommend a figure based on verdicts in similar cases and appropriately instructing jury on its consideration of counsel's suggestion).

<u>Point III</u>

<u>Plaintiff Can Cross-Examine Defendants on their False Statements</u>

Defendants argue that plaintiff should be precluded from referencing broad swaths of the record on the grounds that it is allegedly prejudicial to defendants.

But plaintiff does not intend to disclose to the jury that the underlying incident was investigated or that defendants have been investigated on other occasions. However, particularly given the centrality of credibility to the disputes in issue here, where defendants' statements in those contexts provide plaintiff with a good faith basis to argue that defendants have made false statements, plaintiff should be permitted to cross-examine the defendants in accordance with Rule 608(b)(1).

First, with respect to defendant Laliberte, plaintiff should be able to cross-examine him about the false statements he made to investigators as discussed at Point IV of plaintiff's motions *in limine* (*see* DE #213, pp. 5-10).

Second, with respect to the misreporting of drug evidence, defendants seek to have it both ways by informing the jury that hundreds of bags of heroin were allegedly found

in plaintiff's apartment but concealing the inconvenient fact that two of the named defendants inaccurately reported the number of drugs recovered on official police paperwork related to the arrests. Plaintiff respectfully submits that it would be improper and prejudicial for the jury to receive the evidence in such fashion, and plaintiff should be permitted reasonable cross-examination as to these errors.

Third, and similarly, defendants seek to present the search of plaintiff's apartment as lawful and proper while concealing errors in its execution, including the fact that defendant Digennaro, a supervisor responsible for the search warrant, was found to have inaccurately recorded the search in his memo book, an official NYPD record. While plaintiff has no interest in bringing the disciplinary finding before the jury, she should be permitted to cross-examine this witness on his memo book and what plaintiff will argue are probative inaccuracies and omissions, including with respect to both the search and the events surrounding plaintiff's injury at the precinct.

Fourth, with respect to the CCRB and IAB investigations discussed at defendants' Point III.D, several aspects are relevant and there is no basis to preclude them categorically as defendants request. The CCRB investigation is relevant to defendant Ryan's credibility, as the Court has previously noted. *Martinez*, 2018 WL 604019 at *16 ("It is of further concern that Officer Ryan was also questioned during the course of a CCRB investigation into injuries allegedly suffered by Danny Rivera during his

arrest. Despite being questioned about events in the precinct that night, Ryan, plaintiff's arresting officer, apparently never mentioned Ms. Martinez's self-inflicted injuries during that inquiry.").

There is also no reason to conceal relevant conduct, such as Ryan's omission, or its context, from the jury. Indeed, plaintiff will be prejudiced if the jury is not informed that, during the course of an official investigation conducted shortly after plaintiff's injury, defendants provided misleading information to investigators regarding the incident.

Fifth, in their Point III.E defendants argue that plaintiff should be precluded from offering evidence of other prior allegations of misconduct, without allowing plaintiff to cross-examine about false statements, such as Laliberte's evident false statement in the incident where he lied to investigators. Plaintiff does not intend to inform the jury of cases of alleged misconduct unrelated to the incident involving plaintiff but should be permitted to reasonably cross-examine on evidence of false statements, such as those involving Laliberte, under Rule 608(b)(1).

<u>Point IV</u>

<u>The Jury Should be Informed of Errors in the Hanrahan Report</u>

Defendants seek to suppress a portion of Hanrahan's report because they argue that it contains a clerical error that can be easily explained. The Court has previously discussed the significant probative value of the Hanrahan Report, which contains

admissions from the individual defendants that bear on credibility and liability and contains "notable inconsistencies." *See Martinez*, 2018 WL 604019 at *15 & n.16.

Rather than redacting this important document to shield what defendants claim is an easily explained clerical error, the jury should see the document as it was prepared and the parties should be permitted to make whatever arguments they believe are supported by the evidence. Plaintiff respectfully submits that any other outcome would amount to a windfall to the defendants from the death of a non-party that would impede the search for the truth.

