16 CV 79 (RPK) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROSIE MARTINEZ,

                                                          Plaintiff,

-against-

CITY OF NEW YORK, ERIC RYAN, DAVID CAMHI, JOSEPH DIGENNARO, KEITH LALIBERTE,

                                                          Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE***

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Kavin Thadani*
*Senior Counsel*
*Tel:  (212) 356-2351*

*October 24, 2022*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

ARGUMENT ............................................................................................................................ 1

    POINT I

        THE CITY'S STATUS AS A DEFENDANT
        SHOULD NOT BE RELAYED .................................................................. 1

    POINT II

        NO SPECIFIC DOLLAR AMOUNT SHOULD BE
        REQUESTED ............................................................................................. 1

    POINT III

        ALLEGATIONS OF MISCONDUCT SHOULD BE
        PRECLUDED ............................................................................................. 2

    POINT IV

        THE HANRAHAN REPORT IS AN
        IRRELEVANT DISTRACTION ............................................................... 3

    POINT V

        EVIDENCE REGARDING *MIRANDA* RIGHTS
        SHOULD BE PRECLUDED ....................................................................... 3

    POINT VI

        DANNY RIVERA'S ALLEGATIONS OF POLICE
        MISCONDUCT .......................................................................................... 4

    POINT VII

        THE FORCE CLAIM SHOULD PROCEED VS.
        ONLY 2 DEFENDANTS ........................................................................... 4

    POINT VIII

        LAWFULNESS OT ARREST & WITHDRAWN /
        DISMISSED CLAIMS ............................................................................... 5

POINT IX

    THE TESTIMONY OF PLAINTIFF'S TREATERS SHOULD BE LIMITED ................................................................... 5

POINT X

    THE N.Y.P.D. PATROL AND STUDENT GUIDE SHOULD BE PRECLUDED ..................................................... 6

POINT XI

    THE SANCTIONS ORDER SHOULD BE PRECLUDED ................................................................................ 6

POINT XII

    ECONOMIC DAMAGES SHOULD BE PRECLUDED ................................................................................ 6

POINT XIII

    JOSEPH POLLINI SHOULD BE PRECLUDED ..................................... 8

POINT XIV

    DR. MCMAHON SHOULD BE PRECLUDED ....................................... 8

POINT XV

    PONTECORVO, TROTTER AND VALERGA SHOULD BE PRECLUDED ................................................................. 9

CONCLUSION ............................................................................................. 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                         **Page**

*Ham v. Klusek*, No. 19-CV-5355 (RPK) (TAM),
    2022 U.S. Dist. LEXIS 184971 (E.D.N.Y. Oct. 10, 2022) ........................................................2

*Laureano v. City of New York*, No. 17-CV-181 (LAP),
    2021 U.S. Dist. LEXIS 142713 (S.D.N.Y. July 30, 2021) ........................................................1

## ARGUMENT

**POINT I – THE CITY'S STATUS AS A DEFENDANT SHOULD NOT BE RELAYED**

Plaintiff asserts that "the jury should be instructed that the City of New York is a defendant on the state law claims under *respondeat superior*." Plaintiff's Memorandum of Law in Opposition to Defendants' *In Limine* Motions ("Pl. Opp.") at 2. However, plaintiff cites to no legal authority in support of her proposal and, more importantly, completely fails to address the body of case law cited by defendants that supports not informing the jury of the City's status as a defendant when the City is a defendant solely for purposes of *respondeat superior* liability. *See* Memorandum of Law in Support of Defendants' Motions *in Limine* ("Defs. Mem.") at 3-4; *see also, e.g., Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 U.S. Dist. LEXIS 142713, at *32 (S.D.N.Y. July 30, 2021) ("The City's status as a *respondeat superior* defendant has almost no probative value because the jury will make no findings against the City. Yet, on the flip side, Defendants risk suffering unfair prejudice.") (precluding mention of the City as a defendant at trial and removing the City as a defendant from the caption of documents at trial).

To the extent plaintiff suggests that she may refer to defense counsel as "City attorneys" and refer to indemnification, plaintiff's unsupported opposition should be rejected. *See* Defs. Mem. at 4-5; *see also, e.g., Ham v. Klusek*, No. 19-CV-5355 (RPK) (TAM), 2022 U.S. Dist. LEXIS 184971, at *5 (E.D.N.Y. Oct. 10, 2022) (Kovner, J.) ("Consistent with the prevailing approach in this circuit, I preclude plaintiff from referring to defense counsel as "City attorneys." . . . Plaintiff is also precluded from referring to defendant's potential indemnification by the City.").

