UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ROSIE MARTINEZ

Plaintiff,                          MEMORANDUM AND ORDER
                                                    16-CV-79 (NRM) (CLP)
            -against-

CITY OF NEW YORK, Police Officer ERIC RYAN,
Lieutenant DAVID CAMHI, Sergeant JOSEPH
DIGENNARO, and Sergeant KEITH LALIBERTE,

                Defendant.
------------------------------------------------------------------x

NINA R. MORRISON, United States District Judge:

        Now pending before this Court are approximately twenty-six (26) motions *in limine* filed

by the parties in advance of trial.  In this action, filed under 42 U.S.C. § 1983 and related

provisions of New York state law, Plaintiff Rosie Martinez alleges that Defendants used

excessive force leading to serious physical injuries while she was handcuffed in police custody in

January 2015, and that Defendants further failed to intervene to stop the violations of her civil

rights or to provide her with constitutionally adequate medical care for her injuries.  This Court

held oral argument on the parties' motions *in limine* on November 7, 2022.  At that time, the

Court also requested that the parties file supplemental letter(s) providing additional factual

information relevant to the motions.

## I.       Procedural History and Summary of Factual Issues to be Tried[1]

Rosie Martinez was arrested on January 22, 2015 at her apartment and detained that night at the 107th Precinct in Queens, New York.  Ms. Martinez, who worked as a house cleaner, was taken into custody by police after returning home from work that evening; earlier in the day, police carried out a raid on her apartment in search of illegal drugs.  *Martinez v. City of New York*, 564 F. Supp. 3d 88, 93 (E.D.N.Y. 2021).  During the raid, police arrested Ms. Martinez's boyfriend, Danny Rivera, from whom they seized approximately 285 glassine envelopes of heroin.  ECF No. 185, at 3; ECF No. 190, Attachment 1, at 4.  Ms. Martinez contends that Mr. Rivera was dealing drugs from her apartment without her knowledge.  And in the wake of her arrest and detention on January 22, 2015, Ms. Martinez was not charged with, nor convicted of, any crime.

The events that took place during the roughly five hours of Ms. Martinez's detention that evening form the basis of this § 1983 action.  It is undisputed that Ms. Martinez arrived at the 107th Precinct uninjured, and that she sustained injuries to her wrist at approximately 12:30 a.m.  *Martinez*, 564 F. Supp. 3d at 94.  No officer provided her with medical care at the precinct.  *Id.*  When she was taken to Central Booking approximately five hours after her arrest, her right wrist was so swollen that officers could not fit a single handcuff around it.  *Id.*  It was at Central

---

[1] For additional details on the parties' factual allegations and the procedural history of this case, *see Martinez v. City of New York*, 16-cv-79, 2018 WL 604019 (E.D.N.Y. Jan. 24, 2018) (Chief Magistrate Judge Pollak's Report and Recommendation to Judge Ann M. Donnelly); *Martinez v. City of New York*, 16-cv-79, 2018 WL 1835935 (E.D.N.Y. Apr. 18, 2018) (Judge Donnelly's Order partially adopting Chief Magistrate Judge Pollak's Report and Recommendation); *Martinez v. City of New York*, 564 F. Supp. 3d 88 (E.D.N.Y. 2021) (Judge Kovner's Order partially granting and partially denying Defendants' motion for summary judgment).

Booking that medical screeners immediately redirected Ms. Martinez and the two officers escorting her to the emergency room. *Id.*

How Ms. Martinez sustained her injuries, and the various interactions she had with the individual Defendant officers while in custody, are the key factual disputes the jury will be asked to resolve at trial. Ms. Martinez alleges that, while she was handcuffed at the station, two members of the New York City Police Department (NYPD) assaulted her in retaliation for her failure to provide them with incriminating information about her boyfriend Danny Rivera or the supplier(s) of the drugs they seized from her apartment. *Id*. Ms. Martinez alleges that while she was in handcuffs, and after informing the officers that she had no information about Mr. Rivera's illegal conduct, these officers choked her, smacked her, pulled her hair, and bent back her right thumb until she cried out in pain, while calling her a "fucking bitch" and telling her, "This is for not talking, bitch." ECF No. 99, at 6-7. Ms. Martinez further alleges that despite informing the officers that she was in severe pain over the next several hours and despite visible swelling on her injured hand, the four individual officers named in this action—Officer Eric Ryan, Lieutenant David Camhi, Sergeant Joseph DiGennaro, and Sergeant Keith Laliberte—failed to intervene or provide her with necessary medical treatment.

Defendants offer a starkly different account of the events that took place during Ms. Martinez's detention. Defendants do not deny that each of them was present at the 107th Precinct during while Ms. Martinez was handcuffed. It is also undisputed that three of the defendant officers (Sergeant DiGennaro, Lieutenant Camhi, and Officer Ryan) interacted with or "restrained" her that night; and the fourth (Laliberte) was the desk officer stationed directly outside the room where she was held. *Martinez*, 564 F. Supp. 3d at 94, 107. Defendants do not allege that Ms. Martinez's assailants are officers that Ms. Martinez has failed to name in this

action.  Rather, Defendants contend that Ms. Martinez's assault never took place at all.  They claim that Ms. Martinez inflicted her injuries on herself when she began punching a wall during her detention, and that some of Defendants responded by restraining Ms. Martinez and checking on her periodically throughout the night.

At trial, therefore, the jury's primary inquiry will be to determine which party offers the more credible explanation for the source of Ms. Martinez's injuries, and which account(s) of the Defendants' response (or lack thereof) the jury credits.

Ms. Martinez brings four claims against Defendants: claims of excessive force, failure to intervene, and deliberate indifference against the individual defendants, and a state law claim of assault and battery against the City of New York ("City") through the doctrine of *respondeat superior*.  District Judge Rachel Kovner, before whom the parties litigated their summary judgment motions before the case was transferred to this Court, granted Defendants' motion for summary judgment in part and dismissed Ms. Martinez's other claims, including a claim that police unlawfully searched her vehicle, and a claim that Defendants "covered-up" Ms. Martinez's assault and denied Ms. Martinez access to the courts.  *Id.* at 100-101.

This action also reaches trial after an unusual history of what other judges of this Court have found were a series of "egregious" and "willful" discovery violations by the City of New York.  *Martinez v. City of New York*, 16-cv-79, 2018 WL 604019, at *32 (E.D.N.Y. Jan. 24, 2018).  Over nearly two years, the City violated fourteen discovery orders issued by Chief Magistrate Judge Pollak and failed to disclose to Ms. Martinez even basic information about who her alleged assailants might be—despite the fact that the identities of the individual officers who were present in the station and interacted with Ms. Martinez on the night of her detention had been memorialized in a series of contemporaneously prepared (but long-undisclosed) documents

in the NYPD's possession.   Instead, after discovery was closed and just as the statute of limitations was set to expire, the City revealed to Ms. Martinez that it had in fact conducted multiple investigations about the events surrounding Ms. Martinez's arrest and detention, culminating in the belated disclosure of a series of official reports containing information that was vital to Ms. Martinez's claims.

Chief Magistrate Judge Pollak, in a 79-page decision excoriating counsel for the City for these and other violations, noted that "the length of time and the amount of expense incurred by plaintiff's counsel in essence 'chasing their tail' in an effort to obtain discovery is without compare in this Court's experience." *Id.* at *33.  Judge Pollak went on to recommend to then-presiding District Judge Ann Donnelly that, under the circumstances, the Court impose the extreme sanction of granting summary judgment against Defendants on the issue of liability—in part to redress the harm caused to Plaintiff, and in part to deter the City and any individuals it represents from engaging in such misconduct in future cases. *Id.* at *71.  The City, facing the prospect of imposition of judgment, initially opposed any sanctions, but ultimately agreed to waive any statute of limitations defense with respect to individual officers that Ms. Martinez may name in her amended complaint.  ECF No. 95.

Judge Donnelly praised Judge Pollak's "thorough and compelling" review of the factual record and agreed that the City's conduct indicated an "utter disregard" for the court's discovery orders, finding any claim that the City did not violate its discovery obligations "decisively refuted by the record."  *Martinez v. City of New York*, 16-cv-79, 2018 WL 1835935, at *1-2 (E.D.N.Y. Apr. 18, 2018).  Ultimately, however, Judge Donnelly declined to enter judgment against the City as Judge Pollak recommended.  *Id.* at *6.  Instead, the Court ordered the City to pay the legal fees and costs that Ms. Martinez accrued over the course of extended discovery.

Importantly, the Court also noted that it would "consider additional appropriate sanctions and curative measures at trial." *Id.* at *8.

## II.    The Parties' Motions *in Limine*

Currently before the Court are approximately twenty-six motions *in limine* filed by the parties.  As a preliminary matter, the Court notes that several of the parties' most vigorously disputed motions involve facts and procedural matters that implicate, to varying degrees, the unusual and "egregious" history of the City's discovery violations, which complicates the Court's analysis in several respects.  On the one hand, the Court is troubled by the due process implications of requiring the individual defendants in this action—who were not named parties at the time of the City's misconduct—to bear the consequences of the City's willful violations of the Court's discovery orders.  On the other hand, the Court is equally troubled by the prospect of allowing the City to profit from its misconduct by introducing or precluding certain evidence at trial which may have been tainted by, or the product of, its own misconduct—particularly without giving Ms. Martinez the opportunity to contextualize that evidence with information about this case's history and any prejudice she may have faced from the City's willful delays in producing relevant evidence to her.

Both parties, however, agree that a "mini-trial" that devolves into a discussion of this case's complicated procedural history and prior judicial sanctions that bear little on the facts in dispute would waste time and confuse the jury.  Thus, while the City's discovery violations and the balance of equities arising from that history are at times a factor in this Court's analysis, they are not dispositive of any one motion; and as to each, this Court would have reached the same results even without taking that history into account.

