UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROSIE MARTINEZ

       Plaintiff,        MEMORANDUM AND ORDER
                     16-CV-79 (NRM) (CLP)

    -against-

CITY OF NEW YORK, Police Officer ERIC RYAN,
Lieutenant DAVID CAMHI, Sergeant JOSEPH
DIGENNARO, and Sergeant KEITH LALIBERTE,

       Defendants.
-------------------------------------------------------------------x

NINA R. MORRISON, United States District Judge:

  The parties to this civil rights action are currently in the midst of a jury trial on Plaintiff's claims of excessive force, deliberate indifference, and failure to intervene against the individual police defendants, and assault and battery against the City of New York under the doctrine of *respondeat superior*. Just prior to the final pre-trial conference on November 28, 2022, both parties moved for the Court's permission to cross-examine their adversaries under Rule 608(b) of the Federal Rules of Evidence about allegedly false statements that an adverse party is alleged to have made during prior administrative proceedings, contending that each is probative of that party's character for untruthfulness.[1] The Court partially ruled on and partially reserved

---

[1] Defendants' claim that the evidence on which they seek to cross-examine Plaintiff is probative of her character for truthfulness under Rule 608(b) is somewhat undermined, in the Court's view, by the fact that defense counsel has (1) admitted that it had no intention of seeking to offer this evidence until after Plaintiff moved for leave to do so with respect to defendant Laliberte's 2016 adverse credibility findings, and (2) informed the Court that even if their motion is granted, Defendants will only proceed to cross-examine Plaintiff about this evidence if the Court grants Plaintiff's counsel's motion with respect to defendant Laliberte. While Defendants are surely entitled to move *in limine* to cross-examine an adverse party about anything they believe, in good faith, meets Rule 608(b)'s requirements, it is puzzling that their view of this evidence's probative value for purposes of their trial presentation turns entirely on whether the Court grants or does not grant a different Rule 608(b) motion made by their adversary. Given that the jury's verdict may well turn on its assessment of the credibility of the various parties as witnesses, if Defendants truly believed that the administrative findings regarding Ms. Martinez were sufficiently probative of untruthfulness as to meet Rule 608(b)'s requirements, one presumes they

1

judgment on these motions, heard additional argument from the parties outside the presence of the jury on December 1, 2022, and invited the parties to submit further briefing.[2]

The first motion relates to a 2016 police department disciplinary trial against defendant Keith Laliberte.  On March 9, 2016, Assistant Deputy Commissioner Nancy Ryan (hereinafter, "Commissioner Ryan") of the New York Police Department published an opinion following this departmental trial that concerned, among other matters, Sergeant Laliberte's decision to arrest a citizen named T.P. after she and her family attended a candlelight vigil for a community member who had been murdered.  Following her arrest, T.P. was charged with Unlawful Assembly.  Thereafter, one or more complaints made to the Civilian Complaint Review Board led to police disciplinary charges against Laliberte and several other officers at the scene.  *See* Commissioner Ryan's March 9, 2016 Opinion (hereinafter "Ex. 1").

Commissioner Ryan, finding Sergeant Laliberte "[g]uilty of arresting [T.P.] without sufficient legal authority," made numerous, specific adverse credibility determinations with respect to Sergeant Laliberte's testimony at his departmental trial.  Ex. 1, at 16.  She wrote that Laliberte's testimony regarding an alleged threat T.P. posed at the scene by swinging a crutch at him "did not make sense," that a video of T.P.'s arrest "completely undermine[d]" Laliberte's testimony, that it "defie[d] logic" that the police would behave as they did on the video if T.P. had been acting as Sergeant Laliberte testified she acted, and that the reasons for T.P.'s arrest

---

would have sought leave of the Court to cross-examine her about them regardless of the outcome of Plaintiff's motion—particularly since the Court already ruled, two weeks in advance of trial, that defendant Laliberte could be cross-examined under Rule 608(b) about allegedly false statements he made in a different NYPD Internal Affairs Bureau investigation in 2013.  Nevertheless, despite some concern about whether gamesmanship may be a factor in Defendants' current position, the Court will presume the good faith of both parties in making their motions and consider each on its own merits.