Point V

The Admitted Fact that Plaintiff was Not *Mirandized* is Relevant

Plaintiff's theory of the case is that defendants assaulted her while aggressively and improperly questioning her about the drugs found in her apartment. It is an undisputed fact that defendants conducted custodial interrogation of plaintiff without advising her of her *Miranda* warnings and Ms. Martinez has alleged that she specifically requested counsel, which defendants ignored.

On this record, defendants now seek to conceal this aspect of the improper questioning from the jury, because defendants speculate that it might cause the jury to award plaintiff damages based on the *Miranda* violation instead of the assault. But this purported concern is without merit because the verdict sheet will not ask the jury to

consider damages for the *Miranda* violation and, if needed, the jury can also be instructed on proper consideration of this issue.

But, critically, Ms. Martinez is competent to testify about the factual circumstances surrounding her injury, including the undisputed failure to provide *Miranda* warnings, and defendants' admitted failure to do so is probative as to liability even if it does not provide an independent basis for damages. *See Kogut v. Cnty. of Nassau*, 06 CV 6695 (JS) (WDW), 2012 WL 3704710, *1 (E.D.N.Y. Aug. 27, 2012) (discussing how the failure to provide *Miranda* warnings can be probative of other issues in dispute). There is no reason to proscribe Ms. Martinez's testimony regarding the circumstances of her interrogation and assault; granting defendants' request would result in unwarranted prejudice to Ms. Martinez and unduly restrict her testimony.

<u>Point VI</u>

<u>Danny Rivera Should be Permitted to Testify as to his Recollection of the Incident</u>

Non-party Danny Rivera was inside the precinct at the time plaintiff was assaulted and corroborates key aspects of plaintiff's narrative with first-hand testimony. Rivera also alleges that officers assaulted him and stole from him when they entered and searched plaintiff's apartment hours earlier.

Plaintiff does not intend to elicit testimony from Rivera regarding his excessive force or theft allegations but is limited in her ability to control the spontaneous trial testimony

of this non-party witness. Accordingly, plaintiff respectfully submits that defendants'
concerns should be addressed, if necessary, through objections at trial.

Point VII

Plaintiff Only Asserts her Excessive Force Claim Against Two Defendants

In its opinion denying summary judgment, the Court explained that "[b]y their own
accounts, Sergeant DiGennaro, Lieutenant Camhi, and Officer Ryan each questioned
[plaintiff], restrained her, or checked on her that night" and "Ms. Martinez's description
of one of her assailants matches Sergeant Laliberte." *Martinez*, 564 F. Supp. 3d at 94.
As further set forth in this Court's opinion, the record here raises triable issues as to
which of these individual defendants, if any, constituted the pair that allegedly used
excessive force against plaintiff; this is not a pleading issue as characterized by
defendants. *See, e.g., Snead v. City of New York*, 463 F. Supp. 3d 386, 400 (S.D.N.Y.
2020), *reconsideration denied sub nom. Snead v. LoBianco*, 2021 WL 861060 (S.D.N.Y.
Mar. 8, 2021) ("It is for a jury to decide if these facts give rise to personal involvement
sufficient for liability to attach under § 1983.") (citations and internal quotation marks
omitted) (collecting cases). Moreover, any ambiguity in the record regarding the
identities of the assaulting officers results directly from defendants' active concealment
during the discovery process as discussed in the sanctions orders issued earlier in this
litigation; granting the relief they request would reward their misbehavior.

Plaintiff respectfully acknowledges that personal involvement is an element of proof necessary to plaintiff's § 1983 claims (but not her state law claims) and agrees that the verdict sheet should reflect that only two officers can be held liable for excessive force under § 1983 (and that on the state law claims the City is responsible under *respondeat superior* for its officers' tortious conduct, even if they are unidentified). Accordingly, defendants' motion should be denied.