**POINT II – NO SPECIFIC DOLLAR AMOUNT SHOULD BE REQUESTED**

In response to defendants' motion to preclude plaintiff from requesting a specific dollar amount from the jury, plaintiff asks the Court to defer its decision but has offered no reason why

1

it should do so aside from stating, in conclusory fashion, that "the trial evidence in this case may . . . support such a request." Pl. Opp. at 3. As previously explained, courts routinely grant motions to preclude plaintiffs from requesting specific dollar amounts, and with good reason. *See* Defs. Mem. at 5-7. Indeed, this Court recently granted such a motion, "adher[ing] to the practice of many other district courts in this circuit of prohibiting either party from suggesting a specific dollar amount in damages." *Ham*, 2022 U.S. Dist. LEXIS 184971, at *7.

**POINT III – ALLEGATIONS OF MISCONDUCT SHOULD BE PRECLUDED**

Plaintiff opposes defendants' motion by baldly asserting that (i) the undercounting by one of the over 280 glassine envelopes found in plaintiff's apartment and (ii) incomplete memobook entries concerning the search of plaintiff's apartment somehow indicate that defendants made false statements.[1] *See* Pl. Opp. at 4-5. However, these matters are not relevant to any of the issues in dispute or to credibility. Rather, here, plaintiff reveals her trial strategy of focusing on purported "errors" to distract the jury from the issues to be decided at trial. *See id.* at 5.

Plaintiff also claims, on the one hand, that she "does not intend to disclose to the jury that the underlying incident was investigated," while, on the other hand, stating that "there is no basis to preclude" the underlying CCRB and IAB investigations. *Id.* at 4-5. In any event, while plaintiff asserts that, with respect to these investigations, "several aspects are relevant," plaintiff identifies only one – that, during a CCRB interview concerning an investigation into allegations made by Danny Rivera and not plaintiff, during which he was never asked about his observations of plaintiff, defendant Ryan did not mention his observations of plaintiff punching the wall. *Id.* at 5-6. The minimal probative value of such evidence is substantially outweighed by the concerns outlined in defendants' initial memorandum. *See* Defs. Mem. at 9-11. And, as previously

---

[1] Defendants respectfully refer the Court to their prior arguments concerning the admissibility of Laliberte's prior use of force and plaintiff's contention that he lied to investigators. *See* Dkt. No. 215 at 9-10; Defs. Mem. at 7-8.

2

explained, "[t]o the extent that either party seeks to utilize at trial a prior statement made during the course of these investigations, that can be done without the need to reference that the statements were made in the context of a CCRB and/or IAB investigation." *Id.* at 11. In addition, plaintiff offers no reason why the IAB investigation is relevant even though she has listed as a proposed trial exhibit nearly **one thousand pages** of documents from the file related to that investigation.

Plaintiff also does not address defendants' arguments that many of plaintiff's listed exhibits are inadmissible hearsay and further should be precluded under the best evidence rule. Plaintiff further does not oppose defendants' motion to the extent that it seeks to preclude evidence of disciplinary histories, other prior allegations of misconduct, prior lawsuits, and unrelated instances of police misconduct. As such, defendants' motion should be granted.

**POINT IV – THE HANRAHAN REPORT ERROR IS AN IRRELEVANT DISTRACTION**

That plaintiff even opposes defendants' motion merely seeking to redact what is a clear and obvious error concerning the time and date of interviews conducted by now deceased Captain Hanrahan is as clear an indication as any of plaintiff's intention to distract and confuse the jury by presenting irrelevant facts and matters at trial. Indeed, plaintiff explicitly proposes that the Court permit a mini-trial on this collateral issue by suggesting that "the parties should be permitted to make whatever arguments they believe are supported by the evidence." Pl. Opp. at 6. Thus, as explained in defendants' initial memorandum, plaintiff desires valuable trial time to be spent introducing a document entirely unrelated to this case to explain why the wrong date and time appears on this report. *See* Defs. Mem. at 14. And to what end? Obviously, defendants Ryan and Camhi were not interviewed six days before the date of the incident.

**POINT V – EVIDENCE REGARDING *MIRANDA* RIGHTS SHOULD BE PRECLUDED**

3

Plaintiff argues that the purported failure to provide *Miranda* warnings to plaintiff is relevant because it "is probative as to liability even if it does not provide an independent basis for damages." Pl. Opp. at 8. But, in support of this bold proposition, plaintiff cites only to an argument a plaintiff made in *Kogut*, and misrepresents that the court in that case adopted this argument.