1. **Defendants' Motion to Preclude Cross-Examination of Sergeant Laliberte's Prior Misconduct**

Defendants seek to preclude Ms. Martinez from cross-examining Sergeant Laliberte about a 2014 incident in which he allegedly lied to investigators when he denied punching a handcuffed detainee and admitted his conduct only after investigators presented him with a surveillance video that had recorded his assault.  Defendants argue that cross-examination into the incident is improper propensity evidence, since excessive force is the very claim that Ms. Martinez has asserted against Sergeant Laliberte in this action.  Ms. Martinez counters that Sergeant Laliberte's untruthful statements to investigators bear on his credibility.  For the reasons outlined below, Defendants' motion is DENIED.

A party may not introduce evidence of an adversary's past "crime, wrong, or act . . . in order to show that on a particular occasion the person acted in accordance with" a particular character trait.  *See* Fed. R. Evid. 404(b)(1).  On cross-examination, however, a party may impeach a witness by inquiring into her prior "bad acts" that bear on the witness's character for truthfulness so long as the proffering party has a good-faith belief that untruthful act actually occurred.  *See* Fed. R. Evid. 608(b); *Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996).  A court may preclude cross-examination into a prior bad act if its probative value on the witness's credibility is substantially outweighed by a risk of unfair prejudice to the adverse party.  Fed. R. Evid. 403.  The more similar the untruthful act is to the underlying dispute at trial, the greater the likelihood is that a jury will inappropriately treat the prior bad act as propensity evidence.  *Cf. Stephen v. Hanley*, 03-cv-6226, 2009 WL 1471180, at *5 (E.D.N.Y. May 21, 2009) (describing, in the context of Rule 609, the risk of unfair prejudice when the offered impeachment evidence is similar to conduct at issue in the case).

The Court agrees with Defendants that cross-examining Sergeant Laliberte about whether he assaulted a handcuffed detainee would, on its own, be impermissible propensity evidence barred by Rule 404(b).  However, because Sergeant Laliberte's subsequent misleading statements to investigators about the incident unquestionably bear on Sergeant Laliberte's character for truthfulness, inquiry into those statements is permissible impeachment evidence under Rule 608(b).

On November 24, 2013, Sergeant Laliberte punched a handcuffed detainee while effectuating an arrest at a house party.  A nearby security camera captured footage of this assault, a fact which was apparently unknown to Sergeant Laliberte when investigators from the NYPD Internal Affairs Bureau (IAB) questioned him about the incident. The IAB summarized its interview with Sergeant Laliberte as follows:

> When asked if he observed any MOS use their batons or punch any of the party goers, [Sgt. Laliberte] stated no. . . . When asked if any of the arrestees had any injuries or made any complaints against any MOS, he stated no. After viewing the video footage that showed him punching [the arrestee] in the face, Sgt. Laliberte stated that punching [the arrestee] was a bad decision, he made a mistake and is embarrassed by his actions.

ECF No. 190, Exhibit 32, at 3.

On this record, the Court concludes that Ms. Martinez clearly has a good faith basis to believe that Sergeant Laliberte made untruthful statements to investigators: Sergeant Laliberte first stated that he did not "observe" anyone punch the detainee, and only after the investigators confronted Sergeant Laliberte with video footage of the assault did he change his story and apologize for his actions.  Defendants' argument that Rule 608(b) is inapplicable because Sergeant Laliberte was never reprimanded or charged for his allegedly untruthful statement is misplaced, since an official finding that the witness acted untruthfully is not required for Rule 608 to apply.  *See, e.g.*, *United States v. Bravo*, 808 F. Supp. 311, 321-22 (S.D.N.Y.1992) ("Rule

608 of the Federal Rules of Evidence allows impeachment of witnesses by evidence of specific instances of dishonesty regardless of whether there has been an official finding to that effect.").

The Court is also unpersuaded by Defendants' argument that Sergeant Laliberte's statement was not technically untruthful because investigators asked him whether he "observed" anyone punch the arrestee on the night in question, not whether Sergeant Laliberte punched the arrestee himself.  Both case law and common sense support the conclusion that someone can be untruthful not only through false assertions but through material omissions in circumstances that require disclosure. *Cf. United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (concluding in the context of Rule 613 of the Federal Rules of Evidence that "[u]nder certain circumstances, a witness's prior silence regarding critical facts may constitute a prior inconsistent statement").

The remaining question, then, is whether the probative value of this inquiry would be substantially outweighed by a risk of unfair prejudice.  The Court concludes that it would not be.  Sergeant Laliberte's conduct towards a handcuffed detainee is no doubt factually similar to Ms. Martinez's allegations against Sergeant Laliberte, and the Court recognizes the risk that the jury may draw an unfair propensity inference against Sergeant Laliberte from this evidence.  However, this risk does not substantially outweigh the evidence's probative value.  Sergeant Laliberte made his misleading statements about the incident during an official investigation—the exact context in which one would expect an officer of the law to be fully truthful.  The fact that Sergeant Laliberte immediately admitted and apologized for his conduct when confronted with the video of his previously-undisclosed assault is further indication that he was well aware that his initial responses to the investigator's questions were, at best, grossly misleading.  The Court therefore concludes that cross-examination of Sergeant Laliberte on his statements is highly probative of his credibility, outweighing any risk of unfair prejudice.

Defendants' motion to preclude Mr. Martinez from conducting this line of questioning is therefore DENIED IN PART.  Ms. Martinez may not introduce extrinsic evidence of Sergeant Laliberte's assault, including the video.  *See* Fed. R. Evid. 608(b).  However, Ms. Martinez may, on cross-examination, inquire into Sergeant Laliberte's assault of the handcuffed arrestee to the extent necessary to contextualize for the jury his misleading statements to investigators, including through questions that reference (1) the video of Laliberte's assault on the handcuffed detainee, and (2) the fact that he initially did not disclose his actions when questioned about the events of that evening, but only admitted his conduct after IAB investigators confronted him with the surveillance video.  *Cf. Rosales v. Kelly*, 07-cv-10554, 2011 WL 5873374, at *1-2 (S.D.N.Y. Nov. 14, 2011) (concluding that, under Rule 608(b), plaintiff could cross-examine an officer witness about an incident in which the witness used force on an inmate and then falsely told investigators that the inmate tripped, despite video evidence to the contrary).

### 2.  Plaintiff's Motion to Preclude Evidence That She Misidentified Her Assailants In Headshot Photographs After Her Alleged Assault

Ms. Martinez seeks to preclude Defendants from cross-examining her about a series of instances nearly two years after her alleged assault in which she and her lawyer(s) examined approximately thirty-six photographs of officers over time, who may or may not have been present in the precinct during her detention (which initially included two, but not all four, of the current named Defendants).  Defendants further wish to elicit from Ms. Martinez testimony that after viewing the photographs, she initially identified as her assailants two officers who are no longer parties to this action, while failing to positively identify the two current individual defendants whose photographs were provided to her counsel.

Defendants assert that this evidence bears not only on Ms. Martinez's credibility but also on her substantive claims, since her misidentification/failure to identify, they argue, supports the

inference that no assault took place at all.  Ms. Martinez counters not only that the evidence is irrelevant to the issues to be tried, but that fairness would require Ms. Martinez to contextualize the evidence, if it is admitted, by informing the jury about the City's discovery misconduct, including the complicated and indisputably tainted circumstances under which her counsel was provided these photographs while the City's willful discovery violations were ongoing.  For the reasons outlined below, Plaintiff's motion to preclude is GRANTED.

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Evidence that bears on a witness's credibility is "always relevant," *see United States v. Quinto*, 582 F.2d 224, 233 (2d Cir. 1978) (citation omitted), and a party may impeach a testifying witness's credibility by introducing evidence of the witness's prior inconsistent statement, *see* Fed. R. Evid. 613(b), or evidence that suggests a lack of sensory capacity. However, most impeachment evidence and substantive evidence may be precluded if its probative value is substantially outweighed by the risk of unfair prejudice to the adverse party, wasting time, or confusing the jury.  *See* Fed. R. Evid. 403; Fed. R. Evid. 608 advisory committee's note to 2003 amendment ("[T]he admissibility of extrinsic evidence offered for . . . contradiction, prior inconsistent statement, bias and mental capacity [is left] to Rules 402 and 403.").

The Court concludes that, on the factual record that the parties have presented, the probative value of the proffered evidence is extremely small relative to the risk that its introduction would (1) result in unfair prejudice, and (2) confuse the jury and waste time.  First, its relevance to any material fact in dispute in this action is, at best, tangential.  Ms. Martinez alleges that two officers brutally assaulted her at the 107th Precinct on the night of her detention.

Defendants argue that Ms. Martinez inflicted her injuries on herself.  No party, however, has contended that Ms. Martinez was assaulted but failed to name her true assailants as defendants in this case.   Indeed, at no time during either of Plaintiff's two depositions did Defendants ask Ms. Martinez any questions about these identification procedures, including which photographs she viewed, whether she positively identified any officers from their photographs, and how confident she was in her identifications at the time.[2]  While the City was of course free to use its allotted deposition time as it chose, the fact that it did not ask Ms. Martinez any questions about her examination of these photographs underscores what the Court views as its marginal (at best) relevance to her credibility and the facts in dispute at trial.

The Court is equally unpersuaded by Defendants' argument that this evidence tends to support the inference that Ms. Martinez's allegations of assault are fabricated altogether.  Nearly two years elapsed between the night of Ms. Martinez's detention (January 22, 2015) and the filing of her amended complaint in which she incorrectly named two officers as defendants on her excessive force claim, shortly after reviewing various photographs with her attorney (November 17, 2016).  The United States Supreme Court and numerous state high courts have favorably cited considerable scientific research demonstrating that a witness's ability to accurately identify an assailant or suspect becomes increasingly unreliable with the passage of time.  *See, e.g.*, *Perry v. New Hampshire*, 565 U.S. 228, 243 (2012) (concluding that the "passage of time between exposure to and identification of" one's assailant contributes to the

---

[2] Defendants argue that they did not depose Ms. Martinez about her examination of the officers' photographs because the areas of inquiry in Ms. Martinez's second deposition (taken with leave of the Court after the discovery violations came to light and her complaint was again amended) were strictly limited and the subject of extensive negotiations.  This does not, however, explain why—if this issue is as central to Ms. Martinez's credibility as Defendants now claim—Defendants never sought leave to include any such questions among the topics they were permitted to cover.