[2]  The Court's prior rulings on the parties' written motions *in limine*, and additional information about the factual disputes and procedural history of this case, can be found in *Martinez v. City of New York*, 16-cv-79 (NRM), 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022).

that Sergeant Laliberte gave at trial "were not genuine." Ex. 1, at 15-16. Commissioner Ryan proceeded to conclude that, in light of all the evidence, Sergeant Laliberte did not himself believe at the time of T.P.'s arrest that he had reasonable cause to arrest her. Ex. 1, at 16. Commissioner Ryan submitted her findings in the form of a Report and Recommendation to then-New York Police Commissioner William Bratton, who approved it in full on May 27, 2016. Ex. 1, at 21.

    The second motion relates to a 2019 administrative hearing at which Plaintiff Rosie Martinez was denied an extension of certain training benefits under New York State's unemployment system. On January 28, 2019, Administrative Law Judge Craig Fishkin of the State Department of Labor (DOL) published a summary of a telephonic hearing he held concerning Ms. Martinez's challenge to the DOL's initial determination that she was entitled to additional unemployment training benefits, beyond the four-and-one-half weeks of additional benefits she had already been awarded. *See* ALJ Fishkin's January 28, 2019 Opinion (hereinafter "Ex. 2"). ALJ Fishkin affirmed the DOL's decision, concluding that Ms. Martinez had submitted her sole application for benefits in June 2017, rather than in September 2017 as she contended. Ex. 2, at 1-2. The ALJ also made a separate finding that even if Ms. Martinez had filed an application for benefits in September 2017, she would not have qualified for the additional training benefits she sought, because she was at that time two credit hours short of the training she needed to qualify for those additional benefits. Ex. 2, at 2.

    ALJ Fishkin made no determination that Ms. Martinez testified untruthfully. *See generally* Ex. 2. He did, however, weigh her testimony against that of other witnesses from the DOL, along with the documentary record, and concluded that "[t]o the extent that there is any issue of credibility in this case, I find the testimony and other evidence on behalf of the New

York State Department of Labor more credible than the testimony and other evidence on behalf of" Ms. Martinez.  Ex. 2, at 2.

At the final pre-trial conference, this Court ruled that Commissioner Ryan's adverse credibility findings from Sergeant Laliberte's departmental trial provided Ms. Martinez with the good faith basis that Rule 608(b) requires to cross-examine Laliberte about his allegedly false statements.  The Court reserved decision, however, on whether Commissioner Ryan's adverse credibility findings themselves would be a permissible subject of inquiry on cross-examination under Rule 608(b).  The Court now concludes that they are.

At the same conference, this Court made an initial determination that Defendants could inquire into Ms. Martinez's statements to ALJ Fishkin on cross-examination under Rule 608(b), but reserved decision on whether ALJ Fishkin's findings in that report are a permissible subject of inquiry on cross-examination.  The Court now concludes that they are not.  The Court also concludes, upon further review of the ALJ's decision and applicable caselaw, that the information summarized in ALJ Fishkin's report does not in fact provide Defendants with the necessary good faith basis to believe that Ms. Martinez's testified untruthfully when she sought review of the Department's initial decision denying her additional training benefits.  Rule 608(b) therefore prohibits Defendants from cross-examining Ms. Martinez about this proceeding at all. [3]

---

[3] A district court retains discretion to reconsider its own interlocutory orders *sua sponte* "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See Esposito v. Suffolk County Community College*, 517 F. Supp. 3d 126, 133-34 (E.D.N.Y. 2021) (quoting Fed. R. Civ. P. 54(b)).  Indeed, the Court has exercised this discretion once already in this action to avoid unfair prejudice to Defendants, ruling from the bench on November 30, 2022 that Ms. Martinez may not reference "handcuffs" while cross-examining defendant Laliberte under Rule 608(b) about misleading statements he made during an Internal Affairs Bureau investigation.