Point VIII

The Jury Should Not Be Instructed About the "Lawfulness" of the Arrest or Search

As defendants concede in their motion on this point, plaintiff has never challenged the lawfulness of her arrest and the verdict sheet will not ask the jury to consider the legality of plaintiff's arrest or search. Unlike the cases cited by defendants, here there has been no adjudication of the validity of plaintiff's arrest on drug charges and there is no reason for the Court to inform the jury that the arrest is lawful when the issue is not in dispute and has never been litigated or settled.

To the extent an instruction is necessary, plaintiff respectfully submits that the jury need only be informed that the search and arrest are not in dispute; characterizing the arrest and search as lawful would unduly favor defendants.

With respect to the second and third prong of defendants' Point VIII, which argue that plaintiff should be precluded from offering evidence or seeking damages related to dismissed or withdrawn claims, this motion should be denied as moot and

impracticable. Plaintiff does not intend to argue any claims that have been dismissed or seek damages thereupon. However, the record of the events is a unitary set of facts and cannot be parsed into discrete portions relating to, for example, a withdrawn negligence claim – it is simply the facts of what happened to Ms. Martinez. As such, defendants' motion is an effort to unfairly inhibit and proscribe plaintiff's testimony about the disputed events and should be denied.

Plaintiff respectfully notes, in response to defendants repeated mention of "withdrawn claims" in this case, that the only reason plaintiff was required to plead such claims was because defendants committed egregious discovery misconduct, forcing plaintiff's counsel to amend on the eve of the expiration of the statute limitations on an incomplete record – conduct for which defendants have been sanctioned.

Point IX

Testimony from Plaintiff's Treaters is Properly Offered

Defendants concede that plaintiff timely designated treating physicians as potential trial witnesses in accordance with the Federal Rules. These treaters, including the surgeon who operated on plaintiff, are permitted to testify about the facts they learned and the opinions they formed during and based on that treatment, including as to causation and prognosis, precisely as plaintiff contemplates. *See Brutton v. United States*, 687 F. App'x 56, 58 (2d Cir. 2017) ("[T]he notes to Rule 26 specifically contemplate that a treating physician...may testify without a written expert report.").

11

Point X

Portions of the New York City Patrol Guide are Relevant and Helpful

As discussed at Point VIII of plaintiff's affirmative *in limine* motions, Courts in the Second Circuit routinely and increasingly admit patrol guide evidence in police misconduct cases such as this one, with a Court in this district describing such evidence as "relevant and helpful." *See Nnodimele v. Derienzo*, 13 CV 3461 (ARR) (RLM), 2016 WL 3561708, *13-14 (E.D.N.Y. June 27, 2016) (brackets, citations and internal quotation marks omitted).

Here, where plaintiff's state law claims will be tried alongside her federal claims, evidence of patrol guide violations will be of particular assistance to the jury in assessing, *inter alia*, the reasonableness of the officer-defendants' failure to document or report plaintiff's injury, their failure to provide medical treatment and their decision to attempt to send plaintiff to Central Booking instead of a hospital. *See Tardif v. City of New York*, 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607, *18-19 (SDNY Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity.").

The evidence will also aid the jury in understanding the expert testimony of plaintiff's designated police practices expert, as discussed below. Moreover, plaintiff

only seeks to offer relevant sections of the materials and will be prejudiced if the jury is given the inaccurate impression that the defendants complied with governing protocols.

With respect to the student guide, it is defendants who produced that document in response to plaintiff's discovery demands. The record does not reflect whether defendants received the specific training information contained in that document and, to the extent they did, it is an appropriate subject of examination as to relevant topics.