Plaintiff further contends that "the jury can also be instructed on proper consideration of this issue," Pl. Opp. at 8, but that is exactly why this evidence should be precluded. First, this isn't an issue that should be considered. Moreover, admission of this evidence would require significant instruction to the jury concerning the law regarding a collateral matter, here, *Miranda* warnings, including that they are not required and that *Miranda* is a criminal rule of preclusion.

As previously explained, there is a significant danger that a jury hearing that plaintiff was not "read her rights" may find liability on an improper basis. *See* Defs. Mem. at 15-16. That danger substantially outweighs any minimal probative value plaintiff suggests this evidence has.[2]

**POINT VI – DANNY RIVERA'S ALLEGATIONS OF POLICE MISCONDUCT**

In response to the motion to preclude plaintiff from eliciting from Mr. Rivera any evidence concerning his own allegations of police conduct, plaintiff represents that she does not intend to elicit such testimony. *See* Pl. Opp. at 8. Thus, the motion should be granted as unopposed.

**POINT VII – THE FORCE CLAIM SHOULD PROCEED VS. ONLY 2 DEFENDANTS**

Plaintiff offers an incoherent and non-responsive argument concerning why, although she "only asserts her excessive force claim against two defendants," four individual defendants should stand trial on the claim, somehow blaming defendants on her inability to identify the officers she saw with her own eyes, despite having reviewed headshot photographs and video depositions. Pl. Opp. at 9. Plaintiff further suggests that the verdict sheet can list all four defendants but simply

---

[2] It is unclear on what basis plaintiff states that "[i]t is an undisputed fact that defendants conducted [a] custodial interrogation of plaintiff." Pl. Opp. at 7. To be clear, that is not an undisputed fact.

4

"reflect that only two officers can be held liable for excessive force." *Id.* at 10. Plaintiff's position is not only absurd but unfair and improper. This game of "whack-a-mole" must be put to an end.

**POINT VIII – LAWFULNESS OF ARREST & WITHDRAWN / DISMISSED CLAIMS**

Defendants' motion requests that the Court instruct the jury that plaintiff's arrest, which resulted in a guilty plea, and the search of plaintiff's apartment, which was conducted pursuant to a lawfully obtained search warrant, were lawful because, without such an instruction, there is a danger that the jury may determine liability on an improper basis. Plaintiff appears to oppose defendants' motion on the basis that "characterizing the arrest and search as lawful would unduly favor defendants," Pl. Opp. at 10, however, characterizing the arrest and search as lawful would be factually accurate here, and not doing so risks unfair prejudice and juror confusion.

Defendants' motion further seeks to preclude plaintiff from introducing evidence or seeking damages regarding dismissed or withdrawn claims. Although plaintiff contends that she "does not intend to argue any claims that have been dismissed or seek damages thereupon," her contention is belied by the witnesses and exhibits she listed in the JPTO and even the arguments she made in her opposition. Accordingly, plaintiff should be specifically precluded from introducing evidence or seeking damages related solely to dismissed or withdrawn claims.

**POINT IX – THE TESTIMONY OF PLAINTIFF'S TREATERS SHOULD BE LIMITED**

Defendants' motion seeks confirmation and a ruling that "the testimony of each of the treating physicians . . . be limited to their own respective treatment of plaintiff as can reasonably be gleaned from their respective medical records." Defs. Mem. at 22. In response, plaintiff merely asserts that her treaters "are permitted to testify about the facts they learned and the opinions they formed during and based on that treatment." Pl. Opp. at 11. As a result, plaintiff has not opposed defendants' specific and narrowly tailored motion and it should be granted as unopposed.

**POINT X – THE N.Y.P.D. PATROL AND STUDENT GUIDE SHOULD BE PRECLUDED**

Defendants respectfully refer to their prior arguments why the NYPD patrol and student guide should be precluded. *See* Defs. Mem. at 23-25; Dkt. No. 215 at 13-14; *see also, e.g.,* Oct. 18, 2022 Dkt. Entry, *Freistat v. NYPD, et al.*, No. 17 cv 5870 (RPK) (LB) ("Police manuals or policies have limited relevance" that "is substantially outweighed by the risk of confusing the issues, misleading the jury, and wasting time" where "plaintiff's excessive-force claim rises or falls with allegations of an egregious use of force whose unreasonableness is obvious").