"likelihood of misidentification"); *State v. Lawson*, 291 P.3d 673, 688 (Or. 2012) ("Memory generally decays over time. Decay rates are exponential rather than linear, with the greatest proportion of memory loss occurring shortly after an initial observation, then leveling off over time."); *State v. Henderson*, 27 A.3d 872, 907 (N.J. 2013) ("Memories fade with time. . . . As a result, delays between the commission of a crime and the time an identification is made can affect reliability."); *State v. Kaneaiakala*, 450 P.3d 761, 773 (Haw. 2019) (noting that "[t]he period of time between the alleged criminal act and the witness's identification" was relevant to the identification's reliability); *Com. v. Walker*, 92 A.3d 766, 780 (Pa. 2014) (noting that the potential unreliability of a witness identification is "beyond [the knowledge] possessed by a layperson").[3]  A civil plaintiff's failure to identify her assailant from a selection of approximately three dozen photographs nearly two years after an alleged assault, therefore, has highly limited probative value as to the identities of those who were present—and essentially no probative value on the question of whether *the assault itself* took place.

Even assuming that this evidence is relevant—either as substantive evidence or impeachment evidence to the extent that it is inconsistent with Ms. Martinez's current allegations and bears on a lack of sensory capacity—the Court concludes that, due to this case's unusual procedural and factual history, this evidence's probative value is substantially outweighed by the risks of unfair prejudice, jury confusion, and wasting time on collateral matters.

If the Court permits the City to introduce evidence of regarding Ms. Martinez's examination of the officers' photographs, it must also permit Ms. Martinez to introduce evidence of the City's misconduct to rehabilitate her credibility.  Not only would the introduction of this

---

[3] For a more fulsome analysis of the role that the passage of time plays in the decay of a witness's memory of a perpetrator's identity, *see* Third Circuit Task Force, *2019 Report of the Third Circuit Task Force on Eyewitness Identifications*, 92 TEMP. L. REV. 1 (2019).

rebuttal evidence, which is voluminous, be time-consuming, but it would risk confusing the jurors by inviting them to consider a "mini-trial" on the question of discovery sanctions that have nothing to do with the factual disputes the jury will be tasked with resolving at trial.  Over the course of this action, the City repeatedly failed to comply with at least fourteen of the Court's discovery orders.  *See Martinez*, 2018 WL 604019, at *1-14.  Ms. Martinez only attempted to identify her alleged assailants by their photographs at all because the City had, for nearly two years, willfully failed to comply with the Court's orders to provide Ms. Martinez with a list of the officers with whom she interacted during her detention.  *Id.* at 5 ("Since defendants still had not identified the officers who interrogated plaintiff, the Court ordered the production of photographs in an effort to determine the identity of the officers."); *id.* at 9 ("Although plaintiff's counsel believed that they had finally identified the two officers most likely to have been involved in the assault on the plaintiff, as discovery proceeded, it became apparent that, despite all of their efforts, they had not been given the full story.").

By Defendants' own admission in a supplemental letter that they filed with this Court after oral argument on the instant motions, the initial photo array that counsel for the City sent to Ms. Martinez for purposes of determining the identity of her alleged assailants did not even include two of the four Defendants who are now named in this action—and whose personal interaction with Ms. Martinez on the night of her detention the City could have easily deduced from NYPD records.

The foregoing facts are only a sample of the evidence that the Court would be required to permit Ms. Martinez to introduce to contextualize why, nearly two years after her detention, she did not identify her alleged assailants from their photographs.  A mini-trial on the question of discovery sanctions would be appropriately avoided by simply precluding this evidence.

Second, because of the manner in which the alleged misidentifications occurred here (while Ms. Martinez viewed one or more photo arrays in her lawyers' offices, with the outcome of these examinations conveyed through written statements made by Ms. Martinez's counsel in the course of "chasing their tail" to identify the proper defendants in the face of the City's discovery violations), cross-examining Ms. Martinez about these events may raise issues of attorney-client privilege.  Defendants contend that Ms. Martinez has, by now, likely waived any claim to attorney-client privilege with respect to these communications because letters exchanged between the parties referenced the identification procedures counsel had conducted with Plaintiff.  But any assessment of whether and to what extent Plaintiff waived the privilege arising from her earlier communications with counsel will be a highly fact-specific inquiry that will depend on the specific questions asked of her at trial, with a parallel examination by this Court of the underlying pretrial record.  The prospect of a series of complicated and time-consuming sidebars on the question of attorney-client privilege and the scope of any alleged waiver under Rule 502(a) of the Federal Rules of Evidence—during cross-examination about a matter which the Court has already determined is of, at best, tangential relevance to the issues before the jury—also supports the Court's conclusion that it should exercise its discretion to preclude this evidence altogether under Rule 403.[4]

---

[4] The Court also notes that this evidence might be appropriately precluded as a reasonable sanction in light of the City's discovery violations, since Plaintiff has a compelling argument that Ms. Martinez's earlier photo (mis)identification only exists *because* of the City's discovery misconduct.  Although Judge Donnelly declined to adopt Magistrate Judge Pollak's recommendation to enter a default judgment against the City for its violations, she did expressly reserve the right to impose additional sanctions and curative measures at trial.  This Court need not do so here because of its other findings, *supra,* under the traditional Rule 403 analysis.

3.  **Defendants' Motion to Bar Plaintiff From Informing the Jury of the City of New York's Status as a Defendant and From Introducing Evidence of the City's Practice of Indemnifying Officers**

Defendants move to preclude Ms. Martinez from informing the jury that the City is a party to this action and from introducing evidence of the City's practice of indemnifying its officers.  Defendants' motion is GRANTED IN PART and DENIED IN PART.

First, the City remains a party to this action under the doctrine of *respondeat superior* for Ms. Martinez's state law claims of assault and battery.  As such, the Court will not change the caption of this case or otherwise structure the trial to prevent the jury from learning this fact.  *See Rosario v. City of New York*, 18-cv-4023, 2021 WL 9455782, at *1 (S.D.N.Y. Nov. 22, 2021) (denying a similar motion from the City when the City was only a named defendant under *respondeat superior*).  However, to prevent the jury from assigning undue weight to the City's status as a defendant, although Plaintiff's counsel may mention the City's inclusion as a named defendant in opening and closing argument, they shall not refer to defense counsel as "City attorneys" or otherwise unduly emphasize the City's role in this action.  *Cf. Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011) (finding, in an action in which the City was not a named defendant, that referring to defendants' counsel as "City attorneys" could be unfairly prejudicial).

Second, because evidence of the City's practice of indemnifying its officers is not relevant to any fact in dispute in this case, it is inadmissible.  *See Ross v. Guy*, 18-cv-1340, 2022 WL 768196, at *6 (E.D.N.Y. Mar. 14, 2022).  Ms. Martinez has stated that she has no intention of introducing such evidence unless any individual defendant officer "opens the door" by testifying to his personal inability to pay a damages award, and Defendants have stated that they

have no intention of offering such testimony.  Defendants' motion is therefore granted as unopposed, assuming no individual officer so testifies.

### 4.  Plaintiff's Motion to Include an Adverse Inference Instruction in the Jury Charge

Ms. Martinez moves the Court to include an adverse inference instruction in its jury charge with respect to two pieces of evidence—a prisoner pedigree form and a pen roster—that the City has failed to produce.  For the reasons outlined below, Ms. Martinez's motion is DENIED WITHOUT PREJUDICE.

A party seeking discovery sanctions on the basis of spoliation of evidence must show by a preponderance of the evidence "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (citation omitted).  "A party has a culpable state of mind when it destroyed evidence knowingly or negligently," meaning that the party has, at least, "fail[ed] to conform to the standard of what [it] must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding."  *Lekomtsev v. City of New York*, 16-cv-4530, 2020 WL 5878258, at *3 (E.D.N.Y. Oct. 2, 2020).  To the extent that only one defendant is responsible for spoliation of evidence in a multi-defendant case, a court may charge the jury with an adverse inference with respect to only that defendant.  *See id.* at *2 (determining that since the City, but not the individual defendants, engaged in spoliation, the court would instruct the jury that it could infer that the missing evidence would have been favorable to plaintiff's claims against the City).

On the current record, Ms. Martinez fails to demonstrate by a preponderance of the evidence that the third *Klipsch* factor is satisfied.  The Court agrees with Ms. Martinez that the City's duty to preserve both the prison pen roster and prisoner pedigree form attached as soon as the City was on notice that it might be subject to a claim—which, according to Defendants' own timeline of Captain Hanrahan's command-level investigation of Ms. Martinez's injuries, was likely within twenty-four hours of Ms. Martinez's initial detention.  Consequently, the Court also concludes that the City was, at the very least, negligent in its failure to preserve these documents. *Cf. Lekomtsev*, 2020 WL 5878258, at *3 ("[O]nce the duty to preserve attaches, any destruction is, at a minimum, negligent.").

However, the Court is not persuaded, based on the current factual record, that a reasonable juror could find that the missing pen roster and prisoner pedigree form would have supported Ms. Martinez's claims.  Ms. Martinez makes a fair point that, as with any instance of spoliation, the party seeking the adverse inference is, by definition, unable to utilize the missing documents to establish exactly why they would have supported her claims.  The Court is also troubled that the City somehow preserved the pen roster form of Danny Rivera, who was arrested at the same time as Ms. Martinez, but lost the corresponding forms relating to Ms. Martinez— particularly given that NYPD officials knew that same night that Ms. Martinez, not Mr. Rivera, was the arrestee who sustained physical injuries while in custody.