## ANALYSIS

Rule 608(b) of the Federal Rules of Evidence permits cross-examination into a witness's prior acts that bear on her character for truthfulness or untruthfulness. The proffering party must have a good faith basis to believe that the untruthful acts actually occurred, *Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996), and the Court can preclude this line of questioning under Rule 403 if it determines that the inquiry's probative value would be substantially outweighed by a risk of unfair prejudice.

While a party may not prove the witness's untruthful acts through the introduction of extrinsic evidence, circuits appear to be split as to whether cross-examination about a third party's credibility determination about the witness's prior act violates Rule 608(b)'s extrinsic evidence bar. The Second Circuit has declined to adopt a rigid approach prohibiting this line of questioning and has instead concluded that cross-examination into a third party's adverse credibility findings about a testifying witness is, in some instances, permissible under Rule 608(b). *See United States v. Cedeño*, 644 F.3d 79, 82-83 (2d Cir. 2011) (concluding that the district court erred when it precluded cross-examination about a state court judge's prior determination that a testifying officer had contradicted himself on the stand). Indeed, a district court, when deciding whether to permit a party to cross-examine a witness about a third party's prior adverse credibility finding, may consider a host of factors, including:

> [W]hether the prior judicial finding addressed the witness's veracity in that specific case or generally; whether the two sets of testimony involved similar subject matter; whether the lie was under oath in a judicial proceeding or was made in a less formal context; whether the lie was about a matter that was significant; how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; the apparent motive for the lie and whether a similar motive existed in the current proceeding; and whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

*United States v. White*, 692 F.3d 235, 249 (2d Cir. 2012) (quoting *Cedeño*, 644 F.3d at 82-83) (quotation marks and numbering omitted)). This list, however, is "non-exhaustive," and district courts are "not constrained by any rigid test when considering the admissibility of prior adverse credibility findings." *White*, 692 F.3d at 249 & n.7.

While an adverse credibility determination by a state or federal judge may be particularly probative of a witness's character for truthfulness, courts in this Circuit have also permitted cross-examination about adverse credibility findings made by non-judicial actors, including police commissioners and administrative law judges. *See, e.g.*, *United States v. Nelson*, 365 F. Supp. 2d 381, 390 (S.D.N.Y. 2005) (concluding that inquiry into a police commissioner's credibility finding on cross-examination "would not constitute extrinsic evidence" under Rule 608(b)); *United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir. 1983) (concluding that the district court had not abused its discretion when it permitted cross-examination about an Immigration Judge's determination that the witness's prior testimony was not credible). *See also United States v. Barret*, 10-cr-809, 2012 WL 194992, at *2-4 (E.D.N.Y. Jan. 23, 2012) (concluding that the *Cedeño* factors weighed in favor of permitting cross-examination about adverse credibility findings from a Civilian Complaint Review Board investigation); *but see United States v. Smith*, 06-cr-203, 2007 WL 188734, at *1 (S.D.N.Y. Jan. 24, 2007) (precluding cross-examination about a Civilian Complaint Review Board adverse credibility finding in part because "proceedings before the CCRB lack formality").

**1. Commissioner Ryan's Findings (Defendant Laliberte)**

The Court concludes that Commissioner Ryan's adverse credibility determination about Sergeant Laliberte's trial testimony satisfies the standard outlined in *Cedeño* and *White* and is a permissible subject of inquiry on cross-examination. Sergeant Laliberte testified before

6

Commissioner Ryan at an official departmental trial that, just prior to her arrest, T.P. was "swinging her crutch at police officers and . . . cursing and screaming and refusing to leave the street area." Ex. 1, at 11. Commissioner Ryan determined that this testimony was not true. Ex 1, at 15-16. Although Sergeant Laliberte's departmental trial was not a judicial proceeding, it was highly formal: the trial, which concerned several additional claims, lasted three days, and Laliberte and his fellow respondent officers were each represented by outside counsel. Ex. 1, at 3.