<u>Point XI</u>

<u>Plaintiff Does Not Intend to Reference Defendants' Discovery Misconduct Unless Defendants Open the Door</u>

If it should please the Court, defendants' treatment of the sanctions entered against them in their Point XI lacks deference and is, in our view, disrespectful to the Court and Ms. Martinez. The Court has already held that Ms. Martinez suffered severe prejudice from defendants' willful violation of fourteen Court orders. Plaintiff has no intention of revisiting these unfortunate events as the matter proceeds to trial.

Defendants' Point XI is based exclusively on the title of an anticipated motion *in limine* plaintiff listed on page 79 of the Joint Pre-Trial Order (but did not subsequently file), and not on any evidence scheduled by plaintiff. This alone is grounds for denial.

As plaintiff explained in Point II of her affirmative *in limine* motions (DE #213, pp. 3-4), plaintiff has no intention of referencing the prior sanctions order, but defendants appear intent on opening the door to such evidence by arguing that plaintiff's good

faith efforts at photographic identifications, frustrated by defendants' discovery misconduct, is somehow admissible on the question of her credibility. As plaintiff argued in her affirmative motion, the defense exhibit and argument should be precluded, which plaintiff respectfully submits will also help achieve the object of defendants' Point XI.

Point XII

Plaintiff Should be Permitted to Seek Economic Damages

Defendants' motion on this point fails because, as discussed above in response to defendants' Point II, plaintiff calculated her economic damages at $1,250,000 and disclosed that calculation to defendants at a December 19, 2018 settlement conference, in full compliance with Rule 26(a)(1)(A)(iii). Under the Court's supervision and schedule, plaintiff then fully complied with defendants' requests for supporting information, including tax and employment records. While plaintiff did at one point contemplate obtaining expert testimony on the issue, there is nothing in the Federal Rules to require plaintiff to present the damages calculation through an expert and the calculation on which plaintiff relies is within the ken of the jury. Accordingly, plaintiff should be permitted to seek $1,250,000 in economic damages.

Point XIII

Plaintiff's Police Practices Expert is Qualified, Will Assist the Trier of Fact and Should be Permitted to Testify

Courts in the Second Circuit routinely admit testimony from qualified police practices experts where it will assist the jury. *Cerbelli v. City of New York,* 99 CV 6846, 2006 WL 2792755, *8 (E.D.N.Y. Sept. 27, 2006) ("Courts typically admit police expert testimony, based solely on the expert's professional experience, where it is offered to aid the jury's understanding of an area not within the experience of the average juror.") (collecting case); *Vazquez v. City of New York*, 10 CV 6277 (JMF), 2014 WL 4388497, *12-14 (S.D.N.Y. Sept. 5, 2014) ("Courts in and out of this Circuit routinely admit testimony on police practices in civil rights cases of this sort.") (collecting cases); *see also, e.g., Scott v. City of New York*, 591 F.Supp.2d 554, 563 (S.D.N.Y. 2008) (expert with lengthy career in policing could testify about police practices where such testimony was likely to aid the jury); *Valentin v. New York City,* 94 CV 3911 (CLP), 1997 WL 33323099, *25 (E.D.N.Y. Sept. 9, 1997) (allowing an expert to "opine on whether specific procedures or actions are consistent with generally accepted police practices").

Indeed, in the context of another § 1983 police misconduct action in this district, *Restivo v. Hessemann*, the Second Circuit recently affirmed admission of the very type of testimony plaintiff here intends to offer:

> When an expert offers an opinion relevant to applying a legal standard such as probable cause or *Brady*, the expert's role is

> limited to describing sound professional standards and identifying departures from them, which is precisely what [plaintiff's police practices expert] did in this case. This expert testimony on applicable professional standards is relevant because it can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights. It is true that [plaintiff's police practices expert's] opinions had direct implications for applying legal standards, but that is exactly why his testimony was relevant.

846 F.3d 547, 579–80 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) (brackets, citations and internal quotation marks omitted) (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)).