**POINT XI – THE SANCTIONS ORDER SHOULD BE PRECLUDED**

As an initial matter, although plaintiff claims that she "has no intention of revisiting [the sanctions order] as the matter proceeds to trial," one would hardly know it reading plaintiff's opposition, which references the sanctions order, which was issued before any of the four remaining individual defendants were named as defendants, and therefore did not apply to them, no less than four other times. *See* Pl. Opp. at 1, 9, 11, 19.

With respect to plaintiff's argument that evidence concerning her review of headshot photographs, which clearly bears on her credibility, somehow opens the door to the sanctions order, defendants respectfully refer the Court to their prior arguments on this issue. *See* Dkt. No. 215 at 6-8. In addition, defendants note that plaintiff fails to explain how plaintiff's review of photographs was "frustrated by defendants' discovery misconduct." Pl. Opp. at 14.

**POINT XII – ECONOMIC DAMAGES SHOULD BE PRECLUDED**

In response to defendants' motion to preclude plaintiff from seeking economic damages because she failed to comply with her disclosure obligations, plaintiff brazenly contends that she is in "full compliance" with her disclosure obligations because she purports to have disclosed her economic damages calculation at a settlement conference. Pl. Opp. at 2-3, 14. As an initial matter,

6

there is absolutely no record that she disclosed that specific calculation at that settlement conference, if that calculation could even be deemed sufficient to satisfy plaintiff's disclosure obligations. In any event, plaintiff cannot be deemed to have satisfied her disclosure obligations by a verbal statement made during a settlement conference. Indeed, it is well accepted that statements made during settlement conferences are not only strictly confidential and off the record but are not to be used in the litigation, including in discovery and trial. Although plaintiff cites to a letter she filed on the docket that purportedly contains her economic damages calculation, plaintiff neglects to point out that the letter is an *ex parte* letter addressed to the magistrate judge and which defendants cannot and are not able to see. To be clear, plaintiff has never, before filing her opposition, provided this purported economic damages calculation in writing to the defendants.

Plaintiff also falsely represents that "defendants ignored their December 31, 2018 deadline to 'submit letter re: employment records, etc.' that had been set by the Court." Pl. Opp. at 3. Indeed, defendants attached their letter, which states that it was being sent "in accordance with the Court's December 19, 2018 Order," as an exhibit to their motions *in limine* as Exhibit E. It was only in response to that letter that plaintiff ever provided any documentation or releases concerning her prior employment, and even then failed to include this purported calculation.

Plaintiff's statement that she "submitted to a second five-hour deposition . . . where defendants questioned [her] about her economic damages based on the supplemental disclosures" also overstates the record. Pl. Opp. at 3. Rather, defendants spent a small portion of that deposition asking questions concerning plaintiff's prior employment. And, as explained, "[t]he fact that the defendants may have been aware of facts which might be used in some manner to support plaintiff['s] damages for lost income based on [sworn testimony], or by receiving authorization forms . . . does not take the place of plaintiff['s] discovery obligations." Defs. Mem. at 29.

Plaintiff has failed to explain why she has not complied with her disclosure obligations. She chose to "proceed[] at [her] peril" and "now must live with that tactical choice." *Id.*

**POINT XIII – JOSEPH POLLINI SHOULD BE PRECLUDED**

In response to defendants' motion to preclude Joseph Pollini, plaintiff merely recites general standards concerning police practices experts, without squarely addressing any of the specific issues raised in defendants' motion, such as (i) that Mr. Pollini's opinions are not relevant to the issues to be determined at trial, improperly invade the province of the jury, and are unhelpful and unnecessary because they relate to lay matters, (ii) that Mr. Pollini's report contains an improper factual narrative, and (iii) that the central remaining issue of this case is not one which requires the aid of an expert witness to resolve. *See* Defs. Mem. at 30-38; *see also* Point X above.

Indeed, plaintiff doesn't even acknowledge that, at the very least, Mr. Pollini's testimony must be significantly limited, as was done in *Nnodimele* and other cases. This is also not a case where only "[a] few stray sentences in [the expert's] report" are problematic.

Accordingly, for the reasons stated in defendants' initial memorandum, Mr. Pollini should be precluded from testifying or, at the very least, his testimony should be significantly limited.