Nonetheless, on this record, the Court cannot rule out the equally likely possibility that these missing documents, prepared by one or more of the individual defendants, would have instead supported Defendants' version of events—that is, that the documents would have memorialized the officers' claims (whether factually true or not) that Ms. Martinez inflicted

harm on herself by punching a wall, and that the officers frequently checked in on Ms. Martinez throughout the night.

Ms. Martinez may still satisfy her burden on the third *Klipsch* prong through the introduction of additional evidence at trial.  For instance, Ms. Martinez remains free to cross-examine Defendants about the information that the prisoner pedigree form and pen roster contained, who prepared those documents, and what Defendants recall about their contents.  Ms. Martinez will also likely seek testimony from her expert witness regarding standard police documentation procedures, which may shed light on what these documents usually contain.  The testimony elicited from these witnesses may indeed support an inference that a reasonable juror could find that the missing pen roster and prisoner pedigree form would have supported Ms. Martinez's allegations, and Ms. Martinez is free to raise this motion again prior to or during the charge conference.  Until then, however, her motion is denied without prejudice.

Regardless of whether the Court includes an adverse inference instruction in its jury charge, Ms. Martinez is nonetheless free to inform the jury that the City searched for but was unable to locate these documents after she filed her lawsuit, as this fact is undisputed.  And she is free to argue to the jury about the inferences she believes the jury should draw from the fact that these documents cannot be located or what they would have contained—just as Defendants' counsel is free to argue the converse (*i.e.,* that the loss of these documents was inadvertent, because they would have supported the officers' account and the NYPD had every incentive to preserve them).

The parties are directed to confer on the most efficient way for the jury to receive information about the City's inability to locate these two documents, and to so advise the Court prior to trial.

19

**5.  Defendants' Motion to Redact the Date on Captain Hanrahan's Command-Level Investigative Report of Plaintiff's Alleged Assault**

Defendants move to redact a date printed on a command-level report completed by Captain Matthew Hanrahan ("the Hanrahan Report") in May 2015.  In this report, Captain Hanrahan, now deceased, summarizes interviews that he allegedly conducted with Ms. Martinez and Defendants Camhi and Ryan shortly after Ms. Martinez's alleged assault.  The content of the interviews support Defendants' claim that Ms. Martinez suffered injuries from repeatedly punching a wall while in detention.  Ms. Martinez avers that her interview never took place, and that the report—in which Captain Hanrahan wrote that he interviewed Defendants Camhi and Ryan about Ms. Martinez's injuries on January 17, 2015, six days before Ms. Martinez was ever taken into custody—is evidence of an effort by the NYPD to cover up defendants' misconduct.  Defendants respond that the date is clearly a typo, and they support their contention by pointing to another, unrelated report with the same date and case number that Captain Hanrahan allegedly used as a template in this matter.  Defendants also argue that because Judge Kovner dismissed Ms. Martinez's denial of access claim in her summary judgment order—a claim which Ms. Martinez stylized in her briefs as a "cover-up"—any evidence that is offered solely to support allegations of a departmental cover-up is no longer relevant to this action.

The parties clarified at oral argument that they both may seek to admit portions of the Hanrahan Report itself into evidence, that they do not consider the report itself to be inadmissible hearsay, and the only current point of disagreement is whether the date must be redacted.  For the reasons outlined below, Defendants' motion to redact the date is DENIED.

Evidence is relevant if it tends to make a fact in dispute more or less likely than it would otherwise be.  Fed. R. Evid. 401.  While it is true that Ms. Martinez's denial of access claim was dismissed in Judge Kovner's summary judgment order, a piece of evidence that supports

multiple claims remains relevant even if one of those claims is dismissed.  Here, Ms. Martinez alleges that the interview that Captain Hanrahan allegedly conducted—in which he reports that Ms. Martinez "made no allegations against any member of the service in regard to" her injuries—never took place.  To support this assertion, Ms. Martinez points to the fact that Captain Hanrahan's alleged interviews with Defendants Ryan and Camhi are listed in his written report as having predated her detention by approximately six days.  If the jury believes Ms. Martinez's account, then this aspect of the report is clearly relevant under the low threshold of Rule 401, since it is evidence that a jury could rely upon to conclude that Ms. Martinez never made statements to Captain Hanrahan denying any assault took place (*i.e.,* that it finds this aspect of her testimony to be credible).  *Cf. Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (concluding that even though the court had previously denied defendant's motion to suppress, evidence that the defendant's confession was coerced remained admissible since "the manner in which the confession was obtained casts doubt on its credibility").

The jury, of course, might not credit Ms. Martinez's allegations about Captain Hanrahan's report.  This Court considers Defendants' explanation for the incorrect date—that Captain Hanrahan's simply used a previous report as a template, as evidenced not only by the same date, but also the same case number, on both reports—to be not only plausible, but highly reasonable.[5]   But it is not the only conclusion a reasonable jury could draw.  Thus, this is a disputed fact to be decided by the jury, not the Court.

---

[5] Judge Pollak, in her opinion recommending the sanction of default judgment for Defendants' discovery violations, regarded the discrepancy in Captain Hanrahan's report with suspicion: "[T]he report indicates that these officers were interviewed on January 17, 2015—six days before plaintiff's arrest."  *Martinez*, 2018 WL 604019, at *15 (emphasis in original).  However, Judge Pollak did not have the opportunity to hear Defendants' explanation for Captain Hanrahan's mistake, since defense counsel explained that he only discovered Captain Hanrahan's template report after the sanctions ruling.

Although the Court recognizes that Captain Hanrahan is now deceased and is therefore unavailable to explain the error himself, Defendants will be permitted to lay the foundation for their proffered explanation by introducing into evidence the dated template report (properly redacted to protect the privacy interests of any detainee or officer described in that report) that Captain Hanrahan allegedly used to memorialize his interviews with Ms. Martinez and Defendants Ryan and Camhi.  The Court is unpersuaded by Defendants' argument that introduction of this template into evidence, which provides a simple explanation for Captain Hanrahan's error, would "substantially and materially confuse the jury."  ECF No. 212, at 14.

As such, Defendants' motion is denied.  The parties shall confer to discuss the most efficient way for Defendants to introduce the other report by Captain Hanrahan bearing the same date and case number into evidence and to provide the jury with the City's explanation for the date error given Captain Hanrahan's unavailability.

### 6. Defendants' Motion to Preclude Sergeant DiGennaro's Memo Books and Evidence That Officers Undercounted the Drugs Recovered From Plaintiff's Apartment

Defendants move to preclude (1) Defendant DiGennaro's memo book concerning the search of Ms. Martinez's apartment, and (2) evidence that Officer Ryan may have undercounted the amount of heroin recovered at Ms. Martinez's apartment on the night of her arrest.  For the reasons described below, Defendants' motions to preclude this evidence are GRANTED.

First, Ms. Martinez argues that the memo books that memorialize the search of her apartment contain "probative inaccuracies and omissions."  ECF No. 217, at 5.  Although the Court recognizes that this evidence could be relevant to an unlawful search claim, Judge Kovner dismissed that claim in her summary judgment order.  Because Ms. Martinez has failed to demonstrate that the information in these memo books is relevant to any of her remaining claims, the evidence is inadmissible.  *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Second, Ms. Martinez seeks to introduce evidence that the officers who searched her apartment inaccurately reported the number of envelopes of heroin that they recovered.  As a threshold matter, the parties disagree over the magnitude of the undercount, though it apparently ranges from one to five envelopes (with the total number of envelopes initially reported by defendants Ryan and DiGennaro on their post-arrest paperwork at 285, and the actual number being either 286 or 290).  Regardless, the Court fails to see how this evidence remains relevant in light of Judge Kovner's decision granting summary judgment to Defendants on Ms. Martinez's unlawful search claim.  Moreover, since a jury that hears this fact may speculate that this undercount indicates that the officers engaged in some sort of tampering with the envelopes of heroin, rather than inadvertently miscounting them, introduction of this evidence would risk unfair prejudice.

Defendants' motions are therefore granted.  Both parties are free to introduce evidence that the police recovered "heroin" during a search of Ms. Martinez's apartment, while her boyfriend was present and while she was at work.  The parties agree that this evidence provides context to the jury regarding the circumstances of Ms. Martinez's arrest and detention.  In light of this ruling, Plaintiff shall inform the Court whether she still has no objection to having the jury be told the reported amount of heroin (285 glassine envelopes) recovered from the apartment.  If she does not so consent, then Defendants shall not give or elicit any testimony regarding the quantity of heroin recovered, either as to a specific amount or an approximation.

### 7. Defendants' Motion to Instruct the Jury that the Search of Plaintiff's Apartment and Her Subsequent Arrest Were "Lawful"

Defendants move that the jury be instructed that the search of Ms. Martinez's apartment and her subsequent arrest were "lawful."  Ms. Martinez agrees that, to focus the jury's inquiry, the Court should instruct the jury that the circumstances of her apartment search and arrest are

not at issue, but she contends that characterizing the search and arrest as "lawful" would be misleadingly favorable to Defendants, particularly since she was not charged with any crime. Because the scope and wording of this instruction will depend on the evidence adduced at trial, the Court shall RESERVE JUDGMENT on this motion until the charge conference.

### 8. Plaintiff's Motion to Preclude Evidence of Her February 2019 Altercation With Her Neighbor and Subsequent Arrest

Ms. Martinez moves to preclude the Defendants from referencing a 2019 incident in which Ms. Martinez got into an altercation with a neighbor, resulting in the arrest of both Ms. Martinez and her neighbor (but in which neither was ultimately convicted of any crime). Specifically, Defendants seek to offer evidence, which they derived from police body-camera footage, which they contend provides a basis to ask Ms. Martinez about allegations that she struck her neighbor a during this February 2019 dispute and that, when she was arrested, she failed to inform the officers who handcuffed her or the medical personnel at the hospital where she was taken that she suffered from hand pain.