Moreover, Commissioner Ryan did not simply weigh Laliberte's testimony against that of other witnesses and found that Laliberte's testimony was less credible. Rather, Commissioner Ryan affirmatively concluded that Laliberte's account was directly contradicted by a video of T.P.'s arrest, which showed that T.P. swung her crutch at a mailbox rather than at officers, that an officer took T.P.'s crutch away and then gave it back, and that T.P. then walked past Sergeant Laliberte and into her building "exactly as he had ordered her to." Ex. 1, at 11, 16. After Laliberte was shown this video, he "acknowledged" and "agreed" that the video contradicted his testimony, but apparently offered no explanation for his earlier statements. Ex. 1, at 11.

In light of the formality of the departmental trial, the significance of making numerous false statements about the reasons for placing a citizen under arrest, the fact that Laliberte testified with outside counsel present, the Commissioner's reference to video evidence contradicting Laliberte's statements, and Laliberte's apparent inability to explain his testimony in light of contrary video evidence, the Court concludes that Rule 608(b) permits Ms. Martinez to inquire into Commissioner Ryan's adverse credibility findings while cross-examining Sergeant

Laliberte.[4]  While the Court acknowledges Defendants' argument that Commissioner Ryan fell short of calling Laliberte's statements "lies"—opting instead to characterize his testimony as "not genuine"—the Court finds that this face-saving decision all but certainly "reflects [the] fact finder's desire to use more gentle language."  *White*, 692 F.3d at 249.

The Court also concludes that this line of questioning should not be barred under Rule 403.  "Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath."  *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004).  Moreover, the Court is unpersuaded by Defendants' contention that asking Sergeant Laliberte about Commissioner Ryan's adverse credibility findings on cross-examination would require a lengthy and confusing counter-presentation by Laliberte and his counsel to show the jury what he apparently now contends were the inaccuracies of the Department's findings,[5] or otherwise unfairly prejudice Defendants.  Plaintiff's examination will

---

[4] The *White* court clarified that the *Cedeño* factors do not lay out a mathematical test, and that district courts may admit or preclude questioning about an adverse credibility finding based on its overall indicia of relevance and trustworthiness.  However, even if *Cedeño* did lay out a strict balancing test, the factors would weigh in favor of permitting Ms. Martinez to cross-examine defendant Laliberte about Commissioner Ryan's adverse credibility finding.  The first two *Cedeño* factors weigh against permitting this line of questioning, since Commissioner Ryan did not find that Sergeant Laliberte lacks a general character for truthfulness, and the matter to which Sergeant Laliberte will be testifying in this action is unrelated to the matter to which he testified before Commissioner Ryan.  However, as discussed more thoroughly above, the remaining five factors weigh in favor of permitting this line of questioning: Sergeant Laliberte made his statements under oath at a highly formal proceeding, the matter to which he testified was significant, his testimony before Commissioner Ryan was relatively recent in time, his potential motive to speak untruthfully is similar in both proceedings since both could lead to adverse financial, professional, and reputational outcomes, and Commissioner Ryan noted that, during the departmental trial, Sergeant Laliberte offered no explanation for his misleading testimony.  Of all the *Cedeño* factors, the Court considers the formality of the underlying proceeding the most relevant, since a highly formal proceeding presses upon the testifying witness the importance of utmost honesty and presses upon the fact finder the importance of writing a thorough opinion that carefully considers whether there is any possibility that the testifying witness was telling the truth.

[5] Defendants acknowledged in a clarifying letter to the Court that Sergeant Laliberte did not pursue an Article 78 appeal of Commissioner Bratton's decision, and that his counsel reports that he "probably" submitted what is called a "Fogel letter" on Laliberte's behalf to dispute one or more aspects

be limited to the credibility findings made by Commissioner Ryan and the statements Laliberte made at his departmental trial that led to those findings. At that time, or while being examined by his own counsel, Sergeant Laliberte is free to give the jury his own explanation for those statements and his perspective on the findings against him if he chooses to do so. [6]