Point XIII of defendants' motion purports to challenge plaintiff's police practices expert, Joseph A. Pollini, on *Daubert* grounds. Defendants concede that Mr. Pollini is qualified,[1] but argue he should not be permitted to testify because his report adopts plaintiff's facts and invades the province of the jury. Defendants also claim that Mr. Pollini will not assist the trier of fact in this case and that his testimony, and the NYPD Patrol Guide, are irrelevant and prejudicial. However, under similar circumstances, courts generally reject these types of assertions:

---

[1] If it should please the Court, even though defendants do not challenge Mr. Pollini's qualifications, they are worth briefly noting. Mr. Pollini is on the faculty of the John Jay College of Criminal Justice, where he has coordinated the Police Studies program. Before retiring from a 33-year career in the NYPD, Mr. Pollini achieved the rank of lieutenant and, among other senior roles, served as the Commander of the Cold Case Homicide Squad's Special Projects Unit from its formation in 1996.

> Defendants' [objection that plaintiff's police practices expert's] testimony impermissibly assists the trier of fact in various ways…[is not] a basis to preclude Plaintiff's expert altogether. A few stray sentences in his report perhaps aside, [the expert] does not opine on the credibility of other witnesses or offer views on "ultimate legal conclusions." And to the extent that [the expert] does improperly touch on such subjects, the Court can address those defects at trial by ruling on objections to particular questions and testimony.

*Vazquez*, 2014 WL 4388497 at *12-14 (citations omitted); *see id.* ("Defendants'…

objection [to] the reliability of [plaintiff's police practices expert's] methods and

data…ultimately go to the weight of his testimony rather than to its admissibility.")

(citing *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995)).

In fact, arguments similar to those presented by defendants here, with respect to Mr.

Pollini in particular, were considered and rejected by another court in this district. In

*Nnodimele*, the Hon. Allyne R. Ross appropriately allowed Mr. Pollini, on behalf of the

plaintiff, to testify about evidence related to defendants' state of mind, as well as "the

materiality component of plaintiff's *Brady* claim," noting that "this court's

understanding of the elements of plaintiff's fair trial claims leaves this court with the

definite and firm conviction that it would be improper to exclude such evidence." 13

CV 3461 (ARR) (RLM), 2016 WL 3561708, *13-14 (E.D.N.Y. June 27, 2016).

The *Nnodimele* court also permitted introduction of relevant sections of the NYPD

Patrol Guide over defendants' objection:

This court will also permit the parties to introduce relevant portions of the Patrol Guide and related testimony. Defendants seek to exclude such evidence because it contains guidelines that are distinct from standards imposed by the United States Constitution. Accordingly, defendants argue, the jury could be misled that violations of the Patrol Guide establish violations of the federal constitution. However, Chief Judge Mann has already ruled…that Patrol Guide evidence is admissible. This court agrees and joins a growing number of courts holding that in constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful. As the Seventh Circuit has explained in a recent case affirming the district court's decision to admit such testimony in a trial of a *Brady* claim under § 1983, the expert's testimony thus would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference that defendant acted deliberately to violate plaintiff's rights. Relevant Patrol Guide evidence is therefore admissible, and the parties should designate the portions of the Patrol Guide they seek to use in the revised exhibit list, discussed below.

*Id.* (brackets, citations and internal quotation marks omitted).

Here, there is no question that expert testimony "describing sound professional standards and identifying departures from them," as encouraged by the Second Circuit in *Restivo*, can assist the jury in this case in determining, *inter alia*, whether defendants acted with deliberate indifference in failing to render medical care to Ms. Martinez and their *mens rea* in failing to document the incident. Mr. Pollini's report, which will not be received in evidence and to which the factual recitation is *res gestae* appropriately

drawn from the record, includes opinions that are relevant and admissible on these and other topics related to the claims in issue. Notably, defendants elected not to depose Mr. Pollini or designate their own police practices expert, leaving Mr. Pollini's conclusions unchallenged and further undermining defendants' purported motion.