**POINT XIV – DR. MCMAHON SHOULD BE PRECLUDED**

Contrary to plaintiff's assertions, defendants do not seek to preclude Dr. McMahon because he did not supplement his report "during the pendency of motion practice related to defendants' discovery misconduct and their motions for summary judgment and to dismiss," Pl. Mot. at 19, but, rather, because his report was not once supplemented in the nearly six years since his report was first drafted, during which time the parties were engaged in extensive discovery and during which time plaintiff sought treatment from numerous different medical providers. Defendants do not contend that Dr. McMahon's report needed to be revised "every time [plaintiff] receives

8

additional treatment," Pl. Mot. at 19, but, rather, that his report did need to be supplemented at least once to account for all of the treatment, including surgery, that plaintiff has had in the last 5+ years. And plaintiff has offered no reason whatsoever why Dr. McMahon's report was not and has not been so supplemented. Accordingly, as explained in defendants' initial memorandum, Dr. McMahon (and his report) should be precluded or, at the very least, Dr. McMahon's testimony should be significantly limited, as plaintiff concedes.

**POINT XV – PONTECORVO, TROTTER AND VALERGA SHOULD BE PRECLUDED**

As an initial matter, defendants appreciate plaintiff now stating that, "upon due consideration," she no longer intends to call 11 of the 43 witnesses she listed on her proposed trial witness list, notwithstanding plaintiff's stubborn refusal to remove even a single witness prior to motion practice. *See* Defs. Mem. at 2 n.1. However, plaintiff improperly maintains that she should be permitted to call as witnesses former defendants Trotter, Pontecorvo and Valerga.

With respect to Trotter and Pontecorvo, plaintiff claims that they were allegedly "responsible for causing an entry to be made in plaintiff's medical records attributing her injury to self-infliction" and, therefore, this "reflects an effort by these officers to assist with a cover-up of the incident." Pl. Opp. at 20. But this is precisely why these witnesses should be precluded from testifying and is also a clear indication that, despite her representations to the contrary, plaintiff does seek to admit evidence concerning dismissed claims. Indeed, on summary judgment, plaintiff's "cover-up" (i.e., denial of access to courts) claim was dismissed and, as a result, Trotter and Pontecorvo were dismissed as defendants. *See* Dkt. No. 198 at 15-17, 30. In any event, whether these two officers were responsible for a notation in plaintiff's medical records that her injuries were self-inflicted has no bearing on the issues to be decided at trial – whether defendants used excessive force against plaintiff and whether defendants were deliberately indifferent to her

9

medical needs. By plaintiff's own admission, these two witnesses would be called to testify solely about irrelevant matters that would further confuse the issues to be decided at trial and waste time.[3]

With respect to Valerga, who was also dismissed as a defendant, plaintiff first focuses on another immaterial contention – that "plaintiff was inexplicably brought back to the precinct after her trip to the hospital from Central Booking." Pl. Opp. at 20-21. Besides the fact that this is not "inexplicable," but rather routine and proper procedure as several witnesses have testified, whether plaintiff was brought back to the precinct instead of to Central Booking has no bearing on any issues to be decided at trial. Plaintiff further cites to an out of context excerpt of Valerga's testimony. Indeed, plaintiff omitted from her citation the rest of Valerga's answer which was "Do I remember anyone telling me this? You know, I don't have any independent recollection of this actual incident." This testimony is consistent with the testimony defendants previously cited in connection with their motion *in limine*. *See* Defs. Ex. S.

In any event, plaintiff's citation to a question, which was objected to, and partial answer that is ultimately speculation and assumption does not make Valerga's testimony relevant and admissible. Of course, if any officer actually told Valerga anything about what happened the night before concerning plaintiff, and he remembered it, that would be relevant here, but he does not, and there is nothing plaintiff can point to that would potentially refresh his recollection. That Valerga may have had a conversation with Laliberte is not relevant in and of itself. Moreover, as plaintiff notes, Valerga wasn't even in the precinct during the relevant time period.

## **CONCLUSION**

For the reasons set forth above and in defendants' initial motion papers, defendants respectfully submit that their motions *in limine* should be granted in their entirety.

---

[3] Defendants further note that, upon information and belief, Trotter currently resides out of state in Arizona and, therefore, he is an "unavailable" witness.

Dated: New York, New York
   October 24, 2022

               HON. SYLVIA O. HINDS-RADIX
               Corporation Counsel of the City of New York
               *Attorney for Defendants*

           By: ***/s/ Kavin Thadani***
              Kavin Thadani

TO: Gabriel Harvis, Esq. & Baree Fett, Esq., *Attorneys for Plaintiff* (VIA ECF)

11