Defendants assert that this evidence is relevant to Ms. Martinez's alleged damages, since it tends to undercut Ms. Martinez's claims that her hand injury was serious at the time, especially since, on the date of the incident, she was scheduled to have hand surgery two weeks later. Defendants assert that the evidence is also relevant to Ms. Martinez's credibility for the same reasons. Ms. Martinez counters Defendants' version of events underlying this dispute and asserts that any questioning about this incident and its aftermath is "wholly irrelevant and severely prejudicial." ECF No. 219, at 7. For the reasons outlined below, Ms. Martinez's motion to preclude this evidence is GRANTED IN PART.

As a threshold matter, the probative value of this incident to the jury's assessment of damages is, at best, limited. The Court has reviewed the police body camera footage of Ms.

Martinez's arrest and her extended interview with police officers before she was cuffed.  In the video, the officers informed Ms. Martinez that, because she and her neighbor had made cross-allegations of assault, both would be taken into custody.  As they cuffed her, she remained still and calmly complied with their instructions; nothing suggests that the handcuffs were too tight or had more than incidental contact with her wrists.  The video also shows a dispute of fact as to the nature of this alleged altercation with her neighbor that preceded the police officers' arrival: Ms. Martinez stated to the officers that the altercation began because she had threatened to call the police on two neighbors who refused to cease smoking marijuana in the building's hallway; that they then attacked her, at which point she used her cell phone (which was already in her hand) to protect her face and body in self-defense.  She also repeatedly told police that two neighbors could corroborate her claim that she acted in self-defense, but it appears that the officers did not interview these third-party witnesses before taking both Ms. Martinez and her neighbor into custody, where they could (according to the officers) "talk to the judge."

This context suggests that this evidence does not strongly support Defendants' claim that Ms. Martinez is exaggerating the scope of her hand injury.  However, the threshold for relevance under Rule 401 is low—to be relevant, a piece of evidence must simply have "any tendency" to support or undercut a fact in dispute.  The Court therefore agrees with Defendants that evidence of Ms. Martinez's dispute with her neighbor and the circumstances of her subsequent arrest tend to at least somewhat undercut Ms. Martinez's assertion that her hand pain has been significant since her alleged assault in 2015.  While Ms. Martinez may argue that she struck her neighbor in self-defense and that she did not do so forcefully, Defendants offer a different factual account supported by statements from Ms. Martinez's neighbor, and it is not appropriate for the Court, in

its relevance analysis, to weigh one party's version of events against the other's.[6]  As such, the Court is unpersuaded by Ms. Martinez's argument that evidence of this incident is "wholly irrelevant."[7]

The Court does agree with Ms. Martinez, however, that the probative value of this evidence is substantially outweighed by a risk of unfair prejudice.  To undercut Ms. Martinez's claims of hand pain, Defendants seek to introduce evidence that Ms. Martinez got into a heated fight with a neighbor that led to her arrest, and may seek to show the jury the video of her being cuffed by police (or at the very least, cross-examine her about the fact that she did not inform police officers at any time that her wrist was injured prior to or while she was handcuffed).  The prejudicial impact of images, or even a narrative description, of Ms. Martinez being placed into handcuffs is obvious—and unfairly so, particularly since she was not convicted of any crime.  It also poses a risk that jurors would draw an improper propensity inference that Ms. Martinez is a violent or out-of-control person—in an action in which Defendants claim that Ms. Martinez punched a wall while she was in detention.  Because the risk of unfair prejudice to Ms. Martinez substantially outweighs this evidence's probative value, Rule 403 requires its preclusion.

---

[6] While the statements of Ms. Martinez's neighbor are likely hearsay, the Court is not itself bound by the rules of evidence when deciding a preliminary question of admissibility. *See* Fed. R. Evid. 104(a).

[7] Defendants also argue that evidence of this incident is relevant to Ms. Martinez's credibility. The Court agrees, but only insofar as all substantive evidence which undercuts an opposing party's claims also undercuts the party's credibility.  Evidence of Ms. Martinez's altercation with her neighbor and subsequent arrest would be inadmissible as pure impeachment evidence, since the incident did not lead to a conviction, *see* Fed. R. Evid. 609, and it is not a prior bad act that bears on Ms. Martinez's character for truthfulness.  *See Hartman v. Snelders*, 04-cv-1784, 2010 WL 11626508, at *13 (E.D.N.Y. Jan. 28, 2010) ("Having reviewed the record, the Court exercises its broad discretion under Rules 403 and 608 to exclude each prior arrest listed above. . . . [T]he Court finds that arrests for assault . . . do not concern plaintiff's character for truthfulness or untruthfulness.") (quotation marks omitted)).

Notwithstanding the foregoing, Defendants remain free to offer into evidence Ms. Martinez's medical records (properly redacted), and to cross-examine Plaintiff about her physical condition and statements to medical providers when she was admitted to the hospital the day after this altercation.  However, they must do so without referencing the precluded evidence (including any mention of an arrest, handcuffs, or a "fight" or "altercation" with her neighbor(s)).

### 9. Plaintiff's Motion to Preclude Evidence About Her Fortune Society Records

Ms. Martinez moves to preclude Defendants from introducing evidence about statements Ms. Martinez made to counselors at the Fortune Society, a re-entry program for formerly incarcerated people.[8]  Because the information in these records may be relevant to Ms. Martinez's claim of damages, her motion to preclude this evidence is DENIED IN PART. Defendants may cross-examine Ms. Martinez on the relevant evidence in this report but may only say that Ms. Martinez made these statements to a "social worker" or a "counselor." Defendants may not reference "The Fortune Society," since a juror who knows that this organization helps incarcerated and formerly incarcerated people may draw a prejudicial inference about Ms. Martinez from this fact.  Defendants may also not ask Ms. Martinez about any arrests referenced in these records.

### 10. Defendants' Motion to Preclude or Limit the Testimony of Expert Witness Doctor Mark McMahon

Defendants move to preclude or limit the testimony of Ms. Martinez's expert witness Dr. Mark McMahon because he failed to supplement his 2017 expert report to account for the

---

[8] The Fortune Society, *Mission*, (Nov. 17, 2022, 6:00pm), https://fortunesociety.org/mission-statement.

treatment that Ms. Martinez has received since she filed her complaint, as well as other evidence developed since that time that relates to her claimed damages.  At oral argument, Ms. Martinez clarified that Dr. McMahon has not received any information about Plaintiff's condition nor examined her since his submitted his report, and that she would limit Dr. McMahon's testimony to opinions formed and information received by him on or before the date of his report (February 3, 2017).  Defendants agreed to this limitation.  As such, Defendants' motion to preclude Dr. McMahon's testimony is DENIED AS MOOT, and Defendants' motion to limit Dr. McMahon's testimony is GRANTED AS UNOPPOSED.  Notwithstanding the foregoing, Defendants may, of course, cross-examine Dr. McMahon about the limited time frame and information on which his opinions are based.

### 11. Plaintiff's Motion to Exclude a Nominal Damages Instruction from the Jury Charge

Ms. Martinez argues that the Court should not instruct the jury on nominal damages since, on the facts presented, it would be impossible for the jury to find for Ms. Martinez on the question of liability but conclude that she suffered no compensatory damages.  *See Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004) ("[W]here the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law.").  Defendants oppose this motion and intend to introduce evidence to suggest that Ms. Martinez's injuries were *de minimis* and that, even if the jury finds that Defendants did use excessive force, it could also find that her injuries came primarily or exclusively from other sources.

Because the strength of Ms. Martinez's motion will depend on the evidence presented at trial, the Court shall RESERVE JUDGMENT on this matter until the charge conference.

**12. Defendants' Motion to Preclude Plaintiff from Seeking Economic Damages**

Defendants move to preclude Ms. Martinez from seeking economic damages because she failed to provide computations of those damages in her initial disclosures and did not properly supplement her disclosures thereafter.  Ms. Martinez argues in response that Defendants have been on notice since 2018 that she intended to seek economic damages and that she provided Defendants with a computation of her economic damages, along with supporting documentation, during a settlement conference and by letter.  For the reasons outlined below, Defendants' motion to preclude is DENIED.

A plaintiff, in her initial discovery disclosures, must provide the other parties with "a computation of each category of damages claimed" along with evidence to support those calculations.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  The purpose of this rule is to "avoid surprise or trial by ambush," *see Lopez v. City of New York*, 11-cv-2607, 2012 WL 2250713, at *1, (E.D.N.Y. June 15, 2012), and a party who made a Rule 26(a) disclosure has a duty to supplement or correct it in a timely manner if it is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1)(A).  Preclusion, however, is a "drastic remedy," *Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 29 (W.D.N.Y. 2014) (citation omitted), and a party that fails to discharge its Rule 26(a) obligations in a timely way may nonetheless present the underlying information at trial if it satisfies its burden of showing that its failure to disclose "was substantially justified or is harmless" to its adversary. Fed. R. Civ. P. 37(c)(1); *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 395-96 (S.D.N.Y.2005).

At oral argument, Defendants conceded that, in light of the parties' 2018 settlement conference in which Ms. Martinez provided Defendants with a computation of her economic damages and the parties' subsequent discussion of economic damages by letter, they have at this

point suffered no prejudice from Ms. Martinez's initial failure to disclose.  As such, the Court

finds that Ms. Martinez has satisfied her burden of demonstrating that her initial discovery

failure is harmless, and the Court declines to impose the drastic remedy of preclusion.

### 13. Defendants' Motion to Preclude Plaintiff from Introducing the NYPD Patrol Guide and Student Guide

Defendants move to preclude any reference to the NYPD Patrol or Student Guides.

Defendants argue that because NYPD guidelines do not establish constitutional standards, they

are irrelevant to Ms. Martinez's § 1983 claims.  Ms. Martinez counters that police guidelines are

relevant to the jury's inquiry of what a reasonable officer would do under the circumstances

presented, which is an element of a § 1983 claim.  For the reasons outlined below, Defendants'

motion to preclude this evidence is GRANTED IN PART and DENIED IN PART.