For these reasons, the Court concludes that Ms. Martinez may, under Rule 608(b), ask Sergeant Laliberte during cross-examination about Commissioner Ryan's adverse credibility findings. Ms. Martinez may not, however, admit Commissioner Ryan's report into evidence as an exhibit. *See* Fed. R. Evid. 608(b). Ms. Martinez must also limit her cross-examination to only those findings in Commissioner Ryan's report that concern Laliberte's character for truthfulness. The Commissioner's conclusion that Laliberte was "[g]uilty of arresting [T.P.] without sufficient legal authority," for example, would fall outside the scope of permissible cross-examination, as this is not a credibility determination. Ex. 1, at 16. Similarly, Commissioner Ryan's summary of Sergeant Laliberte's testimony regarding his basis to arrest another person named R.R. on the same night—even though Laliberte was also found to have

---

of the Ryan Report and Recommendation before the Police Commissioner, but counsel's office cannot locate a copy of that letter, if one was submitted. Laliberte is of course free to testify at this trial that he believes Commissioner Ryan's credibility findings against him were in error. But there is no reason to believe that this this counter-presentation would take much trial time or confuse the jury, and certainly not to an extent that outweighs Plaintiff's entitlement to inquire into the original findings under Rule 608(b).

[6] Defendants also argue in their letter brief that Commissioner Ryan's statements in her report constitute inadmissible hearsay. Assuming *arguendo* that the statements of a police commissioner in this case are hearsay and not party-opponent statements against the City of New York under Rule 801(d)(2)(D), they are admissible as the factual findings of a police commissioner in a report and recommendation under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8); *United States v. Nelson*, 365 F. Supp. 2d 381, 388-89 (S.D.N.Y. 2005). To the extent that the Commissioner's statements are not factual findings but opinions, the Supreme Court has concluded that Rule 803(8) encompasses opinions and conclusions. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163-64 (1988). Although Rule 803(8)(B) permits the Court to exclude hearsay in a public record if it concludes that it lacks trustworthiness, Defendants give the Court no reason to reach that conclusion here. Indeed, the fact that Commissioner Ryan's conclusions were endorsed by then-Police Commissioner Bratton and resulted in professional discipline for defendant Laliberte indicates otherwise.

improperly arrested R.R. and was found "guilty" of a second arrest-without-cause charge during this proceeding—is also not a permissible subject for cross-examination, as Commissioner Ryan did not make specific findings that Laliberte's testimony regarding the R.R. arrest was not credible. Ex. 1, at 17.

### 2. ALJ Fishkin's Findings (Plaintiff Martinez)

The Court concludes that the findings made in ALJ Fishkin's opinion do not satisfy the standard outlined in *Cedeño* and *White* and are not the proper subject of inquiry during Defendants' cross-examination of Ms. Martinez. While there is some surface appeal to Defendants' "what's good for the goose is good for the gander" argument—namely, that if this Court permits the jury to learn of certain findings made in an administrative proceeding against one party, it ought in fairness allow the same with respect to the opposing party—the Court is obligated to consider each area of proffered cross-examination on its own merit. Having done so, the Court concludes that it would be an abuse of discretion to allow Defendants to cross-examine Ms. Martinez about any aspect of this administrative denial of extended training benefits.

On December 12, 2017, Ms. Martinez, who was already receiving unemployment benefits at the time (which appear to have been awarded after an initial application filed in June 2017), applied for additional weeks of unemployment training benefits. Ex. 2, at 1. Ms. Martinez submitted this application after she requested a copy of the Unemployment Insurance Handbook from the DOL, which outlines the parameters of the New York State unemployment benefits scheme. Ex. 2, at 1. Ms. Martinez also apparently called the DOL for clarification about her eligibility. Ex. 2, at 1-2. The DOL approved Ms. Martinez's application for 4.5 weeks

of benefits. Ex. 2, at 1. Believing the DOL's determination to be a partial error, Ms. Martinez requested a hearing, at which a factual dispute emerged as to whether Ms. Martinez submitted an additional application to the DOL in September 2017. Ex. 2, at 1-2. She contended she did so, and contended that this fact would have entitled her to additional benefits. Ex. 2, at 2. The DOL had no record of it. Ex. 2, at 2. That was the scope of the hearing. In his report, ALJ Fishkin also noted that the additional application Ms. Martinez initially asserted she had filed would not have entitled her to additional benefits in any event, because she lacked the requisite credit hours to qualify for further training at that time; thus, this limited factual dispute was ultimately immaterial to the outcome. Ex. 2, at 2.