Point XIV

There is No Basis to Preclude Dr. McMahon

Defendants do not present a *Daubert* challenge to Dr. McMahon, plaintiff's retained medical expert, nor do they challenge the adequacy or timeliness of plaintiff's disclosures with respect to this expert. Rather, defendants claim that Dr. McMahon should be precluded (and plaintiff left without a retained medical expert) because Dr. McMahon has not supplemented his report during the pendency of motion practice related to defendants' discovery misconduct and their motions for summary judgment and to dismiss.

But defendants' *in limine* motion should be denied because plaintiff is not obligated to prepare a revised report from Dr. McMahon every time she receives additional treatment, and none of the treatment Ms. Martinez has received since Dr. McMahon's report was prepared undermines or invalidates Dr. McMahon's opinions to any extent. To the contrary, Dr. McMahon's report specifically contemplated in February 2017 that Ms. Martinez might need future surgery, as she ultimately did. Of course, Dr. McMahon will not testify about treatment received by Ms. Martinez after his report

was prepared. Again, defendants' motion is further undermined by their failure to depose Dr. McMahon.

Accordingly, defendants' motion should be denied.

Point XV

Plaintiff Only Intends to Call Competent Witnesses with Relevant Testimony

Defendants' Point XV argues that plaintiff should be precluded from calling non-party witnesses who lack any connection to the disputed events or claim not to recall them. Plaintiff respectfully agrees with the first proposition but not the second.

It cannot be the case that by claiming a lack of recollection key witnesses to the disputed events can avoid examination. Here, for example, as described at summary judgment, exhaustive inquiry by plaintiff's counsel ultimately proved that former defendants Trotter and Pontecorvo were responsible for causing an entry to be made in plaintiff's medical records attributing her injury to self-infliction, which if plaintiff's facts are ultimately believed reflects an effort by these officers to assist with a cover up of the incident. *See* DE #205 at Response 12 & n.6.

We respectfully submit that it is irrelevant that these officers may deny recollection as their involvement is undisputed and their recollection can potentially be refreshed.

The same is true of Paul Valerga, who was the precinct's commanding officer, responsible for and knowledgeable of the practices inside the precinct and the officers assigned to it. Valerga was present when plaintiff was inexplicably brought back to the

20

precinct after her trip to the hospital from Central Booking. He testified at his deposition as follows:

> Q. …[Y]our testimony is that you don't have any recollection of coming in on the morning of January 23rd, at around 9:20 in the morning, having a conversation with Sergeant Laliberte, who was on the desk, about the fact that he was telling you that a woman had punched a wall and hurt herself the night before?
> …
> A. If -- you know, listen – you know, I was definitely in the command at 9:20….I'm most – I'm going to tell you right now, there's an extreme high probability that I had a conversation with him.

If it should please the Court, this witness is competent to offer relevant testimony regardless of how he characterizes his own recollection. He was commanding officer of the precinct for approximately eight hours while plaintiff was kept there in a cell before being taken for arraignment for the second time. It is appropriate to examine him on topics relevant to plaintiff's claims, such as why plaintiff was brought back to the precinct and what officers told him had happened the night before.

If it should please the Court, upon due consideration plaintiff does not intend to call Davniero, Donovan, Graham, Kandinov, Lavelle, Rehman, Post, Ficken, Robinson, Seddio or Mendez, and respectfully requests that the Joint Pre-Trial Order be deemed amended to remove these witnesses.

<u>Conclusion</u>

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motions *in limine*, grant plaintiff's motions *in limine* and grant plaintiff such other and further relief as the Court deems just and proper.

Dated:      October 17, 2022
            Briarcliff Manor, New York

                                    Elefterakis, Elefterakis & Panek

                                    _____

                                    Gabriel P. Harvis
                                    Baree N. Fett
                                    80 Pine Street, 38th Floor
                                    New York, New York 10005
                                    (212) 532-1116

                                    *Attorneys for plaintiff*