Police guidelines, including patrol guides, can be relevant to the jury's inquiry into

whether an officer violated a party's constitutional rights.  *Brown v. City of New York*, 798 F.3d

94, 101 n.11 (2d Cir. 2015) (concluding that the patrol guide was relevant to the jury's excessive

force inquiry); *Smith v. City of New York*, 12-cv-4922, 2015 WL 4643125, at *3 (S.D.N.Y. 2015)

("The Patrol Guide has frequently been accepted as evidence of the standard of care to be

exercised by a police officer.").  Although patrol guides alone "do not establish constitutional

standards," *Dasrath v. City of New York*, 15-cv-766, 2018 WL 10501877, at *3 n.10 (E.D.N.Y.

Sept. 25, 2018), courts in this Circuit regularly admit sections of NYPD patrol guides in § 1983

cases to aid the jury in its determination of whether an officer's actions were reasonable.  *See,*

*e.g.*, *Tardif v. City of New York*, 13-cv-4056, 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017)

(finding, in an action alleging officers' deliberate indifference to arrestee's medical needs, that

"[w]hether the officers violated the NYPD Patrol Guide remains a significant factor to be

considered in ultimately determining whether the officers' actions that day were reasonable").

As with any evidence, however, the sections of the guidelines that are admitted must be relevant to a disputed fact, and their probative value cannot be substantially outweighed by a risk of unfair prejudice. *See, e.g.*, *McLeod v. Llano*, 17-cv-6062, 2021 WL 1669732, at *4-5 (E.D.N.Y. April 28, 2021) (declining to categorically preclude a patrol guide in a § 1983 excessive force case but excluding the portions that Plaintiff sought to admit as irrelevant and likely to confuse the jury). Because of the risk that the jury will give undue weight to the patrol guide or student guide, courts may include a limiting instruction to the jury that no one piece of evidence is dispositive when deciding whether an officer acted reasonably. *See, e.g.*, *Gogol v. City of New York*, 15-cv-5703, 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) ("The use of [the NYPD Patrol Guide], however, is still subject to relevancy considerations, and may require a limiting jury instruction.").

Ms. Martinez seeks to introduce two sections of the NYPD Student Guide concerning police protocol regarding (1) effectuating a search and (2) providing *Miranda* warnings. The Court concludes that neither of these portions of the NYPD Student Guide are admissible. First, because Ms. Martinez's unlawful search claim was dismissed in Judge Kovner's summary judgment order, the portion of the NYPD Student Guide concerning search protocols is not relevant to any of Ms. Martinez's remaining claims. Second, the portion if the NYPD Student Guide entitled "CUSTODIAL INTERROGATION" is largely duplicative of a similar section in the NYPD Patrol Guide. The Court concludes that it is appropriate to exclude this duplicative evidence under Rule 403 to avoid the jury giving undue weight to evidence of Defendants' alleged *Miranda* violations (the admissibility of which is analyzed more thoroughly below).

However, the Court concludes that the sections of the NYPD Patrol Guide that Ms. Martinez seeks to admit—all of which concern processing an arrestee, providing medical care,

documenting a detainee's injuries, addressing an "unusual occurrence," or interrogating detained persons—are relevant to the jury's inquiry into how a reasonable officer would have behaved over the course of Ms. Martinez's alleged interrogation and assault.  While the Court agrees with Defendants that local police practices do not themselves establish constitutional standards, the NYPD patrol guide is certainly relevant to a § 1983 action under the law of this Circuit, and any risk that the jury will give the NYPD Patrol Guide undue weight can be tempered by a limiting instruction informing the jury that no one piece of evidence, including the NYPD Patrol Guide, is dispositive of Ms. Martinez's claims.  The parties may submit proposed instruction(s) on this issue in their requests to charge.

### 14. Defendants' Motion to or Limit the Testimony of Expert Witness Joseph Pollini on Police Practices

Defendants seek to preclude or limit the testimony of expert witness Joseph Pollini, a retired police lieutenant who served the NYPD for 33 years.  Defendants argue that much of Mr. Pollini's testimony, as evidenced by his expert report, concerns claims that Judge Kovner dismissed in her summary judgment order and, as such, is irrelevant.  Defendants further argue that Mr. Pollini's testimony regarding a lack of documentation of Ms. Martinez's injuries, his opinions on ultimate issues, and his factual summary of what occurred on the night of the alleged assault will invade the province of the jury, since these are findings of fact and otherwise fall within the scope of a juror's ordinary knowledge.

Plaintiff acknowledges that while some of Mr. Pollini's report would be inadmissible if read out as testimony, Mr. Pollini's expertise on police practices, including documentation practices, will be helpful to a lay jury that is unfamiliar with police protocols, and his factual summary of Ms. Martinez's alleged assault is supported by the record.  For the reasons outlined below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

A party may introduce expert testimony to help the jury understand matters that fall outside a layperson's ordinary scope of knowledge.  *See United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own.").  With exceptions not relevant here, experts are not precluded from testifying to ultimate issues.  *See* Fed. R. Evid. 704(a).  However, as with all evidence, such testimony must be relevant and helpful to the jury, and a party cannot introduce an expert simply to "tell the jury what result to reach." *Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017); *see also* Fed. R. Evid. 704 notes of advisory committee on proposed rules ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . .").  Furthermore, although a party may not "present an expert to the jury solely for the purpose of constructing a factual narrative based upon record evidence. . . . [e]xpert testimony is . . . admissible where it 'synthesizes' or 'summarizes' data in a manner that 'streamlines the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion.'" *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (alteration and citation omitted).

The Court concludes that Mr. Pollini's planned testimony, as evidenced by his report, is partially admissible and partially inadmissible.  First, Mr. Pollini prepared his report prior to Judge Kovner's summary judgment order, and Plaintiff confirmed at oral argument that she does not plan on eliciting testimony from Mr. Pollini that relates solely to her dismissed claims.  This portion of Defendants' motion to preclude is therefore granted as unopposed.

Second, Mr. Pollini's anticipated testimony on ultimate issues, while not categorically barred under Rule 704, would not be helpful to the jury.  Some statements in Ms. Pollini's report—such as "[t]here is no question that[] Ms. Martinez was severely assaulted and battered and subjected to unreasonable force[] while she was in police custody[] at the 107[th] Precinct" (ECF No. 211, Exhibit T, at 19)— inappropriately invade the jury's fact-finding province.  As such, Mr. Pollini is precluded from offering this kind of testimony.

Third, Mr. Pollini may not testify to police practices with respect to the use of excessive force.  While such testimony can be helpful to the jury in other excessive force actions—for instance, where the parties agree that an officer used certain kinds of force but disagree over whether the force was reasonable—here, no party disagrees that if Ms. Martinez was indeed assaulted while handcuffed in the police precinct in the manner that she claims, this use of force would be excessive.  Expert testimony on that issue here is thus unnecessary.  As such, Ms. Martinez is precluded from eliciting such testimony from Mr. Pollini about police standards on excessive force for the purpose of establishing Defendants' liability.

Defendants' remaining motions to preclude Mr. Pollini's testimony are denied.  Expert testimony concerning standard police practice regarding how and when officers should provide medical treatment to injured detainees, the duty to intervene if and when fellow officers commit an assault, and police documentation procedures regarding injured detainees may help jurors understand specialized matters that fall beyond the scope of their ordinary knowledge.  For that reason, the Court is unpersuaded by Defendants' argument that Mr. Pollini's testimony on police practices would be "unhelpful and unnecessary."  ECF No. 212, at 30.  The Court is particularly unpersuaded by Defendants' assertion at oral argument that Ms. Martinez does not need to present an expert in police practices because she can simply cross-examine the defendant officers

about what they will explain to the jury is standard practice.  Under Defendants' reasoning, a § 1983 plaintiff would never be able to offer a police practices expert to testify against defendant officers, because the officers themselves could simply recite what they maintain the standard procedures are, and the plaintiff could cross-examine them.  However, it is precisely because the officers are interested parties that a plaintiff in Ms. Martinez's situation must be permitted to introduce an independent expert—who, as with any expert, can also be cross-examined about the fee they have been paid or any other potential basis for bias.

Defendants' motion to preclude Mr. Pollini from providing a factual summary as the basis for his opinions is also denied.  While Mr. Pollini may not testify to what he personally believed happened during Ms. Martinez's assault, he can briefly summarize the parties' differing factual accounts, which he has reviewed and relied upon.  He may also offer his opinions as to whether Defendants complied with standard police protocols under either scenario so that the jury may better evaluate whether Ms. Martinez's constitutional rights were violated.  For example, Mr. Pollini may summarize the deposition testimony and statements of the Defendant officers regarding Ms. Martinez's allegedly self-inflicted injuries, explain to the jury what protocols officers who witness or learn about a detainee self-harming would be expected to follow, and offer his opinion as to whether those protocols were or were not complied with in this case.  Similarly, Mr. Pollini may summarize Ms. Martinez's account of how she was physically assaulted and threated by two officers while handcuffed and inform the jury of the steps that, in his opinion, an officer who witnessed such conduct would be expected to take in response.

**15. Defendants' Motion to Preclude Evidence That They Failed to Advise Plaintiff of Her *Miranda* Rights While She Was in Custody**

Defendants move to preclude Ms. Martinez from introducing evidence that the defendant officers failed to advise Ms. Martinez of her *Miranda* rights while she was in custody at the 107th precinct.  It is undisputed that none of the officers administered *Miranda* warnings to her. At issue is the relevance, if any, of that fact to the issues at trial.

Defendants argue that *Vega v. Tekoh*, 142 S. Ct. 2095 (2022), in which the Supreme Court recently held that a *Miranda* violation cannot by itself sustain a claim under § 1983, cautions this Court against the admission of any evidence that defendants may have committed a *Miranda* violation in Ms. Martinez's § 1983 action.  *See id.* at 2099.  Defendants also assert that introduction of this evidence carries a risk of severe prejudice, since the jury may look unfavorably on Defendants and be less likely to hear the other evidence at trial objectively solely because Ms. Martinez was not "read her rights."  ECF No. 218, at 4.  Ms. Martinez counters that the officers' failure to Mirandize her is relevant to her claim that Defendants assaulted her in retaliation when she failed to tell them where her boyfriend, Danny Rivera, acquired his heroin, and that any prejudicial effect can be tempered through a limiting instruction.  For the reasons outlined below, Defendants' motion is DENIED.