The Court finds that the *Cedeño* balancing test weighs against permitting Defendants to cross-examine Ms. Martinez about ALJ Fishkin's findings. On the one hand, ALJ Fishkin's 2019 opinion was recent in time, and Ms. Martinez's motive to "lie" at the instant trial perhaps bears a superficial resemblance to her motive to lie before ALJ Fishkin in that both proceedings involve(d) potential payments of money. ALJ Fishkin also did not credit Ms. Martinez's explanation that a DOL representative gave her "misinformation" when Ms. Martinez called for clarification about her eligibility after he heard testimony from the representative who denied having provided Ms. Martinez with inaccurate information. While the materiality of that issue to the outcome of the proceeding is unclear, and ALJ Fishkin did not find that Ms. Martinez deliberately misrepresented her recollection of that telephone call, the Court notes that this aspect of the decision weighs favor of admission.

The other *Cedeño* factors, however, weigh strongly in favor of precluding cross-examination about ALJ Fishkin's findings. ALJ Fishkin did not speak to Ms. Martinez's general character for truthfulness. The matter to which Ms. Martinez testified before ALJ Fishkin is

11

completely unrelated to the matter to which she will testify in this action.  Although Ms. Martinez likely testified at the conference hearing under oath, the hearing was significantly less formal than an in-person judicial proceeding: ALJ Fishkin conducted this proceeding over telephone, and nothing suggests that Ms. Martinez appeared at the hearing represented by counsel.[7]  In addition, the matter in dispute during Ms. Martinez's DOL hearing cannot be characterized as "significant," since the DOL had already twice approved Ms. Martinez for benefits, and this hearing concerned whether she was eligible for several weeks of additional benefits.

On these grounds alone, the Court concludes that ALJ Fishkin's opinion is not a permissible subject of inquiry during Defendants' cross-examination of Ms. Martinez.  The Court also finds cause to preclude this line of questioning for a simpler reason: ALJ Fishkin's opinion is not an adverse credibility finding regarding Ms. Martinez and thus does not bear on her character for truthfulness as required by Rule 608(b).  The hearing's entire inquiry concerned the date on which Ms. Martinez applied for training benefits.  Ms. Martinez believed she submitted an application in September 2017.  ALJ Fishkin weighed Ms. Martinez's testimony against that of his testifying colleagues and concluded that "[t]o the extent that there is any issue of credibility in this case, I find the testimony . . . on behalf of the New York State Department of Labor more credible" than Ms. Martinez's.  Weighing one side's testimony and evidence against another's is something that arbitrators do all the time: finding against one side does not, on its own, amount to a determination that the losing party lied.  *Cf. Junger v. Singh*, 514 F. Supp. 3d 579, 598 (W.D.N.Y. 2021) (precluding a party from cross-examining an expert under

---

[7] Again, the Court considers the formality of the underlying proceeding to be the most important of the *Cedeño* factors, as it speaks to both the witness's willingness to lie at a judicial proceeding and the weight to which the previous fact finder's credibility determination is entitled.

Rule 608(b) on a prior judicial criticism because "the fact that a court found a particular methodology unreliable is not equivalent to a conclusion that the methodology was deliberately misleading"). In fact, the rest of ALJ Fishkin's opinion supports the inference that Ms. Martinez believed that she was testifying truthfully and clarified her testimony as necessary. For instance, ALJ Fishkin noted that Ms. Martinez "contended that she had certain evidence on her phone, but then acknowledged that the information on the phone was not as she contended." Ex. 2, at 2. However, because the hearing took place over telephone, rather than in person, the Court can only infer that ALJ Fishkin did not even look at the records on Ms. Martinez's phone before she acknowledged that she was mistaken—which is to say, Ms. Martinez corrected herself.