A party's *Miranda* rights attach once she is subject to a custodial interrogation.  *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).  While routine booking information does not constitute an interrogation, *see Pennsylvania v. Muniz*, 496 U.S. 582, 600-02 (1990), an officer does engage in interrogation when he asks questions or makes statements to a detainee that are "reasonably likely to elicit an incriminating response," *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), including if the officer tells a detainee that she will benefit from cooperation with law enforcement.  *United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *Campaneria v. Reid*,

891 F.2d 1014, 1021 (2d Cir. 1989) (officer's statement that "[i]f you want to talk to us, now is the time to do it" was relevant to the Court's inquiry into whether officers honored defendant's invocation of his right to remain silent).

In a § 1983 action, whether or not a party was subject to a custodial arrest such that her *Miranda* rights attached can be a question of fact for the jury. *Boyd v. City of New York*, 336 F.3d 72, 77-78 (2d Cir. 2003) (concluding that summary judgment of plaintiff's malicious prosecution claim was inappropriate because whether plaintiff had been arrested before or after making an incriminating statement, and thus whether his *Miranda* rights had attached by that time, was a question of fact to be decided by the jury); *Kogut v. Cnty. of Nassau*, 06-cv-6695, 2012 WL 3704710, at *1 (E.D.N.Y. Aug. 27, 2012) (evidence of alleged *Miranda* violation by defendant officers was relevant to plaintiff's § 1983 claim that the defendants framed him for a murder he did not commit, a properly-pled claim on which defendants were not entitled to qualified immunity). The Supreme Court recently concluded in *Vega* that a *Miranda* violation, on its own, does not support a redressable claim under § 1983, and courts in this Circuit have already applied *Vega* for that principle. *See, e.g.*, *Stevens v. Village of Red Hook*, 20-cv-8152, 2022 WL 11970629, at *8 (S.D.N.Y. Oct. 20, 2022); *Price v. Peress*, 18-cv-4393, 2022 WL 4638148, at *14 (E.D.N.Y. Sept. 30, 2022).

It does not follow from *Vega*, however, that *Miranda* violations—much less the factual circumstances surrounding a defendant officer's failure to provide *Miranda* warnings—are necessarily irrelevant to a plaintiff's other § 1983 claims. As a general matter, a fact can be relevant to an issue in dispute even if, on its own, the fact does not give rise to liability. *See* Fed. R. Evid. 401.

The Court concludes that evidence of Defendants' failure to Mirandize Ms. Martinez while she was in custody is relevant and admissible.  Plaintiff's theory of her case is that Defendants assaulted her during an interrogation when she told them that she did not know where her boyfriend purchased his drugs.  Plaintiff plans to support this allegation not only through her own testimony but also apparently by eliciting testimony from Danny Rivera, who was in custody at the 107th Precinct at the same time as Ms. Martinez, that he heard Defendants promise Ms. Martinez that she would be released if she cooperated with them.  *Cf. Montana*, 958 F.2d at 518.  While it is true that Ms. Martinez's *Miranda* rights attached only if she was indeed questioned or interrogated, and Defendants contend that they did not do so here, Ms. Martinez has raised sufficient evidence from which a jury could credit Ms. Martinez's account and conclude that she was, in fact, repeatedly asked about her knowledge of her boyfriend's illegal activity, and that she should have been read her *Miranda* rights.  *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."); *cf. Boyd*, 336 F.3d at 77-78.  Indeed, a jury could make such a finding not only from Ms. Martinez and Mr. Rivera's anticipated testimony, but from at least one of the defendant officers'.  In each of his depositions, defendant DiGennaro denied "questioning" Ms. Martinez (maintaining that she refused to speak with him), but his description of his standard custodial "interview" practice certainly provides evidence from which a jury could find that he intended to, and did, make statements and ask questions designed to elicit incriminating information from her.  *See* ECF No. 224, Exhibit B (DiGennaro Deposition, Sept. 9, 2017), at 7 ("I'm the one that goes into [the interrogation room] with the bag of M&Ms and the bag of potato chips and some water.  And it's like, you know, I know your boyfriend's an asshole.  He just got you arrested.  *What else can you do?  What else do you*

*know*?" (emphasis supplied)); ECF No. 224, Exhibit B (DiGennaro Deposition, Feb. 28, 2019), at 13 ("I'm going to get [a detainee] used to answering questions . . . and I will say listen, there is a chance of helping yourself . . . *whatever I can do to help you*, *any information you have* in regards to shootings or homicides, *I can help you out.*" (emphasis supplied)).

Evidence that Defendants failed to Mirandize Ms. Martinez under these circumstances constitutes evidence that a jury could rely upon to credit Ms. Martinez's claims that Defendants subjected her to a psychologically and physically coercive environment on the night of her alleged assault in an attempt to acquire incriminating information.  Defendants' alleged refusal to provide Plaintiff with an attorney when she asked for one is probative of the same.  Furthermore, Defendants' explanation for their failure to *Mirandize* Ms. Martinez is also relevant to the jury's inquiry into which party's account of Ms. Martinez's detention and injuries is more credible, since a reasonable juror could conclude from the evidence presented that Defendants' primary reason for taking Ms. Martinez into custody was to acquire information from her, which may lead the jury to disbelieve Defendants' claims that they failed to "question" her and that they honored her alleged refusal to speak with them.

The Court recognizes Defendants' concern that this evidence may be unfairly prejudicial, since lay jurors who have learned about *Miranda* warnings from TV shows may give undue weight to the question of whether or not Defendants "read [Plaintiff] her rights."  ECF No. 218, at 4.  However, this risk of prejudice does not substantially outweigh the evidence's probative value as it relates to the jury's assessment of the officers' and Ms. Martinez's credibility, and to the overall narrative of what took place in the holding cell where she was injured.  Out of an abundance of caution, however, the Court shall limit the potential prejudice from this evidence in two ways.  First, while Ms. Martinez is free to cross-examine Defendants about their failure to

Mirandize her, including with reference to relevant portion of the NYPD patrol guide,[9] Ms. Martinez's expert witness Pollini may not testify about this topic, as a jury is likely to give such testimony from a police practices expert undue weight, and it might confuse the jury into believing that whether Defendants violated *Miranda* is the primary factual or legal issue they are being asked to decide.

Second, the Court will, if Defendants wish, provide two limiting instructions with respect to their alleged failure to Mirandize Ms. Martinez: once when the evidence is introduced during trial, and again before deliberations.  Defendants may submit their suggested mid-trial jury instruction, if any, when they submit their proposed jury charge and *voir dire* questions.

### 16. Defendants' Motion to Preclude Plaintiff from Proposing a Specific Dollar Amount in Damages During Summation

Defendants move to preclude Ms. Martinez from requesting a specific dollar amount from the jury.  Defendants argue that such arguments at summation tend to inappropriately "anchor" the jury to a particular damages award.  For the reasons outlined below, Defendants' motion is DENIED.

The Second Circuit has "decline[d]" to "adopt a per se rule prohibiting counsel from suggesting a specific sum as to damages."  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997).  Rather, a trial judge has discretion to either bar lawyers from mentioning specific amounts to the jury or impose "reasonable limitations, including cautionary jury instructions" as she sees fit.  *Id.*  Under this flexible approach, many judges in this Circuit have allowed counsel

---

[9] The section upon which Plaintiff seeks to rely is short, and states merely that Miranda warnings are required before a detainee is "question[ed]" before reciting the substantive requirements of the warnings.  Since the parties do not dispute that this is a threshold requirement of *Miranda*, but only whether the defendant officers actually engaged in such questioning here, this section of the guide is not prejudicial to Defendants, and arguably supports their position.

to recommend to the jury specific dollar amounts for all types of damages.  *See Edwards v. City of New York*, 08-cv-2199, 2011 WL 2748665 (E.D.N.Y. July 13, 2011) ("Although the Second Circuit has stated in the context of monetary awards for pain and suffering that specifying target amounts for the jury to award is disfavored, [it] has also stated that [this matter] is best left to the discretion of the trial judge." (quotation marks and citation omitted)); *Hable v. Metro-North Commuter Railroad*, 18-cv-1460, 2019 WL 4673564, at *6 (S.D.N.Y. Sept. 24, 2019) ("Here, given that the lack of a per se rule about the propriety of such suggestions, the Court sees no reason—at this juncture—to prohibit Plaintiff from presenting a suggested figure for past and future economic loss.").

On the facts of this case, this Court declines to preclude either party from recommending specific dollar amounts in their summations.  To start, the jury will hear evidence of Ms. Martinez's economic damages.  While some courts have found otherwise, *see, e.g.*, *Ross*, 2022 WL 768196, at *7 (permitting plaintiff to request from the jury a specific dollar amount for his economic damages but not for his non-economic damages), this Court concludes that it would be an odd and potentially confusing result for the jury in this case to be given proposed awards for certain types of Ms. Martinez's claimed damages but not for others.  Second, while the Court appreciates Defendants' concerns that Ms. Martinez's lawyers might "anchor" the jury to a particular damages award, nothing prevents Defendants from suggesting to the jury a lower dollar amount should it find for Ms. Martinez on the question of liability.  This is particularly appropriate here given that Defendants have indicated that even if the jury finds for Plaintiff on her excessive force or assault and battery claims, they intend to argue that Plaintiff's wrist injuries were neither severe nor substantially caused by these officers' actions.  To further

mitigate the risk of prejudice, the Court will remind the jury in its instructions that any damages figure recommended by counsel is argument and not evidence.

### 17. Defendants' Motion to Require that Plaintiff Name Which Two Defendants She Believes Used Excessive Force Against Her

Defendants move the Court to require Ms. Martinez to identify, prior to trial, which two of the four individual Defendants she believes used excessive force against her.  Defendants argue that Ms. Martinez only alleges that two officers assaulted her on the night in question, yet she has brought claims of excessive force against four officers.  Ms. Martinez counters that the Federal Rules of Civil Procedure permit pleading in the alternative and that personal involvement of any one officer in a § 1983 violation is a question of fact for the jury to decide. For the reasons outlined below, Defendants' motion is DENIED.