For these reasons, the Court concludes that Defendants may not inquire into ALJ Fishkin's findings about Ms. Martinez's eligibility for additional unemployment training benefits on cross-examination. ALJ Fishkin's opinion does not amount to an adverse credibility determination and, even if it did, the *Cedeño* factors weigh against admission.

The Court also now concludes that Rule 608(b) does not permit Defendants to cross-examine Ms. Martinez about her hearing before ALJ Fishkin at all.[8] Rule 608(b) requires a party who seeks to cross-examine a witness about prior acts of untruthfulness to have a "good faith" belief that those acts actually occurred. *Hynes*, 79 F.3d at 294. This threshold is low—but it is still a threshold. Since courts usually do not require parties to submit impeachment evidence prior to trial, many judges are pressed to make Rule 608(b) good faith determinations after reviewing the proffering parties' materials in a cursory fashion, if at all. Indeed, commentators

---

[8] Rule 608(b) does not require an official finding of untruthfulness, *see United States v. Bravo*, 808 F. Supp. 311, 321-22 (S.D.N.Y.1992), and the Court's decision to preclude Defendants from cross-examining Ms. Martinez about this evidence does not rest on the fact that ALJ Fishkin did not render an adverse credibility finding against her.

13

have acknowledged that the good faith standard is "vague" and "invites abuse" by allowing a party to "ask damning questions with little factual support."[9]

The basic question that a court must carefully consider under the Rule 608(b) good faith rule, however, is whether the proffering party has a basis to believe that the testifying witness actually did something untruthful. Here, with the benefit of time to fully consider the record that Defendants have offered to support their contention and the applicable authorities, as well as after the submission of letter briefs and additional argument, the Court concludes that Defendants lack a good faith basis to believe that Ms. Martinez testified untruthfully in her benefits hearing. Ms. Martinez thought she had submitted an application for additional training benefits in September 2017. She had not. Prior to her hearing, Ms. Martinez had requested a handbook from the DOL to understand the parameters of her eligibility for benefits and apparently called a representative at DOL for clarification. At the hearing, Ms. Martinez attempted to explain why she thought she was eligible for additional training benefits. The ALJ told her she was not. Ms. Martinez was simply mistaken. This would be an entirely different outcome if Ms. Martinez had knowingly made false statements about a material issue in her application for benefits or at the administrative hearing. She did not. A person's inability to understand the state's often-labyrinthine system of unemployment training benefits—or even a failure to preserve records that the person contends would support her claims for additional benefits—does not bear on her character for truthfulness.[10]

---

[9] Donald H. Zeigler, *The Confusing Relationship Between Rule 608(b) and 609 of the Federal Rules of Evidence*, 46 N.Y. L. SCH. L. REV. 3 (2003); Gerald L. Shargel, *Federal Evidence Rule 608(b): Gateway to the Minefield of Witness Preparation*, 76 FORD. L. REV. 3 (2007).

[10] For similar reasons, Rule 403 would also caution the Court against permitting this line of questioning. The probative value of the statements Ms. Martinez made at the hearing regarding the date of her alleged supplemental application as they bear on her character for truthfulness is slight, and any

For this reason, the Court concludes that Defendants have failed to satisfy Rule 608(b). This line of questioning on cross-examination, therefore, is precluded.

## **CONCLUSION**

For the reasons outlined above, Plaintiff's motion for leave to cross-examine Sergeant Laliberte about Commissioner Ryan's adverse credibility findings in his 2016 police disciplinary trial is GRANTED.  Defendant's cross-motion for leave to cross-examine Ms. Martinez about ALJ Fishkin's findings following her 2019 Department of Labor hearing is DENIED.  The Court also precludes Defendants from cross-examining Ms. Martinez about any statements she made over the course of applying for additional unemployment training benefits from June 23, 2017 to January 28, 2019.

---

arguable relevance is substantially outweighed by the risk that the jury would be confused into believing that Ms. Martinez may have engaged in an act of fraud by seeking the additional training benefits that she did.