A plaintiff in a § 1983 action bears the burden of proving every element of a constitutional violation by a preponderance of the evidence, *see Wallace v. Suffolk Cnty. Police Dept.*, 809 F. Supp. 2d 73, 80 (E.D.N.Y. 2011), including the "[p]ersonal involvement" of an individual defendant in the deprivation of the plaintiff's constitutional rights.  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  For that reason, pleadings in § 1983 actions can be deficient, and dismissed on Rule 12(b)(6) motions or motions for summary judgment, if a plaintiff engages in "group pleading" without stating facts that demonstrate how each defendant was involved in each claim.  *Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018).  However, a party may plead multiple claims in the alternative, even if the claims are inconsistent with one another, *see* Fed. R. Civ. P. 8(d)(2), and if a plaintiff introduces evidence sufficient to show a defendant's personal involvement in the deprivation of a plaintiff's constitutional rights, that defendant's personal involvement becomes a question of fact to be answered by the jury. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (concluding that there was sufficient

evidence of defendants' personal involvement to deny summary judgment); *Snead v. City of New York*, 463 F. Supp. 3d 386, 400 (S.D.N.Y. 2020).

Defendants' motion *in limine* asking Ms. Martinez to narrow the scope of her excessive force claims in effect asks the Court to dismiss one of Ms. Martinez's claims against two defendants altogether. Such a motion is simultaneously untimely and premature. Defendants could have raised this argument on summary judgment (*i.e.,* arguing that the current record does not provide sufficient facts from which a reasonable jury could find, by a preponderance of the evidence, that some or all of the individual officer defendants used excessive force on Plaintiff), but they failed to do so. Defendants might still raise this argument on a motion for judgment as a matter of law, but that posture is not currently before the Court. As such, this motion must be denied.

Defendants failed to move for summary judgment on any of Ms. Martinez's excessive force claims. At oral argument, Defendants explained that they did not do so because they only learned that Ms. Martinez did not intend to narrow down her excessive force claims to two specific officers when they reviewed her summary judgment opposition papers. Defendants' account, however, does not explain why Defendants could not have sought leave of the Court to file supplemental briefing on this question at that time. Defendants have cited no authority—and this Court has found none—for the proposition that a trial court may effectively enter summary judgment on pending claims against two of four individual defendants at the start of trial, after their counsel failed to make that motion during pretrial proceedings.

Even if the Court were to consider Defendants' motion on the merits, however, it would be denied. Ms. Martinez has pled facts, supported by citations to admissible evidence, that each of Defendants Ryan, Camhi, DiGennaro, and Laliberte personally interacted with Ms. Martinez

over the course of her detention: Officer Ryan arrested Ms. Martinez and alleges that he "checked" on her seventeen times while she was detained, Lieutenant Camhi says he "restrained" Ms. Martinez, Sergeant DiGennaro said he "debriefed" Ms. Martinez, and Sergeant Laliberte was the station desk officer on the night of Ms. Martinez's detention, which plaintiff alleges had at least a partial view into the room in which Ms. Martinez was held. *See Martinez*, 564 F. Supp. 3d at 94. Thus, even if the Court concluded that Defendants' motion to dismiss two of Ms. Martinez's four claims was procedurally appropriate at this stage, Ms. Martinez is entitled to present evidence at trial that any two of the four individual Defendants could have been her alleged assailants, and the question of an officer's personal involvement in the deprivation of a party's constitutional rights is a question of fact for the jury, not the Court, to determine.

Of course, Ms. Martinez bears the burden of proving by a preponderance of the evidence at trial that each Defendant officer was personally involved in the deprivation of one or more of her constitutional rights. As such, if Ms. Martinez can prove that she was assaulted by two officers on the night of her detention but does not present evidence sufficient for a jury to find, by a preponderance of the evidence, that either Defendants Ryan, Camhi, DiGennaro, and/or Laliberte used excessive force against her while she was in custody, the Court may grant a motion for judgment in the Defendant(s)' favor under Rule 50(a) of the Federal Rules of Civil Procedure. Defendants thus are not without recourse to address potential deficiencies in Ms. Martinez's evidentiary showing and can renew their motion during or at the close of trial. Further, at that juncture, this motion may be moot, if Plaintiff has by then specified which two officer defendants she believes are liable on her excessive force claim and does not seek to have the verdict sheet name the other two Defendants on this claim. At present, however, Defendants' motion is denied.

44

**18. Plaintiff's Motion to Preclude Evidence of Defendants' Awards and Commendations**

Ms. Martinez moves to preclude Defendants from introducing evidence of their promotions, awards, and commendations.  Because Defendants have averred that they have no intention of introducing such evidence, Ms. Martinez's motion is DENIED AS MOOT.

**19. Plaintiff's Motion to Prevent a Trial Bifurcation on the Question of Punitive Damages**

Ms. Martinez moves to prevent the Court from bifurcating the jury's inquiry on the question of punitive damages from their inquiry on Defendants' liability.  Because Defendants have not moved to bifurcate the trial and the Court sees no reason to do so, Ms. Martinez's motion is DENIED AS MOOT.

**20. Plaintiff's Motion to Preclude Evidence About Plaintiff's Disorderly Conduct Arrest**

Ms. Martinez moves to preclude Defendants from introducing evidence of her arrest for disorderly conduct 14 years prior to her alleged assault.  Because Defendants have averred that they have no intention of introducing this evidence, Ms. Martinez's motion is DENIED AS MOOT.

**21. Defendants' Motion to Preclude Evidence About Danny Rivera's Allegations of Defendants' Misconduct**

Defendants move to preclude Danny Rivera from testifying about a CCRB and IAB investigation into the Defendant officers for stolen property and excessive force.  Ms. Martinez asserts that she has no intention of eliciting this testimony, but that there is a risk that Mr. Rivera, who is a non-party to this action, may offer such testimony on his own.  Defendants' motion to preclude is therefore DENIED WITHOUT PREJUDICE, and Defendants may renew their objections if Mr. Rivera offers testimony irrelevant to the facts of this case.

**22. Defendants' Motion to Preclude Evidence About the Disciplinary Histories of Defendants and Other Officers**

Defendants seek to preclude Ms. Martinez from introducing evidence of Defendants' past allegations of misconduct, including disciplinary histories and prior lawsuits. Defendants also seek to preclude evidence of non-party officer misconduct as well as references to terms that would suggest that police officers do not testify truthfully, such as "the blue wall of silence" and "testilying." Because Ms. Martinez does not intend to introduce such evidence except with respect to Defendant Laliberte's statements to investigators (analyzed above), Defendants' motion is DENIED AS MOOT.

Relatedly, the Court inquired at argument whether the parties were aware if any of the named defendant officers had been the subject of adverse credibility findings by any court, or whether the Queens County District Attorney (who presently maintains a list of such findings) had any other such information that may be relevant to the jury's assessment of any of the defendants' credibility.[10] So that this Court may fully consider and rule upon any motions to exclude or admit such evidence (if it exists), counsel for the City agreed to inquire with the Queens County District Attorney's office ("QCDA") as to whether any of the four defendant officers were included in the QCDA's internal database of such instances, and to disclose them to Plaintiff and so inform the Court prior to submission of the final Joint Pretrial Order.

_____

[10] In 2019, the Queens County District Attorney announced that her office had prepared and would maintain an internal list of "substantiated misconduct allegations, criminal matters, adverse credibility findings and civil lawsuits" related to NYPD officers, so that Assistant District Attorneys could more readily access that information and disclose it in litigation as may be required by law. *See* David Brand, *Queens DA Releases List of Cops with Credibility Issues*, QUEENS DAILY EAGLE (Nov. 27, 2019), https://queenseagle.com/all/queens-da-releases-list-of-cops-with-credibility-issues. The Queens County District Attorney has further announced that her office would update its internal database regularly as new findings are made or otherwise come to its attention. *Id.*

**23. Defendants' Motion to Preclude Plaintiff's Treating Physicians from Testifying As Experts**

Defendants seek to prevent Ms. Martinez's treating physicians from testifying as experts. Because Ms. Martinez clarified in her motion papers and at oral argument that she will only elicit testimony from these witnesses regarding assessments made and opinions formed during their personal treatment and examination of Ms. Martinez (including any medical records prepared by others that they actually reviewed in the course of their examination and treatment), Defendants' motion is DENIED AS MOOT.

**24. Additional Matters**

Plaintiff's motion to allow Defendants' Rule 36 admissions to be offered as evidence is GRANTED IN PART.  At oral argument, the Court directed Plaintiff to review and narrow down her list of proposed admissions to those which (1) are relevant to her remaining claims, and (2) she does not anticipate she can readily present through testimony.  Plaintiff shall do so and confer with counsel for the City in an effort to reach agreement as to the specific Rule 36 admissions Plaintiff will offer and address Defendants' objections as to the language used.  The Court will resolve any remaining disputes at the final pretrial conference or at trial.

The Court also granted (as unopposed) Ms. Martinez's motion to use leading questions on her direct examination of the individual defendants.  As for non-defendant police officer witnesses, Plaintiff clarified that she will call at most three such witnesses: (1) Paul Valerga, (2) Joseph Pontecorvo, and (3) Albert Trotter (who may be unavailable and outside the Court's subpoena power as he currently resides in Arizona).  The Court reserves decision on whether to grant Plaintiff's motion to examine these witnesses with leading questions because they are "identified with an adverse party" under Rule 611(c)(2) of the Federal Rules of Evidence, until

Plaintiff determines which of these three witnesses (if any) she will call and specifies the

grounds under which she believes each witness satisfies the criteria of Rule 611(c)(2).


SO ORDERED.

/s/ Nina R. Morrison
NINA R. MORRISON
United States District Judge


Dated: November 18, 2022
Brooklyn, New York